# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
## WESTERN DIVISION

**FREDERICK BELL,** *Petitioner*

*versus*   **CIVIL ACTION NO. 3:04cv212-B-A**

**CHRISTOPHER EPPS, COMMISSIONER,
MISSISSIPPI DEPARTMENT OF CORRECTIONS, and
DR. DONALD A. CABANA, SUPERINTENDENT,
MISSISSIPPI STATE PENITENTIARY, and
JIM HOOD, ATTORNEY GENERAL OF THE
STATE OF MISSISSIPPI,**   *Respondents*

## MEMORANDUM OF AUTHORITIES IN SUPPORT OF ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2254 BY A PERSON IN STATE CUSTODY UNDER SENTENCE OF DEATH

_____

**COME NOW** the respondents, by and through counsel, and file this memorandum in support of the answer filed in the above styled and numbered cause.

### I.

### INTRODUCTORY STATEMENT

This Court has jurisdiction over habeas corpus petitions under 28 U.S.C. §2254 as amended on April 24, 1996 by the Antiterrorism and Effective Death Penalty Act (AEDPA). The fact that this habeas petition is filed after that date requires that the provisions of the AEDPA be applied with full force to this petition. *Lindh v. Murphy*, 521 U.S. 320, 324-26, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997) (holding that AEDPA applies to all federal habeas applications filed on or after April 24, 1996); *Pippin v. Dretke*, 434 f.3d 782, 786 (5th Cir.

2005); *Aguilar v. Dretke*, 428 F.3d 526, 530 (5th Cir. 2005); *Neville v. Dretke*, 423, F.3d 474, 478 (5th Cir. 2005); *Nobles v. Johnson*, 127 F.3d.. 409 (5th Cir. 1997); *Williams v. Cain*, 125 F.3d 269, 273-74 (5th Cir. 1997); *McBride v. Johnson*, 118 F.3d 432, 436 (5th Cir. 1997) ("Because this case comes within the parameters of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104-132, 110 Stat. 1214 (1996), we apply the standard of review embodied in the AEDPA. *See Drinkard v. Johnson*, 97 F.3d 751 (5th Cir.1996), *cert. denied*, 502 U.S. 1107, 117 S.Ct. 1114, 137 L.Ed.2d 315 (1997)."). The proper application of the AEDPA is fully explained in the decision of the United States Supreme Court in *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

## A. PROCEDURAL HISTORY

The habeas case at bar originated in the Circuit Court of Grenada County, Mississippi. Petitioner was indicted on July 19, 1991, by the grand jury of Grenada County, Mississippi, for the May 6, 1991, murder of Robert C. Bell,[1] during the commission of an armed robbery in violation of MISS. CODE ANN. § 97-3-19(2)(e). A jury was impaneled and Bell was put to trial on the indictment on January 26, 1993. After hearing the evidence presented, the jury returned a verdict of guilty of capital murder. Thereafter, the jury heard evidence and arguments in aggravation and mitigation of the sentence and the jury returned a verdict of death in the following proper form:

We the jury unanimously find from the evidence beyond a reasonable

---

[1]The victim was not related to the petitioner.

2

doubt that the following facts existed at the time of the commission of the capital murder:

(1)    That the defendant, Frederick Bell, actually killed Robert C. "Bert" Bell.

(2)    That the defendant, Frederick Bell, attempted to kill Robert C. "Bert" Bell.

(3)    That the defendant, Frederick Bell, intended the killing of Robert C. "Bert" Bell take place.

(4)    That the defendant, Frederick Bell, contemplated that lethal force would be employed during the commission of the crime of armed robbery.

Next, We, the Jury, unanimously find that the aggravating circumstances(s) of:

(1)    Whether defendant, Frederick Bell, was previously convicted of another capital offense or of a felony involving the use or threat of violence to the person.

(2)    Whether the capital murder of Robert C. "Bert"Bell was committed while the defendant was engaged or was an accomplice, in the commission of armed robbery.

(3)    The capital murder of Robert C. "Bert" Bell was committed for the purpose of avoiding or preventing a lawful arrest.

is/are sufficient to impose the death penalty and that there are insufficient mitigating circumstances to outweigh the aggravating circumstance(s), and we further find unanimously that the Defendant should suffer death.

SCP. 240.[2]

Bell was sentenced to death and March 10, 1993, was set as the date for execution of the

_____

[2]SCP will be used to indicate the State Court Papers, a part of the record before the Mississippi Supreme Court.

3

sentence. STr. 332,[3] SCP. 242-44. After denial of post-trial motions defendant timely

perfected his automatic direct appeal to the Mississippi Supreme Court.

On direct appeal Bell raised the following claims:

GUILT PHASE ISSUES

I. THE VOIR DIRE WAS INADEQUATE TO REVEAL JUROR PREJUDICE WITH THE RESULT THAT BELL WAS DENIED A FAIR AND IMPARTIAL TRIAL AND SENTENCING JURY

A. The jury had disproportionate ties to the victim or law enforcement.

B. Use of leading questions

C. Juror self-assessments

D. Lack of individual voir dire

II. THE TRIAL JUDGE ERRONEOUSLY DENIED BELL'S CHALLENGES FOR CAUSE TO FIVE JURORS.

III. THE TRIAL COURT COMMITTED PLAIN CONSTITUTIONAL ERROR IN EXCUSING WOMEN FROM THE JURY SOLELY BECAUSE THEY HAD SMALL CHILDREN.

IV. THE COURT ERRED IN GIVING INSTRUCTIONS NO. S-2 AND S3 WHICH ALLOWED BELL TO BE CONVICTED OF CAPITAL MURDER ON FACTS SHOWING ONLY THAT HE WAS AN ACCESSORY AFTER THE FACT.

V. BELL'S CONVICTION MUST BE REVERSED BECAUSE INSTRUCTION S-2 IMPROPERLY ASSUMES THAT A MURDER HAD BEEN COMMITTED.

VI. THE TRIAL COURT ERRED IN REFUSING DEFENDANT'S

[3]STr will be used to indicate the State Court transcript.

4

REQUESTED JURY INSTRUCTION DG-14 WHICH WOULD HAVE TOLD THE JURY TO CONSIDER THE EVIDENCE OF ROBERT JAMES WITH GREAT CARE AND CAUTION.

VII. THE TRIAL COURT ERRED IN REFUSING DEFENDANT'S REQUESTED JURY INSTRUCTIONS DG-12 AND DG-15 ON THE EFFECT OF IMPEACHED TESTIMONY AND DG-16 ON THE EFFECT OF A PRIOR INCONSISTENT STATEMENT.

VIII. THE COURT COMMITTED REVERSIBLE ERROR IN PROHIBITING BELL FROM IMPEACHING ACCOMPLICE FRANK COFFEY FOR BIAS WITH EVIDENCE THAT HE HAD RECEIVED LENIENT TREATMENT ON A MURDER CHARGE IN MEMPHIS.

IX. THE COURT ERRED IN ALLOWING EVIDENCE THAT THE PROSECUTOR TOLD COFFEY TO TELL THE TRUTH.

X. THE TRIAL COURT ERRED IN OVERRULING BELL'S OBJECTION TO EVIDENCE THAT HE WAS GUILTY OF ANOTHER OFFENSE.

XI. PROSECUTORIAL MISCONDUCT IN THE CLOSING ARGUMENT IN THE GUILT PHASE MANDATES REVERSAL.

A. Good character of the victim

B Threat to James

C. Lack of remorse

D. Personal opinion and facts not in evidence

XII. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN OVERRULING BELL'S MOTION FOR AN EXPERT.

XIII. THE COURT ERRED IN OVERRULING BELL'S OBJECTION TO EXPERT TESTIMONY ABOUT THE POSITION OF THE DECEASED'S HANDS AT THE TIME A WOUND WAS RECEIVED.

XIV. THE COURT ERRED IN DENYING BELL'S REQUEST TO

5

INSTRUCT ON THE LESSER INCLUDED OFFENSE OF SIMPLE MURDER.

XV. THE COURT COMMITTED PLAIN ERROR IN GIVING INSTRUCTION S-1 AT THE GUILT PHASE WHICH CONSTRUCTIVELY AMENDED THE INDICTMENT.

XVI. THE ADMISSION OF GRUESOME PHOTOGRAPHS OF THE DECEASED DEPRIVED BELL OF A FAIR TRIAL.

SENTENCING PHASE ISSUES

XVII. THE TRIAL COURT COMMITTED PLAIN ERROR IN GRANTING SENTENCING PHASE INSTRUCTION S-1.

A. No evidence to support aggravator that the offense was committed after Bell had previously been convicted of another capital offense.

B. Instructing that the aggravating circumstance that the capital murder was committed during the course of a robbery could be found if the jury found Bell was an "accomplice in the commission of armed robbery."

C. Allowing the jury to consider the aggravating circumstance of "avoiding or preventing a lawful arrest" where the evidence did not support giving that aggravator.

D. Failure to define "avoiding or preventing a lawful arrest" as an aggravating circumstance.

E. S-1 is erroneous because it has a signature line only under the death option.

F. The instruction also allows for double-counting of the robbery aggravating circumstance.

G. S-1 should not have been granted because it fails to require the jury to make specific written findings of mitigating circumstances.

H. S-1 was erroneously granted because it tells the jury that the mitigating circumstances must outweigh the aggravating circumstances

6

in order to impose a life sentence.

XVIII. BELL'S SENTENCE MUST BE REVERSED BECAUSE THE TRIAL JUDGE DENIED HIS REQUEST TO INSTRUCT THE JURY THAT THE STATE HAD THE BURDEN OF PROVING THAT THE AGGRAVATING CIRCUMSTANCES OUTWEIGHED THE MITIGATING.

XIX. THE JURY FINDINGS ON SENTENCE ARE TOO UNCERTAIN AND UNRELIABLE TO SUPPORT A DEATH SENTENCE.

XX. CUMULATIVE ERROR IN THE PROSECUTOR'S ARGUMENT IN THE SENTENCING PHASE REQUIRES REVERSAL.

XXI. THE TRIAL COURT COMMITTED REVERSIBLE ERROR AT THE SENTENCING PHASE IN ALLOWING TESTIMONY ABOUT BELL'S REPUTATION FOR PEACE AND VIOLENCE WHEN BELL HAD NOT PUT THAT REPUTATION AT ISSUE AND IN ALLOWING THE PROSECUTOR TO ARGUE THAT IT SHOULD BE USED AS AN AGGRAVATING CIRCUMSTANCE.

XXII. THE TRIAL COURT ERRED IN ADMITTING EVIDENCE OF THE DETAILS OF BELL'S PRIOR CONVICTION.

XXIII. THE COURT ERRED IN REFUSING BELL'S INSTRUCTIONS DS-6 AND DS-10 THAT TELL JURORS THEY NEED NOT BE UNANIMOUS IN FINDING MITIGATING CIRCUMSTANCES AND IN GIVING INSTRUCTIONS WHICH CREATED AN UNACCEPTABLE RISK THAT THE JURY BELIEVED ITS FINDINGS ON MITIGATION HAD TO BE UNANIMOUS.

XXIV. BELL'S SENTENCE MUST BE REVERSED BECAUSE THE JURY WAS INSTRUCTED THAT IT COULD CONSIDER NON-STATUTORY AGGRAVATING CIRCUMSTANCES.

XXV. THE TRIAL COURT'S ANTI-SYMPATHY INSTRUCTION COUPLED WITH THE DENIAL OF A MERCY INSTRUCTION VIOLATED BELL'S RIGHTS UNDER THE EIGHTH AND FOURTEEN AMENDMENTS TO THE UNITED STATES CONSTITUTION AND THE MISSISSIPPI CONSTITUTION.

XXVI. THE TRIAL COURT COMMITTED PLAIN ERROR IN NOT INSTRUCTING ON WHAT THE EFFECT OF BELL'S TENNESSEE SENTENCE WOULD BE IF THE JURY SENTENCED HIM TO LIFE.

XXVII. THE DEATH PENALTY IS DISPROPORTIONATE IN THIS CASE.

*Bell v. State*, 725 So.2d 836, 842-44, ¶ 8 (Miss. 1998)

On June 25, 1998, the Mississippi Supreme Court affirmed the conviction and death sentence imposed by the Circuit Court of Grenada County. A timely petition for rehearing was filed. On December 14, 1998, the Court modified the original opinion and on December 17, 1998 the Court denied the Motion for Rehearing. *Bell v. State*, 725 So.2d 836 (Miss. 1998).

Thereafter, Bell sought relief by filing a petition for writ of certiorari with the United States Supreme Court on March 10, 1999. In this petition Bell raised on question. That question was:

I.     WHETHER OR NOT THE CONSTITUTION REQUIRES THAT THE JURY BE CLEARLY TOLD IN CAPITAL CASES THAT UNANIMITY IS NOT REQUIRED WHEN DETERMINING MITIGATING CIRCUMSTANCES.

Petition for Writ of Certiorari at I.

On May 17, 1999, the United States Supreme Court denied the petition for writ of certiorari. A petition for rehearing was filed and later denied on August 2, 1999. *Bell v. Mississippi*, 526 U.S. 1122, 119 S.Ct. 1777, 143 L.Ed.2d 805, *reh. denied*, 527 U.S. 1054, 120 S.Ct. 16, 144 L.Ed.2d 820 (1999).

Bell then sought relief from the Mississippi Supreme Court by filing an application

8

for leave to file a motion for post-conviction relief in the lower court. This application

contained the following claims:

I.  The Cumulation of Error in this Case Renders the Conviction Unconstitutionally Unreliable.

II.  The Cumulation of Error in this Case Renders the Sentencing Verdict in this Case Unconstitutionally Unreliable.

III.  Frederick Bell Received Ineffective Assistance of Counsel at Culpability Penalty Phase of His Trial.

    A.  The Issue of Counsel's Ineffectiveness must Not Be Judged Incrementally but in Terms of its Overall Cumulative Impact on the Trial.

    B.  Counsel was Not Qualified to Litigate a Capital Case as Serious as This One.

    C.  Counsel Failed to Secure Adequate Funds for the Investigation of ths Case.

    D.  Counsel Failed to Secure Adequate Funds for the Experts Needed in the Case.

        1.  Counsel Failed to Secure the Funds Necessary for a Ballistics Expert.

        2.  Counsel Failed to Secure the Funds Necessary for a Mitigation Investigator.

    E.  Counsel Failed to Investigate Critical Aspects of the Defense.

        i.  The Defense Failed to Investigate and Prove that Someone Else Committed the Crime Charged.

        ii.  The Defense Failed to Investigate the Defense of Alibi Which was Available in the Case.

iii. The Defense Failed to Investigate and Find Witnesses Who Could Have Presented Important Evidence on Behalf of the Defense.

F.     Counsel Failed to Move for Questionnaires to be Sent to All Jurors Along with Jury Summons.

G.     Counsel Failed to Litigate Discrimination in the Jury Pools.

H.     Counsel Failed to Ensure Adequate Voir Dire Conditions, And Failed to Conduct a Thorough and Adequate Voir Dire.

i. Counsel Failed to Present Argument or Cause Supporting Individually Sequestered Voir Dire.

ii. Counsel Failed to Object to the Court Examining the Jury Panel With Leading Questions Suggesting to the Jurors the Proper Answers, the Court's failure to Conduct Meaningful Examinations of the Panel Members, and the Court's Reliance Upon the Members' Self-Assessment of their Ability to Give the Petitioner a Fair Trial.

iii. Trial Counsel Failed to Ask the Kind of Questions Necessary to Elicit Information from Prospective Jurors Sufficient for the Meaningful Exercise of Cause and Peremptory Challenges.

iv. Counsel Failed to "Rehabilitate" Jurors to Ensure that they were not Excluded for Cause Because of Their Views in Purported Opposition to the Death Penalty.

v. Counsel Failed to Conduct a Voir Dire Sufficient to Ensure the Removal for Cause of Various Jurors.

1. Counsel Failed to Ensure That Jurors were Excluded for Cause Even Though They were so Strongly in Favor of the Death Penalty that they were Excludable for Cause.

2. Counsel Failed to Ensure that Jurors were Excused for

10

Cause Where they were Biased Against the Accused.

I.      Counsel was Ineffective for Failing to Develop a Meaningful and Consistent Theme in the Presentation of the Defense.

J.      Counsel Failed Effectively to Impeach a Witness with the Motive the Witness hat to Lie Against His Client.

K.      Counsel was Ineffective for Essentially Stipulating to the Questionable Results of State "Expert" Evidence.

L.      Counsel Failed to Secure Independent Experts to Challenge the Evidence Against his Client.

M.      Counsel Failed to Object to the Introduction of Irrelevant Evidence.

N.      Counsel Failed to Ensure the Attendance of Witnesses Crucial to the Defense.

O.      Counsel was Ineffective in his Presentation of Closing Argument for the Defense at the First Phase of the Trial.

        i.      Counsel Presented a Thoroughly Inadequate Closing Argument on Behalf of his Client.

P.      Counsel Failed to Object to Instructions that Mis-Stated the Law.

Q.      The Trial Court Erred in Denying Petitioner's Challenges for Cause or Alternatively Trial Counsel was Ineffective for Failing to Request Additional Peremptory Challenges.

IV.     Frederick Bell Received Ineffective Assistance of Counsel at the Penalty Phase of his Trial.

A.      Counsel was Ineffective at the Sentencing Phase of the Trial Because he Failed to Secure the Time Necessary to Prepare his Case.

B.      Counsel was Ineffective at the Sentencing Phase of the Trial

11

Because he Failed to Present any Meaningful Opening Statement.

C.      Counsel was Ineffective at the Penalty Phase of the Trial for Failing to Deal With the Jurors' Speculation that the Client Might One Day be Released from Prison.

D.      Counsel was Ineffective at the Penalty Phase of the Trial for Failing to Exclude Aggravating Circumstances that were not Legally Applicable to this Case.

E.      Counsel was Ineffective at the Penalty Phase of the Trial for Failing to Conduct a Professional and Effective Investigation.

F.      Counsel was Ineffective at the Sentencing Phase of the Trial for Failing to Investigate and Present Significant Evidence in Mitigation.

      i.   Counsel Failed to Investigate and Present Mitigating Evidence Concerning the Client's Youth.

      ii.  Counsel Failed to Investigate and Present Mitigating Evidence Concerning the Client's Mental Retardation.

      iii. Counsel Failed to Investigate and Present Mitigating Evidence Concer4ning Emotional Disturbances or Mental Illness.

      iv.  Counsel Failed to Investigate and Present Mitigating Evidence Concerning the Abuse Suffered by the Client.

            a.   The Defendant Suffered a Very Disadvantaged Childhood.

            b.   The Defendant Suffered Terrible Abuse as a Child.

      v.   Counsel Failed to Investigate and Present Mitigating Evidence Concerning the Client's Adaptation to Prison Conditions.

      vi.  Counsel Failed to Investigate and Present Evidence Concerning Cultural Impacts on Frederick Bell's Life.

>    G.  Counsel Failed to Take Steps to Prevent the State from Violating
>    his Client's Rights in Closing Argument at the Penalty Phase of the
>    Trial.
>
>    R.[4]  Counsel was Ineffective in his Handling of the Instructions at the
>    Sentence Phase of the Trial.

Petition for Post-Conviction Collateral Relief Incorporating Memorandum of Law.

The State responded to the application for post-conviction relief in due course.  On May 20,

2004, the Mississippi Supreme Court issued an opinion denying post-conviction relief on all

grounds.  A motion for rehearing was filed and later denied on August 19, 2004.  *See Bell*

*v. State*,  879 So.2d 423 (Miss. 2004).

On November 18, 2004, petitioner filed a petition for writ of certiorari with the United

States Supreme Court attacking the post-conviction decision of the Mississippi Supreme

Court.  In this petition he has raised two questions for the Supreme Court's consideration.

The questions read:

>    I.    Trial counsel was ineffective in the guilt phase of the trial because of
>          his lack of Death Penalty Experience.
>
>    II.   Trial counsel was ineffective in the penalty phase of the trial because
>          of his lack of any effective investigation and preparation.

Petition at I.

This petition is presently pending before the United States Supreme Court.  The State's brief

is not due until December 20, 2004.  *See Bell v. Mississippi*, No. 04-7298.

------

[4]Petitioner's numbering jumps from "G" to "R" without explanation.

13

Petitioner has now filed the present petition for writ of habeas corpus with this Court seeking relief from his conviction and sentence of death.

## B.   STATEMENT OF FACTS

The Mississippi Supreme Court set forth the following factual scenario that outline the facts of this case.  The state court opinion reads:

¶ 3. Sparks' Stop-and-Go is a small grocery store on Cadaretta Road in rural Grenada County.  Until the afternoon of May 6, 1991, Bert Bell worked in the store as a clerk.  The State's presentation was to the effect that early that afternoon Frederick Bell, Anthony Joe Doss, Robert Kennedy James and Frank Coffey left Coffey's house for the short journey up to Sparks'.  Testimony showed that the four of them entered Sparks' and purchased some chips and beer from Bert Bell.  They went outside, sat on a picnic table, drank the beer and ate the chips.  Bell talked of going to Memphis and said that he needed some money.  As they talked, he announced he was going to rob the store and showed the group a .22 caliber pistol which he had in his possession.  Doss also had a gun at this point, but, apparently, it would not fire.  James and Coffey testified that they refused to take part in the action and departed the scene as Bell and Doss went in the store.  A minute or so later, James and Coffey heard gunshots and hollering.

¶ 4. When Bell and Doss caught up with the other two, they showed them a .38 caliber pistol which they had taken from the store along with a box of bullets and a money bag.  At this point, Bell threatened to kill James because he did not want any witnesses. Coffey and Doss stepped in to prevent this.  Both James and Coffey testified that Bell said he shot Bert.

¶ 5. After the incident Bell, Doss and Coffey were taken to Memphis by Bernard Gladney.  On the way to Memphis, Bell again said he wanted to kill James to prevent him from telling anyone about the Grenada murder. According to the criminal investigator in charge, two of the guns were recovered from the house where Bell was found in Memphis.  The third was found in Gladney's vehicle.

¶ 6. There was no direct testimony concerning what actually went on in the store, although there was physical evidence offered by the State.  The

14

foregoing narrative is based principally on the testimonies of James and Coffey. Bell maintained at trial and in statements to investigators that he was in Memphis on the day of Bert's murder. There were no corroborating witnesses as to Bell's alibi, and in fact James' sister and Coffey's girlfriend testified that they saw Bell with the rest of the men in Grenada on the day of the tragedy.

¶ 7. James Shelby Sparks, who owned the grocery, testified that the .38 caliber gun, which was recovered following Bell's arrest in Memphis, a box of shells, and an old money bag were taken from the store during the robbery. The State also showed by ballistic evidence that bullets removed from Bert's body were fired from that gun. The remaining wounds were caused by bullets of a smaller caliber matching the characteristics of a .22. The criminal investigators could not match any of the fingerprints found in the store to Bell.

725 So.2d at 841 -842.

The Respondent would submit that this a true and accurate statement of the facts as found in the transcript of this case and would adopt them as its statement of facts.

## C.    SCOPE OF REVIEW

Petitioner filed his petition for writ of habeas corpus with this Court on January 18, 2005. As stated above, because this petition was filed after April 24, 1996, the provisions of Antiterrorism and Effective Death Penalty Act (AEDPA) apply with full force to this petition. *See Neal v. Puckett*, 286 F.3d 230, 235 (5th Cir.2002) (citing *Lindh v. Murphy*, 521 U.S. 320, 324-26, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997) (noting that AEDPA applies to all federal habeas petitions filed on or after April 24, 1996); *Nobles v. Johnson*, 127 F.3d.. 409 (5th Cir. 1997); *Williams v. Cain*, 125 F.3d 269, 273-74 (5th Cir. 1997); *McBride v. Johnson*, 118 F.3d 432, 436 (5th Cir. 1997) ("Because this case comes within the parameters of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104-132,

15

110 Stat. 1214 (1996), we apply the standard of review embodied in the AEDPA. *See Drinkard v. Johnson*, 97 F.3d 751 (5th Cir.1996), *cert. denied*, 502 U.S. 1107, 117 S.Ct. 1114, 137 L.Ed.2d 315 (1997).").  *See also Lindh v. Murphy*, 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997).

The petition presents several grounds for relief many of which are barred from consideration by this Court on the basis of the imposition of an adequate and independent state law procedural bar.  *See Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *Coleman v. Thompson*, 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Ylst v. Nunnemaker*, 501 U.S. 797, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991); *Engle v. Isaac*, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982).  The fact that the Mississippi Supreme Court also alternatively addressed the merits of these claims does not vitiate the imposition of the procedural bar.  *See Harris v. Reed*, 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989).

The claims raised in Ground I, A, (1), (2), (5), & (6), and Ground I, B, (5)have never been presented to the Mississippi Supreme Court for resolution and therefore not exhausted. However, they are now technically exhausted and procedurally barred from consideration by this Court.

Furthermore, the resolution of the merits of the claims by the state court do not represent decisions that are contrary to or an unreasonable application of clearly established federal precedent as announced by the United States Supreme Court.  Therefore, under the

16

standards of review found in the AEDPA, habeas relief cannot be granted with respect to these claims.

The most sweeping change provided in the AEDPA is found in Section 104(3) codified in 28 U.S.C. § 2254(d). This subsection provides as follows:

(d)     An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State Court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

The Fifth Circuit recently addressed this standard of review and explained its application in *Summers v. Dretke*, 431 F.3d 861 (5th Cir. 2005). There the Fifth Circuit held:

## II. STANDARD OF REVIEW

Summers filed his petition for a writ of habeas corpus after the effective date of the Antiterrorism and Effective Death Penalty Act ("AEDPA"). As a result, the petition is subject to the procedures and standards imposed by AEDPA. *See Lindh v. Murphy*, 521 U.S. 320, 336, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997).

### A. Appeal from a Denial of a Habeas Corpus Petition

"In a habeas corpus appeal, we review the district court's findings of fact for clear error and review its conclusions of law de novo, applying the same standard of review to the state court's decision as the district court." *Martinez v. Johnson*, 255 F.3d 229, 237 (5th Cir.2001) (quoting *Thompson v. Cain*, 161 F.3d 802, 805 (5th Cir.1998)). "A federal court's collateral review

17

of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003). As a result, whether at the district court or the circuit court, a federal court's review of a claim adjudicated in a state court is deferential:

> Under § 2254(d), a federal court cannot grant habeas corpus relief with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of that claim either (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

*Hughes v. Dretke*, 412 F.3d 582, 588-89 (5th Cir.2005) (citing 28 U.S.C. § 2254(d)). Moreover, this court has held that "a federal habeas court is authorized by Section 2254(d) to review only a state court's 'decision,' and not the written opinion explaining that decision." *Pondexter v. Dretke*, 346 F.3d 142, 148 (5th Cir.2003) (quoting *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir.2002) (en banc)). *See also Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir.2001) ("The statute compels federal courts to review for reasonableness the state court's ultimate decision, not every jot of its reasoning.").

## *(1) Findings of Fact*

A state court's factual findings are "presumed to be correct." *Hughes*, 412 F.3d at 589 (citing 28 U.S.C. § 2254(e)(1)). Before a federal court, "a petitioner has the burden of rebutting this presumption with clear and convincing evidence." *Id.* (citing 28 U.S.C. § 2254(e)(1)).

## *(2) Conclusions of Law*

Under AEDPA, a federal court's assessment of a state court's conclusions of law is similarly deferential. The Supreme Court has determined that section 2254(d)(1) affords a petitioner two avenues, "contrary to" and "unreasonable application," to attack a state court application of law. *See Williams v. Taylor*, 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (noting the clauses have "independent meaning"). Under the first clause:

> a state court decision is "contrary to . . . clearly established Federal law, as determined by the Supreme Court" if: (1) "the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases," or (2) "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent."

*Foster v. Johnson*, 293 F.3d 766, 776 (5th Cir.2002) (quoting *Williams*, 529 U.S. at 405-06, 120 S.Ct. 1495).

> Under the second clause, "a state court decision is 'an unreasonable application of clearly established' Supreme Court precedent if the state court 'correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case.'" *Id*. (quoting *Williams*, 529 U.S. at 407-08, 120 S.Ct. 1495). The Supreme Court provided further guidance:

>> First, the Court indicated that the inquiry into unreasonableness is an objective one. Second, the Court emphasized that "unreasonable" does not mean merely "incorrect": an application of clearly established Supreme Court precedent must be incorrect and unreasonable to warrant federal habeas relief.

> *Id*. (citing *Williams*, 529 U.S. at 409-12, 120 S.Ct. 1495) (internal citations omitted). *See also Morrow v. Dretke*, 367 F.3d 309, 313 (5th Cir.2004) ("[F]ederal habeas relief is only merited where the state court decision is both incorrect and objectively unreasonable."). Only if a state court's application of federal constitutional law fits within this paradigm may this court grant relief.

> 431 F.3d at 868-69.

Thus, Bell's claims involving mixed questions of law and fact are governed by the dictates of § 2254(d), which holds that a federal court cannot grant habeas corpus relief unless it determines that the state court's decision involved an unreasonable application of the law to the facts. *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Moore*

19

*v. Johnson*, 101 F.3d 1069, 1075-76 (5ᵗʰ Cir. 1996) (*citing Drinkard v. Johnson*, 97 F.3d 751,

767-68 (5ᵗʰ Cir. 1996)).[5]

This "unreasonable application" standard of review of state court decisions does not

mean that a federal court may grant habeas relief based on a simple disagreement with the

state court decision; such a standard would amount to nothing more than a *de novo* review.

*Drinkard*, 97 F.3d at 768.  Instead, a federal habeas court can grant habeas relief only if the

state court decision was unreasonable.  In *Williams v. Taylor, supra*, the Supreme Court held:

> Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas
> court may not issue the writ simply because that court concludes in its
> independent judgment that the relevant state-court decision applied clearly
> established federal law erroneously or incorrectly.  Rather, that application
> must also be unreasonable.

529 U.S. at 411.

The Court further stated in *Williams*:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal
> habeas court to grant a state prisoner's application for a writ of habeas corpus
> with respect to claims adjudicated on the merits in state court.  Under §
> 2254(d)(1), the writ may issue only if one of the following two conditions is
> satisfied – the state-court adjudication resulted in a decision that (1) "was
> contrary to . . . clearly established Federal law, as determined by the Supreme
> Court of the United States," or (2) "involved an unreasonable application of
> . . . clearly established Federal law, as determined by the Supreme Court of the
> United States." Under the "contrary to" clause, a federal habeas court may
> grant the writ if the state court arrives at a conclusion opposite to that reached
> by this Court on a question of law or if the state court decides a case
> differently than this Court has on a set of materially indistinguishable facts.

---

[5]While *Moore* and *Drinkard* incorrectly applied the AEDPA retroactively to habeas corpus petitions pending prior its enactment, the manner in which the AEDPA will be applied in a proper case is controlling on this case.  *McBride v. Johnson*, 118 F.3d 432, 436 (5th Cir. 1997).

20

Under the "unreasonable application" clause, a federal habeas court may grant
the writ if the state court identifies the correct governing legal principle from
this Court's decisions but unreasonably applies that principle to the facts of the
prisoner's case.

529 U.S. at 412-413.

"In effect, a reasonable, good faith application of Supreme Court precedent will immunize

the state court conviction from federal habeas reversal." *Mata v. Johnson*, 99 F.3d 1261,

1268 (5th Cir. 1996), *vacated in part on other grounds*, 105 F.3d 209 (5th Cir. 1997).

Bell has failed to demonstrate how, and respondents assert he cannot show, the

resolution of the claims raised on direct appeal or state post-conviction review "resulted in

a decision that was contrary to, or involved an unreasonable application of, clearly

established Federal law, as determined by the Supreme Court of the United States," at the

time of the direct appeal and post-conviction review litigation. Further, any claims of

ineffective assistance of counsel, being questions of mixed law and fact, do not present

decisions that were based on an unreasonable determination of the facts in light of the

evidence presented in the State Court proceeding. Bell has not stated a claim on which relief

can be granted.

The long standing requirement of deference to factual findings made by state courts

remains intact in the amendments to § 2254. Section 2254(e) reads:

(e)(1) In a proceeding instituted by an application for a writ of habeas
corpus by a person in custody pursuant to the judgment of a State court, a
determination of a factual issue made by a State court shall be presumed to be
correct. The applicant shall have the burden of rebutting the presumption of
correctness by clear and convincing evidence.

21

This burden of proof is a high burden, more than a preponderance of the evidence burden.

Bell cannot meet this burden to overcome the findings of fact made by the State courts by

clear and convincing evidence. *See Patterson v. Dretke*, 370 F.3d 480, 484 (5th Cir. 2004);

*Morrow v. Dretke*, 367 F.3d 309, 315 (5th Cir. 2004).

In cases governed by the AEDPA, 28 U.S.C. § 2254, the analysis differs depending

upon whether the issue is one of law, fact, or both. *See Williams v. Taylor supra*; *Drinkard*

*v. Johnson*, 97 F.3d 751, 767-68 (5th Cir.1996). The Fifth Circuit recently held in *Brewer v.*

*Dretke*, 410 F.3d 773 (5th Cir. June 2, 2005):

> The Antiterrorism and Effective Death Penalty Act of 1996, at 28
> U.S.C. § 2254(d), sets forth the conditions under which a court shall grant a
> petition for a writ of habeas corpus:

>> An application for a writ of habeas corpus on behalf of a person in
>> custody pursuant to the judgment of a State court shall not be granted
>> with respect to any claim that was adjudicated on the merits in State
>> court proceedings unless the adjudication of the claim

>>> (1) resulted in a decision that was contrary to, or involved an
>>> unreasonable application of, clearly established Federal law, as
>>> determined by the Supreme Court of the United States; or

>>> (2) resulted in a decision that was based on an unreasonable
>>> determination of the facts in light of the evidence presented in
>>> the State court proceeding.

> Section 2254(d)(1) addresses pure questions of law and mixed
> questions of law and fact. *See Martin v. Cain*, 246 F.3d 471, 475 (5th
> Cir.2001). Under the first ("contrary to") clause, a federal district court may
> grant habeas relief if the state court decided a case differently from how the
> United States Supreme Court decided a case on a set of materially
> indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412-13, 120 S.Ct.
> 1495, 146 L.Ed.2d 389 (2000). Under the second ("unreasonable application")

22

clause, a court may grant habeas relief if the state court correctly divined a legal principle from the Supreme Court's jurisprudence but misapplied that principle to the facts. *See id*.

Section 2254(d)(2) addresses pure questions of fact. *See Moore v. Johnson*, 225 F.3d 495, 501, 504 (5th Cir.2000). Under this subsection, federal courts must give deference to state court findings of fact unless they are based on an unreasonable interpretation of the evidence presented in the state court proceeding.[3]

_____

3. *See Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir.2000) (as modified on denial of rehearing). Factual determinations made by the state court are presumptively correct and will not be disturbed unless the petitioner rebuts the presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

410 F.3d at 775.

Consequently, for questions of fact, habeas relief may be granted only if the Court finds that the state court made a determination of fact which was unreasonable in light of the evidence presented to the state courts. *See* 28 U.S.C. § 2254(d)(2); *Williams v. Taylor, supra*, *Drinkard*, 97 F.3d at 767-68. When reviewing such factual determinations, the Court must presume correct the factual findings of the state court, unless the petitioner *"rebut[s] the presumption of correctness by clear and convincing evidence*." [Emphasis added.] *See* 28 U.S.C. § 2254(e)(1); *Jackson v. Anderson*, 112 F.3d 823, 824-25 (5th Cir.1997).

When considering questions of law, on the other hand, this Court may grant habeas relief only if the state court's determination of law is contrary to "clearly established" Supreme Court precedent. *See* 28 U.S.C. § 2254(d)(1); *Williams v. Taylor, supra*; *Drinkard*, 97 F.3d at 768. The Fifth Circuit, in *Jones v. Dretke*, 375 F.3d 352 (5th Cir. 2004), explained this requirement, stating:

23

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim – (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; . . . . 28 U.S.C. § 2254(d) (emphasis added). The Supreme Court, interpreting § 2254(d)(1), held that "a state-court decision is . . . contrary to this Court's precedent if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours." *Williams v. Taylor*, 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). In order to find that a state adjudication is objectively unreasonable, "the state court's application [of federal law] must be more than merely incorrect." *Robertson v. Cockrell*, 325 F.3d 243, 248 (5th Cir.2003) (*en banc*)

375 F.3d at 353-54.

Therefore, the state court resolution of a claim must "not only be erroneous, but objectively unreasonable" in order for habeas relief to be granted. *Yarborough v. Alvarado*, 541 U.S.652, 124 S.Ct. 2140, 2150 (2004); *Middleton v. McNeil*, 541 U.S. 433, 124 S.Ct. 1830, 1832 (2004); *Mitchell v. Esparza*, 540 U.S.12, 124 S.Ct. 7, 12 (2003); *Yarborough v. Gentry*, 540 U.S. 1, 5, 124 S.Ct. 1, 4, 157 L.Ed.2d 1 (2003); *Lockyer v. Andrade*, 538 U.S. 63, 76, 123 S.Ct. 1166, 1175 (2003); *Williams v. Taylor*, 529 U.S. 362, 409, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Recently, in *Holland v. Jackson*, 542 U.S. 934, 124 S.Ct. 2736, 159 L.Ed.2d 683. (2004), the United States Supreme Court gave the federal habeas courts the following admonition:

As we explained in *Visciotti*, § 2254(d) requires that "state-court decisions be given the benefit of the doubt." *Id*., at 24, 123 S.Ct. 357. "[R]eadiness to attribute error is inconsistent with the presumption that state courts know and follow the law." *Ibid*. The Sixth Circuit ignored those prescriptions.

24

124 S.Ct. at 2739.

*See Woodford v. Visciotti*, 537 U.S. 19, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002).

Looking to claims which are mixed questions of law and fact, the Fifth Circuit held

in *Patterson v. Dretke*, 370 F.3d 480 (5th Cir. 2004):

"Section 2254(d)(1) provides the standard of review for questions of law and
mixed questions of law and fact." *Caldwell v. Johnson*, 226 F.3d 367, 372 (5th
Cir.2000). A state court's decision is "contrary to . . . clearly established
Federal law, as determined by the Supreme Court of the United States . . . if
the state court arrives at a conclusion opposite to that reached by th[e] Court
on a question of law or if the state court decides a case differently than th[e]
Court has on a set of materially indistinguishable facts." *Williams v. Taylor*,
529 U.S. 362, 412- 13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A decision
"involve[s] an unreasonable application of [ ] clearly established Federal law,
as determined by the Supreme Court of the United States . . . if the state court
identifies the correct governing legal principle from th[e] Court's decisions but
unreasonably applies that principle to the facts of the prisoner's case." *Id*. at
413, 120 S.Ct. 1495.

370 F.3d at 483-84.

*See Williams v. Taylor*, 529 U.S. 362, 412-13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000);

*Haley v. Cockrell*, 306 F.3d 257, 263 (5th Cir. 2002); *Carter v. Johnson*, 110 F.3d 1098,

1106-08 (5th Cir.) ("With a mixed question of law and fact, the facts are presumed correct

and then the law is reviewed for reasonableness, not de novo."). These are the standards that

must be applied by this Court in determining the claims made in this case.

Habeas relief generally may not be premised on rules of constitutional law that have

yet to be announced or that were announced after the challenged conviction became final on

direct review. *See Teague v. Lane*, 489 U.S. 288, 305-07, 109 S.Ct. 1060, 1073, 103 L.Ed.2d

334 (1989). *See also Schriro v. Summerlin*, 542 U.S. 348, 124 S.Ct. 2519, 159 L.Ed.2d 442

(2004); *Beard v. Banks*, 542 U.S. 406, 124 S.Ct. 2504, 159 L.Ed.2d 494 (2004);*Hughes v.*

*Dretke*, 412 F.3d 582, 590-91 (5th Cir. 2005); *Cardenas v. Dretke*, 405 F.3d 244, 249 (5th Cir.

2005). In explaining what rules are to be retroactively applied the United States Supreme

Court, held in *Tyler v. Cain*, 533 U.S. 656, 121 S.Ct. 2478, 150 L.Ed.2d 632 (2001):

> The Supreme Court does not "ma[k]e" a rule retroactive when it merely
> establishes principles of retroactivity and leaves the application of those
> principles to lower courts. In such an event, any legal conclusion that is
> derived from the principles is developed by the lower court (or perhaps by a
> combination of courts), not by the Supreme Court.[4] *We thus conclude that a*
> *new rule is not "made retroactive to cases on collateral review" unless the*
> *Supreme Court holds it to be retroactive.*[5]
>
> _____
>
> 4. Similarly, the Supreme Court does not make a rule retroactive through
> dictum, which is not binding. *Cf. Seminole Tribe of Fla. v. Florida*, 517 U.S.
> 44, 67, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) (contrasting dictum with
> holdings, which include the final disposition of a case as well as the preceding
> determinations "*necessary* to that result" (emphasis added)).
>
> 5. Tyler argues that defining "made" to mean "held" would create an anomaly:
> When it is obvious that a rule should be retroactive, the courts of appeals will
> not be in conflict, and this Court will never decide to hear the case and will
> never make the rule retroactive. Thus, Tyler concludes, we should construe §
> 2244(b)(2)(A) to allow for retroactive application whenever the "principles"
> of our decisions, as interpreted by the courts of appeals, indicate that
> retroactivity is appropriate. This argument is flawed, however. First, even if
> we disagreed with the legislative decision to establish stringent procedural
> requirements for retroactive application of new rules, we do not have license
> to question the decision on policy grounds. *See Connecticut Nat. Bank v.*
> *Germain*, 503 U.S. 249, 253-254, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992).
> Second, the "anomalous" result that Tyler predicts is speculative at best,
> because AEDPA does not limit our discretion to grant certiorari to cases in
> which the courts of appeals have reached divergent results.
>
> 533 U.S. at 663, 121 S.Ct. at 2482. [Emphasis added.]

Based on this precedent, no new rule can be retroactively applied unless the Supreme Court has specifically held it to have retroactive application. *See In re Elwood*, 408 F.3d 211, 212-13 (5th Cir. 2005); *Cockerham v. Dretke*, 283 F.3d 657, 660-61 (5th Cir. 2002); *Burdine v. Johonson*, 262 F.3d 336, 390, n.32 (5th Cir. 2001). Further, this Court cannot create a new rule and apply it to this case. *Id.*

Further, even if the Court finds error in some aspect of the case, before the Court can grant habeas relief, the Court must also conduct a harmless error analysis under the dictates of *Brecht v. Abrahamson*, 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993). *See Fry v. Pliler*, ___ U.S. ___, ___ S.Ct. ___, 2007 WL 16611463 (June 11, 2007) (*Brecht* standard applies even if state court did not apply *Chapman* harmless error on direct review or did not apply harmless error review at all.); *Kittelson v. Dretke*, 426 F.3d 306, 320-21 (5th Cir. 2005); *Nixon v. Epps*, 405 F.3d 318, 328-332 (5th Cir. 2005), *cert. denied*, ___ U.S. ___, 126 S.Ct. 650, 163 L.Ed.2d 528, *reh. denied*, ___ U.S. ___, 126 S.Ct. 843 (2005); *Billiot v. Puckett*, 135 F.3d 311 (5th Cir. 1998), *cert. denied*, 525 U.S. 966, 119 S.Ct. 413, 142 L.Ed.2d 336 (1998). Any constitutional error found, must be subjected to an analysis to determine whether the "error had a substantial and injurious effect or influence in determining the jury's verdict." 507 U.S. at 637.

Basically, in order for habeas relief to be granted to petitioner, this Court must find that the State court resolution of the claims raised were contrary to or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme

Court. *Williams v. Taylor*, 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000);

*Jones v. Dretke*, 375 F.3d 352, 354 (5th Cir. 2004).

Respondents would further point out that petitioner is not entitled to an evidentiary

hearing on any of the claims presented in this petition. The AEDPA provides:

> (2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that –
>
> (A) the claim relies on –
>
> > (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> >
> > (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense.

Therefore, any factual basis of Bell's claims not developed in the State court proceedings do

not fall into either of the exceptions noted by §2254. Bell does not present to this Court

anything new for determination. He contends that this Court should conduct an evidentiary

hearing at which evidence may be offered concerning the factual allegations raised in the

petition. Such a hearing would be contrary to the dictates of the AEDPA. Petitioner is not

entitled to an evidentiary hearing to further develop facts not developed at trial, on direct

appeal or state post-conviction review.

In addition, several of the substantive claims Bell presents here were held to be

procedurally barred from consideration on direct appeal or state post-conviction review.

Therefore, this Court is similarly barred from consideration of these claims as they rest on

the adequate and independent state law ground of procedural bar or waiver unless petitioner

can show cause and actual prejudice. *See Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497,

53 L.Ed.2d 594 (1977); *Coleman v. Thompson*, 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d

640 (1991); *Ylst v. Nunnemaker*, 501 U.S. 797, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991);

*Engle v. Isaac*, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982). Petitioner has failed

to demonstrate cause and actual prejudice to overcome these bars. Further, in those instances

where the state court has imposed a procedural bar and then gone on to address the merits

of the claim, the procedural bar must be recognized by this Court as a bar to consideration

of the merits of that claim. *See Harris v. Reed*, 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d

308 (1989).

In *Gray v. Netherland*, 518 U.S. 152, 116 S.Ct. 2074, 135 L.Ed.2d 457 (1996), the

United States Supreme Court held:

> . . . Title 28 U.S.C. § 2254(b) bars the granting of habeas corpus relief "unless
> it appears that the applicant has exhausted the remedies available in the courts
> of the State." Because "[t]his requirement . . . refers only to remedies still
> available at the time of the federal petition," *Engle v. Isaac,* 456 U.S. 107, 125,
> n. 28, 102 S.Ct. 1558, 1570, n. 28, 71 L.Ed.2d 783 (1982), it is satisfied "if it
> is clear that [the habeas petitioner's] claims are now procedurally barred under
> [state] law," *Castille v. Peoples,* 489 U.S. 346, 351, 109 S.Ct. 1056, 1060, 103
> L.Ed.2d 380 (1989). However, the procedural bar that gives rise to exhaustion
> provides an independent and adequate state-law ground for the conviction and
> sentence, and thus prevents federal habeas corpus review of the defaulted
> claim, unless the petitioner can demonstrate cause and prejudice for the
> default. *Teague v. Lane, supra,* at 298, 109 S.Ct., at 1068-1069; *Isaac, supra,*

29

at 125, n. 28, 129, 102 S.Ct., at 1570, n. 28, 1572; *Wainwright v. Sykes,* 433 U.S. 72, 90-91, 97 S.Ct. 2497, 2508-2509, 53 L.Ed.2d 594 (1977).

518 U.S. at 161-162.

Earlier in *Teague v. Lane*, 489 U.S. 288 (1989), the Court held:

> . . . "It is well established that 'where an appeal was taken from a conviction, the judgment of the reviewing court is *res judicata* as to all issues actually raised, and those that could have been presented but were not are deemed waived.'" *People v. Gaines,* 105 Ill.2d 79, 87-88, 85 Ill.Dec. 269, 274, 473 N.E.2d 868, 873 (1984) (citation omitted), cert. denied, 471 U.S. 1131, 105 S.Ct. 2666, 86 L.Ed.2d 282 (1985). The default prevents petitioner from raising the *Swain* claim in collateral proceedings under the Illinois Post-Conviction Act, Ill.Rev.Stat., ch. 38, ¶ 122-1 *et seq.* (1987), unless fundamental fairness requires that the default be overlooked. *People v. Brown,* 52 Ill.2d 227, 230, 287 N.E.2d 663, 665 (1972).
>
> The fundamental fairness exception is a narrow one, and has been applied in limited circumstances. Compare *People v. Goerger,* 52 Ill.2d 403, 406, 288 N.E.2d 416, 418 (1972) (improper instruction on reasonable doubt "does not constitute such fundamental unfairness as to obviate the *res judicata* and waiver doctrines"), with *People v. Ikerd,* 47 Ill.2d 211, 212, 265 N.E.2d 120, 121 (1970) (fundamental fairness exception applies "where the right relied on has been recognized for the first time after the direct appeal"), and *People v. Hamby,* 32 Ill.2d 291, 294-295, 205 N.E.2d 456, 458 (1965) (fundamental fairness exception applies to claims that defendant asked counsel to raise on direct appeal). It is clear that collateral relief would be unavailable to petitioner. *See People v. Beamon,* 31 Ill.App.3d 145, 145-146, 333 N.E.2d 575, 575-576 (1975) (abstract of decision) (not invoking fundamental fairness exception and holding that *Swain* claim not raised on direct appeal could not be raised for the first time in collateral proceedings). As a result, petitioner has exhausted his state remedies under 28 U.S.C. § 2254(b) with respect to the *Swain* claim. See *Engle v. Isaac,* 456 U.S. 107, 125-126, n. 28, 102 S.Ct. 1558, 15701571, n. 28, 71 L.Ed.2d 783 (1982); *United States ex rel. Williams v. Brantley,* 502 F.2d 1383, 1385-1386 (CA7 1974).
>
> Under *Wainwright v. Sykes,* 433 U.S. 72, 87-91, 97 S.Ct. 2497, 2506-2509, 53 L.Ed.2d 594 (1977), petitioner is barred from raising the *Swain* claim in a federal habeas corpus proceeding unless he can show cause for the default

and prejudice resulting therefrom. See *Engle v. Isaac, supra,* 456 U.S., at 113-114, 117, 124-135, 102 S.Ct., at 1564-1565, 1566, 1570-1576 (applying procedural default rule to claim that had never been raised in state court). Petitioner does not attempt to show cause for his default. Instead, he argues that the claim is not barred because it was addressed by the Illinois Appellate Court. Cf. *Caldwell v. Mississippi*, 472 U.S. 320, 327- 328, 105 S.Ct. 2633, 2638-2639, 86 L.Ed.2d 231 (1985). We cannot agree with petitioner's argument. The Illinois Appellate Court rejected petitioner's Sixth Amendment fair cross section claim *without* mentioning the Equal Protection Clause on which *Swain* was based or discussing whether *Swain* allows a prosecutor to be questioned about his use of peremptory challenges once he volunteers an explanation. See *People v. Teague,* 108 Ill.App.3d, at 895-896, 64 Ill.Dec., at 405, 439 N.E.2d, at 1070. Accordingly, we hold that petitioner' *Swain* claim is procedurally barred, and do not address its merits.

Our application of the procedural default rule here is consistent with *Harris v. Reed,* 489 U.S. 255, 263, 109 S.Ct. 1038, 1043, 103 L.Ed.2d 308 (1989), which holds that a "procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar" (citations and internal quotations omitted). The rule announced in *Harris v. Reed* assumes that a state court has had the opportunity to address a claim that is later raised in a federal habeas proceeding. It is simply inapplicable in a case such as this one, where the claim was never presented to the state courts. *See id.,* at 268- 270, 109 S.Ct., at 1046-1047 (O'CONNOR, J., concurring).

489 U.S. at 297-299.

Respondents would submit that any claim that has not been fairly presented to the state courts is unexhausted. As respondent pointed out above the following claims have never been presented to the Mississippi Supreme Court for resolution: Ground I, A, (1), (2), (5), & (6), and Ground I, B, (5). Under the provisions of § 99-39-5 (2)[6] and § 99-39-27 (9)[7], petitioner

---

[6]One year statute of limitations bar.

[7]Successive petition bar.

cannot now exhaust these claims as they would be procedurally barred from consideration by the state court. Therefore, this Court must hold any such claims to be procedurally barred from consideration on federal habeas review.

Finally, it appears that all of claims petitioner is raising before this Court, except Ground I, A, (1), (2), (5), & (6), and Ground I, B, (5) have been presented to the state courts in some fashion. The respondent would submit that the resolution of those claims by the Mississippi Supreme Court are not contrary to or an unreasonable application of established precedent as announced by the United States Supreme Court, nor do they represent an unreasonable application of the established precedent to the facts of this case. Bell is entitled to no habeas relief.

## THE CLAIMS

**GROUND I:**       **CLAIMS OF INEFFECTIVE ASSISTANCE OF COUNSEL DURING PETITIONER'S CAPITAL MURDER TRIAL.**

Prior to addressing the various claims of ineffective assistance of counsel in this case the Mississippi Supreme Court set forth the standard under which claims of ineffective assistance of counsel are considered. The Mississippi Supreme Court held:

> ¶ 8. To establish a claim for ineffective assistance of counsel the petitioner must prove that under the totality of circumstances (1) the counsel's performance was deficient and (2) the deficient performance deprived the defendant of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Benson v. State*, 821 So.2d 823, 825 ¶ 5 (Miss.2002); *Burns v. State*, 813 So.2d 668, 673 ¶ 14 (Miss.2001). "The benchmark for judging any claim of ineffectiveness [of counsel] must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just

result." *Burns v. State*, 813 So.2d at 673 ¶ 14 (quoting *Strickland*, 466 U.S. at 686, 104 S.Ct. at 2063).

¶ 9. With regard to the showing of deficient performance, the inquiry focuses on whether counsel's performance fell below an objective standard of reasonableness. *Williams v. Taylor*, 529 U.S. 362, 391, 120 S.Ct. 1495, 1511, 146 L.Ed.2d 389 (2000); *Strickland*, 466 U.S. at 688, 104 S.Ct. at 2064. That is, consider whether the assistance was reasonable under all the circumstances seen from counsel's perspective at the time, and the prevailing professional norms for attorneys. *Strickland*, 466 U.S. at 688, 104 S.Ct. at 2065; *Burns*, 813 So.2d at 673 ¶ 14; *Neal v. State*, 525 So.2d 1279, 1281 (Miss.1988). Defense counsel is presumed competent, and because of the distorting effects of hindsight, there is a strong presumption that counsel's conduct is within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065; *Burns*, 813 So.2d at 673 ¶ 14.

¶ 10. Regarding the deprivation of a fair trial, the petitioner must show how counsel's errors prejudiced the defense. *Strickland*, 466 U.S. at 693, 104 S.Ct. at 2067; *Burns*, 813 So.2d at 673-74 ¶ 14. The petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Strickland*, 466 U.S. at 691-94, 104 S.Ct. at 2066-68; *Burns*, 813 So.2d at 673-74. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068.

¶ 11. If the petitioner is challenging the conviction, the question is whether there is a reasonable probability that, absent the errors, the fact finder would have had a reasonable doubt respecting guilt. *Id*. If the petitioner is challenging the sentence, the question is whether there is a reasonable probability that, absent the errors, the sentencer-including an appellate court to the extent it independently reweighs the evidence-would have concluded that the balance of aggravating and mitigating circumstances did not warrant death. *Id*.

¶ 12. In the instant case, we must consider whether the petition, affidavits, and trial record render it sufficiently likely that Bell received ineffective assistance of counsel so that an evidentiary hearing should be held. *Neal*, 525 So.2d at 1281. The application must pass both prongs. *Id*. Bell was represented by attorney Leland H. Jones, III, at the trial and on direct appeal. The trial court acknowledged that Jones is "one of the better attorneys, and one

33

who is well known for his common sense understanding and application of the law . . ." Jones has represented numerous persons charged with criminal offenses at both the trial and appellate court levels, including several capital offense cases.

879 So.2d at 430-31.

There can be no question that the Mississippi Supreme Court identified the correct legal precedent to apply to the claims raised. There are two question for this Court in deciding the claims of ineffective assistance of counsel. First, was a federal constitutional claim "fairly presented" to the Mississippi Supreme Court for resolution, and second if the federal constitutional claim was presented was the resolution of that claim contrary to or an unreasonable application of the precedent set forth in *Strickland v. Washington, supra*. Respondents would assert that several of the claims of ineffective assistance of counsel presented here was either never presented to the state courts or were not presented in the context of the federal constitution. Those claims that were presented did not result in an adjudication that resulted in a decision that was contrary to or an unreasonable application of *Strickland, supra.*

**A. Claims of ineffective assistance of counsel during the guilt phase of trial.**

**1. Counsel's qualifications to represent a defendant in a death penalty case.**

Petitioner's basis contention here is that trial counsel was not qualified to represent petitioner under the ABA Guidelines and the ABA Standards for Criminal Justice. He contends that these guidelines have been "routinely adopted as the 'prevailing norms of

34

practice' to determine whether counsel's performance met the minimum standard of care in a death penalty case." In support of this claim he cites to *Strickland*, 466 at 688; *Williams v. Taylor*, 529 U.S. 362 396 (2000); *Wiggins v. Smith*, 539 U.S. 510, 524 (2003); and *Rompilla v. Beard*, 545 U.S. 374, 387 (2005). Where petitioner's assertion fails is that the United States Supreme Court's holdings are not as clear as petitioner contends. In *Strickland*, the Court held:

> . . . Prevailing norms of practice as reflected in American Bar Association standards and the like, *e.g.*, ABA Standards for Criminal Justice 4-1.1 to 4-8.6 (2d ed. 1980) ("The Defense Function"), *are guides to determining what is reasonable, but they are only guides. No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant. Any such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions. See United States v. Decoster*, 199 U.S.App.D.C., at 371, 624 F.2d, at 208. *Indeed, the existence of detailed guidelines for representation could distract counsel from the overriding mission of vigorous advocacy of the defendant's cause. Moreover, the purpose of the effective assistance guarantee of the Sixth Amendment is not to improve the quality of legal representation, although that is a goal of considerable importance to the legal system. The purpose is simply to ensure that criminal defendants receive a fair trial.*

> 466 U.S. at 688-89. [Emphasis added.]

In *Williams v. Taylor*, the Court held:

> Whether or not those omissions were sufficiently prejudicial to have affected the outcome of sentencing, they clearly demonstrate that trial counsel did not fulfill their obligation to conduct a thorough investigation of the defendant's background. *See* 1 ABA Standards for Criminal Justice 4-4.1, commentary, p. 4-55 (2d ed.1980).

> 529 U.S. at 396.

While a reading of this passage from *Williams* might cause one to think that the United States Supreme Court had changed course and adopted the ABA Standards, the Court corrected this impression in *Wiggins v. Smith* when it held:

> Our opinion in *Williams v. Taylor* is illustrative of the proper application of these standards. In finding Williams' ineffectiveness claim meritorious, we applied *Strickland* and concluded that counsel's failure to uncover and present voluminous mitigating evidence at sentencing could not be justified as a tactical decision to focus on Williams' voluntary confessions, because counsel had not "fulfill[ed] their obligation to conduct a thorough investigation of the defendant's background." 529 U.S., at 396, 120 S.Ct. 1495 (citing 1 ABA Standards for Criminal Justice 4-4.1, commentary, p. 4-55 (2d ed.1980)). While *Williams* had not yet been decided at the time the Maryland Court of Appeals rendered the decision at issue in this case, *cf. post*, at 2546 (SCALIA, J., dissenting), Williams' case was before us on habeas review. Contrary to the dissent's contention, *ibid.*, we therefore made no new law in resolving Williams' ineffectiveness claim. *See Williams*, 529 U.S., at 390, 120 S.Ct. 1495 (noting that the merits of Williams' claim "are squarely governed by our holding in *Strickland*"); *see also id.*, at 395, 120 S.Ct. 1495 (noting that the trial court correctly applied both components of the *Strickland* standard to petitioner's claim and proceeding to discuss counsel's failure to investigate as a violation of *Strickland's* performance prong). In highlighting counsel's duty to investigate, and in referring to the ABA Standards for Criminal Justice as guides, we applied the same "clearly established" precedent of *Strickland* we apply today. *Cf.* 466 U.S., at 690-691, 104 S.Ct. 2052 (establishing that "thorough investigation[s]" are "virtually unchallengeable" and underscoring that "counsel has a duty to make reasonable investigations"); *see also id.*, at 688-689, 104 S.Ct. 2052 ("Prevailing norms of practice as reflected in American Bar Association standards and the like . . . are guides to determining what is reasonable").

> 539 U.S. at 522.

Finally, in *Rompilla v. Beard*, the Court again stated:

> "[W]e long have referred [to these ABA Standards] as 'guides to determining what is reasonable.'" *Wiggins v. Smith*, 539 U.S., at 524, 123 S.Ct. 2527 (quoting *Strickland v. Washington*, 466 U.S., at 688, 104 S.Ct. 2052), and the

Commonwealth has come up with no reason to think the quoted standard impertinent here.

545 U.S. at 387.

What is interesting to note in *Rompilla* is Justice O'Conner's concurring opinion which controls as she concurred on a narrower ground than the majority. She wrote:

> I write separately to put to rest one concern. The dissent worries that the Court's opinion "imposes on defense counsel a rigid requirement to review all documents in what it calls the 'case file' of any prior conviction that the prosecution might rely on at trial." *Post*, at 2471 (opinion of KENNEDY, J.). But the Court's opinion imposes no such rule. *See ante*, at 2467. Rather, today's decision simply applies our longstanding case-by-case approach to determining whether an attorney's performance was unconstitutionally deficient under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Trial counsel's performance in Rompilla's case falls short under that standard, because the attorneys' behavior was not "reasonable considering all the circumstances." *Id.*, at 688, 104 S.Ct. 2052.

545 U.S. at 393-94.

Thus, *Strickland*, not the ABA Guidelines or Standards control whether counsel was ineffective.

However, petitioner faces a greater hurdle. While petitioner did present a claim regarding the qualifications of his trial and appellate counsel to the Mississippi Supreme Court he did so solely on state law grounds. Petitioner contended in state court that trial counsel was not qualified because he did not meet the requirements of M.R.A.P. 22(d), not that he did not meet the ABA Guidelines. Therefore this claim was never exhausted for purposes of federal habeas review and therefore barred from consideration on habeas review. *See Gray v. Netherland, supra*.

37

In *Ruiz v. Quarterman*, 460 F.3d 638 (5th Cir. 2006), the Fifth Circuit recently held:

The exhaustion doctrine of 28 U.S.C. § 2254(b)(1) codifies long-developed principles of comity.[8] Before a federal court can find merit in alleged errors by state courts, *a petitioner must have first provided the state's highest court with a fair opportunity to apply (1) the controlling federal constitutional principles to (2) the same factual allegations.*[9] This requirement is designed to give state courts the initial opportunity to pass upon and, if necessary, correct errors of federal law in a state prisoner's conviction or sentence.[10] The purpose of exhaustion "is not to create a procedural hurdle on the path to federal habeas court, but to channel claims into an appropriate forum, where meritorious claims may be vindicated and unfounded litigation obviated before resort to federal court."[11]

A fair opportunity requires that all the grounds of the claim be first and "fairly presented" to the state courts.[12] *In other words, in order for a claim to be exhausted, the state court system must have been presented with the same facts and legal theory upon which the petitioner bases his current assertions.*[13] *"[I]t is not enough . . . that a somewhat similar state-law claim was made."*[14] *An argument based on a legal theory distinct from that relied upon in the state court does not meet the exhaustion requirement.*[15] *"Exhaustion 'requires a state prisoner to present the state courts with the same claim he urges upon the federal courts.'"*[16] AEDPA excuses these requirements only if the petitioner shows "(i) there is an absence of available state remedies in the courts of the State, or (ii) circumstances exist that render such processes ineffective to protect the rights of the applicant."[17]

Furthermore, where a petitioner has failed to exhaust claims in state court, and that failure would now result in the state procedurally rejecting those claims, the petitioner has procedurally defaulted the claims and we must find them procedurally barred.[18] Exceptions to procedural default exist where the petitioner shows "cause and actual prejudice" or that application of the procedural bar will result in a "fundamental miscarriage of justice."[19]

_____

8. *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 8-10, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992); *Picard v. Connor*, 404 U.S. 270, 275, 277-78, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971); *Dowthitt*, 230 F.3d at 745-46.

9. *Duncan v. Henry*, 513 U.S. 364, 365-66, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995); *Rose v. Lundy*, 455 U.S. 509, 522, 102 S.Ct. 1198, 71 L.Ed.2d 379

(1982); *Anderson v. Harless*, 459 U.S. 4, 6, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982); *Thomas v. Collins*, 919 F.2d 333, 334 (5th Cir.1990).

10. *Picard*, 404 U.S. at 275-76, 92 S.Ct. 509.

11. *Keeney*, 504 U.S. at 10, 112 S.Ct. 1715.

12. *Picard*, 404 U.S. at 275, 92 S.Ct. 509.

13. *Id*. at 275-77, 92 S.Ct. 509.

14. *Wilder v. Cockrell*, 274 F.3d 255, 260 (5th Cir.2001) (citing *Anderson*, 459 U.S. at 6, 103 S.Ct. 276).

15. *Id*. at 259 (citing *Vela v. Estelle*, 708 F.2d 954, 958 n. 5 (5th Cir.1983)).

16. *Id*. at 261 (citing *Picard*, 404, U.S. at 276, 92 S.Ct. 509).

17. 28 U.S.C. § 2254(b)(1)(b).

18. *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

19. *Id*. at 750, 111 S.Ct. 2546.

460 F.3d at 642-43. [Emphasis added.]

Petitioner's claim in state court was based on a state court rule, not the federal constitution. This claim is unexhausted and now barred from consideration for the first time on habeas review.  A habeas petitioner can overcome the non-exhaustion bar by showing cause and actual prejudice, however, petitioner has not even attempted to demonstrated no cause or actual prejudice that could over come the bar to this claim.

Looking to the Mississippi Supreme Court's decision on post-conviction review, the place where this claim was first raised, we find the state court holding:

B. Counsel's Qualifications.

¶ 14. Bell alleges that trial counsel was too inexperienced to try a capital case. Bell contends counsel's failure to satisfy the qualifications provide by M.R.A.P 22(d) creates a presumption of prejudice.[1]

¶ 15. M.R.A.P. 22(d) sets forth the qualifications for attorneys representing petitioners in post-conviction matters and was adopted well after Bell's trial and direct appeal. *See In Re: Mississippi Rules of Appellate Procedure-Rule 22*, 735 So.2d XXIII (Miss.1999). Bell asks the Court to impose this heightened standard to trial counsel. This standard has never been imposed outside of its intended setting. This argument is without support and contradicts the presumption under Sixth Amendment jurisprudence.

¶ 16. Inexperience does not as a matter of law make counsel ineffective. *Wiley v. State*, 517 So.2d 1373, 1382 (Miss.1987); *see also United States v. Lewis*, 786 F.2d 1278, 1281 (5th Cir.1986). The Court disagrees that trial counsel, Leland H. Jones, III, was too inexperienced and notes that prior to Bell's direct appeal, trial counsel had appeared before the Court several times, including two appeals involving murder convictions. *See Holly v. State*, 671 So.2d 32 (Miss.1996); *Taylor v. State*, 597 So.2d 192 (Miss.1992).

¶ 17. Bell emphasizes that trial counsel was working three death penalty cases simultaneously and claims that even the most experienced death penalty counsel would have been unable to properly defend him. *See Smith v. State*, 724 So.2d 280 (Miss.1998); *Holly*, 671 So.2d 32. Bell cites as proof trial counsel's request for continuance and an affidavit provided by post-conviction counsel Thomas C. Levidiotis, who attests that counsel could not simultaneously maintain such a workload and provide effective assistance.

¶ 18. The petition fails to show specific instances where counsel's performance suffered as a result of his workload. Absent specific instances of error, defendant's allegations that trial counsel was inexperienced, carried unduly heavy caseload and had severely limited resources, are insufficient to support a claim for ineffective assistance of counsel. *Cabello v. State*, 524 So.2d 313, 316 (Miss.1988). This issue is without merit.

_____

1. M.R.A.P. 22 states in part:

(d) Standards and Qualifications for Attorneys Appointed or Retained to Represent Those Under Sentence of Death in Post-conviction Proceedings.

Counsel representing those under a sentence of death seeking post-conviction relief shall,

> (1) Be admitted to practice law in Mississippi, being a member in good standing of the Bar for at least five years immediately preceding the appointment, or admitted pro hac vice pursuant to order entered under M.R.A.P. 46 and being a member in good standing of that attorney's home jurisdiction for a like period immediately preceding the appointment,

> (2) Be admitted to practice in the federal courts of Mississippi and before the Fifth Circuit, or, in the case of attorneys appearing pro hac vice, admitted to the federal district courts and the circuit court of appeals having jurisdiction in their home areas,

> (3) Have practiced in the area of state criminal appeals or post-conviction proceedings for three years immediately preceding appointment,

> (4) Have not previously represented the capital petitioner in the case either in the trial court or in the direct appeal, unless the petitioner and counsel expressly request continued representation and waive all potential issues that are foreclosed by continued representation, and

> (5) Have within five years immediately preceding the appointment been counsel in an appeal or post-conviction proceeding in a case in which a death sentence was imposed, and have prior experience as counsel in the appeal of at least three felony convictions and at least one post-conviction proceeding; or, in the alternative, have within such period been counsel in the appeal of at least six felony convictions, at least two of which were appeals from murder convictions and counsel in at least two post-conviction proceedings.

Provided, however, under exceptional circumstances, and with the consent of the Supreme Court, an attorney may be appointed who does not meet the stated qualifications upon a showing that the attorney's experience, stature and record enable the Court to conclude that the attorney's ability significantly exceeds the standards set forth in the rule.

879 So.2d at 431-33.

41

As pointed out by the state court the rules setting the qualifications for post-conviction counsel were adopted long after petitioner's trial. This claim was not raised on federal constitutional grounds in state court and petitioner cannot now contend that he was denied his federal constitutional rights because he never presented this questionable federal claim to the State courts for resolution. This claim is barred from consideration and petitioner has not demonstrated cause and actual prejudice to overcome the bar. Petitioner is entitled to no relief on this habeas claim.[8]

### a.    Two attorneys should have been appointed.

Petitioner's second claim in this section is that he was entitled to the appointment of two attorneys to represent him in his capital trial. He again relies on the ABA Guidelines asserting that they require the appointment of two attorneys in a death penalty case. Quite frankly, the ABA Guidelines do not control the appointment of counsel by the state courts of Mississippi, nor do they in the federal courts.

However, this claim was not presented to the Mississippi Supreme Court for resolution on direct appeal or on post-conviction review. Therefore the claim is unexhausted for purposes of federal habeas review and therefore barred from consideration. *See Gray v. Netherland, supra*; *Ruiz v. Quarterman, supra*. Petitioner has not attempted to demonstrate cause or prejudice in an attempt to overcome the bar to consideration of this claim.

---

[8]In any event this claim would be controlled by *Sawyer v. Butler*, 848 F.2d 582, 589 n. 5 (5th Cir. 1988), where the Fifth Circuit held that failure to meet state qualification standards did not demonstrate ineffective assistance of counsel.

Because petitioner never presented this claim to the state court there is no decision of the state court to assess under § 2254(d).

In any event, this claim was decided long ago by the Fifth Circuit in *Bell v. Watkins*, where the Court held:

> The first line of inquiry is whether counsel was reasonably likely to render reasonably effective assistance. Bell argues that his trial counsel was unqualified because he had never defended a criminal case all the way to a jury verdict and because he had only recently graduated from law school. The defendant states that these facts render his trial counsel incompetent as a matter of law, but he cites no authority for this novel proposition. *He also points out that it is customary in Mississippi to appoint two lawyers to defend a capital case.*
>
> The district court was correct in rejecting the defendant's argument concerning his lawyer's competence. The court noted that Lambert had tried two cases and participated to a lesser degree in other cases while he was serving as an intern in the district attorney's office when he was in law school. After graduation, he had handled criminal cases for a "respected" law firm, although none of his cases had gone to trial. He had also worked on a number of civil cases. Finally, he enlisted the help of two experienced criminal lawyers in preparing Bell's case. *Although Mississippi courts may customarily appoint two lawyers in a capital case, the Constitution dictates no such requirement.*

692 F.2d at 1008-09. [Emphasis added.]

Petitioner has cited no case on point holding that it is constitutional error to fail to appoint two attorneys in a death penalty case. His citation of *Williams v. Taylor*, does nothing for his argument as it does not hold that the appointment of two counsel is required. In fact, it does not discuss the appointment of counsel.

This claim is barred from consideration because it was never exhausted in state court.

43

Petitioner is entitled to no relief on this claim.

> **b.      Trial counsel not qualified and not able to devote time required because of heavy case load.**

Petitioner again returns to his "the ABA Guidelines require" theme in this section of the claim of ineffective assistance of counsel.  However, he never mentioned the ABA Guidelines to the state court, only M.R.A.P. 22.[9]  Thus the qualification claim was not raised in the context of the federal constitution and is barred from consideration.

Petitioner has expanded his claim regarding counsel's heavy case load before this Court.  In petitioner's state post-conviction petition he presented the claim as follows:

> 46.  Also of interest is the fact that trial counsel represented two other capital murder defendant's at the same time as the petitioner.  *See Smith v. State*, 724 So.2d 280 (1998); *Holly v. State*, 671 So.2d 32 (1998).  A judgment was entered in Bell's case on 1/26/93, Holly's on 3/3/93, and Smith's on 7/1/93.  Clearly because of the proximity of these three cases it is reasonable to assume that trial counsel was working all three cases simultaneously.

> 47.  Even the most experienced death penalty counsel would be unable to properly defend three separate capital cases simultaneously.  See Exhibit "B" attached hereto.  Counsel's performance at trial demonstrates that he was overworked and incapable of handling three capital cases.  As such trial counsel was ineffective and unable to properly defend the petitioner in the instant matter.

St. PCR Pet at 15.[10]

---

[9]*See Sawyer v. Butler*, 848 F.2d 582, 589 n. 5 (5th Cir. 1988).

[10]The affidavit spoken of in the petition was the affidavit of post-conviction counsel, Thomas Levidiotis.  Thus, post-conviction counsel was supporting his own brief with his own affidavit.   He states in his affidavit that he has been "attorney of record on numerous death penalty cases both at trial and appellate levels."  St. PCR Ex. B at ¶ II.  A check of the Southern Reporter shows that Levidiotis is listed as counsel on one simple murder case and

Petitioner made no specific claim of ineffective assistance of counsel, only asserting that in his counsel's opinion that the case load was to great to allow for effective assistance. As pointed out above the Mississippi Supreme Court's addressed this claim and held:

> ¶ 17. Bell emphasizes that trial counsel was working three death penalty cases simultaneously and claims that even the most experienced death penalty counsel would have been unable to properly defend him. *See Smith v. State*, 724 So.2d 280 (Miss.1998); *Holly*, 671 So.2d 32. Bell cites as proof trial counsel's request for continuance and an affidavit provided by post-conviction counsel Thomas C. Levidiotis, who attests that counsel could not simultaneously maintain such a workload and provide effective assistance.

> ¶ 18. The petition fails to show specific instances where counsel's performance suffered as a result of his workload. Absent specific instances of error, defendant's allegations that trial counsel was inexperienced, carried unduly heavy caseload and had severely limited resources, are insufficient to support a claim for ineffective assistance of counsel. *Cabello v. State*, 524 So.2d 313, 316 (Miss.1988). This issue is without merit.

> 879 So.2d at 432-33.

A petitioner is required to show specific instances of where counsel's performance was deficient. Without identifying the grounds on which counsel was deficient petitioner is making an unsupported claim.

Petitioner now cites the fact that counsel did not bring up certain pre-trial motions until the day of trial. Memo. at 19. However, petitioner was granted a continuance. How was petitioner prejudiced?

Petitioner also cites the two other death penalty cases in which counsel was involved

---

one capital post-conviction appeal prior to the filing of this affidavit. Hardly, what respondents would classify as "numerous."

45

that year. Respondents would point out that petitioner's case was the first of the cases to be tried. It is clear from petitioner's memorandum that the other two cases were both tried after petitioner's case. *See* Memo. at 20. This stand alone claim is without merit. To the extent that petitioner presented a federal claim to the state court, if he did so at all, the resolution of the claim did not result in a decision that was contrary to or an unreasonable application of the clearly established precedent found in *Strickland.* Petitioner is entitled to no relief on this claim.

> **2. Failure to secure funds for independent investigator and failing to properly investigate case.**

Petitioner next contends that counsel was ineffective in failing to secure funds for an independent investigator and failing to properly investigate the case. The claim petitioner presents here is a combination of two claims presented to the state court on post-conviction review.

The first claim presented to the state court bears the title "Counsel Failed to Secure Adequate Funds for the Investigation of the Case." St. PCR. Pet. II, C at 15.[11] Petitioner's argument under this claim was that the counsel only moved for funds for an investigator a month before the trial. He contended that counsel by waiting so late was not able to throughly investigate the case and prepare a strong defense. He concludes his state court argument stating that counsel was ineffective in failing to "timely secure funding for

_____

[11]Petitioner's entire claim in his state post-conviction petition was one and an half pages. *See* St. PCR. Pet. at 15-17.

46

investigative assistance". St. PCR Pet. at 17. Petitioner did not mention in his state court

petition what the investigator would have found, he never mentions the word "alibi", nor

does he mention a single witness the investigator would have found,

In any event, in addressing this claim in its post-conviction review opinion the

Mississippi Supreme Court held:

C. Secure Adequate Funds For Investigation.

¶ 19. On November 30, 1992, trial counsel joined co-defendant Anthony Doss's request for the appointment of additional counsel or in the alternative for an investigator. The request for an investigator was granted. Though Bell alleges that counsel failed to secure adequate funds, his claim, more precisely, is that counsel failed to timely request funds and that this delay led to a highly ineffective and disjointed defense. Because such funds were provided, the Court finds that this issue is without merit.

¶ 20. Additionally, Bell contends that the State should have provided funds for an independent investigation.[2] However, he does not discuss specifically how counsel's delay hindered the defense or how an earlier request for assistance would have helped. The claim that an earlier request would have allowed a stronger defense is highly speculative and without support.

_____

2. There are instances, when in fairness, the State should provide funds for non-legal personnel needed by the defense. *Hansen v. State*, 592 So.2d 114, 125 (Miss.1991) (citations omitted). To receive assistance, defendants must show a substantial need for requiring such assistance. *Id*. (citing *Caldwell v. Mississippi*, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985)).

879 So.2d at 433.

Based on the arguments presented to the state court the decision of the Mississippi Supreme

Court is neither contrary to or an unreasonable application of *Strickland, supra*.

The second part of petitioner's claim was presented to the state court as claim II, E,

47

and was entitled "Counsel Failed to Investigate Critical Aspects of the Defense."[12]  St. PCR

Pet. at 21-29.  This claim addressed by the Mississippi Supreme Court on post-conviction

review, where it held:

### E. Investigate Critical Aspects Of Defense.

¶ 23. Bell claims that counsel failed to investigate the possibility that someone else committed the crime, prove his available alibi, and/or to find witnesses who could have provided important evidence on behalf of the defense.  Under Mississippi law, counsel has the duty to interview potential witnesses and to make independent investigation of facts and circumstances. *Payton v. State*, 708 So.2d 559, 561 ¶ 8 (Miss.1998) (citing *Ferguson v. State*, 507 So.2d 94, 96 (Miss.1987) (quoting *Nealy v. Cabana*, 764 F.2d 1173, 1177 (5th Cir.1985))).  In addition, counsel must make reasonable investigations or make a reasonable decision that makes particular investigations unnecessary. *Wiley*, 517 So.2d at 1379.

¶ 24. Bell argues a reasonable investigation would have led counsel to call Bud McMillian as a witness.  He claims that McMillian would have testified that he had seen someone resembling Doss running from the store, and that such testimony would have supported his alibi.  Bell's argument is nonsensical.  On one hand, Bell faults counsel for not calling McMillian to support his alibi.  On the other, Bell claims, that by testifying that he saw someone resembling Doss, McMillian would have supported the theory that Bell was merely present during the commission of the crime.  Bell cannot argue that the testimony supported either his alibi or his claim that he served only as an accomplice.

¶ 25. Without a supporting affidavit from McMillian, Bell asks the Court to speculate as to McMillian's testimony and its effect on the trial. Counsel's choice of whether to call witnesses and ask certain questions falls within the ambit of trial strategy and cannot give rise to an ineffective

---

[12]This claim was divided into three parts: (i.) The defense failed to investigate and prove that someone else committed the crime charged; (ii.) The defense failed to investigate the defense of alibi which was available in this case; (iii.) The defense failed to investigate and find witnesses who could have presented important evidence on behalf of the defense.

assistance of counsel claim. *Jackson v. State*, 815 So.2d 1196, 1200 ¶ 8 (Miss.2002) (citing *Cole v. State*, 666 So.2d 767, 777 (Miss.1995)).

> ¶ 26. Next, Bell claims that trial counsel failed to investigate his alibi and that had counsel done so, he would have discovered Bernard Gladney as a potential, corroborating witness. Bell contends that Gladney would have testified that Bell was in Memphis at 7:30 p.m. the day of the murder. Because Gladney is serving time in the Tennessee Department of Corrections for Second Degree Murder, the decision not to call Gladney could be deemed as sound trial strategy.

> ¶ 27. While together in Memphis, Bell and Gladney were involved in a separate murder. It was the crime for which Bell was initially arrested. Gladney subsequently pled guilty and was sentenced to life in the Tennessee Department of Corrections. As a convicted murderer, Gladney had little credibility, and any testimony provided by him likely would have harmed the defense. Therefore, this claim is without merit.

879 So.2d at 433-34.

The Mississippi Supreme Court addressed this ineffective assistance of counsel claim on the basis of what was presented to it by petitioner. Petitioner's state court petition he did not present any affidavits to support this claim of just being present at the time of the murder or his contradictory claim of an alibi defense. His claim in state court was that Bud McMillan could have testified that he was merely present, but did not take part in the murder. Petitioner did not present the affidavit of Bud McMillan to the state court and he has not presented one from him to this Court.

Petitioner did not present an affidavit from Bernard Gladney to support his alibi defense that he was in Memphis at the time the robbery/murder took place. Likewise he does not present any affidavit of Gladney to this Court. If these witnesses were so important why

did state post-conviction counsel not obtain them and present them to the state court?

Based on what was before it at the time this ineffective assistance claim was presented the Mississippi Supreme Court's decision cannot be considered an unreasonable application of *Strickland*. Petitioner simply failed to show prejudice.

Petitioner has now, some fifteen years after the crime, after the crime, after direct appeal and after state post-conviction review, decided to present some evidence of an alibi to this Court in the form of several affidavits and documents.[13]

Respondent would assert that the addition of these addition documents place this case in a significantly different posture than the case presented to the state court. Petitioner presented no affidavits in support of this allegation in state court. He now attempts to support his claim for the first time with affidavits and documents that were never presented to the state court. This claim is an attempt to totally change the nature of this claim making the claim unexhausted in the state courts. As was stated in *Ruiz v. Quarterman*, *supra*:

> Before a federal court can find merit in alleged errors by state courts, a petitioner must have first provided the state's highest court with a fair opportunity to apply (1) the controlling federal constitutional principles to *(2) the same factual allegations*.

> 460 F.3d at 642.

Petitioner was represented by counsel in his state post-conviction litigation. Petitioner has

---

[13]Petitioner offers no explanation why state post-conviction counsel did not present these documents to the state court when he raised this claim of ineffective assistance of counsel.

failed to give any reason why these new affidavits could not have been obtained by Mr. Levidiotis and presented to the state court for resolution.[14]  Respondents would assert that petitioner failed to exhaust this claim before the state court and is now barred from raising it here.

Without waiving the bar because of the failure to exhaust, respondents would assert that these affidavits and documents, obtained some fifteen years after the murder, are not credible and do not indicate ineffective assistance of counsel.  The documents petitioner presents for the first time on habeas consist of an affidavit by Bernard Gladney (Pet. Ex. D); an affidavit of Lonnie Bell, petitioner's father (Pet. Ex. E); the affidavit of his mother, Myra Bell (Pet. Ex. G);[15] the affidavit of Cindy Arnold, petitioner's aunt (Pet. Ex. H);[16] an affidavit from Essie Jefferson, another of petitioner's aunts (Pet. Ex. I); an unsworn statement of Leslie Freeman (Pet. Ex. BB); an unsworn statement of Terry Jones (Pet. Ex. CC); the affidavit of Darrell Flowers (Pet. Ex. DD); and the unsworn statement of Josephine L. Graham (Pet. Ex. EE).

Gladney's affidavit goes into great detail about his whereabouts and doings on the

---

[14]Petitioner cannot assert the ineffective assistance of post-conviction counsel as cause to overcome the failure to exhaust bar.

[15]Myra Bell submitted an affidavit that was attached to the state post-conviction petition that did not mention a thing about petitioner being in Memphis on the day of the murder of Bert Bell.  *See* St. PCR Ex. I.

[16]Ms. Arnold appears to be a bit confused in her affidavit as she has marked through May 6, 1991, and substituted the word "Summer" she also marks through and adds other language to the affidavit.  This affidavit does not support petitioner claim of alibi.

51

days before and after the murder. However, Mr. Gladney has either a faulty memory or has chosen to lie for his friend the petitioner. He states in paragraph IV he testified in the extradition hearing for petitioner held on September 25, 1992. His affidavit states in part:

IV.

The only time I was involved with Frederick Bell's case on any level was on September 25, 1991 at Frederick Bell's Extradition Hearing in Ripley, Tennessee. I was retrieved from the Tennessee Department of Corrections on the morning of September 25, 1992 and driven to Ripley, Tennessee where I testified that Frederick Bell was in Memphis, Tennessee on May 6, 1991. I testified that on May 6, 1991, I picked up Frank Coffee and Anthony Doss from Grenada, Mississippi around 5 p.m. I saw Robert McKinney James there. Frederick Bell was not there. I drove Mr. Doss and Mr. Coffey to Memphis, Tennessee and we arrived around 7 p.m. at Frederick Bell's grandmother's house on Red Bud Street and met up with Frederick Bell. I was never contacted by Leland H. Jones, III, before or after my testimony in this Extradition Hearing on September 25, 1992.

Pet. Ex. D, ¶ IV.

However, when we look to the transcript of petitioner's extradition hearing we find that Gladney's testimony was not so favorable has he now asserts. Gladney did testify on direct examination that he did not drive Bell from Mississippi to Tennessee on May 6, 1991. *See* Pet. Ex. N at 6-8. On cross-examination we find the following:

BY GENERAL RANDOLPH:
Q.    Mr. Gladney, do you know Bruce Partridge?

A.    No. No.

Q.    Do you recognize this gentleman sitting here in the Courtroom at the end of the pew?

A.    I think so. I think I saw him when I first came to jail.

Q.      Okay.  And that was in Memphis?

A.      Yes.

Q.      Okay.  And — and you gave him a statement:

A.      Yes.  I think so.

Q.      Along with a gentleman by the name of Buster Grantham, homicide detective with — ?

A.      It was two of them.  I'm not for sure.  Yes.

Q.      Okay.  Do you recall stating in that particular statement that you gave to Mr. Partridge and to Mr. Grantham that you picked up Mr. Bell down in Gore Springs there in Grenada County, and taking him to Memphis?

A.      Yes. I remember them saying that.

Q.      All right.  Do you recall making that statement?

A.      Yes.

Q.      Okay.  Do you recall giving another statement to the Memphis Police Department; wherein, you also stated that you carried Mr. Bell from Grenada County to Memphis?

A.      Yes.

Q.      And the date of that statement would have been May 7, 1991?

A.      I think so.  I know it was 'tween something like, pretty close to it.

Q.      All right.  One day after this murder took place down in Grenada County, Mississippi?

A.      Well, I guess.  I'm not just one hundred percent when that took place.

Q.      May 6th, '91, would be—would that sound about right?

53

A.      That's when I caught this case here.

Pet. Ex. N at 11-12.

On redirect Gladney attempted to explain away his contradictory statements by saying that he was being harassed by the Calhoun City Police. Pet. Ex. N at 12-15. On re-cross we find the following:

Q.      Mr. Gladney, you do admit, though, that you did give these two statements saying that you had picked up Mr. Frederick Bell in Grenada County, Mississippi, on May 6th, 1991, and carried him to Memphis?

A.      Yes, sir.

Pet. Ex. N at 15.

Gladney's affidavit is does not paint the full picture of his testimony at the extradition hearing, nor does he mention the two statements he gave to authorities stating that he had take petitioner from Grenada County to Memphis on May 6, 1991. Of course the district attorney's office had extradition hearing transcript, it also had the two statements Gladney had made in which he stated that he brought petitioner from Grenada County. So petitioner rests his alibi on a witness that had given two contradictory statements to the authorities and testified under oath that he had made those statements to the authorities. Had counsel put Gladney on the stand to testify that petitioner was not in Mississippi that day, he would have been impeached fifty ways to Sunday and we would be here on an ineffective assistance of

54

counsel claim for placing him on the stand.[17]

The rest of the affidavits, save one,[18] contain a identical paragraph that reads:

> If I had been contacted by Fredrick [sic] Bell's attorney, Leland H. Jones, III, I would have testified that Fredrick [sic[ Bell was in Memphis, Tennessee prior to and including May 6, 1991, the day Bert Bell was shot and killed in Grenada, Mississippi.  I would have testified that Fredrick [sic] Bell was not connected to the death of Bert Bell in any way and was not even in the State of Mississippi at the time Bert Bell was killed.

*See* Pet. Ex. E, ¶ IV; Ex. G, ¶ VII; Ex. I, ¶ IV; Ex. DD, ¶ IV.[19]

Ex's. E, G, and I do not contain any statement of how they know petitioner was in Memphis on May 6, 1991, the do not state where they saw petitioner or under what circumstances.  These are totally conclusory statements contained in an affidavit clearly prepared by counsel.  All of these affiants have reason to attempt to help petitioner as they are close relatives.  The question then becomes why they waited for fifteen years to suddenly remember that petitioner was in Memphis on May 6, 1991.  These affidavits are highly suspect.  Especially the one of his mother who filed an affidavit that was attached to the state court petition and mentioned nothing about the fact that he could not have committed the crime because he was

---

[17]Even if the Court were to find that the affidavit of Gladney merely supplements the claim made in state court, the inclusion of the remaining affidavits clearly make the claim a substantially different claim from that presented to the state court.  The consideration of these additional affidavits and statements are unexhausted and barred from consideration. *See Ruiz, supra.*

[18]As stated above Cindy Arnold's affidavit was changed by Ms. Arnold to read differently.  *See* Pet. Ex. H.

[19]The language in Ex. DD varies slightly from the rest.

55

in Memphis. Surely, she would have at least informed state post-conviction counsel of this fact. However, she made no mention of this important exculpatory fact.

Petitioner also presents several unsworn statements. While Freeman's statement is dated and contains a notary seal, there is nothing on the document that states that she is swearing to the truth of the contents. Jones' statement has no statement that he or she is swearing to the truth of the contents of the statement, it is undated, but does have a notary seal thereon. Graham's statement is also undated and does not contain any language that indicates that she is swearing to the truth of its contents, although it does contain a notary seal. There is no indication on the documents that any of these three persons personally appeared before the notary. These documents can hardly be called affidavits. Further, it appears from the dated documents that they were not obtained until May, 2006, some fifteen years after the murder and the day they are remembering so vividly.

Looking to the statement of Leslie Freeman we find that she states that she saw petitioner in Memphis on May 6, 1991 at her father's service station. She stated that he was looking for her brother Bernard Gladney. She states that about a year after the murder petitioner's sister asked if she had seen petitioner in Tennessee on the day of the murder in Mississippi. Freeman stated that she did see him that day. Petitioner's sister told Freeman that she was going to give her name to petitioner's lawyer. She then state that she never heard anything else about the matter.

Freeman does not tell us which "sister" she was speaking to in 1992. There is no

56

record of petitioner's sister ever informing trial counsel of her conversation with Freeman. A sister of petitioner's, Tonja Bell, furnished an affidavit that was attached to the state post-conviction petition. *See* St. PCR. Ex. J. Tonja's affidavit says nothing about talking to Freeman regarding petitioner's whereabouts on May 6, 1991. One would assume that if she was privy to such valuable information in support of petitioner's alibi that she would have mention it in her affidavits in support of petitioner's petition for state post-conviction relief which raised a claim that counsel did not investigate the alibi defense. Petitioner has not presented any additional affidavit from any sister of petitioner's that corroborates Freeman's unsworn statement.

Terry Jones' unsworn statement (Pet. Ex. CC) suffers from similar problems. First, Jones does not give a date on which he or she saw petitioner in Memphis. The closest we come to being told when this sighting of petitioner took place is the first sentence of the statement. It reads: "On the day that Bernard Gladney and Fredrick [sic] Bell caught the case in TN. . . ." It is unclear what this statement means. It is certainly not sufficient to base and alibi on.

Respondents will skip the final real affidavit for the moment to deal with the unsworn statement of Josephine Graham (Pet. Ex. EE). This statement says nothing that supports petitioner's alibi. She does not identify her business, she says that she cannot say the "person in question" was there and she cannot even say with any certainty that she was in the store on May 6, 1991. She does state that the store had "surveillance" but it is possible that if the

57

video tapes still existed that "he" would be on them. Presumably, petitioner is trying to say that if counsel had conducted a proper investigated he may would found Ms. Graham and her video tapes may still have been in existence at that time.[20] This unsworn statement is worthless as it does not support petitioner's alibi theory.

Finally we have a affidavit from petitioner's step-brother Darrell Flowers. He contends that petitioner was with him in Memphis on May 6, 1991, the day of the Mississippi murder. Respondent's main question is why Darrell has waited over fifteen years to come forward with the information he now contends he has had all of these years. It would seem that one with such important exculpatory evidence would not have waited to be contacted by an attorney. That he would have inquired of someone how he could help his step-brother. Did he not know petitioner's mother? Did he not know how to get in touch with her to tell her of this important information so it could be related to his attorney? Clearly, he did not provide it to state post-conviction counsel, Thomas Levidiotis with this information or his affidavit would have been attached to the state post-conviction application. Yet some fifteen years after the fact Darrell furnishes an affidavit that says the petitioner was with him in Memphis on the day of the murder. The Court must look with great suspicion on this

In addition to the testimony of James and Coffey, two other witnesses identified

---

[20]It would be unusual for a small store with a video surveillance system to maintain such video tapes for a lengthy period of time. Storage space is to valuable and replenishing video tapes is to expensive. Most of the tapes were probably recycled after a short period of time.

58

petitioner as being in Mississippi on the day of the murder of Bert Bell. Both Gerrydene Golliday and Lelesia James testified that they saw petitioner along with Anthony Doss, Frank Coffey, Robert James and petitioner at the home of Golliday shortly before the murder of Bert Bell. Golliday's home was located only a few hundred yards from Spark's Stop-and-Go on Cadaretta Road where the murder occurred. *See* TR. 269-74.

Considering the fact that Gladney's testimony would have been substantially impeached by his own statements, it cannot be said that there is a reasonable probability that the outcome of this trial would have been different had he been called in an attempt to provide an alibi for petitioner.

This claim is barred for the failure to exhaust the factual allegations in the state court and petitioner is entitled to no relief on this claim.

### 3. Failure to secure adequate funds for an independent expert, failing to challenge State's expert evidence.

Petitioner next contends that trial counsel was ineffective in failing to secure a ballistics expert to determine which gun fired the fatal shot. The substantive claim was presented on direct appeal to the Mississippi Supreme Court. The state court held:

XII. THE COURT'S FAILURE TO PROVIDE BELL WITH A BALLISTICS EXPERT

¶ 46. Although Bell depended on an alibi theory, on appeal he asserts that the trial court erred by failing to provide him with a ballistics expert who could have, he urges, helped establish that Doss, not Bell, fired the fatal shots, and could have assisted in cross-examination of the State's expert. *We need not today consider the circumstances under which it may be appropriate for the trial judge to provide expert assistance to the defense, however, because*

59

*the record does not reflect that Bell ever asked for such assistance.* In his brief, Bell says that the court denied his motion. This is incorrect. Doss did move for such assistance, and the motion was denied. However, the record does not include a similar motion by Bell or a joinder by Bell in Doss's request. There is no merit to this assignment of error.

725 So.2d at 853.

Petitioner in his habeas memorandum disputes the finding of the Mississippi Supreme Court on direct appeal that he made no request for a ballistics expert and also contradicts his brief on state post-conviction review which states:

> 55.    The petitioner's trial counsel never filed such a motion or joined co-defendant, Anthony Doss, in his motion, however petitioner's trial counsel raised the trial court's denial of a ballistic's expert as an issue on direct appeal.
>
> . . .

St. PCR Pet. at 18, ¶ 55.

Petitioner now contends that the trial court considered hin joined with Doss for all such motions and uses the granting of investigative assistance as the basis for this claim.

The ineffectiveness claim was presented to the Mississippi Supreme Court on post-conviction review. The Mississippi Supreme Court held:

**D. Secure Funds For Experts Needed**.

> ¶ 21. Bell submits trial counsel failed to request the appointment of a ballistics expert. He maintains that evidence as to who fired which weapon would have been relevant mitigating evidence. He claims that the fatal wounds came from the .38 and, because Doss's fingerprints were found behind the counter, Doss had access to the victim's gun and thus fired the fatal shot. He contends this would have proved that Doss was the principal and that he

60

was merely an accomplice.

¶ 22. At trial, the evidence presented showed that the victim was shot by .38 and .22 caliber guns. The State's position was that the .22 caliber wounds were inflicted by Bell. Because wounds from either weapon could have been fatal, the actual fatal wound was not established. Therefore, this argument is without merit. *Ballistics is relevant in determining whether a particular gun fired a given bullet, not for determining which bullet proved fatal. Such a determination would require a pathologist. Likewise, because identity of the weapon was never an issue, it is likely such a request would have been denied. A ballistics expert would not aid in the determination of which bullet proved fatal or who served as the principal in the crime.*

879 So.2d at 433.

This decision by the Mississippi Supreme Court is not an unreasonable application of *Strickland*.

No "ballistic expert" would have been useful. While it is true that there was evidence that the victim was killed by bullets fired by a .22 and .38 caliber weapon, it is likewise true that wounds caused by either and both guns were lethal wounds. Consequently, there was hardly a purpose in having an expert in ballistics to attempt to testify about the different calibers. Such an expert would not have been able to shed any light on which particular wound was more lethal, or in fact "the" cause of death, this kind of opinion being incompetent for an expert in ballistics to give, seeing as how such an opinion would be medical opinion. A "man in the moon" defense was not attempted, and so there was no basis to suppose that some other, unknown person happened to be present and firing at the victim with third gun.

Since a ballistics expert witness would not have been able to provide the evidence

61

hoped for by the prisoner – that evidence being that maybe he didn't fire one of the many fatal shots – there could not possibly have been prejudice involved for having failed to seek one. This is doubly so in view of the fact that it would not have mattered as a matter of law whether the prisoner fired one of the fatal shots. He was clearly a principal in the crime, and as guilty of it regardless of whether he had fired a fatal shot because the victim was shot with two different guns. Given these considerations, it is exceedingly doubtful that an expert in ballistics would have been required and that the request would have been granted. *Griffin v. State*, 557 So.2d 542 (Miss. 1990). Since the trial court denied the co-defendant's request for an expert, and correctly so, there is little reason to suppose it would have granted such relief to the prisoner here.

Whether the trial attorney could recall filing a motion for an expert in ballistics is neither here nor there in view of the pointlessness in having such an expert.

Since petitioner demonstrated no prejudice before the state court and continues in that deficiency in this Court he has failed to demonstrate ineffective assistance of counsel. The Mississippi Supreme Court's decision on this matter is not unreasonable. Petitioner is entitled to no relief on this claim.

Petitioner also includes under this claim a claim that trial counsel was ineffective in failing to adequately challenge the qualifications of the pathologist that testified in this case.

Dr. Stephen Hayne.[21]  When presented to the Mississippi Supreme Court on post-conviction review, the court held:

### K. Stipulation of State's Expert Evidence.

¶ 57. Bell claims that counsel should have challenged the reliability and completeness of the findings by the State's expert, Stephen Timothy Hayne, M.D. Dr. Hayne's testimony was based on autopsy dated April 6, 1991. Because the murder occurred on May 6, 1991, Bell argues that such an autopsy was physically impossible.  Further, he alleges that had counsel objected Dr. Hayne's testimony would have been suppressed, resulting in a directed verdict in favor of the defense.  In this instance, the error is superficial and is without merit.

879 So.2d at 440.

Petitioner's claim that counsel should not have stipulated to the expert witness status of Dr. Timothy Hayne or his testimony.  This is ludicrous.  Dr. Hayne, who has been qualified in as an expert in forensic pathology and testified in numerous cases in the courts of Mississippi, is easily qualified as an expert witness.  It would have been pointless for counsel to contend otherwise.[22]  Whether to challenge an expert's qualifications is a matter of trial strategy and does not represent ineffective assistance of counsel.

As for the error as the date of the autopsy upon the victim, this was clearly a mistake and not a reason for striking Hayne's testimony.

Counsel's actions were not ineffective, therefore there is no ground for habeas relief.

---

[21]In state court petitioner also contended that Dr. Hayne's testimony should have been challenged on the ground that the date on the autopsy was April 6, 1991, which was a date prior to the May 6, 1991, murder in this case.  He does not included that challenge here.

[22]In fact, Dr. Hayne is the current Medical Examiner for the State of Mississippi.

Petitioner is entitled to no relief on this claim.

> **4.    Failure to have juror questionnaires sent to all jurors with jury summons, failure to litigate discrimination in jury selection process, failure to secure adequate voir dire conditions, failure to conduct a thorough and adequate voir dire, and failure to request additional peremptory challenges.**

Under this heading petitioner combines several claims he raised in state court.[23] First, he contends that trial counsel was ineffective in failing to request that jury questionnaires be sent to the prospective jurors with their jury summons. This ineffective assistance claim was presented to the Mississippi Supreme Court in petitioner's post-conviction petition. The Mississippi Supreme Court held:

F. Jury Questionnaires.

¶ 28. Bell claims that counsel failed to request questionnaires to

---

[23]*See* Petitioner's State Court Appellant's Brirf:  Claim F – "Counsel Failed to Move for Questionnaires to be Sent to All Jurors Along with Jury Summons" at 29-30; Claim G – "Counsel Failed to Litigate Discrimination in the Jury Pool" at 30-31; and Claim H – "Counsel Failed to Ensure Adequate Voir Dire Conditions, and Failed to Conduct a Thorough and Adequate Voir Dire", at 31-53.  Petitioner divided his Claim H into several parts:  i, "Counsel Failed to Present Argument or Cause Supporting Individually Sequestered Voir Dire", at 31-33; ii, "Counsel Failed to Object to the Court Examining the Jury Panel With Leading Questions Suggesting to the Jurors the Proper Answers, the Court's Failure to Conduct Meaningful Examination of the Panel Members, and the Court's Reliance Upon the Members' Self-Assessment of Their Ability to Give the Petitioner a Fair Trial", at 33-43; iii, "Trial Counsel Failed to Ask the Kind of Questions Necessary to Elicit Information From Prospective Jurors Sufficient for the Meaningful Exercise of Cause and Peremptory Challenges", at 43-47; iv, "Counsel Failed to 'Rehabilitate' Jurors to Ensure that they Were not Excluded for Cause Because of their Views in Purported Opposition to the Death Penalty", at 47-49.

accompany the jury summons.  By providing more information, he argues that such questionnaires would have allowed for a more effective voir dire.  *No support is provided that such a failure renders counsel ineffective.  Failure to cite relevant authority obviates the appellate court's obligation to review such issues.  Simmons v. State*, 805 So.2d 452, 487 ¶ 90 (Miss.2002); *Williams v. State*, 708 So.2d 1358, 1362-63 (Miss.1998).  Additionally, extensive latitude was permitted during the course of voir dire.  Therefore, this issue is without merit.

879 So.2d at 434.

The Mississippi Supreme Court held the ineffective assistance of counsel claim barred on the basis that post-conviction counsel failed to cite any relevant authority in support of the argument.  This is an adequate and independent state law procedural ground barring consideration of this claim of ineffective assistance of counsel on federal habeas review.  *See Coleman v. Thompson, supra; Wainwright v. Sykes, supra.*

Further, this claim is totally speculative.  Even had petitioner's counsel made such a request there is not guarantee that it would have been granted as there is no authority under Mississippi law requiring jurors to complete such questionnaires.  *See Mitchell v. State*, 886 So.2d 704, 709-10 (Miss. 2004); *Holland v. State*, 705 So.2d 307, 337 (Miss.1997) (It is not an abuse of discretion for the trial court to deny a motion for jury questionnaires since there is no authority for them.).

More importantly, petitioner has cited to no United States Supreme Court precedent which has held that juror questionnaires are required in any case, much less a capital case, nor does cite any case where the United States Supreme Court found counsel ineffective for failing to request that a jury questionnaire be sent to the prospective jury members with their

65

jury summons.  Petitioner relies solely on the ABA Guidelines, which are just guidelines and not law.  In *Lockyer v. Andrade*, 538 U.S. 63, 76, 123 S.Ct. 1166, 1175 (2003), the United States Supreme Court held:

> As a threshold matter here, we first decide what constitutes "clearly established Federal law, as determined by the Supreme Court of the United States."  § 2254(d)(1).  Andrade relies upon a series of precedents from this Court-*Rummel v. Estelle, supra*, *Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), and *Harmelin v. Michigan*, 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991)-that he claims clearly establish a principle that his sentence is so grossly disproportionate that it violates the Eighth Amendment. Section 2254(d)(1)'s "clearly established" phrase "refers to the holdings, as opposed to the dicta, of this Court's decisions as of the time of the relevant state-court decision."  *Williams v. Taylor*, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).  In other words, "clearly established Federal law" under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision. *See id.*, at 405, 413, 120 S.Ct. 1495; *Bell v. Cone*, 535 U.S. 685, 698, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002).  In most situations, the task of determining what we have clearly established will be straightforward.

538 U.S. at 71-72.

*See Scheanette v. Quarterman*, 482 F.3d 815, 824 n. 50 (5th Cir. 2007); *Parr v. Quarterman*, 472 F.3d 245, 258 (5th Cir. 2006); *Salazar v. Dretke*, 419 F.3d 384, 399-400 (5th Cir. 2005). Since petitioner's claim does not rest on clearly established federal law as announced by the United States Supreme Court precedent the Mississippi Supreme Court's decision cannot be an unreasonable application of such law.   *See* 28 U.S.C. § 2254(d); *Williams v. Taylor, supra*.

Petitioner is entitled to no relief on this portion of his claim.

Second, petitioner contends that counsel was ineffective in failing to raise and litigate

66

discrimination in the selection of the jury. This claim is actually not a challenge related to the jury pool, a claim of ineffective assistance of counsel based on the failure to assert *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), against the peremptory challenges used by the prosecution. That is how it was argued in the state court and that is the basis of the argument here.

This claim of ineffective assistance of counsel was presented to the Mississippi Supreme Court on post-conviction review. The state court held:

G. Discrimination In Jury Pool.

¶ 29. Bell claims that counsel failed to raise *Batson* challenges to the prosecution's exercise of peremptory challenges. *See Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Under *Batson*, if a party believes that the other used peremptory challenges to racially discriminate against potential jurors: (1) the party objecting to a peremptory challenge must make prima facie showing that race was the criteria for the exercise of the challenge; (2) if this initial showing is successful, the party desiring to exercise the challenge must offer a race-neutral explanation for striking the potential juror; and (3) trial court must then determine whether the objecting party has met their burden to prove there has been purposeful discrimination in exercise of peremptory challenges. *Caston v. State*, 823 So.2d 473, 498 ¶ 88 (Miss.2002) (quoting *Stewart v. State*, 662 So.2d 552, 557-58 (Miss.1995)).

¶ 30. In *Conner v. State*, 684 So.2d 608, 612 (Miss.1996), this Court stated that "for counsel's performance to be deemed ineffective, [the defendant] must demonstrate that his case was prejudiced by the failure to raise any challenges pursuant to *Batson*." Generally, the Fifth Circuit considers an "attorney's actions during voir dire to be a matter of trial strategy, which 'cannot be the basis for a claim of ineffective assistance of counsel unless counsel's tactics are shown to be so ill chosen that it permeates the entire trial with obvious unfairness.'" *Burns*, 813 So.2d at 675-76 (citing *Teague v. Scott*, 60 F.3d 1167, 1172 (5th Cir.1995)).

¶ 31. Trial counsel went on the record to indicate that the failure to raise

67

a *Batson* issue was a tactical decision based upon his understanding of the, at time, recently decided case of *Griffin v. State*, 610 So.2d 354, 356 (Miss.1992), and upon instructions from his client. There was a discussion, both on and off the record, related to this Court's ruling in *Griffin*. In *Griffin*, the defendant argued that the State could not make *Batson* challenges to defensive peremptory strikes. However, we ruled that the State could challenge the defense's strikes, stating:

> The United States Supreme Court recently held in *Georgia v. McCollum*, 505 U.S. 42, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992), that *Batson* applies to both prosecutors and defendants. The Court stated:
>
>> Regardless of who invokes the discriminatory challenge, there can be no doubt that the harm is the same-in all cases, the juror is subjected to open and public racial discrimination. . . . We therefore reaffirm today that the exercise of a peremptory challenge must not be based on either the race of the juror or the racial stereotypes held by the party.
>
> *McCollum* takes the wind out of *Griffin's* sails, essentially holding that what's sauce for the goose is sauce for the gander. The assignment of error is wholly without merit.

*Griffin v. State*, 610 So.2d at 356. Bell's counsel indicated this meant that the State could only challenge Bell's strikes if he first challenged the State's strikes. When questioned by the trial court, Bell concurred that he did not wish to have his selection of the jury challenged. Even though trial counsel, and perhaps the trial court, misunderstood *Griffin*, this argument is without merit. The case sub judice is practically identical to the situation presented to us in *Watts v. State*, 733 So.2d 214 (Miss.1999).

¶ 32. In *Watts*, as in this case, "[i]t is clear from the record, however, that it was the defense's idea to 'waive *Batson*' to avoid having to come up with gender- or race-neutral reasons for peremptory challenges." *Id.*, 733 So.2d at 230 ¶ 47. A new trial was not warranted on the basis of the *Batson* issue since the defendant waived the issue. In so holding, we looked to *Mata v. Johnson*, 99 F.3d 1261 (5th Cir.1996), *vacated in part on other grounds*, 105 F.3d 209 (5th Cir.1997). In *Mata*, the Fifth Circuit refused to grant a new trial to a Hispanic defendant who expressly agreed with the prosecution to exclude all eight black members of the venire panel. Both cases turned on the

68

defendants' willingness to participate in the constitutional violation and, thus, denied new trials.  The same reasoning is applied here.

¶ 33. The failure to raise a *Batson* challenge was based upon a tactical decision and was not ineffective assistance of counsel.  Even if the failure to raise a *Batson* challenge were in error, a defendant is entitled to competent counsel, not errorless counsel.  *Woodward v. State*, 843 So.2d 1, 7 ¶ 14 (Miss.2003).

¶ 34. Furthermore, Bell has failed to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different."  *See Burns v. State*, 813 So.2d at 673-74 (citing *Mohr v. State*, 584 So.2d 426, 430 (Miss.1991)).  *See also Strickland v. Washington*, 466 U.S. at 691-94, 104 S.Ct. 2052.  For these reasons, this issue is without merit.

879 So.2d at 434-36.

The failure to make a *Batson* challenge was not ineffective assistance of counsel under the facts of this case because petitioner concurred with his counsel's strategy to forego challenging the prosecution's strikes.

Petitioner's argument is totally speculative because as he correctly states that "[a]ll that can be learned from the record is that Fredrick [sic] Bell's jury consisted of 10 women, 2 men; 1 black and 11 white. (C.P. at 184)."  Memo. at 56.  He is also correct when he states that "it is impossible from the record to determine the number of black jurors the district attorney struck with peremptory challenges."  *Id.*  Petitioner has failed to demonstrate prejudice in that he cannot show that any juror was struck in violation of *Batson*.  His assertion of prejudice is pure speculation.  Speculation is not sufficient to support a finding that there was *Batson* error.  *See Jones v. Jones*, 163 F.3d 285, 306-07 (5th Cir. 1998); *Carter*

69

*v. Johnson*, 131 F.3d 452, 464 (5th Cir. 1997); *Hill v. Black*, 887 F.2d 513, 524 (5th Cir. 1989); *Marler v. Blackburn*, 777 F.2d 1007, 1010 (5th Cir. 1985). Petitioner's claim of prejudice is totally unsupported by the record in this case.

Further, the decision of the Mississippi Supreme Court cites to Fifth Circuit precedent in resolving this issue. *See Mata v. Johnson*, 99 F.3d 1261, 1268-71 (5th Cir.1996), *vacated in part on other grounds*, 105 F.3d 209 (5th Cir.1997).[24] Petitioner would submit that the decision of the Mississippi Supreme Court on this claim is neither contrary to or an unreasonable application of clearly established Supreme Court precedent.

Further, the burden is on the petitioner to show purposeful discrimination in the use of peremptory challenges. In *Ladd v. Cockrell*, 311 F.3d 349 (5th Cir. 2002), the Fifth Circuit held:

> To prove a violation, the burden is on the "defendant who alleges [discrimination] . . . to prove the existence of purposeful discrimination". *Batson*, 476 U.S. at 93, 106 S.Ct. 1712 (internal quotation marks and citation omitted).

> Once the [defendant] has made out a prima facie case of racial discrimination (step one), the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation (step two). If a race-neutral explanation is tendered, the trial court must then decide (step three) whether the [defendant] has proved purposeful racial discrimination.

> *Purkett v. Elem*, 514 U.S. 765, 767, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995).

---

[24]Petitioner did not presented the state court or does he present this Court with an equal protection claim under *Batson*. Any attempt to do so at this late date would be time barred under *Mayle v. Felix,* 545 U.S. 644, 125 S.Ct. 2562, 162 L.Ed.2d 582 (2005).

70

311 F.3d at 355.

Petitioner has totally failed to prove the existence of purposeful discrimination in the exercise of peremptory strikes by the prosecution. Instead, petitioner's claim is based on rank speculation. He has presented no transcript showing the exercise of strikes by either party. His claim is based on the assumption that since only one African American juror sat on his trial, there must have been discrimination. He has not provide the state court or this court with the racial make up of the venire, a list of the jurors struck by peremptory challenges or their race. He cannot even demonstrate a *prima facie* case of a *Batson* violation. If there is no proof of a *Batson* violation then there is no showing of prejudice that resulted from the failure to raise *Batson*.

Faced with a non record on this issue the Mississippi Supreme Court's decision on the issue cannot be said to be contrary to or an unreasonable application of the clearly established law announced in *Batson*. In *Medellin v. Dritke*, 371 F.3d 270, 279 (5th Cir. 2004), the Fifth Circuit held that were the underlying *Batson* claim is without merit a claim of ineffective assistance of counsel based for not raising the issue is also without merit. Petitioner is entitled to no relief on this claim.

Third, petitioner contends that counsel was ineffective for failing to "ensure that the Court and the trial judge provide adequate voir dire conditions and further that counsel failed to conduct a thorough and adequate voir dire." Memo. at 57. Petitioner begins this claim by asserting that counsel failed to forcefully argue his motion of individual sequestered voir of

71

the jury.

Turning first to the claim that counsel was ineffective for failing to make an argument supporting his motion for individual sequestered voir dire we find petitioner raised the substantive claim underlying the ineffectiveness claim on direct appeal. The Mississippi Supreme Court held:

> ¶ 12. Bell did, prior to voir dire, move for an individual, sequestered voir dire of the panel. He presented no argument or cause supporting this motion, and it was denied. As we said in *Hansen v. State*, 592 So.2d 114, 126 (Miss.1991), *cert. denied*, 504 U.S. 921, 112 S.Ct. 1970, 118 L.Ed.2d 570 (1992), and in *Ballenger v. State*, 667 So.2d 1242, 1249 (Miss.1995), cert. denied, 518 U.S. 1025, 116 S.Ct. 2565, 135 L.Ed.2d 1082 (1996), this is a matter within the sound discretion of the trial judge. While not requiring the use of sequestered voir dire, Rule 5.02 of the Uniform Criminal Rules of Circuit Court Practice does, within the court's discretion, allow it, but only on good cause shown.

725 So.2d at 845.

Petitioner then presented a claim of ineffective assistance on the failure to make an argument in support of his motion on post-conviction review. The Mississippi Supreme Court held:

**1. Individual, Sequestered Voir Dire**

> ¶ 36. Prior to voir dire, trial counsel requested an individual, sequestered voir dire of the panel. *Bell*, 725 So.2d at 845. However, counsel failed to present an argument supporting this motion, which was then denied. *Id*. Bell contends that had counsel provided a supporting argument, the request would have been granted and that this failure prevented the defense from uncovering juror biases. The State counters that no authority supports Bell's position. Though the motion stood a better chance of being granted if supported, we cannot be certain as to why the request was denied.

> ¶ 37. Under Uniform Circuit and County Court Rule 3.05 it is within the discretion of the circuit court to allow individually sequestered voir dire.

72

*Stevens v. State*, 806 So.2d 1031, 1054-55 ¶ 109 (Miss.2001); *see also Jones v. State*, 461 So.2d 686, 692 (Miss.1984). Considering a similar issue in *Gilliard v. State*, 462 So.2d 710, 714 (Miss.1985), the Court ruled that the defendant was not denied effective assistance of counsel and held that counsel's failure to request individual sequestered voir dire did not constitute ineffective assistance of counsel absent proof that something would have been discovered resulting in a different jury panel.

¶ 38. In the instant case, although counsel requested individual voir dire and thus is distinguishable from *Gilliard*, Bell is unable to prove but for counsel's failure to argue, the request would have been granted or that a different jury panel would have resulted.

879 So.2d at 436.

Petitioner has not cited a single case from the United States Supreme Court which holds that individual sequestered voir dire is required. Further, he has not cited a single case in which trial counsel has been held ineffective in failing to request individual sequestered voir dire, nor one in which counsel was held to be ineffective in failing to argue more forcefully a motion for this type of voir dire. Simply put there is not federal authority from the United States Supreme Court which the Mississippi Supreme Court's decision would be contrary to or and unreasonable application of. *See Williams v. Taylor, supra.*

The matter of whether to grant individual sequestered voir dire is a state law question and not cognizable in a federal habeas setting. In Mississippi voir dire in a capital case is to be conducted by the so-called "Stennis method" of jury selection, *i.e.*, the prospective jurors are to be questioned in panels. *See Gray v. State*, 375 So.2d 994, 999-1000 (Miss. 1979). The Mississippi Supreme Court has held that the circuit court has discretion under URCCC,

73

Rule 3.05, to allow individual sequestered voir dire.  *See Howell v. State*, 860 So.2d 704, 726-27, ¶¶ 63-71 (Miss. 2003); *Edwards v. State*, 737 So.2d 275, 307-08, ¶¶ 99-101 (Miss. 1999); *Manning v. State*, 735 So.2d 323, 335-36, ¶¶ 17-19 (Miss. 1999); *Bell v. State*, 725 So.2d 836, 844-45, ¶¶ 11-12 (Miss. 1998);  *Berry v. State*, 703 So.2d 269, 291 (Miss. 1997); *Ballenger v. State*, 667 So.2d 1242, 1249-50(Miss.  1995); *Simon v. State*, 688 So.2d 791, 798-801, 804-805 (Miss. 1997); *Carr v. State*, 655 So.2d 824, 842-43 (Miss. 1995), *cert. denied*, 515 U.S. 1076, 116 S. Ct. 782, 133 L.Ed.2d 733 (1996); *Chase v. State*, 645 So.2d 829, 846 (Miss. 1994), *cert. denied*, 515 U.S. 1123, 115 S.Ct. 2279, 132 L.Ed.2d 282, *reh. denied*, 515 U.S. 1179, 116 S.Ct. 20, 132 L.Ed.2d 903 (1995); *Russell v. State*, 607 So.2d 1107, 1110 (Miss. 1992); *Hansen v. State*, 592 So.2d 114, 126 (Miss. 1991); *White v. State*, 532 So.2d 1207, 1217-18 (Miss. 1988); *West v. State*, 463 So.2d 1048, 1054 (Miss. 1985); *Jones v. State*, 461 So.2d 686, 692 (Miss. 1984); *Billiot v. State*, 454 So.2d 445, 456 (Miss. 1984).  However, the Mississippi Supreme Court has held that URCCC, Rule 3.05 "does not require more than what it states on its face."  Thus, if individual sequestered voir dire is denied there is no error.  *See Edwards v. State*, 737 So.2d 275, 307-08, ¶¶ 99-101 (Miss. 1999); *Bell v. State*, 725 So.2d 836, 844-45, ¶¶ 11-12 (Miss. 1998); *Ballenger v. State*, 667 So.2d 1242, 1249-50 (Miss.  1995); *Russell, supra*, 607 So.2d at 1110; *Hansen, supra*, 592 So.2d at 126;  *White v. State*, 532 So.2d 1207, 1218 (Miss. 1987); *West v. State*, 463 So.2d 1048, 1054 (Miss. 1985).

Since petitioner has failed to show how the decision of the Mississippi Supreme Court

is contrary to or an unreasonable application of clearly established federal law as announced by the United States Supreme Court he is not entitled to habeas relief on this claim of ineffective assistance of counsel. Petitioner has failed to demonstrate deficient performance or resulting prejudice. He is entitled to no relief on this claim.

Petitioner then moves on to the claim that the voir dire was inadequate to ferret out racial prejudice and bias based on publicity. This portion of petitioner's argument focuses on the questions the trial judge asked the jury. He contends that the questions were leading and suggested the answers to the questions and therefore were not adequate to uncover actual bias racial or otherwise. This claim was first raised on direct appeal to the Mississippi Supreme Court. The court held:

> ¶ 9. Bell urges that the voir dire of the jury at his trial was so flawed as to be meaningless and that as a result the jury was excessively weighted in favor of the prosecution by the presence of jurors with ties to the deceased and to law enforcement so as to deprive him of the protection guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution. Specifically, he points out that eight of the twelve jurors either had relatives in law enforcement or had ties of family or friendship with the deceased or with his family. He argues that this was at least in part due to the trial judge's conduct in examining the panel with leading questions suggesting to the jurors the proper answers, his failure to conduct meaningful individual examination of the panel members, and his reliance upon the members' self-assessment of their ability to give Bell a fair trial.

> ¶ 10. We cannot today know how the trial judge would have conducted his voir dire if Bell had objected or raised these issues before him, because the defense gave him no opportunity to consider them. No objection was made as to the manner of the judge's questioning or to his decisions on challenges for cause. When the panel was tendered to the defense after the State's challenges for cause, six of the eight were acknowledged as acceptable. The last two were accepted after Bell had exhausted his challenges, but no request for

75

additional challenges was made. Following trial, his post-trial motions raised no questions as to the voir dire procedures. We have held and hold today that a party who fails to object to the jury's composition before it is empaneled waives any right to complain thereafter. *Hunter v. State*, 684 So.2d 625, 631 (Miss.1996); *Myers v. State*, 565 So.2d 554, 557 (Miss.1990); *Pickett v. State*, 443 So.2d 796, 799 (Miss.1983). *In the present case, any flaws in the judge's examination of the panel are mitigated by the leeway allowed defense counsel in his phase of the voir dire*.

¶ 11. Having said this, we have also examined the record of the voir dire by the trial court as to possible plain error, and although we cannot say that the manner of examining the jury panel was desirable, its defects do not rise to the level of fundamental constitutional error. We do note, however, that trial judges should exercise caution in performing their profound duty to select fair, impartial and competent juries. Words coming from the judge bear special weight with those citizens who are asked to try the facts of cases, both civil and criminal. Care should be taken that the nuances imbedded in the judges' questions do not suggest that there is only one proper answer, and that questions are asked in a way that would not cause one, from fear or embarrassment, to give anything less than frank, honest answers. Questions such as "Do you know of any reason that you cannot be fair," are of little help, as they require an uncommon self diagnosis. In *Fisher v. State*, 481 So.2d 203, 222 (Miss.1985), we censured "accepting at face value the assurances of the jurors impaneled that they could ignore what they had read and heard . . ." The voir dire in this case was extremely poor, *however, counsel for the defendant acquiesced in the voir dire and further counsel for the defense was unfettered in his own voir dire*.

725 So.2d at 844-45. [Emphasis added.]

Based most likely on the direct appeal opinion petitioner then raised a claim of ineffective assistance of counsel based on the failure of counsel to object to the trial court's questioning of the jury on post-conviction review. The Mississippi Supreme Court held:

**2. Court's Examination**.

¶ 39. This Court has already addressed on Bell's direct appeal his contention that "the voir dire of the jury at his trial was so flawed as to be

meaningless and that as a result the jury was excessively weighed in favor of the prosecution" and that the flaws were due to "leading questions suggesting to the jurors the proper answers, his failure to conduct meaningful individual examination of the panel members, and his reliance upon the members' self-assessment of their ability to give Bell a fair trial." *Bell*, 725 So.2d at 844 ¶ 9.   Although no objections were made at the time or in post-trial motions, we examined the issue and held:

> We have also examined the record of the voir dire by the trial court as to any possible plain error, and although we cannot say that the manner of examining the jury was desirable, its defects do not rise to the level of fundamental constitutional error.

*Id*. at 844 ¶ 11.

> ¶ 40. Because this issue was already addressed on direct appeal, an evidentiary hearing is unnecessary on this issue.  Further, this issue is without merit.  Not only has Bell failed to show that the performance of trial counsel was deficient, there has been no showing that the jury empaneled was not fair and impartial.

879 So.2d at 436-37.

The Mississippi Supreme Court held that counsel was not ineffective because petitioner failed to show that the jury that was impaneled was not fair and impartial after reviewing the entire voir dire.  The state court also pointed out the liberal voir dire that petitioner's counsel was afforded in its direct appeal opinion.  Petitioner has yet to demonstrate prejudice by showing a single juror that was actually not fair and impartial in this case.  The decision of the Mississippi Supreme Court on this ineffective assistance of counsel claim is neither contrary to or an unreasonable application of *Strickland, supra*.  Petitioner is entitled to no relief on this claim.

Next, petitioner turns to trial counsels voir dire and contends that it was inadequate

to allow counsel to properly exercise cause and peremptory challenges against members of the venire. This ineffectiveness claim was presented to the Mississippi Supreme Court on post-conviction review. The state court held:

### 3. Information Sufficient to Exercise Meaningful Challenges.

¶ 41. Bell cites several questions that counsel failed to ask the prospective juror and claims that such questions were necessary to cure trial court's defective voir dire. Examples of necessary questions include: 1) whether they would automatically impose the death penalty or would they fairly consider mitigating evidence; 2) do they have racial biases; 3) whether they were exposed to pre-trial publicity; 4) whether they or their family members worked in a convenience store; 5) whether they or a family member had ever been a victim of a crime; 6) whether they had a friend or relative who had a drug or alcohol problem; and 7) whether they had religious beliefs concerning alcohol.

¶ 42. Bell cites no authority that the failure to ask such questions supports the claim of ineffective assistance of counsel. In *Conner v. State*, 684 So.2d at 613, the Court found that counsel was not ineffective for failing to conduct a more extensive voir dire, especially where any questions would have been redundant and the accused failed to indicate how the defense was prejudiced by counsel's failure. *See also Baldwin v. Johnson*, 152 F.3d 1304, 1316 (11th Cir.1998) (Defense counsel's failure to conduct more extensive questioning of potential jurors regarding their racial attitudes and their views of death penalty on voir dire represented reasonable, strategic decision and, thus, did not constitute ineffective assistance of counsel); *Price v. State*, 749 So.2d 1188, 1199 ¶ 42 (Miss.Ct.App.1999) ("Deciding what questions to ask during voir dire is left largely up to the attorney" and is a matter of trial strategy.).

¶ 43. We examined the record of the voir dire in the direct appeal and found that, although the trial court may not have conducted the best voir dire, "any flaws in the judge's examination of the panel are mitigated by the leeway allowed defense counsel in his phase of voir dire." *Bell*, 725 So.2d at 844 ¶ 10. By raising this issue now, Bell is attempting a second bite at the apple. As stated above, not only has Bell failed to show that the performance of trial counsel was deficient, there has been no showing that the jury impaneled was

not fair and impartial.

879 So.2d at 437.

Again the Mississippi Supreme Court reviewed the voir dire in this case and found that counsel was not deficient and further that petitioner did not demonstrate that a single juror that sat on the trial of this case was not fair and impartial. Petitioner's laundry list of questions trial counsel "coulda' and "shoulda" put to the venire is just that. The Court will find. though, that these questions or substantively similar questions were put to the venire. We are not aware of any rule of law to the effect that the same or similar questions to those put by the judge or prosecutor must be put by defense counsel as well, upon pain of being deemed ineffective.

While it is said that the trial attorney should have asked questions regarding a number of matters, it is not said and it is not demonstrated that the jury seated to try the petitioner were not capable of determining his guilt and sentence according to the evidence presented in the case. In any event, in many of the instances cited by the petitioner, such as the alleged failure to determine whether the venireman could hear the case free of racial animus, the claim is simply untrue. TR. 87.

Petitioner has not shown that a single juror would automatically vote for the death penalty, he has not shown that a single juror would refuse to consider mitigation evidence, he has failed to show that a single juror was racially biased, he has failed to show that a single juror was influenced by pre-trial publicity, he has failed to show that a single juror

79

worked or had family members who worked in a convenience store, he has failed to show that a single juror had been the victim of a crime or had a close family member or friend that had been the victim of a crime. Petitioner's claim is based on mere speculation without a single shred of evidence to back up his claim. Petitioner has utterly failed to demonstrate prejudice. To succeed under *Strickland* petitioner must demonstrate deficient performance and resulting prejudice. Prejudice cannot be based on speculation. *See Jones v. Jones*, 163 F.3d 285, 306-07 (5th Cir. 1998); *Carter v. Johnson*, 131 F.3d 452, 464 (5th Cir. 1997); *Hill v. Black*, 887 F.2d 513, 524 (5th Cir. 1989); *Marler v. Blackburn*, 777 F.2d 1007, 1010 (5th Cir. 1985).

Petitioner is entitled to no relief on this claim.

Petitioner next contends that trial counsel was ineffective in failing to rehabilitate jurors who voiced opposition to the death penalty. His only allegation of prejudice is that he was prejudiced because "his jury sentenced to death". Memo. at 72.

This claim of ineffective assistance was presented to the Mississippi Supreme Court on post-conviction review. The state court held:

### 4. Rehabilitation of potential jurors.

¶ 44. Bell claims that counsel failed to rehabilitate jurors Glenda Gale Boozer Steed, Charles Lott, Stephen Bernard Chism, Ella Mae Russell, Kennedy Willis, and John William Parker, who, for religious reasons, could not impose the death penalty. He argues that counsel should always attempt to rehabilitate jurors. The State claims that Bell misleads the Court in that counsel did attempt to rehabilitate. We find that this issue is without merit.

¶ 45. Bell cites several cases, including: *Phenizee v. State*, 180 Miss.

746, 178 So. 579 (1938) and *Burns v. Estelle*, 592 F.2d 1297 (5th Cir.1979), aff'd en banc, 626 F.2d 396 (5th Cir.1980), neither of which support his position. First in *Phenizee*, this Court held that counsel is entitled to further question the jury after the trial court is satisfied that the panel is competent. *Phenizee*, 178 So. at 582. Because the right to question venire men is not at issue, the Court finds that the holding from *Phenizee* has no impact on the instant matter.

¶ 46. Bell incorrectly claims that in *Burns*, the Fifth Circuit vacated a death sentence because the defense was not allowed to voir dire a potential juror who expressed doubts about the death penalty. Instead the Fifth Circuit held that the death sentence could not be carried out because a venire member, who did not irrevocably commit to vote against the penalty of death regardless of the facts and circumstances that might emerge in the course of the proceedings, was prematurely dismissed. *Burns v. Estelle*, 626 F.2d at 398. Bell fails to cite any case holding that counsel was held to be ineffective because he or she failed to rehabilitate a venire member.

¶ 47. Unless there is proof that rehabilitation was possible, a defendant is not prejudiced by counsel's failure to rehabilitate venire member who were excused because of their views contrary to death penalty. *Sawyer v. Butler*, 848 F.2d 582, 589 (5th Cir.1988). *See also Williams v. Collins*, 16 F.3d 626, 633 (5th Cir.1994) (defense counsel was not ineffective in failing to object when venire members were excused for cause based on their inability impose death penalty under any circumstances; any objections and attempts to rehabilitate venire members would have been futile).

¶ 48. In the instant case, all the jurors in question expressed that they were unwilling to impose the death penalty, regardless of the circumstances. It was apparent that they were unable perform their duties in accordance with their instructions and oath. *See generally Williams*, 16 F.3d at 633. Bell has made no showing that rehabilitation was possible. Therefore, this issue is without merit.

879 So.2d at 437-38.

Again, petitioner fails to cite a single case from the United States Supreme Court that holds

that it is ineffective assistance of counsel to fail to attempt to rehabilitate a juror that has

stated that they cannot return a sentence of death. The Mississippi Supreme Court's decision is neither contrary to or an unreasonable application of *Strickland*.

Actually, the record in this case shows that the trial counsel did attempt this very thing. TR. 82-84. Anyhow, the veniremen excused for cause were firm, definite and unyielding in their belief that they either could not sit in judgment on another person or that they could not impose a sentence of death. TR. 56-58. The record does not support petitioner's allegations. Petitioner is entitled to no relief on this claim of ineffectiveness.

Next petitioner contends that counsel was ineffective in failing to "identify and exclude jurors whose bias would have prevented them from being impartial in this case because the had some connection with the victims family or had relatives who were in law enforcement. He makes the assertion that these jurors were biased and therefore he was prejudiced because he received the death penalty.

Petitioner presented this claim of ineffective assistance to the Mississippi Supreme Court on post-conviction review. The state court held:

### 5. Removal for Cause

¶ 49. Bell argues that his trial counsel failed to object to the impanelment or have removed eight of the twelve jurors because each had ties to law enforcement or the victim's family. He claims that counsel failed to protect his right to a fair trial by an impartial jury as provided under U.S. Constitution, amend. VI, and Article 3, Section 26 of the Mississippi Constitution. *See generally Mhoon v. State*, 464 So.2d 77, 79 (Miss.1985). On direct appeal, we affirmed the trial court where it denied Bell's challenge for cause as to other jurors who had relationships with the victim or his family or the law enforcement community. *Bell*, 725 So.2d at 845-46. We held that "mere acquaintance or even family relationships with parties or those related

82

to parties is not sufficient to require that a juror be excused for cause." *Id*. at 846 ¶ 16.

>With respect to the overall performance of the attorney, "counsel's choice of whether or not to file certain motions, call witnesses, ask certain questions, or make certain objections fall within the ambit of trial strategy" and cannot give rise to an ineffective assistance of counsel claim.

*Jackson v. State*, 815 So.2d 1196, 1200 ¶ 8 (Miss.2002) (citing *Cole v. State*, 666 So.2d 767, 777 (Miss.1995)).

>¶ 50. As this Court has pointed out:

This Court has discussed the wide latitude allowed attorneys regarding their trial strategy:

>>This Court gives much deference to an attorney's trial tactics. As this Court has stated: Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. *Cf. Engle v. Isaac*, 456 U.S. 107, 133-134 [102 S.Ct. 1558, 1574-75, 71 L.Ed.2d 783] (1982). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. *Lambert v. State*, 462 So.2d 308, 316 (Miss.1984), *citing Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694. The right to effective counsel does not entitle the defendant to have an attorney who makes no mistakes at trial. The defendant just has a right to have competent counsel.

*Smiley v. State*, 815 So.2d 1140, 1148 ¶ 32 (Miss.2002) (citing *Mohr v. State*, 584 So.2d 426, 430 (Miss.1991)).

>¶ 51. Moreover, the perceived relationships between the jurors and the

> victim or the law enforcement community are tenuous at best. The case was tried in a rural Mississippi county with a limited jury pool. The decision not to seek removal of these named jurors may arguably be part of trial strategy. Because we cannot use hindsight to analyze trial counsel's unsuccessful strategy, this issue is without merit.
>
> 879 So.2d at 438-39.

Again, petitioner attempts to build a case of ineffective assistance of counsel out of a house of cards that falls at the first puff of wind. The record demonstrates that those jurors who were seated who had such ties had only a tenuous connection. There is no rule to the effect that a person with a connection of some sort with law enforcement or with a victim is for that reason alone challengeable. In actual fact, the law is entirely to the contrary. *Bell v. State*, 725 So.2d 836, 846 (Miss. 1998). The individuals involved indicated their impartiality, and since their connections were not so close as to raise serious doubt about their ability to be impartial, no good purpose would have been served in challenging them. Furthermore, the defense counsel may well have wanted them to serve on the jury.

As for prejudice petitioner again only asserts that he was prejudiced because he was sentence to death. That is the only prejudice asserted and he has asserted it over and over without connecting it to any specific demonstrable prejudice. This is again mere speculation not sufficient to support a finding of prejudice sufficient to support a claim of ineffective assistance of counsel. *See Jones v. Jones*, 163 F.3d 285, 306-07 (5th Cir. 1998); *Carter v. Johnson*, 131 F.3d 452, 464 (5th Cir. 1997); *Hill v. Black*, 887 F.2d 513, 524 (5th Cir. 1989); *Marler v. Blackburn*, 777 F.2d 1007, 1010 (5th Cir. 1985). Petitioner is entitled to no relief

as the Mississippi Supreme Court's decision is not an unreasonable application of *Strickland.*

Finally, in two sentences petitioner contends that counsel was ineffective in failing to request additional peremptory challenges. The claim made in the state court was that counsel should have asked for additional peremptory challenges after the trial court denied his challenges for cause. When this claim was raised on post-conviction review, the state court held:

### 6. Additional Peremptory Challenges

¶ 52. Bell claims that counsel's failure to request additional peremptory challenges rendered counsel's assistance ineffective. The Court finds that this issue is without merit. Also, through this claim, Bell attempts to emphasize how the trial court erred in denying his challenges for cause, an issue considered in the direct appeal and as such, is barred under MISS. CODE. ANN. § 99-39-21(3).

879 So.2d at 439.

Petitioner does not inform us in his two sentence argument on this point how counsel was ineffective or how he was prejudiced. The argument in the state court was that because the trial court had denied his challenges for cause he should have asked for additional peremptory challenges. It does not offend the United States Constitution to force a defendant to use a peremptory challenge to remove a juror who the court failed to remove for cause. *See Ross v. Oklahoma*, 487 U.S. 81, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988). While petitioner again speculates that certain jurors were biased because they knew the victims family in some manner or that they were in some manner connected to law enforcement, this is mere speculation and does not support a finding of prejudice. *See Jones v. Jones*, 163 F.3d

85

285, 306-07 (5th Cir. 1998); *Carter v. Johnson*, 131 F.3d 452, 464 (5th Cir. 1997); *Hill v. Black*, 887 F.2d 513, 524 (5th Cir. 1989); *Marler v. Blackburn*, 777 F.2d 1007, 1010 (5th Cir. 1985).

### 5.  Failure to develop a meaningful and consistent theme in the presentation of the defense.

Petitioner next contends that trial counsel was ineffective in failing to develop a "meaningful and consistent theme" of defense during the guilt phase of his trial.[25]  The claim before this Court, as it did in the state court, centers on petitioner's closing argument at the conclusion of the guilt phase.  His contention is that counsel's "discombobulated" argument prejudiced petitioner.  This claim was presented to the Mississippi Supreme Court on post-conviction review.  In denying relief the Mississippi Supreme Court held:

**I. Meaningful and Consistent Theme of Defense.**

¶ 53. Bell argues that the trial counsel presented conflicting defenses. Trial counsel argued that Bell was in Memphis and not in the store at the time of the murder.  Bell maintains that counsel failed to have a consistent notion of what the defense theory should be, and that this failure supports the cumulative error.  Specifically, he cites defense's closing argument. The Court finds this claim without merit.

¶ 54. Bell cites the following cases: *McFadden v. United States*, 614 A.2d 11 (D.C.1992) (court failed to conduct a pretrial inquiry regarding

---

[25]Petitioner now for the first time in this habeas petition argues that the failure to make an opening statement to the jury gave them no outline of the case to follow during the trial. No claim was presented to the state court regarding the failure to make an opening statement to the jury prior to the guilt phase.  *See* Appellant's Brief at 53-54.  To the extent petitioner raises this new claim it is unexhausted and barred from review by this Court.  *See Ruiz v. Quarterman, supra.*

counsel's effectiveness, after counsel admitted his lack of preparation); *People v. Hattery*, 109 Ill.2d 449, 94 Ill.Dec. 514, 488 N.E.2d 513 (1985) (by conceding defendant's guilt, counsel failed to subject prosecution's case to meaningful adversarial testing). We find that counsel's conduct in the instant case does not rise to level of the failures discussed in the cases cited.

¶ 55. Any alleged conflicting defenses resulted from the substantial evidence of Bell's guilt. As for the closing argument, trial counsel emphasized the burden of proof, attempted to raise reasonable doubt and attacked the credibility of witnesses. Accordingly, the closing argument was both consistent and effective. *See Yarborough v. Gentry*, 540 U.S. 1, 124 S.Ct. 1, 157 L.Ed.2d 1 (2003).

879 So.2d at 439-40.

This decision of the Mississippi Supreme Court did not result in a decision that is contrary to or an unreasonable application of the precedent announced in *Strickland, supra.*

We note that the Mississippi Supreme Court relied on the United States Supreme Court's decision in *Yarborough v. Gentry*, 540 U.S. 1, 124 S.Ct. 1, 157 L.Ed.2d 1 (2003), in support of its decision. In reversing the Ninth Circuit the United States Supreme Court in *Yarborough* held:

The right to effective assistance extends to closing arguments. *See Bell v. Cone*, 535 U.S. 685, 701-702, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); *Herring v. New York*, 422 U.S. 853, 865, 95 S.Ct. 2550, 45 L.Ed.2d 593 (1975). Nonetheless, counsel has wide latitude in deciding how best to represent a client, and deference to counsel's tactical decisions in his closing presentation is particularly important because of the broad range of legitimate defense strategy at that stage. Closing arguments should "sharpen and clarify the issues for resolution by the trier of fact," *id.*, at 862, 95 S.Ct. 2550, but which issues to sharpen and how best to clarify them are questions with many reasonable answers. Indeed, it might sometimes make sense to forgo closing argument altogether. *See Bell, supra*, at 701-702, 122 S.Ct. 1843. *Judicial review of a defense attorney's summation is therefore highly deferential-and doubly deferential when it is conducted through the lens of federal habeas.*

87

In light of these principles, the Ninth Circuit erred in finding the California Court of Appeal's decision objectively unreasonable. The California court's opinion cited state case law setting forth the correct federal standard for evaluating ineffective-assistance claims and concluded that counsel's performance was not ineffective. That conclusion was supported by the record. The summation for the defense made several key points: that Williams's testimony about the quality of light was inconsistent; that Handy's personal circumstances were irrelevant to Gentry's guilt; that the case turned on whether the stabbing was accidental, and the jury had to acquit if it believed Gentry's version of events; that Gentry's criminal history was irrelevant to his guilt, particularly given the seriousness of the charge compared to his prior theft offenses; and that Gentry's misstatement of the number of times he had been convicted could be explained by his lack of education. Woven through these issues was a unifying theme-that the jury, like the prosecutor and defense counsel himself, were not at the scene of the crime and so could only speculate about what had happened and who was lying.

The Ninth Circuit rejected the state court's conclusion in large part because counsel did not highlight various other potentially exculpatory pieces of evidence: that Handy had used drugs on the day of the stabbing and during the early morning hours of the day of her preliminary hearing; that Williams's inability to see the stabbing clearly was relevant to the issue of intent; that Gentry's testimony was consistent with Williams's in some respects; that the government did not call as a witness Williams's co-worker, who also saw the stabbing; that the stab wound was only one inch deep, suggesting it may have been accidental; that Handy testified she had been stabbed twice, but only had one wound; and that Gentry, after being confronted by Williams, did not try to retrieve his weapon but instead moved toward Handy while repeating, "she's my girlfriend." *See* 320 F.3d, at 900-901.

These other potential arguments do not establish that the state court's decision was unreasonable. Some of the omitted items, such as Gentry's reaction to Williams, are thoroughly ambiguous. Some of the others might well have backfired. For example, although Handy claimed at trial she had used drugs before the preliminary hearing, she testified at the hearing that she was not under the influence and could remember exactly what had happened the day of the stabbing. And, although Handy's wound was only one inch deep, it still lacerated her stomach and diaphragm, spilling the stomach's contents into her chest cavity and requiring almost two hours of surgery. These are facts that the prosecutor could have exploited to great advantage in

88

her rebuttal.

Even if some of the arguments would unquestionably have supported the defense, it does not follow that counsel was incompetent for failing to include them. Focusing on a small number of key points may be more persuasive than a shotgun approach. As one expert advises: "The number of issues introduced should definitely be restricted. Research suggests that there is an upper limit to the number of issues or arguments an attorney can present and still have persuasive effect." R. Matlon, Opening Statements/Closing Arguments 60 (1993)(citing Calder, Insko, & Yandell, The Relation of Cognitive and Memorial Process to Persuasion in a Simulated Jury Trial, 4 J. Applied Social Psychology 62 (1974)). Another authority says: "The advocate is not required to summarize or comment upon all the facts, opinions, inferences, and law involved in a case. A decision not to address an issue, an opponent's theory, or a particular fact should be based on an analysis of the importance of that subject and the ability of the advocate and the opponent to explain persuasively the position to the fact finder." R. Haydock & J. Sonsteng, Advocacy: Opening and Closing § 3.10, p. 70 (1994). In short, judicious selection of arguments for summation is a core exercise of defense counsel's discretion.

When counsel focuses on some issues to the exclusion of others, there is a strong presumption that he did so for tactical reasons rather than through sheer neglect. *See Strickland*, 466 U.S., at 690, 104 S.Ct. 2052 (counsel is "strongly presumed" to make decisions in the exercise of professional judgment). That presumption has particular force where a petitioner bases his ineffective-assistance claim solely on the trial record, creating a situation in which a court "may have no way of knowing whether a seemingly unusual or misguided action by counsel had a sound strategic motive." *Massaro v. United States*, 538 U.S. 500, 505, 123 S.Ct. 1690, 1694, 155 L.Ed.2d 714 (2003). Moreover, even if an omission is inadvertent, relief is not automatic. The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight. *See Bell, supra*, at 702, 122 S.Ct. 1843; *Kimmelman v. Morrison*, 477 U.S. 365, 382, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986); *Strickland, supra*, at 689, 104 S.Ct. 2052; *United States v. Cronic*, 466 U.S. 648, 656, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). To recall the words of Justice (and former Solicitor General) Jackson: "I made three arguments of every case. First came the one that I planned-as I thought, logical, coherent, complete. Second was the one actually presented-interrupted, incoherent, disjointed, disappointing. The third was the utterly devastating argument that

I thought of after going to bed that night."  Advocacy Before the Supreme Court, 37 A.B.A.J. 801, 803 (1951).  Based on the record in this case, a state court could reasonably conclude that Gentry had failed to rebut the presumption of adequate assistance.  Counsel plainly put to the jury the centerpiece of his case: that the only testimony regarding what had happened that the jury heard "come from the truth chair" was conflicting; that none of his client's testimony was demonstrably a lie; and that the testimony contradicting his client came in "three versions."  *See* 320 F.3d, at 898.  The issues counsel omitted were not so clearly more persuasive than those he discussed that their omission can only be attributed to a professional error of constitutional magnitude.

The Ninth Circuit found other flaws in counsel's presentation.  It criticized him for mentioning "a host of details that hurt his client's position, none of which mattered as a matter of law."  *Id*., at 900.  Of course the reason counsel mentioned those details was precisely to remind the jury that they were legally irrelevant.  That was not an unreasonable tactic.  *See* F. Bailey & H. Rothblatt, Successful Techniques for Criminal Trials § 19:23, p. 461 (2d ed. 1985) ("Face up to [the defendant's] defects . . . [and] call upon the jury to disregard everything not connected to the crime with which he is charged").  The Ninth Circuit singled out for censure counsel's argument that the jury must acquit if Gentry was telling the truth, even though he was a "bad person, lousy drug addict, stinking thief, jail bird."  *See* 320 F.3d, at 900.  It apparently viewed the remark as a gratuitous swipe at Gentry's character.  While confessing a client's shortcomings might remind the jury of facts they otherwise would have forgotten, it might also convince them to put aside facts they would have remembered in any event.  This is precisely the sort of calculated risk that lies at the heart of an advocate's discretion.  By candidly acknowledging his client's shortcomings, counsel might have built credibility with the jury and persuaded it to focus on the relevant issues in the case.  *See* J. Stein, Closing Argument § 204, p. 10 (1992-1996) ("[I]f you make certain concessions showing that you are earnestly in search of the truth, then your comments on matters that are in dispute will be received without the usual apprehension surrounding the remarks of an advocate").  As Judge Kleinfeld pointed out in dissenting from denial of rehearing en banc, the court's criticism applies just as well to Clarence Darrow's closing argument in the Leopold and Loeb case:  "'I do not know how much salvage there is in these two boys. . . [Y]our Honor would be merciful if you tied a rope around their necks and let them die; merciful to them, but not merciful to civilization, and not merciful to those who would be left behind.'"  320 F.3d, at 895 (quoting Famous

American Jury Speeches 1086 (F. Hicks ed. 1925) (reprint 1990)).

The Ninth Circuit rebuked counsel for making only a passive request that the jury reach some verdict, rather than an express demand for acquittal. But given a patronizing and overconfident summation by a prosecutor, a low-key strategy that stresses the jury's autonomy is not unreasonable. One treatise recommends just such a technique: "Avoid challenging the jury to find for your client, or phrasing your argument in terms suggesting what their finding must be . . . . [S]cientific research indicates that jurors will react against a lawyer who they think is blatantly trying to limit their freedom of thought." Stein, *supra*, § 206, at 15.

The Ninth Circuit faulted counsel for not arguing explicitly that the government had failed to prove guilt beyond a reasonable doubt. Counsel's entire presentation, however, made just that point. He repeatedly stressed that no one-not the prosecutor, the jury, nor even himself-could be sure who was telling the truth. This is the very essence of a reasonable-doubt argument. To be sure, he did not insist that the existence of a reasonable doubt would require the jury to acquit-but he could count on the judge's charge to remind them of that requirement, and by doing so he would preserve his strategy of appearing as the friend of jury autonomy.

Finally, the Ninth Circuit criticized counsel's approach on the ground that, by confessing that he too could not be sure of the truth, counsel "implied that even he did not believe Gentry's testimony." 320 F.3d, at 900. But there is nothing wrong with a rhetorical device that personalizes the doubts anyone but an eyewitness must necessarily have. Winning over an audience by empathy is a technique that dates back to Aristotle. *See* P. Lagarias, Effective Closing Argument §§ 2.05-2.06, pp. 99-101 (1989) (citing Aristotle's Rhetoric for the point that "[a] speech should indicate to the audience that the speaker shares the attitudes of the listener, so that, in turn, the listener will respond positively to the views of the speaker"); *id.*, § 3.03, at 112 (deriving from this principle the advice that "counsel may couch his arguments in terms of 'we,' rather than 'you, the jury'").

To be sure, Gentry's lawyer was no Aristotle or even Clarence Darrow. But the Ninth Circuit's conclusion-not only that his performance was deficient, but that any disagreement with that conclusion would be objectively unreasonable-gives too little deference to the state courts that have primary responsibility for supervising defense counsel in state criminal trials.

91

540 U.S. at 5-11.

Respondents would assert that under the type analysis set forth in *Yarborough*, the decision of the Mississippi Supreme Court is neither contrary to or an unreasonable application of *Strickland, supra. See Williams v. Taylor, supra.*

Petitioner is entitled to no relief on this claim of ineffective assistance of counsel.

### 6.    Failure to effectively impeach key prosecution witness.

Petitioner next contends that trial counsel was ineffective in failing to impeach Robert James, a "key prosecution witness." Petitioner presented this claim of ineffective assistance of counsel to the Mississippi Supreme Court on post-conviction review.

In his state court petition petitioner's claim of ineffective assistance of counsel on this point was based on the failure to impeach by bring out that he had a motive to lie. Petitioner's entire claim in state court was four paragraphs long and did not mention anything about an suggestive identification procedure. The claim as presented to the state court reads:

> 207.    *Counsel failed to impeach a witness who was called against his client with the motive that he had to lie against the accused.*
>
> 208.    Robert McKinney James was one of the star witnesses for the prosecution. (T. 188-204). Although Mr. James was present at the time of the murder he was never charged as a principle or an accessory to the instant offense.
>
> 209.    During the trial of the instant matter, *counsel failed to question Mr. James about his motive to lie against the petitioner*. Surely it was in Mr. James' benefit to see that someone other than himself was charged and convicted of the murder of Bert Bell and this fact alone presented sufficient motivation for Mr. James to alter his recollection of the events in his favor rather than that of the petitioner.

92

210.    In *Commonwealth v. Kimball*, 683 A.2d 666 (Pa. Super. Ct. 1996, *appeal granted*, 693 A.2d 587 (Pa. 1997), counsel was found ineffective in a murder case for failing to cross-examine the defendant's former cellmate regarding his motivation for testifying that the defendant admitted the murder to him.  Defense counsel knew the cellmate's testimony was critical on the issue of intent and the cellmate had a deal which allowed him to serve his sentence in the county jail rather than the state penitentiary, yet did ot bring this out.  *See also Commonwealth v. Murphy*, 591 A.2d 278 (Pa. 1991)(counsel ineffective for failing to cross-examine the only eyewitness on bias based on juvenile probationary status).

St. PCR Pet. at 54. [Emphasis added.][26]

Petitioner has completely changed the basis of the ineffective assistance of counsel claim before this Court.  His claim is now based solely on the fact that trial counsel did not attempt to impeach James on the fact that his identification of petitioner was based on an impermissible photographic show up.  This claim was never presented to the state court and therefore is unexhausted for purposes of habeas review.  Because the claim cannot now be exhausted it is barred from review on federal habeas.  *See Ruiz v. Quarterman, supra*.  This not the same claim petitioner presented to the state court for resolution in any way, shape or fashion.  This claim is barred from consideration on habeas review and petitioner is entitled to no relief on this claim.  *See Ruiz v. Quarterman, supra*.

### 7.    Failure to object to the introduction of irrelevant prejudicial evidence.

---

[26]The state court address this claim of ineffective assistance of counsel in its post-conviction opinion and held it to be without merit.  *See* 879 So.2d at 440, ¶ 56.  However, this claim is not presented to this Court on habeas review.  Further, it is to late to amend the petition to add the claim presented to the state court as it is now time barred.  *See Mayle v, Felix*, 545 U.S. 644, 125 S.Ct. 2562, 162 L.Ed.2d 582 (2005).

Petitioner contends that he was denied the effective assistance of counsel by trial counsel's stipulation to the introduction of three pistols into evidence.[27] Like he did in state court petitioner cites not a single case in support of this claim. Further, his claim of prejudice is "[t]his evidence prejudiced Petitioner because he was convicted and sentenced to death." Memo. at 79. This is not a showing of prejudice. It is simply a supposition that because I was convicted it must have been prejudicial. That is not a showing of prejudice under *Strickland*, *supra*.

When petitioner presented this claim of ineffective assistance of counsel on post-conviction review, the Mississippi Supreme Court held:

### L. Objection to Evidence.

¶ 58. Trial counsel stipulated to the introduction of three weapons: a .22 caliber pistol, a .38 caliber pistol, and a .25 caliber pistol. Because no witness testified regarding the .25 caliber weapon, Bell alleges that .25 was irrelevant and ultimately prejudiced him. Bell fails both to discuss how he was prejudiced or to cite any case law in support of his position. Not only is this issue without merit, but also counsel's choice whether to make certain objections fall within the ambit of trial strategy and cannot give rise to an ineffective assistance of counsel claim. *Jackson*, 815 So.2d at 1200 ¶ 8.

879 So.2d at 440.

While no witness testified that there was a .25 caliber pistol used in the murder and robbery of Bert Bell, there was testimony that prior to the murder robbery that Bell had a .22 caliber pistol and that his accomplice Anthony Doss had a pistol (no caliber was stated). The other

---

[27]He couches it as a failure to object. However, counsel stipulated to their introduction.

94

pistol, the .38 caliber pistol, belonged to the store and was taken from the store during the robbery. Thus, there was testimony regarding three pistols. The fact that no one testified that the third pistol mentioned in the testimony was a .25 caliber pistol does not make it inadmissible or prejudicial. This .25 caliber pistol was found in Bernard Gladney's car, petitioner's accomplice in the Tennessee murder. Gladney had driven petitioner and his cohorts to Memphis after the Mississippi murder.

Petitioner has failed to demonstrate deficient performance and resulting prejudice. Petitioner failed to make out a case of ineffective assistance of counsel under *Strickland* by counsel's stipulating that the three pistols could be introduced into evidence. Petitioner is entitled to no relief on this claim of ineffective assistance of counsel. The decision of the Mississippi Supreme Court is neither contrary to or an unreasonable application of *Strickland*.

### 8. Failure to object to instructions that incorrectly stated the law.

Petitioner next contends that counsel was ineffective in failing to object to the instruction on accomplice liability at trial. The instruction in question is Instruction S-2. When the claim was presented to the Mississippi Supreme Court on direct appeal the Mississippi Supreme Court held the claim barred for failure to object and alternatively addressed the merits of the claim. Petitioner now raises the failure to object to the instruction as a ground for finding ineffective of counsel on the guilt phase of the case. The Mississippi Supreme Court held:

95

IV. INSTRUCTIONS S-2 AND S-3

¶ 20. The jury received the following instructions, which Bell would have us find allowed the jury to convict him as a principal in disregard of his defense that, at most, he was an accessory after the fact. Instruction S-2 reads:

> The Court instructs the jury that each person present at the time, and consenting to and encouraging the commission of a crime, and knowingly, willfully and feloniously doing any act which is an element of the crime or immediately connected with it, or leading to its commission, is as much a principal as if he had with his own hand committed the whole offense; and if you believe from the evidence, beyond a reasonable doubt, that the defendant, Frederick Bell did willfully, knowingly, unlawfully and feloniously do any act which is an element of the crime of capital murder or *immediately connected with it*, or leading to its commission, then and in that event, you should find the defendant guilty as charged. [emphasis added].

This is followed by S-3:

> The court instructs the jury that if two or more persons are engaged in the commission of a felony, then the acts of each in the commission of such felony are binding upon all and all are equally responsible for the acts of each in the commission of such felony.

¶ 21. Bell does not argue that instruction S-3 is an incorrect statement of the law, nor did he object to it at trial. He reasons that the use of the phrase "immediately connected with" [the crime], in the second clause of S-2, allows the jury, upon finding that he hid the guns used to shoot Bert, to convict him as a principal in a capital murder, and that this problem is compounded when S-2 is read with S-3. This, he argues, deprives him of his alternate theory of how Bert lost his life and the benefit of his testimony, contrary to the testimony of Coffey and James, that Doss brought the guns to Memphis and that he [Bell] had not been in Grenada on the day of the shooting, or for several days prior to the shooting, but simply cooperated in hiding the guns.

¶ 22. Bell failed to make a timely objection to S-2, and under our holdings in *Nicholson on Behalf of Gollott v. State*, 672 So.2d 744, 752 (Miss.1996), and *Lockett v. State*, 517 So.2d 1317, 1332-33, (Miss.1987); *cert. denied*, 487 U.S. 1210, 108 S.Ct. 2858, 101 L.Ed.2d 895 (1988), we are not

bound to consider this assignment. *Alternatively, we note that all instructions charging the jury must be read together, and S-2 cannot be read without regard to others, specifically S-1, which requires the jury, in order to convict Bell of capital murder, to find that Bell did unlawfully, willfully and feloniously kill Bert, while engaged in the crime of armed robbery. The instruction then directs that "if the State has failed to prove any one or more of the above elements beyond a reasonable doubt, then you shall find the defendant not guilty."*

¶ 23. *An aiding and abetting instruction, in the form complained of here, was most recently approved in Carr v. State, 655 So.2d 824, 833 (Miss.1995), cert. denied 516 U.S. 1076, 116 S.Ct. 782, 133 L.Ed.2d 733 (1996). In Carr we pointed out that the instruction sufficiently instructed the jury of the element of intent and that "when read in the context of the jury charge as a whole, [this instruction] correctly placed the burden on the State to prove beyond a reasonable doubt every element of the underlying felonies with which Carr was charged." Id. at 833. The instruction was also approved in Simmons v. State, 568 So.2d 1192, 1203-1204 (Miss.1990).*

V. FURTHER OF INSTRUCTION S-2

¶ 24. Bell also complains that instruction S-2 is defective in that it invites the jury to assume rather than to find that a capital murder had been committed. It simply does not do so. Bell asks us to apply the decision reached in *Wilson v. State*, 592 So.2d 993 (Miss.1991), which holds that it was improper for the jury to be instructed that an accessory before the fact should be found guilty if he had "willfully, unlawfully and feloniously and knowingly arrange[d] for or counsel[ed] or command[ed] another to sell cocaine . . ." *Id.* at 997. But *Wilson* is not applicable. There the Court noted that neither in the instruction complained of nor "in any of the instructions submitted to the jury" was the jury informed that they had to find that the crime was committed as well as finding that Wilson counseled or commanded the commission of the crime. *Id.* at 997-98. *Here, Bell is prosecuted as a principal present at the crime, and instruction S-1, after defining the elements, explicitly enjoins that he be found not guilty if the State has failed to prove any one or the elements beyond a reasonable doubt.*

725 So.2d at 847-48. [Emphasis the Court's and emphasis added.]

The state court's alternate holding on the merits of the case holds that the instruction is not

erroneous when it is read with the other instructions as it must be. *See Cupp v. Naughten*, 414 U.S. 141, 146-47, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973) It is a "well established proposition that a single jury instruction may not be judged in artificial isolation, but must be viewed in the context of the overall charge."); *Drinkard v. Johnson*, 97 F.3d 751, 757 (5th Cir.1996), *cert. denied*, 502 U.S. 1107, 117 S.Ct. 1114, 137 L.Ed.2d 315 (1997). *Celestine v. Butler*, 823 F.2d 74 (5th Cir. 1987). The state court found that when read together with the other instructions, especially guilt phase Instruction S-1, the jury was properly instructed.

Petitioner raised his claim of ineffective assistance of counsel on post-conviction review. The Mississippi Supreme Court held the ineffectiveness claim to be without merit because the substantive claim underlying the ineffective assistance of counsel claim was without merit as it had been decided against petitioner on direct appeal. The state court held:

> ¶ 60. Bell claims that trial counsel failed to object to jury instructions that incorrectly stated the law. On direct appeal, the Court held that "[a]n aiding and abetting instruction, in the form complained of here, was most recently approved in *Carr v. State*, 655 So.2d 824, 833 (Miss.1995), *cert. denied*, 516 U.S. 1076, 116 S.Ct. 782, 133 L.Ed.2d 733 (1996)." *Bell*, 725 So.2d at 847-48. Because this argument is an attempt to relitigate an issue previously decided to be without merit on direct appeal, this issue is procedurally barred in accordance to MISS. CODE ANN. § 99-39-21(2) & (3) (2000).

879 So.2d at 440.

The Mississippi Supreme Court used the procedurally barred language based on the fact that petitioner had shown no deficient performance or resulting prejudice. Therefore, the ineffective assistance of counsel claim was an attempt to relitigate a settled claim under a

different legal theory. Petitioner failed to demonstrate deficient performance and resulting prejudice in failing to object to this instruction.

The use of the instruction found in S-2, which petitioner complains of, had long been approved by the Mississippi Supreme Court. *See Smith v. State*, 729 So.2d 1191, 1211-12, ¶¶ 96-97 (Miss. 1998); *Smith v. State*, 724 So.2d 280, 318-19, ¶¶ 152-53 (Miss. 1998); *Doss v. State*, 706 So.2d 369, 378-79, ¶¶ 21-28 (Miss. 1996); *Carr v. State*, 655 So.2d 824, 832-33 (Miss. 1995), *cert. denied*, 515 U.S. 1076, 116 S. Ct. 782, 133 L.Ed.2d 733 (1996); *Simmons v. State*, 568 So.2d 1192, 1203-04 (Miss. 1990); *Kelly v. State*, 493 So.2d 356, 359 (Miss. 1986); *White v. State*, 330 So.2d 877, 879 (Miss.1976). The first time this instruction was questioned by the Mississippi Supreme Court was in the opinion in the case of *Hornburger v. State*, 650 So.2d 510 (Miss. 1995), where the Court held that the instruction was improper, but harmless because of other instructions given by the trial court. Of course petitioner, was tried in 1993, two years prior to the decision in *Hornburger*. Even then, it was not until 2001 in the decision of *Milano v. State*, 790 So.2d 179, 184-85, ¶¶ 15-22 (Miss. 2001), some seven years after petitioner's trial, that the Mississippi Supreme Court held that the instruction found in S-2 should not be given in an aider or abettor/accomplice situation. Further, the Mississippi Supreme Court has never reversed a case based on the giving of an instruction similar to S-2, as the giving of the instruction has always been found to be harmless error because of the other instructions given.

Counsel cannot be held ineffective for not anticipating a change in settled precedent.

99

In *Moreno v. Dretke*, 450 F.3d 158, 173 (5th Cir. 2006), the Fifth Circuit held:

> Finally, Moreno's counsel was not ineffective because under the law at the time of his appeal, the jury instruction was correct.[8] The controlling decision by the Texas Court of Criminal Appeals held that the application portion of the instruction rendered irrelevant the erroneous definition portion. *Kinnamon v. State*, 791 S.W.2d 84, 89 (Tex.Crim.App.1990), *overruled by Cook*, 884 S.W.2d at 491. Although Moreno's counsel could have argued on appeal for the change in law that the Cook court eventually adopted, it would not be unreasonable to conclude that the failure to anticipate this change in Texas law was deficient. *See Ybarra*, 890 S.W.2d at 113 (the failure of trial counsel to object to this instruction prior to Cook not ineffective because "[c]ounsel had no crystal ball to forecast the overruling of *Kinnamon*").

> 450 F.3d at 173.

Earlier in *Green v. Johnson*,

> With respect to the former claim that Green's counsel should have raised the *Marras* issue on his original appeal, we have noted previously that *there is no general duty on the part of defense counsel to anticipate changes in the law*, *see Nelson v. Estelle*, 642 F.2d 903, 908 (5th Cir. Unit A Apr.1981), and that *counsel is not ineffective for failing to raise a claim that Texas courts have rejected repeatedly*. *See Andrews v. Collins*, 21 F.3d 612, 623 (5th Cir.1994). Because it is undisputed that *Marras* was controlling authority at the time of Green's original appeal, Green has not made a substantial showing that his appellate counsel's failure to raise the *Marras* issue in the original appeal denied him effective assistance.

> 116 F.3d at 1125-26. [Emphasis added.]

The decision of the Mississippi Supreme Court is neither contrary to or an unreasonable application of the clearly established precedent of *Strickland, supra*. Petitioner is entitled to no habeas relief on this ineffective assistance of counsel claim.

> **B.      Ineffective assistance of counsel during the sentence phase of the capital murder trial.**

Before discussing the claims of ineffective assistance of counsel during the penalty or sentencing phase of the trial the Mississippi Supreme Court stated:

> ¶ 61. The role of an attorney at a capital sentencing proceeding resembles his role at trial.
>
> A capital sentencing proceeding "is sufficiently like a trial in its adversarial format and in the existence of standards for decision" that counsel's role in the two proceedings is comparable-it is "to ensure that the adversarial testing process works to produce a just result under the standards governing decision."
>
> *Burger v. Kemp*, 483 U.S. 776, 788-89, 107 S.Ct. 3114, 3123, 97 L.Ed.2d 638 (1987) (citing *Strickland*, 466 U.S., at 686, 687, 104 S.Ct., at 2064).
>
> ¶ 62. At the outset, the Court notes that on direct appeal we stated that "[w]hen given the opportunity, Bell offered no real mitigating circumstances, he simply continued to deny being present or committing the act." *Bell*, 725 So.2d at 867. With this in mind, the Court reviews counsel's performance during the sentencing phase.
>
> 879 So.2d at 440-41.

The state court again identified the correct standard for reviewing claims of ineffective assistance of counsel.

### 1. Failure to secure time necessary to prepare his mitigation case and failure to present a meaningful opening statement.

First, petitioner contends that petitioner was ineffective because he failed to secure a continuance between the guilt and sentence phases of the trial to prepare his mitigation case and that he failed to make a meaningful opening statement. This claim was presented to the Mississippi Supreme Court on post-conviction review. The court held:

### A. Additional Time Between Culpability and Sentencing Phases.

¶ 63. Bell claims that a limited continuance was necessary between the guilt and sentencing phases of the trial, and that without such, counsel was unable to present an effective case during sentencing. Because the two phases are inherently different, Bell reasons that a continuance was necessary. Bell does not discuss how the lack of a continuance affected the defense. He emphasizes that in the decision from the direct appeal, the Court noted that the defense presented no real mitigating circumstances. *Bell*, 725 So.2d at 867. Countering, the State argues that this was not a complex case and therefore no continuance was needed.

¶ 64. Bell cites Robin E. Abram's article: *A Capital Defendant's Right to a Continuance Between the Two Phases of a Death Penalty Trial*, 64 N.Y.U. L.Rev. 579 (1989), cited in *Pruett v. State*, 574 So.2d 1342, 1348 (Miss.1990) (Anderson, J., dissenting). The article contends that the complexity of the legal rules governing both the guilt and penalty phases of capital trials complicates counsel's preparation and intensifies the need for time. *See Abrams supra*, at 581-82. Likewise, a continuance is necessary because the defendant, the jury, and defense counsel need time to recover emotionally from the capital conviction and to focus on the issue of sentencing. *Id*. Bell relies on precedent from other jurisdictions, such as South Carolina and Maryland, in which continuances are legislatively provided or available upon the request. *See* MD. ANN. CODE ART. 27 § 413(a) (Supp.1988); S.C.CODE § 16-3-20(B) (2002).

¶ 65. The guilty verdict was delivered at 3:30 p.m., then, following a brief recess, the sentencing phase begun and was completed by 7:30 p.m. Theoretically, counsel could have requested a continuance until the following morning. However, our Legislature has determined that:

> Upon conviction or adjudication of guilt of a defendant of capital murder or other capital offense, the court shall conduct a separate sentencing proceeding to determine whether the defendant should be sentenced to death, life imprisonment without eligibility for parole, or life imprisonment. The proceeding shall be conducted by the trial judge before the trial jury as soon as practicable.

MISS. CODE ANN. § 99-19-101. Furthermore, we have held:

> [I]t should be noted that this Court has repeatedly and consistently held that post-conviction relief in Mississippi is not granted upon facts and

issues which could or should have been litigated at trial and on appeal.

> *Smith v. State*, 434 So.2d 212, 215 (Miss.1983) (citing *Callahan v. State*, 426 So.2d 801 (Miss.1983); *Bell v. Watkins*, 381 So.2d 118 (Miss.1980); *Auman v. State*, 285 So.2d 146 (Miss.1973); *Irving v. State*, 194 So.2d 239 (Miss.1967); *Gordon v. State*, 160 So.2d 73 (Miss.1964); *Kennard v. State*, 246 Miss. 209, 148 So.2d 660 (1963); *Rogers v. Jones*, 240 Miss. 610, 128 So.2d 547 (1961); *Goldsby v. State*, 226 Miss. 1, 78 So.2d 762 (1955); *Wetzel v. State*, 225 Miss. 450, 76 So.2d 188 (1955)) (footnote omitted). This issue is without merit.

> 879 So.2d at 441-42.

The United States Supreme Court has never held that there is a federal constitutional requirement or right for a continuance or "cooling off period" between the guilt and sentence phases of a capital murder. Thus, this is a matter of state law which is not cognizable in habeas corpus review. The Mississippi Supreme Court has held that when no valid reason for such a continuance is provided there is no error. *See Howell v. State*, 860 So.2d 704, 752-54, ¶¶ 173-78 (Miss. 2003). Petitioner has yet to state a valid reason.

Petitioner here is of the view that such a continuance was "necessary", on account of his notion that the defense in the sentencing phase of a death case is "different" from the guilt phase.

No doubt some death cases will be sufficiently complex as to suggest the desirability of a recess. But the case at bar is not one of those. It was not a complex case factually or legally, neither in the guilt or sentencing phase. There was no reason why trial counsel could not be prepared to immediately proceed to defend the sentencing phase of the trial.

Petitioner argues that a "proper mitigation case" could have been presented had a

recess been sought. Naturally, though, he has not favored this Court with any evidence of how the defense would have been different, or better. Petitioner simply had no substantially "better" mitigation case to make beyond what he did make.

There is no indication that counsel was not prepared to proceed to sentencing at the conclusion of the guilt phase. There is no suggestion that he or the jurymen were exhausted by their labors, *Fairly v. State*, 483 So.2d 345, 347 (Miss. 1986). There was thus no reason at law to seek a continuance.

While petitioner prisoner attempts to cast his claim here on the notion that the trial attorney needed time to investigate and develop a case in mitigation, he has provided no reason as to why that would not have been done in the course of preparing for trial. He has not explained what would have been discovered in the way of mitigation in such a recess that had not already been found in the course of preparation for trial. Nor has he explained why the fact of the guilty verdict would have somehow changed the approach of the defense case. Respondents have thought that the development of a sentencing case would necessarily be premised upon the fact of a guilty verdict.

There was no need for a recess; consequently, trial counsel was not ineffective for not having sought one. Obviously, what petitioner is trying to do is to get the Court to find that it was necessary for a "cooling off" period, but this Court has previously rejected such a notion. *Simmons v. State*, 805 So.2d 452, 498 (Miss. 2001); *McGilberry v. State*, 741 So.2d 894, 919, ¶¶ 89-91 (Miss. 1999).

104

Petitioner has failed to demonstrate deficient performance and resulting actual prejudice therefore this claim of ineffective assistance of counsel fails as the decision of the Mississippi Supreme Court is not unreasonable. *See Williams v. Taylor, supra.*

Petitioner also contends that counsel was ineffective in failing to make a "meaningful" opening statement at the beginning of the sentence phase of the trial. This claim was also presented to the Mississippi Supreme Court on post-conviction review. The state court held:

**B. Opening Statement**.

¶ 66. Neither the defense nor the prosecution presented an opening statement during the penalty phase. Citing Louisiana precedent, Bell claims that this failure supports his claim of ineffective assistance of counsel. *See State v. Sanders*, 648 So.2d 1272, 1293 (La.1994) (The court "has come close to stating that an attorney's failure to make an opening statement constitutes ineffectiveness per se."). The giving of an opening statement in the penalty phase is not required in Mississippi and the failure to do so may be deemed trial strategy, particularly where the prosecution did not make an opening statement. *Cabello*, 524 So.2d at 318. *See also Gilliard v. Scroggy*, 847 F.2d 1141, 1147 (5th Cir.1988). *Cf. Manning v. State*, 735 So.2d 323, 347 ¶ 56 (Miss.1999). Therefore, this issue is without merit.

879 So.2d at 442.

The Fifth Circuit's resolution of the same claim in *Gilliard v. Scroggy*, 847 F.2d 1141 (5th Cir. 1988), was short and sweet. The Court of Appeals held:

Gilliard's counsel chose not to make an opening statement. That is the essence of a strategic choice. In addition, no prejudice is demonstrated.

847 F.2d at 1147.

Petitioner's only allegation of prejudice is that the jury did not know what to expect as "[t]estimony simply began without any explanation or guide." This is not a showing of

105

prejudice. Again it is speculation and nothing more and does not support a finding of prejudice. *See Jones v. Jones*, 163 F.3d 285, 306-07 (5th Cir. 1998); *Carter v. Johnson*, 131 F.3d 452, 464 (5th Cir. 1997); *Hill v. Black*, 887 F.2d 513, 524 (5th Cir. 1989); *Marler v. Blackburn*, 777 F.2d 1007, 1010 (5th Cir. 1985). Petitioner's claim of prejudice is totally unsupported. The decision of the Mississippi Supreme Court is not contrary to or an unreasonable application of *Strickland.* Petitioner is entitled to no relief.

### 2.    Failure to exclude aggravating circumstances that were not legally applicable to this case.

Petitioner next contends that trial counsel was ineffective in failing to exclude the avoiding arrest aggravating circumstance form consideration by the jury. When the claim was presented on direct appeal the Mississippi Supreme Court held the claim to be barred from consideration for the failure to object to the inclusion of this aggravating circumstance and alternatively addressed the merits of the claim. Petitioner then raised a claim of ineffective assistance of counsel based on counsel's failure to object. The Mississippi Supreme Court held:

### D. Aggravating Circumstances.

¶ 69. Bell claims that counsel failed to the object to the inclusion of the aggravating factor "that the murder was committed for the purpose of avoiding or preventing a lawful arrest." *See also* MISS. CODE ANN. § 99-19-101(5) (2000).[3] On direct appeal, the Court considered the appropriateness of this factor and held that "Bell's own statements and actions are sufficient to warrant an inference by the jury that Bert was shot because he wanted to leave no witnesses." *Bell*, 725 So.2d at 858. The Court noted that an instruction incorporating this factor is warranted if "there is evidence from which it may be reasonably inferred that a substantial reason for the killing was to conceal

106

the identity of the killer . . ." *Id.* (citations omitted).

¶ 70. Furthermore, Robert Kennedy James testified that, wanting to eliminate all witnesses, Bell had threatened to kill him, too. Based on such, this claim is without merit.

_____

3. Section 99-19-101 provides the aggravating and mitigating circumstances for a jury to consider during sentencing proceedings related to a capital crime.

879 So.2d at 442.

The ineffectiveness claim was held to be without merit because the underlying substantive claim was held to be without merit. *See Medellin v. Dritke*, 371 F.3d 270, 279 (5th Cir. 2004). The respondents have fully addressed the substantive merits of this claim under Ground XXIII, 1, *infra*. Respondents would adopt the reasoning set forth there as the answer to show the lack of prejudice in failing to object to the inclusion of this aggravator. Petitioner has shown no prejudice, therefore, petitioner is entitled to no relief on this claim.

### 3. Failure to conduct an effective investigation and failure to present significant mitigation evidence.

Petitioner contends that counsel failed to conduct an effective investigation for and present significant mitigation evidence during the sentence phase of his trial. Petitioner presented this ineffective assistance of counsel claim to the Mississippi Supreme Court on post-conviction review. The state court held:

### E. Investigation.

¶ 71. Bell claims that counsel failed to adequately investigate possible mitigating evidence. He contends that counsel's investigation was deficient for several reasons, such as: 1) that only eight people were interviewed; 2) except for a brief meeting with trial counsel's investigator, Bell's mother and

107

sister had no contact with counsel until the sentencing phase; and 3) his mother
and sister were never subpoenaed.

¶ 72. There is a difference between when counsel fails to investigate
and when counsel fails to adequately investigate. Discussing this, the Fifth
Circuit stated:

> "[C]ounsel has a duty to make reasonable investigations or to make a
> reasonable decision that makes particular investigations unnecessary.
> In any ineffectiveness case, a particular decision not to investigate must
> be directly assessed for reasonableness in all the circumstances,
> applying a heavy measure of deference to counsel's judgments."
> *Strickland*, 466 U.S. at 691, 104 S.Ct. 2052. Furthermore, this court
> has stated that we "must be particularly wary of 'arguments that
> essentially come down to a matter of degrees. Did counsel investigate
> enough? Did counsel present enough mitigating evidence? Those
> questions are even less susceptible to judicial second-guessing.'"
> *Dowthitt v. Johnson*, 230 F.3d 733, 743 (5th Cir.2000), *cert. denied*, 532
> U.S. 915, 121 S.Ct. 1250, 149 L.Ed.2d 156 (2001) (quoting *Kitchens
> v. Johnson*, 190 F.3d 698, 703 (5th Cir.1999)).

*Smith v. Cockrell*, 311 F.3d 661, 669 (5th Cir.2002).

¶ 73. The record reveals that counsel interviewed Bell's mother,
grandmother, brother, girlfriend, three elementary school teachers, and the
wife of a local attorney. Bell takes issue with the degree of investigation.
Affidavits citing counsel's failures are provided by both his mother and sister.
However, the affidavits do not provide any additional information that could
have or should have been provided at trial or other persons who could have
provided additional information. Bell's mother did testify on behalf of Bell at
the sentencing phase. Therefore, this issue is without merit.

879 So.2d at 442-43.

The Mississippi Supreme Court's comment that the affidavits provided to it on post-

conviction review "do not provide any additional information that could have or should have

been provided at trial or other persons who could have provided additional information." *Id.*

On state post-conviction review petitioner's post-conviction counsel presented two affidavits, one from petitioner's mother and one from petitioner's sister. *See* St. PCR Ex. I & J.[28] Petitioner's mother testified in mitigation during the sentence phase of the trial. Tr. 306-14. During her testimony she related as how petitioner was beaten by his father as was she and other members of the family. She testified that this mistreatment let to their divorce when petitioner was 7 or 8. She then testified about the ill effects the divorce had on petitioner, how his grades fell from the straight "A" level to just getting by. She testified about her ex-husband coming down and shooting up the house at one point and how that affected petitioner.[29] In her affidavit before this Court she contends:

> I was not adequately prepared to testify at the mitigation phase of the trial and did not understand what type of evidence was to be presented at the mitigation phase of the trial. If I had been given adequate notice of the mitigation testimony I was asked to give, I would have been able to provide testimony regarding my son's childhood, his developmental problems, school records, and other information that would have been relevant at the mitigation phase of the trial.

> Pet. Ex. G, ¶ VI.

What the affidavit does not include is any indication of what additional testimony she would have presented that she did not present in her testimony. While his is an affidavit it is totally

---

[28]Petitioner has attached these same two affidavits to the habeas memorandum as Pet. Ex. J (Tonja) and Pet. Ex. R (Myra).

[29]The only thing in the affidavit that she did not testify to at trial is the assertion that petitioner's father's two sisters had some sort of "mental disability" and his brother had been in and out of Whitfield. She adds one final note that one of his father's sisters committed suicide. The affidavit does not relate how this is mitigating for petitioner.

conclusory and does not show how petitioner was prejudiced.

The affidavit of Cindy Arnold, his aunt, contains the same paragraph except she has marked out the phrase "his developmental problems, and school records" from the affidavit she signed.  *See* Pet. Ex. H, ¶ VI.  Again there is no indication as to what mitigation testimony she would have given regarding petitioner's childhood or "other information that wold have been relevant at the mitigation phase of the trial."  *Id.*

In the affidavit of Effie Johnson, another aunt, we find a similar paragraph which reads:

> If I had been given adequate notice of the mitigation phase of Frederick Bell's trial and if I had been informed by Mr. Jones about the type of evidence that was to be presented, I would have been able to provide testimony regarding my nephew at the mitigation phase of the trial.
>
> Pet. Ex. I, ¶ V.

Again, what is this mitigating evidence.  We are only left to speculate as we are given not one shred of evidence that she would have given.

In the affidavit of his step-brother, Darrell Flowers, Pet. Ex. DD, we find yet another of these paragraphs.  It reads:

> If I had been given adequate notice of the mitigation phase of Frederick Bell's trial and if I had been informed by Mr. Jones about the type of evidence that was to be presented, I would have been able to provide relevant testimony regarding my step-brother at the mitigation phase of the trial.
> Pet. Ex. DD, ¶ VI.

Again, what was the substance of that "relevant testimony".  Mr. Flowers does not enlighten us as to what his testimony would have been.

110

These affiants have had over fifteen years to think about what they would have testified to in hindsight. Not a single one has presented a single sentence of "relevant testimony" they would have given in mitigation.

If petitioner is attempting to use these affidavits to show prejudice, he has failed to do so. There is nothing in these affidavits but speculation. And prejudice cannot be based on speculation. *See Jones v. Jones*, 163 F.3d 285, 306-07 (5th Cir. 1998); *Carter v. Johnson*, 131 F.3d 452, 464 (5th Cir. 1997); *Hill v. Black*, 887 F.2d 513, 524 (5th Cir. 1989); *Marler v. Blackburn*, 777 F.2d 1007, 1010 (5th Cir. 1985).

Petitioner has failed to demonstrate prejudice because he has failed to show what mitigating evidence counsel would have been able to put on by of calling any of these witnesses. That they would have given any testimony that was "relevant mitigating" evidence is purely speculative.

Any question regarding petitioner's mental ability is settle by the I.Q. scores contained in his school records and presented to this as Pet. Ex. T. These records show that petitioner has a full scale I.Q. of 81. This was noted in the records to indicate low average intelligence level. Petitioner is not retarded and this would not have been persuasive mitigation evidence.

Petitioner also faults counsel for not putting on evidence of his good behavior while incarcerated prior to the trial. However, petitioner presented no affidavit form any prison official in Tennessee or Mississippi to the state court or to this Court. Petitioner simply put nothing before the state court or this Court to support this portion of his ineffective assistance

111

claim.

The Mississippi Supreme Court also reviewed the claim that counsel failed to present a case in mitigation on post-conviction review. The Mississippi Supreme Court held:

### F. Mitigating Evidence.

¶ 74. Bell claims that counsel failed to present mitigating evidence regarding his age, mental retardation, emotional disturbances and mental illness, disadvantaged and abusive childhood, adaption to prison conditions, and cultural impacts on his life. These issues are without merit.

¶ 75. This Court has dealt with the issues of adequate investigation and presentation of evidence in the context of ineffective assistance of counsel in death penalty cases. *See Holly v. State*, 716 So.2d 979, 990 (Miss.1998); *Foster v. State*, 687 So.2d 1124 (Miss.1996); *Conner v. State*, 684 So.2d 608 (Miss.1996); *Woodward v. State*, 635 So.2d 805 (Miss.1993); *State v. Tokman*, 564 So.2d 1339 (Miss.1990).

¶ 76. In *Holly*, the Court held that counsel's presentation of mitigation evidence through only one witness, the defendant's mother, was deficient considering that there was evidence that the defendant had mental health problems and, thus, violated *Strickland's* first prong *Id*. at 990. However, finding that Holly failed to show that but for counsel's performance the sentence would have been different, the Court denied the application to seek post-conviction relief. *Id*. at 991.

¶ 77. In the instant case, three witnesses testified for the defense: Myra Bell (mother), Tammy Teresa Armstrong (Bell's girlfriend and the mother of his child), and Bell himself. Myra's testimony focused on the violent and abusive family life which the family endured at the hands of her former husband. Ms. Armstrong testified regarding Bell's disposition and his loving relationship with their young son and her daughter. Following the testimony and arguments, the jury was instructed to consider the following mitigating factors: 1) that Bell was 19 years-old at the time of the crime; 2) his lack of education; 3) raised in poverty; 4) his violent family life; 5) his abusive father; 6) he was the father of and provider for a 3 year-old child; and 7) he could have been merely an accomplice. Because the jury was instructed during sentencing to consider his age, the Court finds that trial counsel presented

112

sufficient evidence regarding Bell's age at the time of the crime.

¶ 78. Attached to the application is an assessment by the State Department of Education from 1987, which indicated that Bell "functioned in the low average range of intelligence" and had an I.Q. of 81. Aside from the affidavits provided by his mother and sister, Bell's application provides no evidence that he suffers from either emotional or mental problems. The testimony of Myra Bell primarily focused on the disadvantaged and abusive childhood that Bell suffered. She discussed how they lived off of minimum wage and in a one-room apartment with a violent husband. She recalled the problems she had with her husband after the divorce, how on one occasion he "shot-up" the house, and that he had been in and out of jail. Based on her testimony during the penalty phase, evidence was presented regarding Bell's difficult childhood.

¶ 79. Finally, Bell claims that counsel should have presented evidence of his good behavior while incarcerated. Bell fails to cite what additional evidence should have been presented and how it would have affected the outcome. Unlike defense counsel in *Wiggins v. Smith*, 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003), who failed to discover and present powerful mitigating evidence, Bell's counsel discovered and presented significant mitigating evidence. Therefore, this claim is without merit.

879 So.2d at 443-44.

Because of the foregoing discussion respondents would assert that the decision of the Mississippi Supreme Court is neither contrary to or an unreasonable application of *Strickland* nor is it the result of an unreasonable application of the law to the facts as reflected in the state court record. *See Williams v. Taylor, supra*. Petitioner is entitled to no relief on this claim of ineffective assistance of counsel.

**4.  Ineffectiveness during state's closing argument.**

Petitioner next contends that counsel was ineffective in failing to object to certain comments during the closing argument of the state. Petitioner presented the substantive

113

claim on direct appeal and it was held to be barred from consideration and alternatively without merit. On post-conviction review petitioner raised the ineffectiveness claim. The Mississippi Supreme Court held:

**G. State's closing argument**.

¶ 80. Bell claims that counsel failed to object to improper statements made by the prosecution, which provided in part the prosecutor's personal opinions and Bell's apparent lack of remorse.[4] Responding, the State maintains that on direct appeal this Court approved the language used in closing argument; therefore, counsel cannot be ineffective for failing to object. *See Bell*, 725 So.2d at 861-63. In the direct appeal, because counsel failed to object, the Court reviewed the prosecutor's comments under the plain error standard. *Id*. at 861. The Court ruled that assignment of error based on the prosecutor's comments were "both procedurally barred and without merit." *Id*. at 862. The Court found that such comments were permissible deductions and "simply fair commentary on behavior and testimony by Bell which was in evidence." *Id*. at 862, citing *Chase v. State*, 645 So.2d 829, 855 (Miss.1994); *Davis v. State*, 660 So.2d 1228, 1250 (Miss.1995).

_____

4. Alleged illicit comments made by the prosecutor during his closing argument include: (1) "I don't see any [good in Frederick Bell]; (2) "That same day he murdered Bert Bell here in Grenada. That shows you how much remorse he had for the crime he committed down here. It shows you how upset it made him for the taking of a life, the life of Bert Bell. He had no feelings for human life at all, and he has none now."; (3) "He was proud of that [killing Bert Bell]. Just as proud as he was of the person he killed in Memphis. This shows you again what type of person you're dealing with. It shows you how much feeling he has for human life."; (4) "His mother asked the question up here, 'what would stop it.' There's only one thing that can stop it, and I think ya'll know what that [sic] it; that's coming back with the death penalty."

879 So.2d at 444-45.

Respondents fully addressed the merits of the substantive claim underlying this ineffective assistance of counsel claim under Ground XI, *infra* at 170. The respondents would adopt the

114

arguments made there as its argument here to show that counsel's performance was not deficient and more importantly petitioner suffered no prejudice. Petitioner is entitled to no relief on this claim of ineffective assistance of counsel under *Strickland*, because the Mississippi Supreme Court's decision is not an unreasonable application thereof.

**5.**     **Ineffectively handling the sentencing instruction.**

Petitioner next contends that counsel ineffectively handled the sentencing instruction. This is a claim that petitioner failed to object to several aspects of Sentencing Instruction S-1. Petitioner's contentions here are 1) that counsel failed to object to the "anti-sympathy instruction"; 2) that counsel failed to get an instruction of the effect his Tennessee conviction would have on a life sentence if it was imposed; 3) counsel failed to object to S-1 because it required the jury to find unanimously mitigating circumstances. The substantive claim was for 1 and 2 above were presented on direct appeal and held to be barred from consideration and alternatively without merit.

However, petitioner did not present a claim that counsel was ineffective in failing to object to S-1 on the basis that it required the jury to be unanimous in there finding of mitigation circumstances. This ineffectiveness claim is unexhausted and therefore barred from review for the first time on habeas review. *Ruiz v. Quarterman, supra*.

Petitioner presented claims 1 and 2 of ineffective assistance of counsel on post-conviction review. The Mississippi Supreme Court held:

**H. Jury Instructions**.

115

¶ 81. Bell claims that counsel failed to have the jury instructed regarding the effect of the Tennessee sentence and failed to object to the trial court's "anti-sympathy" instruction and instruction S-1, which he alleges allowed the jury to consider "non-statutory aggravators." This argument is very similar to those which were considered and rejected in the direct appeal.

¶ 82. As to the claim regarding instruction S-1 and "non-statutory aggravators," the Court finds that it is without merit. In the direct appeal, the Court affirmed these instructions and held that they did not interject unwarranted aggravating factors or allow the jury to "venture out on a hunt for other justifications for ordering Bell's death." *Bell*, 725 So.2d at 865. As to the other two arguments, the Court fully reviewed them and ruled that they were procedurally barred based on Bell's failure to object to them at trial. *Id.* at 865 & 867. Relying on *Willie v. State*, 585 So.2d 660 (Miss.1991) and *California v. Brown*, 479 U.S. 538, 107 S.Ct. 837, 93 L.Ed.2d 934 (1987), the Court stated that issue of anti-sympathy instruction was "unmeritorious in light of the holdings of the United States Supreme Court supporting the use of the anti-sympathy language." *Bell*, 725 So.2d at 865. *See also Woodward v. State*, 843 So.2d 1. Therefore, based on *Willie* and *Brown* trial counsel's failure to object to such instructions does not support Bell's claim of ineffective assistance of counsel.

¶ 83. Finally, Bell claims that counsel failed to present instruction to the trial court regarding the effect his Tennessee sentence would have if he was sentenced to life in this matter. Because Bell fails to cite any case where such failure supports a claim of ineffective assistance of counsel, this issue is without merit. Instead, Bell relies on the *Simmons v. South Carolina*, 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994), which was decided after his trial. In *Simmons*, the Supreme Court held that in a case in which propensity for future dangerous conduct is argued as a factor, and a sentence to life imprisonment without the possibility of parole is an option, the defendant is entitled to have the jury instructed that a life sentence will in fact preclude the possibility of parole. *Id*. at 169, 114 S.Ct. 2187.

¶ 84. Considering this issue in the direct appeal, the Court found that the State argued the violent nature of the crime, as opposed to Bell's propensity for future crime, as an additional aggravating circumstance. Bell at 725 So.2d at 865. Holding that Bell's claim was substantively without merit, the Court stated:

116

> Because Bell sought no such instruction, and the State did not attempt to argue on the point, we are left to wonder what Bell's argument would have been if in fact the jury had been instructed that in deciding between life and death it was to consider the length of not only a Mississippi life sentence but also the length of the Tennessee sentence and the time that Bell would actually serve under each, and if the State had then argued the effect of the possibility of parole.

*Bell*, 725 So.2d at 865.

> ¶ 85. Because *Simmons* was not decided until after the direct appeal and because the Court held that Bell's propensity for future dangerous was not argued as an additional aggravating factor, the Court finds that counsel's failure to request such instruction was not outside the prevailing professional norms.

879 So.2d at 445.

The Mississippi Supreme Court's resolution of these claims is neither contrary to or an unreasonable application of clearly established federal law as announced by the United States Supreme Court. *See Williams v. Taylor, supra.*

The respondents have fully discussed the merits of the substantive claims underlying claims 1 and 2 later in this memorandum. The anti-sympathy instruction is fully discussed under Ground XX, *infra* at 215. That discussion demonstrates that petitioner cannot show the deficient performance and resulting prejudice required to support a claim of ineffective assistance of counsel under *Strickland, supra*. The respondents would adopt the argument made there as its response here.

The respondents have also fully discussed the merits of the claim relating to the Tennessee conviction under Ground XXI, *infra* at 220. That discussion demonstrates how

117

petitioner cannot show deficient performance and resulting prejudice on this point. The respondent would adopt the arguments made there to show that petitioner has failed to make out a claim of ineffective assistance of counsel under *Strickland* on this claim.

Finally, without waiving the failure to exhaust, the respondents would point out that trial counsel did offer two instructions to the trial court that instructed the jury that they did not have to be unanimous in their finding of mitigating circumstances. The trial court rejected these instructions because the subject was adequately covered in Sentencing Instruction S-1. The Mississippi Supreme Court affirmed this decision. *See* 725 So.2d at 864. Petitioner did present a substantive claim to this Court contending that the rejection of these two instructions entitled him to habeas relief. Respondents have presented an exhaustive argument to show how the denial of those two instructions was not error. *See* Ground IX, *infra* at 157. Included in that discussion the respondents show how Sentencing Instruction S-1 is adequate to properly instruct the jury on the subject of how they are to consider mitigating circumstances. In fact, an instruction almost identical to the one here has been considered by the Fifth Circuit and found to pass constitutional muster as has United State District Court for the Southern District of Mississippi. Respondents would assert since the trial court refused his two instructions on the unanimity subject, there is no reasonable probability that the trial court would have sustained an objection to S-1 on that basis. The failure to object to Sentencing Instruction S-1 on this basis was not ineffective since objection would have been futile and also because counsel presented instructions for the

118

court's consideration that were rejected. This claim is barred from consideration because of the failure to exhaust and petitioner cannot demonstrate cause and prejudice to overcome that bar.

Petitioner is entitled to no relief on this claim.

**GROUND II:      ERRONEOUS DENIAL OF PETITIONER'S CHALLENGES FOR CAUSE TO FIVE JURORS.**

Petitioner's contention is that by denying five challenges for cause he was forced to use five peremptory strikes to remove those prospective jurors from the jury. His argument appears to be that forcing him to use five peremptory challenges to remove jurors he contends were removable for cause violated his federal constitutional rights. He contends that because he was forced to use his strikes against these jurors thereby "reducing the total number of peremptory challenges available to Petitioner, the jury was tainted, resulting in an unfair trial for Petitioner." Memo. at 102.

Petitioner presented this claim to the Mississippi Supreme Court on direct appeal and the Mississippi Supreme Court held:

**II. THE DENIAL OF CHALLENGES FOR CAUSE**

¶ 13. Bell next complains that five jurors, as to whom the judge denied challenges for cause, should have been excused because of their relationships to the victim, to other jurors, or to law enforcement. Because they were not, he was compelled to use five of his peremptory challenges to exclude them, thus, the argument goes, being deprived of a full twelve peremptory challenges to be used on the remaining panel. He is particularly aggrieved by the trial court's reliance on these jurors' self-assessments of their ability to be fair and unbiased. In summary, the judge's voir dire of these went as follows.

119

Juror Burns' husband was a retired Washington County police officer, and she had, in the past, worked with the victim's mother for about six months. She told the court she did not think this would affect her ability to be impartial. The judge asked her what she meant by "didn't think," and she responded that she was certain she could judge the case on the evidence presented.

Juror Cook stated that her father had been a deputy sheriff in Grenada three or four years prior to trial. In addition, her mother was also on the panel. The judge stated that he would not allow both of them to sit on the jury but would not dismiss her because her father had been a deputy several years ago.

Juror Haley had a business relationship with the father for about six months prior to voir dire. While doing business, the father told him he knew Haley had been selected to be on the panel and that was good, because "we need good jurors." The judge ruled that the remark was made in the course of business, and Haley gave strong, vigorous answers that their relationship was only one of business.

Juror Leverette's wife knew who the victim's mother was through work, and he also went to church with the victim. The juror told the judge this would not affect him. However, during Bell's voir dire of the jurors, Leverette stated that he did send a card to the victim's family. The judge denied the challenge for cause stating, "[t]he sending of a card is an expression of sympathy as a member of the church, . . . and I don't think it does indicate that he has any feelings about this case."

Juror Sheffield owned an auto-parts business where the victim's father had done some business over the past twenty-five years. They had occasionally attended the same dove shoots, though not traveling to them together. He stated that he was not uncertain about his ability to be fair and impartial. The judge denied the challenge for cause, because the business was one where the victim's father only occasionally came in to purchase parts, and the two had never done anything together socially, except, perhaps, be at dove shoots to which they were both invited.

¶ 14. The circuit judge has wide discretion in determining whether to

120

excuse prospective jurors, including those challenged for cause. *Scott v. Ball*, 595 So.2d 848, 849 (Miss.1992); *Burt v. State*, 493 So.2d 1325, 1327 (Miss.1986). The judge will be reversed only upon a finding of an abuse of that discretion. *Berry v. State*, 575 So.2d 1, 9 (Miss.1990). Bell would have the two jurors who were related to former law enforcement officers disqualified for that fact alone. However, as enunciated in *Mhoon v. State*, 464 So.2d 77, 81 (Miss.1985), "there is no reason why an officer or an officer's relative should not serve on a jury if otherwise qualified to follow the law and the evidence." *See also Cook v. State*, 242 Miss. 29, 134 So.2d 151 (1961). In *Mhoon*, the Court reversed the conviction based not on the fact that someone with law enforcement ties sat on the jury, but rather on the disproportionate part that such connections played in the jury composition. Five of the jurors there had such connections, and the jury foreman was a uniformed officer while sitting, a circumstance which the Court described as "unique" and "novel." *Id*. at 82. *Mhoon* endorsed the practice of allowing additional peremptory challenges to the defense. In the present case, Bell did not request additional challenges.

¶ 15. As to Jurors Burns, Haley, Leverette and Sheffield, they each disclosed acquaintances and business relationships with relatives of the deceased. However, each of them declared, under oath, that their relationships would not prevent them from following the court's instructions and applying it fairly to the facts of the case. While the judge's voir dire may not have probed as deeply as Bell thinks the questions should have into these jurors' ability to try the case fairly, Bell, of course, had the opportunity to pursue any questions through his attorney's examination of the jurors. He did not choose to do so.

¶ 16. Mere acquaintance or even family relationships with parties or those related to parties is not sufficient to require that a juror be excused for cause. In *American Creosote Works of La. v. Harp*, 215 Miss. 5, 60 So.2d 514 (1952), we declined to reverse the trial judge who failed to exclude a juror who indicated that he lived in the same community with a party and was a member of the same church and lodge, but who stated under oath that these facts would not influence his verdict. In *Rush v. State*, 278 So.2d 456 (Miss.1973), although a prospective juror knew the defendant and had obtained a judgment against him, where he stated that he could put the relationship out of his mind and try the case on the facts and the law, we found no error in failing to excuse him for cause.

¶ 17. We find no abuse of discretion in this regard.

725 So.2d at 845-46.

The Mississippi Supreme Court found that the trial court did no err in denying the challenges for cause.[30]  Respondents would assert that the decision of the Mississippi Supreme Court is neither contrary to or an unreasonable application of clearly established federal law as announced by the United States Supreme Court.

Petitioner cites several cases dealing the right to a fair and impartial jury and with challenges for cause by reason of there views on the death penalty.  Oddly petitioner relies on *United States v. Martinez-Salazar*, 528 U.S. 304, 120 S.Ct. 774, 145 L.Ed.2d 792 (2000), as support for his claim.  However, when we read *Martinez-Salazar* we find that the United States Supreme Court was reversing the United States Court of Appeals in a federal case for finding that the district court's erroneous denial of challenges for cause forcing the defendant there to use peremptory challenges to correct the situation was a violation of due process. The United States Supreme clearly held that its decision was an interpretation of the Rule 24 (b) of the Federal Rules of Criminal Procedure.  528 U.S. at 308.  The Court first pointed out:

> The peremptory challenge is part of our common-law heritage.  Its use in felony trials was already venerable in Blackstone's time.  *See* 4 W. Blackstone, Commentaries 346-348 (1769).  We have long recognized the role of the peremptory challenge in reinforcing a defendant's right to trial by an impartial jury.  *See, e.g., Swain v. Alabama*, 380 U.S. 202, 212-213, 218-219, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965); *Pointer v. United States*, 151 U.S. 396,

---

[30]The trial judge in this case was the Honorable James C. Sumner, former circuit court judge and presently United States Magistrate Judge in the Southern District of Mississippi.

122

408, 14 S.Ct. 410, 38 L.Ed. 208 (1894). But we have long recognized, as well, that such challenges are auxiliary; unlike the right to an impartial jury guaranteed by the Sixth Amendment, peremptory challenges are not of federal constitutional dimension. *Ross*, 487 U.S., at 88, 108 S.Ct. 2273; *see Stilson v. United States*, 250 U.S. 583, 586, 40 S.Ct. 28, 63 L.Ed. 1154 (1919) ("There is nothing in the Constitution of the United States which requires the Congress to grant peremptory challenges.").

528 U.S. at 311.

The Court concluded holding:

We answer today the question left open in Ross and hold that a defendant's exercise of peremptory challenges pursuant to Rule 24(b) is not denied or impaired when the defendant chooses to use a peremptory challenge to remove a juror who should have been excused for cause. Martinez-Salazar and his codefendant were accorded 11 peremptory challenges, the exact number Rule 24(b) and (c) allowed in this case. Martinez-Salazar received precisely what federal law provided; he cannot tenably assert any violation of his Fifth Amendment right to due process. *See Ross*, 487 U.S., at 91, 108 S.Ct. 2273. For the reasons stated, the judgment of the Court of Appeals for the Ninth Circuit is

*Reversed*.

528 U.S. at 317.

*Martinez-Salazar* offers no solace to petitioner.

The case that controls this case is *Ross v. Oklahoma*, 487 U.S. 81, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988). In *Ross*, the United States Supreme Court decided petitioner's claim adversely to his assertions. In *Ross* the trial court refused to remove a juror for cause and the petitioner there used a peremptory challenge to remove the juror. The Supreme Court held:

Petitioner was undoubtedly required to exercise a peremptory challenge to cure the trial court's error. But we reject the notion that the loss of a peremptory challenge constitutes a violation of the constitutional right to an

impartial jury. We have long recognized that peremptory challenges are not of constitutional dimension. *Gray, supra*, at 663, 107 S.Ct., at 2054; *Swain v. Alabama*, 380 U.S. 202, 219, 85 S.Ct. 824, 835, 13 L.Ed.2d 759 (1965); *Stilson v. United States*, 250 U.S. 583, 586, 40 S.Ct. 28, 29, 63 L.Ed. 1154 (1919). They are a means to achieve the end of an impartial jury. So long as the jury that sits is impartial, the fact that the defendant had to use a peremptory challenge to achieve that result does not mean the Sixth Amendment was violated. *See Hopt v. Utah*, 120 U.S. 430, 436, 7 S.Ct. 614, 616, 30 L.Ed. 708 (1887); *Spies v. Illinois*, 123 U.S. 131, 8 S.Ct. 21, 22, 31 L.Ed. 80 (1887).[3] We conclude that no violation of petitioner's right to an impartial jury occurred.

_____

3. In *Spies*, the petitioners were sentenced to death for their participation in the killing of several police officers at the Haymarket riot. Using a number of their peremptory challenges to excuse jurors unsuccessfully challenged for cause, petitioners eventually exhausted all of their peremptory challenges. *See Spies v. People*, 122 Ill. 1, 256-257, 12 N.E. 865, 989 (1887). Before this Court, petitioners argued they had been deprived of a fair trial because numerous biased jurors had not been excused for cause. The Court declined to examine the "for cause" rulings as to the jurors who had been removed by petitioners. 123 U.S., at 168, 8 S.Ct., at 25.

487 U.S. at 88.

The Court continued:

Relying largely on *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982), and *Hicks v. Oklahoma*, 447 U.S. 343, 100 S.Ct. 2227, 65 L.Ed.2d 175 (1980), petitioner also argues that the trial court's failure to remove Huling for cause violated his Fourteenth Amendment right to due process by arbitrarily depriving him of the full complement of nine peremptory challenges allowed under Oklahoma law. We disagree. It is true that we have previously stated that the right to exercise peremptory challenges is "'one of the most important of the rights secured to the accused.'" *Swain, supra*, 380 U.S., at 219, 85 S.Ct., at 835 (quoting *Pointer v. United States*, 151 U.S. 396, 408, 14 S.Ct. 410, 414, 38 L.Ed. 208 (1894)). Indeed, the *Swain* Court cited a number of federal cases and observed: "The denial or impairment of the right is reversible error without a showing of prejudice." 380 U.S., at 219, 85 S.Ct., at 835. But even assuming that the Constitution were to impose this same rule in state criminal proceedings, petitioner's due

process challenge would nonetheless fail. Because peremptory challenges are a creature of statute and are not required by the Constitution, *Gray, supra*, 481 U.S., at 663, 107 S.Ct., at 2054; *Swain, supra*, 380 U.S., at 219, 85 S.Ct., at 835, it is for the State to determine the number of peremptory challenges allowed and to define their purpose and the manner of their exercise. *Cf. Stilson, supra*, 250 U.S., at 587, 40 S.Ct., at 30; *Frazier v. United States*, 335 U.S. 497, 505, n. 11, 69 S.Ct. 201, 206, n. 11, 93 L.Ed. 187 (1948). As such, the "right" to peremptory challenges is "denied or impaired" only if the defendant does not receive that which state law provides.

487 U.S. at 88-89.

The Court concluded:

Although the trial court erred in failing to dismiss prospective juror Huling for cause, the error did not deprive petitioner of an impartial jury or of any interest provided by the State. "[T]he Constitution entitles a criminal defendant to a fair trial, not a perfect one." *Delaware v. Van Arsdall*, 475 U.S. 673, 681, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674 (1986).

487 U.S. at 91.

Petitioner received all he was entitled to under Mississippi MISS. CODE ANN. § 99-17-3,

which states, in part:

In capital cases the defendant and the state shall each be allowed twelve peremptory challenges.

Further, the Mississippi Supreme Court in *Mettetal v. State*, 602 So.2d 864 (Miss. 1992),

held:

Mettetal asserts on appeal that he was denied a fair trial because the trial court refused to accept his challenge for cause to three veniremen. Mettetal explains that the trial court failed to remove three veniremen for cause thus requiring defense counsel to use peremptory challenges to remove them. We find that the trial court did not err by failing to remove certain potential jurors for cause.

The loss of a peremptory challenge does not constitute a violation of the constitutional right to an impartial jury. So long as the jury that sits is impartial, the fact that the defendant had to use his peremptory challenges to achieve that result does not mean that the defendant was denied his constitutional rights. *Ross v. Oklahoma*, 487 U.S. 81, 88, 108 S.Ct. 2273, 2278, 101 L.Ed.2d 80, 90, *reh'g denied* 487 U.S. 1250, 109 S.Ct. 11, 101 L.Ed.2d 962 (1988).

This Court explained that a prerequisite to presentation of a claim of a denial of constitutional rights due to denial of a challenge for cause is a showing that the defendant had exhausted all of his peremptory challenges and that the incompetent juror(s) was forced to sit on the jury by the trial court's erroneous ruling. *Chisolm v. State*, 529 So.2d 635, 639 (Miss.1988). Mettetal cannot make such a showing in the case at bar because he did in fact strike the veniremen peremptorily. The veniremen in question did not in fact sit on the jury. It is not error for defense counsel to be compelled into using a peremptory challenge to remove a prospective juror. This assignment of error is without merit.

602 So.2d at 869.

The Mississippi Supreme Court has long held that forcing a defendant to expend a peremptory challenge, if he feels the trial court was in error in refusing to grant a challenge for cause does not deny him an impartial jury or deny him any constitutional right. *See Simmons v. State*, 805 So.2d 452, 500-01, ¶¶ 135-38 (Miss. 2000); *Edwards v. State*, 737 So.2d 275, 309, ¶¶ 108-111 (Miss. 1999); *Manning v. State*, 726 So.2d 1152, 1187-88, ¶¶ 140-43 (Miss. 1998); *Holland v. State*, 705 So.2d 307, 338, ¶¶ 110-13 (Miss. 1997); *Russell v. State*, 670 So.2d 816, 825-26 (Miss. 1995); *Stewart v. State*, 662 So.2d 557 (Miss. 1995); *Davis v. State*, 660 So.2d 1228, 1242-43 (Miss. 1995); *Mettetal v. State*, 615 So.2d 600, 603 (Miss. 1993); *Chisolm v. State*, 529 So.2d 635, 639 (Miss. 1988).

Petitioner has made no allegation that he was forced to accept an impartial juror

126

because of the trial court's action in denying his challenges for cause.

Respondents admit that the State court did not reach the question petitioner presents here because it found that there had been no error in the denial of the for cause strikes. However, decision of the Mississippi Supreme Court did not result in a decision that is contrary to or and unreasonable application of the clearly established precedent announced in *Ross v. Oklahoma*. The fact that the Mississippi Supreme Court did not mention the decision in *Ross* does not make the decision unreasonable. In *Mitchell v. Esparza*, 540 U.S. 12, 124 S.Ct. 7, 157 L.Ed.2d 263 (2003), the United States Supreme Court held:

> A state court's decision is "contrary to" our clearly established law if it "applies a rule that contradicts the governing law set forth in our cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent." *Williams v. Taylor*, 529 U.S. 362, 405-406, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *see also Price v. Vincent*, 538 U.S. 634, 640, 123 S.Ct. 1848, 1853, 155 L.Ed.2d 877 (2003); *Early v. Packer*, 537 U.S. 3, 7-8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) (per curiam). *A state court's decision is not "contrary to . . . clearly established Federal law" simply because the court did not cite our opinions. Id., at 8, 123 S.Ct. 362. We have held that a state court need not even be aware of our precedents, "so long as neither the reasoning nor the result of the state-court decision contradicts them."* *Ibid.*

540 U.S. at 15-16. [Emphasis added.]

The fact that the Mississippi Supreme Court did not cite *Ross* does not make the decision unreasonable. The result reached by the Mississippi Supreme Court comports with the precedent found in *Ross*. The decision of the Mississippi Supreme Court is neither contrary to or an unreasonable application of clearly established federal law as announced by the United States Supreme Court. Petitioner is entitled to no relief on this claim.

**GROUND III:**      **EXCUSING WOMEN FROM THE JURY BECAUSE THEY HAD SMALL CHILDREN TO CARE FOR.**

Petitioner next contends that two women were automatically excused from his jury based on their gender in violation of *J.E.B. v. Alabama*, 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994) and *Duren v. Missouri*, 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979). Such is not the case. The two jurors petitioner contends were excused solely on the fact that they were female were excused for hardship reasons because they had small children and no one to care for them. This is not an automatic removal from the jury spoken of in *Duren* nor were these jurors excused solely because of their gender. Further, these jurors were excused for cause and not as the result of the use of a peremptory challenge. Because these jurors were excused for cause *J.E.B., supra*, and *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), do not apply to this strike.

This claim was presented to the Mississippi Supreme Court on direct appeal and the court held:

### III. THE EXCLUSION OF JURORS WITH SMALL CHILDREN

¶ 18. Bell asserts that the trial court committed error in excusing two jurors, Ringo and Saulters, for cause, because they were in charge of small children. Bell argues that this violated his right to a fair trial and violated the Fourteenth Amendment's Equal Protection clause by excluding women from jury service merely because of their gender. *See J.E.B. v. Alabama*, 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994) (wherein the United States Supreme Court extended *Batson*, holding that discrimination on the basis of gender violates the Equal Protection Clause). As further support for this position, he cites *Duren v. Missouri*, 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979), in which the Supreme Court declared unconstitutional on Sixth Amendment "fair cross-section" grounds, a Missouri statute granting women

128

who so requested an automatic exemption from jury service.  He argues the exclusion of Ringo and Saulters was automatic without any regard to whether the women's domestic responsibilities would preclude them from being fair jurors.

¶ 19. The record does not support Bell's complaints as to these jurors. First, it is noted that at the time that they were excused, no objection was made.  Further, they were examined and excused in a context of the court's effort to determine which jurors had outside demands sufficient to constitute a serious distraction from their duties and which would make sequestration or long hours an undue burden.  Juror Ringo was a grandmother who regularly kept her daughter's small children.  The daughter would be required to miss work if she was not available.  Juror Saulters, along with some other jurors, were excused not merely because they had children, but because their inability to make arrangements for the care of those children was such as to hamper their ability to give the case sufficient attention.  She stated that she had two small children and if she was not home her husband would have to miss work to care for them.  This was complicated by the fact that her husband had out-of-town business appointments the following two days.  This is clearly neither a gender-based exclusion nor the deprivation of a fair cross-section of the community under *Duren*; it simply was not an unreasoned, automatic exclusion of women with families.  There was no error in the exclusion of these jurors.

725 So.2d at 846-47.

The state court first pointed out that petitioner interposed no objection based on *J.E.B.* or *Duren* to the exclusion of these jurors.

Looking to the first discussion of the Mississippi Supreme Court concerning jury selection we find the following:

¶ 10. We cannot today know how the trial judge would have conducted his voir dire if Bell had objected or raised these issues before him, because the defense gave him no opportunity to consider them.  *No objection was made as to the manner of the judge's questioning or to his decisions on challenges for cause*.  When the panel was tendered to the defense after the State's challenges for cause, six of the eight were acknowledged as acceptable.  The last two

129

were accepted after Bell had exhausted his challenges, but no request for additional challenges was made. *Following trial, his post-trial motions raised no questions as to the voir dire procedures. We have held and hold today that a party who fails to object to the jury's composition before it is empaneled waives any right to complain thereafter. Hunter v. State*, 684 So.2d 625, 631 (Miss.1996); *Myers v. State*, 565 So.2d 554, 557 (Miss.1990); *Pickett v. State*, 443 So.2d 796, 799 (Miss.1983). In the present case, any flaws in the judge's examination of the panel are mitigated by the leeway allowed defense counsel in his phase of the voir dire.

725 So.2d at 844. [Emphasis added.]

The respondents would assert that this claim is procedurally barred as the Mississippi Supreme Court clearly imposed a bar to claims regarding jury selection because petitioner did not make any objection to the challenges for cause granted by the trial court. The state court pointed out that petitioner made no objection to the removal of the two jurors in question here and that statement related back to its earlier imposition of the bar regarding jury selection. This claim is barred from habeas review because of the imposition of an independent state law procedural bar.

If the Court finds that the Mississippi Supreme Court did not clearly impose a procedural bar to the claim, the respondents would assert that the decision of the Mississippi Supreme Court did not result in a decision that is contrary to or an unreasonable application of clearly established federal law as announced by the United States Supreme Court.

Without waiving the bar to the consideration of this claim the respondents would point out that the United States Supreme Court in *Taylor v. Louisiana*, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975), held:

> *The States are free to grant exemptions from jury service to individuals in case of special hardship or incapacity and to those engaged in particular occupations the uninterrupted performance of which is critical to the community's welfare. Rawlins v. Georgia*, 201 U.S. 638, 26 S.Ct. 560, 50 L.Ed. 899 (1906). It would not appear that such exemptions would pose substantial threats that the remaining pool of jurors would not be representative of the community. A system excluding all women, however, is a wholly different matter. It is untenable to suggest these days that it would be a special hardship for each and every woman to perform jury service or that society cannot spare any women from their present duties.[17] This may be the case with many, and it may be burdensome to sort out those who should be exempted from those who should serve. But that task is performed in the case of men, and the administrative convenience in dealing with women as a class is insufficient justification for diluting the quality of community judgment represented by the jury in criminal trials.

419 U.S. at 534-35. [Footnote omitted, Emphasis added.]

*See Rawlins v. Georgia*, 201 U.S. 638, 26 S.Ct. 560, 50 L.Ed. 899 (1906).

This principle was reiterated in Justice Stevens dissenting opinion in a post-*Batson* context in *Holland v. Illinois*, 493 U.S. 474, 110 S.Ct. 803, 107 L.Ed.2d 905 (1990). There the Justice Stevens pointed out:

> *The State may remove jurors at any stage on the grounds, among others, that service would cause hardship to the individual or community, see Taylor*, 419 U.S., at 534, 95 S.Ct., at 699-700; *Rawlins v. Georgia*, 201 U.S. 638, 26 S.Ct. 560, 50 L.Ed. 899 (1906), or that the individual juror is unable to render an impartial verdict, *see Lockhart v. McCree*, 476 U.S., at 175, 106 S.Ct., at 1766; *cf. Swain v. Alabama*, 380 U.S. 202, 220, 85 S.Ct. 824, 835-36, 13 L.Ed.2d 759 (1965) ("[T]he view in this country has been that the system should guarantee 'not only freedom from any bias against the accused, but also from any prejudice against his prosecution'") (quoting *Hayes v. Missouri*, 120 U.S. 68, 70, 7 S.Ct. 350, 351, 30 L.Ed. 578 (1887)). By the same token, however, the State may never arbitrarily remove jurors on a discriminatory basis unrelated to their ability to serve as jurors. *Cf. Lockhart*, 476 U.S., at 175, 106 S.Ct., at 1766.

131

The Sixth Amendment's protection is not so frail that it can be defeated by the State's creation of an additional level of selection.[12]   Rather, by providing that juries be drawn through fair and neutral selection procedures from a broad cross section of the community, that Amendment insures a jury that will best reflect the views of the community-one that is not arbitrarily skewed for or against any particular group or characteristic.

493 U.S. at 514-15. [Footnote omitted.]

In fact, the Jury Selection and Service Act, found in 28 U.S.C. §§ 1861 *et seq*., clearly allows for excusal of jurors with undue hardships or extreme inconvenience.   The fact that the women in this case asserted such hardships and inconvenience removes it from any challenge under *J.E.B., supra*.   In *United States v. North*, 910 F.2d 843 (D.C. Cir. 1990), the Court of Appeals for the District of Columbia held:

The Jury Selection and Service Act ("JSSA"), 28 U.S.C. §§ 1861 *et seq*. (198 8), sets out two fundamental principles governing jury selection in federal courts.   First, it establishes that litigants in federal court entitled to a trial by jury "shall have the right to grand and petit juries selected at random from a fair cross section of the community in the district or division wherein the court convenes." *Id*. § 1861.   In addition, the JSSA provides that *disqualifications, exemptions, and excusals from jury service may be granted only for certain objective reasons, such as a showing of undue hardship or extreme inconvenience*, inability to render impartial jury service, peremptory challenge, or good cause. *See id*. § 1866(c). *See also United States v. Savides*, 787 F.2d 751, 754 (1st Cir.1986).

910 F.2d at 909. [Emphasis added.]

Federal law therefore recognizes that excusing jurors for hardship reasons in permissible.

Respondents would assert that these two jurors were not removed because of their gender, but because they forwarded reasons of hardship or inconvenience as reasons they could not

132

serve on the jury. The Mississippi Supreme Court's decision did not result in a decision that was contrary to or an unreasonable application of clearly established federal law as announced by the United States Supreme Court. Petitioner is entitled to no habeas relief on this claim.

**GROUND IV:    REFUSAL OF PETITIONER'S JURY INSTRUCTION DURING THE GUILT PHASE.**

Petitioner next contends that it was error for the trial court to refuse his instruction DG-14 which reads as an informant inst was a informant/accomplice instruction. He bases his contention on the fact that the testimony given by Robert James, an eyewitness, conflicted with the testimony given by Frank Coffey, another witness.

On direct appeal petitioner argued that he was entitled to have Robert James' testimony viewed with caution and suspicion. Petitioner was using the language found in accomplice instructions. However, Robert James was *not* an accomplice. He was an eye-witness, not an accomplice. Petitioner attempted to get around this major problem by claiming that James "was an informer who had a powerful incentive to lie because of the possibility that the police would disbelieve his protestations of innocence and charge him with capital murder." Brief for Appellant at 32. Petitioner's argument was based on nothing more than the mere possibility, conjecture, speculation and wishful thinking his part. This did not an eyewitness, Robert James, an accomplice. Nor does it make him an informer. He was an eyewitness, plain and simple.

Since Robert James was not an informer/accomplice petitioner was not entitled to an

133

"accomplice" instruction. It is clear that trial counsel recognized this fact because the offered instruction was carefully crafted to avoid this pitfall by substituting "informant" for "accomplice." On appeal petitioner attempted to fit Instruction DG-14 into a different category by seemingly claiming that it should have been given as an "impeachment" type cautionary instruction since the testimony of James was inconsistent with that of Coffey. James' was not impeached by prior inconsistent statements that would warrant the granting of a cautionary instruction.[31]   The main thrust of petitioner's argument was that James' testimony was inconsistencies with other testimony given at trial. This is not impeachment evidence.   The fact that witnesses introduced by a party do not agree with each other throughout their combined testimony is not an impeachment. *Manning v. State*, 188 Miss. 393, 195 So. 319 (1940). Since this witness was not impeached there was no need for a cautionary instruction. *Ferrill v. State*, 643 So.2d 501, 502-07 (Miss. 1994)(comprehensive discussion of difference between cautionary impeachment instruction and accomplice instruction).

This claim was presented to the Mississippi Supreme Court on direct appeal and the state court held:

## VI. BELL'S INFORMANT/ACCOMPLICE INSTRUCTION DG-14

¶ 25. This instruction reads:

---

[31]The claimed inconsistency was the fact that James had stated that the pistol had black tape on the handle prior to trial and testified at trial that the tape was gray.

134

The Court instructs the jury that the law looks with suspicion and distrust on the testimony of an alleged informant, and requires the jury to weigh same with great care and caution and suspicion. You should weigh the testimony from alleged informant, Robert James, and passing on what weight, if any, you should give this testimony, you should weigh it with great care and caution, and look upon it with distrust and suspicion.

¶ 26. Bell asserts that the refusal of this instruction is error because James was present at the scene and possibly participated; he was an informer who had incentive to lie or the police might charge him with capital murder; and his trial testimony differed from a previous statement and from that of Frank Coffey, who was charged as an accomplice.

¶ 27. He relies on *Ferrill v. State*, 643 So.2d 501 (Miss.1994), and *McGee v. State*, 608 So.2d 1129 (Miss.1992), in which we found reversible error where the trial court refused an instruction on effect of impeachment of witness by his own prior inconsistent statement. But here, no significant prior inconsistent statement by James is called to our attention, nor do we find one. It is true that Frank Coffey had given a statement inconsistent with that of James, but this instruction does not address such an event. Bell suggests that James's pre-trial statement that one of the guns used had black tape on its grip and his courtroom testimony describing the tape as gray is an inconsistency sufficient to justify a cautionary instruction. We do not consider such natural variations in repeated descriptions to be inconsistencies sufficient to justify a cautionary instruction beyond those general instructions given.

¶ 28. *Ferrill* was also reversed on the failure of the trial judge to grant an accomplice cautionary instruction. However, James, in the case sub judice, was not charged as an accomplice, nor was there any evidence offered that he should have been so charged.

725 So.2d at 848.

Thus, the Mississippi Supreme Court found that James was neither an accomplice or an informant, but an eyewitness. This decision did result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court

135

proceeding. There was never any evidence introduced at trial that James was an accomplice or an informant. The Fifth Circuit held in *Summers v. Dretke*, 431 F.3d 861 (5th Cir. 2005):

> A state court's factual findings are "presumed to be correct." *Hughes*, 412 F.3d at 589 (citing 28 U.S.C. § 2254(e)(1)). Before a federal court, "a petitioner has the burden of rebutting this presumption with clear and convincing evidence." *Id.* (citing 28 U.S.C. § 2254(e)(1)).

431 F.3d at 868.

Petitioner has not presented any clear and convincing evidence that overcomes this finding of fact by the Mississippi Supreme Court.

Further, petitioner cites to *United States v. Mayer*, 556 F.2d 245 (5th Cir. 1977), as authority for this Court to grant relief. However, when we look to *Mayer* we find that the reason for reversal there was the denial of adequate cross-examination by the district court thereby violating the defendant's Sixth Amendment Confrontation Rights. There is mention of an instruction in the case, but the instruction was not an instruction on the manner in which an accomplice's testimony should be viewed, but one instructing the jury that they were not to consider whether any promise was made to any witness who testified. This is clearly not the case here. *Mayer* has no application to this case.

Petitioner also cites to *United States v. Partin*, 493 F.2d 750 (5th Cir. 1974), as authority for his claim. In *Partin*, the Fifth Circuit found error because no cautionary instruction was given regarding impeachment. The Fifth Circuit held:

> The Supreme Court has recognized that where the government's case in a criminal prosecution may stand or fall on the jury's belief or disbelief of one witness, that witness's credibility is subject to close scrutiny, *Gordon v.*

136

*United States*, 344 U.S. 414, 73 S.Ct. 369, 97 L.Ed. 447 (1953). This Court so stated in *McConnell v. United States, post*, 5 Cir., 1968, 393 F.2d 404.

Government witness McClanahan had been convicted of forgery, had been convicted of aggravated assault, and had been convicted of theft. He had made prior statements under oath, and in writing, which were altogether inconsistent with his trial testimony. He admitted committing acts of vandalism.

Billy Rogers had been convicted of forgery; had been dishonorably discharged from the Marines; admitted that during the events about which he testified he contemplated stealing $20,000 from Dunham; and had also made statements under oath quite inconsistent with his trial testimony.

Here, there were two witnesses, instead of one, but they were 'two of a kind'- both ex-convicts of felony and both self admitted perjurers, committed on more than one occasion.

What makes this all the more critical is that without these witnesses the prosecution had no case on Count 5.

It has been held that where an admitted perjurer testified in a criminal prosecution, the trial court must charge that the testimony of that witness is to be scrutinized with care, *United States v. Margolis*, 3 Cir., 1943, 138 F.2d 1002.

This brings us to the fatal trial blemish which, as we understand the law, leaves no alternative to a new trial.

493 F.2d at 760.

The trial court refused to give a formal instruction to the jury that included the credibility factors, such as the "testimony of interested witnesses, impeachment of witnesses by prior inconsistent statements, and impeachment of witnesses by proof of felony convictions." *Id.* at 761.

Looking to *Gordon v. United States*, 344 U.S. 414, 73 S.Ct. 369, 97 L.Ed. 447 (1953),

137

cited in *Partin, supra*, for proposition that when the prosecutions cases may stand or fall on the jury's belief or disbelief on one witness, we find no mention of a cautionary instruction. Instead *Gordon*, is a case dealing with whether the defendant had the right to discover prior sworn contradictory statements of a witness against the defendant that were in the hands of the government. This case had nothing to do with the giving of a cautionary instruction.

In *Greene v. Wainwright*, 634 F.2d 272 (5th Cir. 1981), the Fifth Circuit cited *Partin, supra*. However, petitioner only presents a edited phrase from the quote. The Fifth Circuit held:

> Second, Kennerly's alleged actions might have cast doubt on his mental stability. The relevance of evidence regarding Kennerly's sanity can hardly be doubted:
>
> > The readily apparent principle is that the jury should, within reason, be informed of all matters affecting a witness's credibility to aid in their determination of the truth . . . . It is just as reasonable that a jury be informed of a witness's mental incapacity at a time about which he proposes to testify as it would be for the jury to know that he then suffered an impairment of sight or hearing.
>
> *United States v. Partin*, 493 F.2d 750, 762 (5th Cir. 1974), *cert. denied*, 434 U.S. 903, 98 S.Ct. 298, 54 L.Ed.2d 189 (1977) (citation omitted). The events in question occurred within the same general time period as the marijuana sale. *Cf. United States v. Diecidue*, 603 F.2d 535, 551 (5th Cir. 1979), *cert. denied*, 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 781 (1980) (evidence of mental incapacity inadmissible when it related to period twelve years before crime). We are not called upon here to deal with the appropriate limits of such evidence, such as whether hospital records or expert testimony would be admissible. *See, e. g., United States v. Hiss*, 88 F.Supp. 559 (S.D.N.Y.1950). In this case, petitioner was denied the opportunity to present evidence of any sort, including by cross-examination, regarding Kennerly's alleged recent history of mental instability. This absolute prohibition exceeds any possible trial court discretion. *See generally* C. McCormick, Evidence s 45 (2d ed.

138

1972); Annot. 44 A.L.R.3d 1203 (1972).

634 F.2d at 276.

Again, petitioner's cited authority has no mention of a cautionary instruction.

Petitioner has failed to cite a single decision from the United States Supreme Court which relates to the granting of cautionary instructions. Before relief can be granted under the AEDPA certain standards must be met. In *Summers v. Dretke, supra*, the Fifth Circuit reiterated those standards regarding conclusions of law and mixed conclusions of law and fact stating:

> Under AEDPA, a federal court's assessment of a state court's conclusions of law is similarly deferential. The Supreme Court has determined that section 2254(d)(1) affords a petitioner two avenues, "contrary to" and "unreasonable application," to attack a state court application of law. *See Williams v. Taylor*, 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (noting the clauses have "independent meaning"). Under the first clause:

>> a state court decision is "contrary to . . . clearly established Federal law, as determined by the Supreme Court" if: (1) "the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases," or (2) "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent."

> *Foster v. Johnson*, 293 F.3d 766, 776 (5th Cir.2002) (quoting *Williams*, 529 U.S. at 405-06, 120 S.Ct. 1495).

> Under the second clause, "a state court decision is 'an unreasonable application of clearly established' Supreme Court precedent if the state court 'correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case.'" *Id*. (quoting *Williams*, 529 U.S. at 407-08, 120 S.Ct. 1495). The Supreme Court provided further guidance:

139

> First, the Court indicated that the inquiry into unreasonableness is an objective one. Second, the Court emphasized that "unreasonable" does not mean merely "incorrect": an application of clearly established Supreme Court precedent must be incorrect and unreasonable to warrant federal habeas relief.

> *Id*. (citing *Williams*, 529 U.S. at 409-12, 120 S.Ct. 1495) (internal citations omitted). *See also Morrow v. Dretke*, 367 F.3d 309, 313 (5th Cir.2004) ("[F]ederal habeas relief is only merited where the state court decision is both incorrect and objectively unreasonable."). Only if a state court's application of federal constitutional law fits within this paradigm may this court grant relief.

> 431 F.3d at 868-69.

Petitioner has failed to point out what federal law announced by the United States Supreme Court the Mississippi Supreme Court's decision is contrary to or an unreasonable application of thereby defeating his own claim. His citation to circuit court precedent which is not on point is not sufficient to overcome the dictates of 28 U.S.C. § 2254(d).

When there is no clearly established federal precedent announced by the United States Supreme Court which can be applied to this case under 28 U.S.C. § 2254 (d), there is nothing for the state court decision to be judged against. In a case where there was no clear precedent, the United States Supreme Court, in reversing the grant of habeas relief in *Mitchell v. Esparza*, 540 U.S. 12, 124 S.Ct. 7, 157 L.Ed.2d 263 (2003), held:

> In relying on the absence of precedent to distinguish our noncapital cases, and to hold that harmless-error review is not available for this type of Eighth Amendment claim, the Sixth Circuit exceeded its authority under § 2254(d)(1). A federal court may not overrule a state court for simply holding a view different from its own, when the precedent from this Court is, at best, ambiguous. As the Ohio Court of Appeals' decision does not conflict with the reasoning or the holdings of our precedent, it is not "contrary to . . . clearly

140

established Federal law."

540 U.S. at 17.

*See also Lockyer v. Andrade*, 538 U.S. 65, 71-73, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003) (habeas court must decide if there is clear precedent of the United States Supreme Court as "clearly established" phrase "refers to the holdings, as opposed to the dicta, of Court's decisions as of the time of the relevant state-court decision."). Therefore, where there is no clear precedent of the United States Supreme Court against which to judge the reasonableness of the state court decision the state court's decision cannot be contrary to clearly established Federal law as announced by the Supreme Court of the United States. Therefore, the decision of the Mississippi Supreme Court cannot be found to be unreasonable in the absence of precedent from the United States Supreme Court. Further, the findings of fact by the Mississippi Supreme Court have not been overcome by clear and convincing evidence refuting those findings. Petitioner has only presented speculation and conjecture to support this claim.

Petitioner is entitled to no habeas relief on this claim.

**GROUND V:        PROHIBITING PETITIONER FROM IMPEACHING FRANK COFFEY FOR BIAS.**

Petitioner contends that he was refused the right to impeach Frank Coffey to show his bias thereby violating the rule of *Davis v. Alaska*,

141

## VIII. EXCLUSION OF COFFEY'S CONVICTION

¶ 30. The testimony of Frank Coffey was crucial to the prosecution. He placed Bell at the scene, reported statements of Bell that they intended to rob the store, and, most importantly, said that Bell told him that he shot Bert. In order to impeach Coffey's testimony, Bell offered evidence that Coffey was not only indicted as an accessory after the fact of Bert's death, but that he had been indicted in Memphis of solicitation to commit murder of another party. In fact, Bell and Coffey had both pled guilty to the Memphis crime, and, prior to the Grenada County trial, Coffey had been sentenced to three years in prison, and Bell to twenty-five. The trial judge declined to allow evidence as to either Coffey's or Bell's complicity or conviction in that murder. In excluding the evidence of Coffey's conviction, the judge exercised his discretion under Miss. R. Evid. 609(a), which allows discretionary admission of prior convictions for the purpose of impeaching the credibility of witnesses. Prior to admitting such evidence, the judge must determine that the probative value of the evidence outweighs its prejudicial effect. While it cannot be said that in this case the circuit judge articulated the factors outlined in *Peterson v. State*, 518 So.2d 632 (Miss.1987), it is clear on the record that the probative value and the prejudicial effect of the evidence was considered. In the colloquy, the judge noted the fact that Coffey was also indicted as an accessory in the present crime, and that such fact would be available in an attack on his credibility. Furthermore, the judge made specific references to *Peterson* and to the necessity of finding, before allowing the conviction before the jury, that the probative value outweighed any prejudice. We further note that the party seeking to have the conviction admitted for impeachment has the burden of persuasion.

¶ 31. Here the judge faced a particularly difficult choice, for if he allowed evidence of Coffey's Memphis conviction while excluding that of Bell, the jury would have seen that conviction in an unreal light. Finally, as observed above, the jury was instructed that Coffey's testimony in particular was to be viewed with suspicion. Had he decided to allow both convictions, there is no doubt that Bell would have been seriously prejudiced. Considering all these circumstances, we find that no error was committed by the exclusion of the fact that Coffey had been convicted of the Memphis crime.

735 So.2d at 849.

142

**GROUND VI:    OVERRULING   PETITIONER'S   OBJECTION    TO THE INTRODUCTION OF OTHER CRIMES EVIDENCE DURING THE GUILT PHASE.**

Petitioner next contends that the trial court erred in overruling his objection to the introduction of other crimes evidence before the jury.  He contends that his threats to kill James and Coffey were evidence of other crimes and therefore inadmissible.  This claim was presented to the Mississippi Supreme Court on direct appeal.  The state court held:

### X. EVIDENCE OF OTHER CRIMES COMMITTED BY BELL

¶ 33. Robert James testified to his encounter with Doss and Bell immediately following the incident.  At the time of the robbery of Sparks' Stop-and-Go and the killing of Bert Bell, James and Coffey were within earshot.  Doss and Bell caught up with them only two or three minutes after the shots were fired.  Over Bell's objection, James testified that Bell then pointed the gun, which was stolen from the store, at James and made the statement that they [Doss and Bell] did not need any witnesses.  Then, in the same conversation, Doss and Coffey convinced Bell that James would not talk about the incident and that it was not necessary to kill him.[2]  James said further that as they walked on down the road, Bell described the shooting, demonstrating in detail the entry points of the bullets which he shot at Bert.  This testimony was significant in that it constituted independent confirmation of the physical and forensic evidence.  James explained that his reason for not going to Memphis with the others was the threat on his life made by Bell.

¶ 34. Coffey then testified confirming Bell's statements on the same occasion claiming credit for the shooting and adding detail as to Bell's claimed positions in the store and attempt to open the cash register.  He likewise, over Bell's objection, confirmed Bell's statement made to James that he did not want any witnesses as well as his assurance to Bell that James would not talk. He then told of how they were driven to Memphis and of a conversation in which Bell said that he wanted to go back and shoot James.  Again, Coffey,

143

this time joined by Bernard Gladney, the driver, reassured Bell. Finally, he testified that Bell, on a later occasion, had threatened to kill him, Coffey, if he testified. No objection was made to the latter statement.

¶ 35. On appeal, Bell argues that the statements regarding the threats on James' life were highly prejudicial, and that their admission into evidence was error. Whether or not prejudicial, they were certainly and seriously damaging to his defense, as they were no doubt meant to be. His argument is based largely on the injunction of Miss. R. Evid. 404 against the use of character evidence and evidence of other crimes or wrongs, except under specific circumstances set out in the rule. Rule 404(a) has no application here since this evidence was admitted not as character evidence indicative of a propensity to commit murder, but directly as evidence of the crime charged. His threats upon the life of James, or more accurately, his musings and debates over whether or not to kill James, were made in the midst of describing the killing of Bert and while displaying the weapon used. They show a great deal of concern immediately following the crime of his vulnerability to punishment for the crime charged in this case. On study of the record, we cannot see how these important details could have been related in a sanitized version of James' and Coffey's testimony, nor do we see any obligation on the State to do so.

¶ 36. Bell argues correctly that evidence of unrelated crimes or bad acts is not admissible to show that his actions in the commission of the crime charged are in conformity with his actions in the unrelated crimes. *Ballenger*, 667 So.2d at 1256-57; *Duplantis v. State*, 644 So.2d 1235, 1247-48 (Miss.1994), *cert. denied* 514 U.S. 1123, 115 S.Ct. 1990, 131 L.Ed.2d 876 (1995); *Lesley v. State*, 606 So.2d 1084, 1089-90 (Miss.1992). But bad acts or crimes which are intimately connected with the crime charged as to be necessary to the telling of a complete and clear story are admissible. *Ballenger*, loc. cit.[sic]; *Brown v. State*, 483 So.2d 328, 330 (Miss.1986). Furthermore, *Ballenger* and *Duplantis* stand for the oft-repeated rule that even where the evidence of such acts is otherwise admissible, the probative value of the evidence must be weighed against its possible prejudicial effect. But where the bad conduct is so closely intertwined with the crime charged and has a direct relationship to the escape, as it does here, there is no error in allowing the jury to hear it.

¶ 37. Finally, on this point, Bell argues that if the threats to James and Coffey were not admitted as propensity evidence, they were used and argued as such by the State in closing argument. In fact, they were not. They were

used specifically for the purpose of showing that Bell feared punishment. At one point, the prosecutor did say that, "[t]here wouldn't have been near as much evidence if this person over here [Bell] thought these people were going to testify, because he's definitely capable of killing them." This is a legitimate use of the evidence to show his fear of retribution. If anything, the prosecutor is using the killing of Bert to show that the threat upon James and Coffey was real-not that the threats were evidence of a propensity to kill Bert. There is no error in this argument.

_____

2. In this testimony, James expressed the opinion that, "[h]e was probably going to kill me right then." Bell's attorney objected to this statement, and the judge sustained the objection and admonished the jury to disregard it.

725 So.2d at 850-51.

The decision of the Mississippi Supreme Court is neither contrary to or an unreasonable application of clearly established precedent of the United States Supreme Court. Federal habeas courts must defer to a state court's application of its own rules of evidence. *See Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) (holding that a federal court on habeas review must not review state court rulings on admissibility of evidence under state law); *see also Marshall v. Lonberger*, 459 U.S. 422, 438 n. 6, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983) ("[T]he Due Process Clause does not permit the federal courts to engage in a finely-tuned review of the wisdom of state evidentiary rules."). Petitioner has not demonstrated that he was denied a fundamentally fair trial by the introduction of this evidence.

In *Reese v. Wainwright*, 600 F.2d 1085 (5th Cir. 1979), the Fifth Circuit held:

The admission of this evidence of contemporaneous activity was not error. Assuming, arguendo, it was improper, it certainly was not "so prejudicial as to constitute a denial of due process." This severe test must be

145

satisfied before a federal habeas court may address a state evidentiary ruling. *Nordskog v. Wainwright*, 546 F.2d 69 (5th Cir. 1977). Under Florida law, evidence of crimes that are part of the res gestae is generally admissible to give a complete and intelligent account of the crime charged. *E.g., Kennedy v. State*, 140 Fla. 124, 191 So. 193, 196 (Fla.Sup.Ct.1939); *Feldman v. State*, 212 So.2d 21, 22 (Fla. 3d Dist. 1968). Thus, if error, the admission of this evidence was not of constitutional proportion. *See Dinkins v. Wainwright*, 451 F.2d 587, 588 (5th Cir. 1971).

600 F.2d at 1090.

Petitioner is entitled to no relief on this claim as the Mississippi Supreme Court's decision does not represent an unreasonable application of clearly established federal law as announced by the United States Supreme Court.

**GROUND VII:     INTRODUCTION OF PHOTOGRAPHS OF THE DECEASED.**

Petitioner contends that his federal constitutional rights were violated by the introduction of the photographs of the victim in this case. The admission of evidence in, for the most part, a state law question not cognizable in federal habeas corpus litigation. In *Lisenba v. California*, 314 U.S. 219, 62 S.Ct. 280, 86 L.Ed. 166 (1941), the United States Supreme Court held:

We do not sit to review state court action on questions of the propriety of the trial judge's action in the admission of evidence. We cannot hold, as petitioner urges, that the introduction and identification of the snakes so infused the trial with unfairness as to deny due process of law. The fact that evidence admitted as relevant by a court is shocking to the sensibilities of those in the courtroom cannot, for that reason alone, render its reception a violation of due process.

314 U.S. at 228-29.

In *Jackson v. Johnson*, 194 F.3d 641 (5th Cir.1999), the Fifth Circuit held:

146

>In habeas actions, we do not sit to review the admissibility of evidence under state law unless erroneous evidentiary rulings were so extreme as to result in a denial of a constitutionally fair proceeding. Thus, the erroneous admission of prejudicial testimony does not justify habeas relief unless the evidence played a "crucial, critical, and highly significant" role in the jury's determination.[63]

>_____
>63.    *Little v. Johnson*, 162 F.3d 855, 862 (5ᵗʰ Cir.1998), *cert. denied*, 526 U.S. 1118, 119 S.Ct. 1768, 143 L.Ed.2d 798 (1999); *Milton*, 744 F.2d at 1097.

194 F.3d at 656.

*See Brown v. Dretke*, 419 F.3d 365, 377 (5ᵗʰ Cir. 2005).

In *Johnson v. Puckett*, 176 F.3d 809 (5ᵗʰ Cir. 999), the Fifth Circuit held:

>A state court's evidentiary rulings present cognizable habeas claims only if they run afoul of a specific constitutional right or render the petitioner's trial fundamentally unfair. *See Cupit v. Whitley*, 28 F.3d 532, 536 (5ᵗʰ Cir.1994).

176 F.3d at 820.

In *Little v. Johnson*, 162 F.3d 855 (5ᵗʰ Cir. 1998)

>In habeas actions, this court does not sit to review the mere admissibility of evidence under state law. *See Peters v. Whitley*, 942 F.2d 937, 940 (5th Cir.1991). However, a state trial court's evidentiary rulings will mandate habeas relief when errors are so extreme that they constitute a denial of fundamental fairness. *See Evans v. Thigpen*, 809 F.2d 239, 242 (5ᵗʰ Cir.1987). Thus, only when the wrongfully admitted evidence has played a crucial, critical, and highly significant role in the trial will habeas relief be warranted. *See Andrade v. McCotter*, 805 F.2d 1190, 1193 (5ᵗʰ Cir.1986).

162 F.3d at 862.

Also, in *Castillo v. Johnson*, 141 F.3d 218 (5ᵗʰ Cir. 1998), the Fifth Circuit held:

>As we noted above, federal habeas review is limited to errors of constitutional proportions. Thus, in reviewing state court evidentiary rulings,

147

the federal habeas court's role "is limited to determining whether a trial judge's error is so extreme that it constituted denial of fundamental fairness" under the Due Process Clause. *Andrade v. McCotter*, 805 F.2d 1190, 1193 (5th Cir.1986) (internal quotation omitted). Castillo has not demonstrated that the admission of such testimony affected the fundamental fairness of his trial and thus is not entitled to federal habeas relief on this claim.

141 F.3d at 224.

Thus, evidentiary rulings are seldom matters of federal habeas review. Further, the review is limited to a determination of whether there was a denial of fundamental fairness in the evidentiary ruling.

This limited review layered upon the limitations established by 28 U.S.C. § 2254 (d), that the decision of the Mississippi Supreme Court's decision must be an unreasonable application of clearly established federal law as announced by the United States Supreme Court creates a great hurdle for petitioner to overcome in order to obtain relief on an evidentiary claim.

Looking specifically to the issue of photographs we find that in his dissent in *Thompson v. Oklahoma*, 487 U.S. 815, 108 S.Ct. 2687, 101 L.Ed.2d 702 (1988), Justice Scalia stated:

Since I find Thompson's age inadequate grounds for vacating his sentence, I must reach the question whether the Constitution was violated by permitting the jury to consider in the sentencing stage the color photographs of Charles Keene's body. Thompson contends that this rendered his sentencing proceeding so unfair as to deny him due process of law.

The photographs in question, showing gunshot wounds in the head and chest, and knife slashes in the throat, chest and abdomen, were certainly probative of the aggravating circumstance that the crime was "especially

148

heinous, atrocious, or cruel." The only issue, therefore, is whether they were unduly inflammatory. *We have never before held that the excessively inflammatory character of concededly relevant evidence can form the basis for a constitutional attack, and I would decline to do so in this case. If there is a point at which inflammatoriness so plainly exceeds evidentiary worth as to violate the federal Constitution, it has not been reached here. The balancing of relevance and prejudice is generally a state evidentiary issue, which we do not sit to review. Lisenba v. California*, 314 U.S. 219, 227-228, 62 S.Ct. 280, 285-286, 86 L.Ed. 166 (1941).

487 U.S. at 878.

Justice Scalia pointed out that the United States Supreme Court has never addressed the question of the introduction of photographs in relation to their inflammatory nature. The same is true today as it was when *Thompson* was handed down in 1988. There is no United States Supreme Court precedent governing the introduction of photographs, inflammatory or not. Therefore, there is no clearly established federal precedent announced by the United States Supreme Court which can be applied to this case under 28 U.S.C. § 2254 (d). In a case where there was no clear precedent, the United States Supreme Court, in reversing the grant of habeas relief in *Mitchell v. Esparza*, 540 U.S. 12, 124 S.Ct. 7, 157 L.Ed.2d 263 (2003), held:

> In relying on the absence of precedent to distinguish our noncapital cases, and to hold that harmless-error review is not available for this type of Eighth Amendment claim, the Sixth Circuit exceeded its authority under § 2254(d)(1). A federal court may not overrule a state court for simply holding a view different from its own, when the precedent from this Court is, at best, ambiguous. As the Ohio Court of Appeals' decision does not conflict with the reasoning or the holdings of our precedent, it is not "contrary to . . . clearly established Federal law."

540 U.S. at 17.

149

*See also Lockyer v. Andrade*, 538 U.S. 65, 71-73, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003) (habeas court must decide if there is clear precedent of the United States Supreme Court as "clearly established" phrase "refers to the holdings, as opposed to the dicta, of Court's decisions as of the time of the relevant state-court decision.").  Therefore, where there is no clear precedent of the United States Supreme Court against which to judge the reasonableness of the state court decision the state court's decision cannot be contrary to clearly established Federal law as announced by the Supreme Court of the United States. Therefore, the decision of the Mississippi Supreme Court cannot be found to be unreasonable in the absence of precedent from the United States Supreme Court.

The Mississippi Supreme Court in its direct appeal opinion held the introduction of the photographs in question was without merit as the trial court did not abuse its discretion. The Mississippi Supreme Court held:

### XVI. THE PHOTOGRAPHS

¶ 63. The State introduced ten photographs of Bert's body.  These showed the position of the body and the location and nature of the wounds. Bell argues that the photographs were not necessary to any contested issue, that their prejudicial nature outweighed any possible probative value, and that they were repetitious and cumulative.  We will not reverse a trial court on the admission of such evidence in the absence of an abuse of discretion.  *Jenkins v. State*, 607 So.2d 1171, 1175 (Miss.1992).  Here, considering questions raised as to who had which gun, what were the fatal shots, and who fired those shots, we cannot say that the circuit judge committed such an abuse.

725 So.2d at 856.

The admission of the photographs is a state law question and there being no United States

Supreme Court precedent on this question the reasonableness of the Mississippi Supreme

Court's decision cannot be questioned.

With regards to the introduction of photographs the Fifth Circuit held the following,

in *Woods v. Johnson,* 75 F.3d 1017 (5th Cir. 1996):

> "In reviewing state evidentiary rulings, our role is limited to determining whether a trial judge's error is so extreme that it constituted denial of fundamental fairness." *Evans v. Thigpen*, 809 F.2d 239, 242 (5th Cir.), *cert. denied, stay denied*, 483 U.S. 1033, 107 S.Ct. 3278, 97 L.Ed.2d 782 (1987) (*quoting Mattheson v. King*, 751 F.2d 1432, 1445 (5th Cir.1985), *cert. dismissed*, 475 U.S. 1138, 106 S.Ct. 1798, 90 L.Ed.2d 343 (1986)); *Herrera v. Collins*, 904 F.2d 944, 949 (5th Cir.), *cert. denied*, 498 U.S. 925, 111 S.Ct. 307, 112 L.Ed.2d 260 (1990).

> Under Texas law, photographs are admissible regardless of their inflammatory nature if they are competent, material, and relevant, and unless they are offered solely to inflame the minds of the jury. *See, e.g.*, *Reimer v. State*, 657 S.W.2d 894, 896 (Tex.App. Corpus Christi 1983, no writ). Even inflammatory photographs introduced primarily to inflame the jury are nevertheless admissible. *Id*.

> The photographs were introduced during the testimony of the police officers who discovered the body and arrested Woods at the apartment. In addition to identifying the deceased, the photographs served to illustrate and make more understandable the officers' testimony which described the apartment and its condition, and the location and condition of the deceased's body and the nature and extent of the injuries to the deceased. These are certainly legitimate purposes. Woods does not contend that any of the photographs were unrepresentative or misleading respecting either the condition of the victim or the crime scene. Moreover, he in essence does not dispute that introduction of three or "even" four such photographs would have been permissible, but contends that eight was, in effect, overkill. However, as the district court observed, each of the photographs, with the sole exception of numbers 3 and 4, shows injuries and details that the others do not. It is entirely clear that photographic evidence of the kind introduced was entirely proper, and that to the extent more was used than appropriate this did not go so far as to render Woods' trial fundamentally unfair.

151

75 F.3d at 1038-39.

The law in Mississippi at the time this case was tried and to this day was similar to that in

Texas as is evidenced by the opinion in this case and the opinion in *Billiot v. State*, 454 So.2d

445 (Miss. 1984). In *Billiot* the Mississippi Supreme Court held:

> The admissibility of photographs rests within the sound discretion of
> the trial judge and, so long as the photographs have some evidentiary value,
> the trial judge will not have abused his discretion despite the gruesome nature
> of the photographs. *Sharp v. State*, 446 So.2d 1008 (Miss. 1984); *Ashley v.*
> *State*, 423 So.2d 1311, 1316 (Miss. 1982); *May v. State*, 199 So.2d 635, 640
> (Miss. 1967). Evidentiary value can be found in describing the circumstances
> of the killings and the corpus delicti, *Williams v. State*, 354 so.2d 266 (Miss.
> 1978), in describing the location of the body and the cause of death. *Ashley*
> *v. State, supra*, and in supplementing or adding clarity to the testimony of the
> witnesses, *Hughes v. State*, 401 So.2d 1100 (Miss. 1981).

454 So.2d at 459-60.

The photographs, although graphic, had probative value as they were illustrative of Dr.

Stephen Hanye's testimony concerning his findings during the autopsy performed on the

body of Bert Bell. It is clear from the testimony of Dr. Hayne found in the transcript that the

pictures were used in describing the circumstances of the killing and supplementing and

adding clarity to his testimony. Therefore, they had evidentiary value and no error exists.

The photographs which petitioner challenges are States Exhibits 10-19 inclusive.

Petitioner objected to the introduction of these photographs. Tr. 109-10. The trial court

made specific finding that they would be admissible based upon the ruling previous of a then

deceased circuit judge. (Judge Clarence Morgan). It is the position of the respondents that

these photographs are not overly gruesome, and that they are probative to show the location

of the wounds the position of the body in relation to other fixtures in the store. These photographs were especially important to also show blood splatters and where other fingerprints were found in relation to the body. This is important since the defense argued that defendant was farther away and could not have fired certain shots.

The petitioner also attempted to challenge the use of color slides of the photos at the trial. However, there was no objection to the use of color slides. And there was no objection on the basis of repetitive or cumulative exhibits. However, respondents would assert that the use of slides to augment and clarify testimony had been approved by the Mississippi Supreme Court. *See Jenkins v. State*, 607 So.2d 1171, 1176 (Miss. 1992)(Certainly this Court will encourage trial courts to use modern and proper techniques to aid the jury in understanding the witness or other evidence).

The photos introduced were not overly gruesome and were probative of the position of the body, wounds and relation to other fixtures in the store where evidence was found. Ten photos are not necessarily cumulative in this case. ***See***, ***Berry v. State***, 575 So.2d 1, 9 (Miss. 1990)(eleven photos and slides probative value not outweighed by prejudicial effect).

The photographs introduced here were necessary to show the scene of the crime and to support the testimony of witnesses relating the crime scene and the pathologist, Dr. Hayne. As they were probative and illustrative of testimony offered at trial their evidentiary value far outweighed any prejudicial effect. The decision of the Mississippi Supreme Court is neither contrary to or an unreasonable application of established federal precedent as

153

announced by the United States Supreme Court, because there is not such precedent. Petitioner is entitled to no habeas relief on the portion of the claim relating to the introduction of photographs.

**GROUND VIII:     UNCERTAINTY AND UNRELIABILITY OF JURY'S FINDINGS ON DEATH SENTENCE.**

Petitioner contends that the verdict of the jury is unreliable and uncertain because they were never required to find that petitioner had the requisite intent to kill because they may have been misled by a guilt phase instruction he contends.  Petitioner's confusing argument is based on a misrepresentation of what the United States Supreme Court held in *Enmund v. Florida*, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982) and *Cabana v. Bullock*, 474 U.S. 376, 106 S.Ct. 689, 88 L.Ed.2d 704 (1986).

This claim was presented to the Mississippi Supreme Court on direct appeal

XIX. UNCERTAINTY AND UNRELIABILITY OF SENTENCING PHASE FINDINGS

¶ 85. At sentencing, the jury was instructed that before it could impose the death penalty it must find at least one of four possible factors:  that Bell actually killed, attempted to kill, intended that a killing take place, or he contemplated the use of lethal force.  The jury found all four to exist.

¶ 86. Bell argues that the jury's verdict is suspect because of the erroneous instructions in the guilt phase on accomplice liability, which allowed conviction without a finding of intent by Bell.  He complains that the instruction allowed conviction if Bell did anything "connected with" the crime, arguing in his brief that the United States Constitution requires that before the death penalty may be imposed:

"the focus [must] be on *his* culpability, not on that of those who committed the robbery and shot the victims, for we insist on

154

'individualized consideration as a constitutional requirement in imposing the death sentence.'" *Enmund v. Florida, supra*, 458 U.S., at 798, 102 S.Ct. 3368, [citation omitted] (emphasis in original).

*Tison v. Arizona*, 481 U.S. 137, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987).

¶ 87. Here, Bell essentially reiterates the same argument which he made as to the guilt phase instructions, and which we have already addressed and found wanting. Further, the jury positively found Bell guilty under § 99-19-107(c), intending that a killing take place and under § 99-19-107(d), contemplating that lethal force would be employed. We are satisfied that the *Enmund* standard was achieved and that a reliable verdict was rendered

725 So.2d at 860-61. [Emphasis the Court's.]

This holding is neither contrary to or an unreasonable application of the clearly established

precedent announced in *Enmund* or *Bullock*.

In *Enmund* the United States Supreme Court held that a death sentence could not stand

without a finding that the defendant did not (1) actually kill, (2) attempt to kill, (3) intend that

a killing take place, or (4) contemplate that lethal force would be used in the commission of

the crime. Enmund was an accomplice who sat in the getaway car some distance from where

the murders and robbery in question took place. There was no evidence that his participation

was any greater than waiting to help the others escape. There was no evidence presented that

he met any one of the above state criteria. Further, there was no finding by the court or the

jury that he actually killed, attempted to kill, intended to kill or contemplated that lethal force

would be used. The United States Supreme Court held that without such a finding the death

penalty could not stand.

In *Cabana v. Bullock*, the United States Supreme Court held:

155

Indeed, *Enmund* does not impose any particular form of procedure upon the States. The Eighth Amendment is satisfied so long as the death penalty is not imposed upon a person ineligible under *Enmund* for such punishment. If a person sentenced to death in fact killed, attempted to kill, or intended to kill, the Eighth Amendment itself is not violated by his or her execution regardless of who makes the determination of the requisite culpability; by the same token, if a person sentenced to death lacks the requisite culpability; the Eighth Amendment violation can be adequately remedied by any court that has the power to find the facts and vacate the sentence. *At what precise point in its criminal process a State chooses to make the Enmund determination is of little concern from the standpoint of the Constitution. The State has considerable freedom to structure its capital sentencing system as it sees fit, for "[a]s the Court has several times made clear, we are unwilling to say that there is any one right way for a State to set up its capital sentencing scheme." Spaziano*, *supra*, 468 U.S., at 464, 104 S.Ct., at 3164; *see also Pulley v. Harris*, 465 U.S. 37, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984); *Zant v. Stephens*, 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983); *Gregg v. Georgia*, 428 U.S. 153, 195, 96 S.Ct. 2909, 2935, 49 L.Ed.2d 859 (1976) (opinion of STEWART, POWELL, and STEVENS, JJ.).

Accordingly, when a federal habeas court reviews a claim that the death penalty has been imposed on one who has neither killed, attempted to kill, nor intended that a killing take place or lethal force be used, the court's inquiry cannot be limited to an examination of jury instructions. *Rather, the court must examine the entire course of the state-court proceedings against the defendant in order to determine whether, at some point in the process, the requisite factual finding as to the defendant's culpability has been made.*[4] If it has, the finding must be presumed correct by virtue of 28 U.S.C. § 2254(d), *see Sumner v. Mata*, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981), and unless the habeas petitioner can bear the heavy burden of overcoming the presumption, the court is obliged to hold that the Eighth Amendment as interpreted in *Enmund* is not offended by the death sentence.[5]

474 U.S. at 386-88. [Emphasis added.]

Here the jury made the requisite findings under *Enmund* at the sentence phase of the trial.

The jury made the following written finding:

(1)    That the defendant, Frederick Bell, actually killed Robert C. "Bert"

156

Bell.

(2)     That the defendant, Frederick Bell, attempted to kill Robert C. "Bert" Bell.

(3)     That the defendant, Frederick Bell, intended the killing of Robert C. "Bert" Bell take place.

(4)     That the defendant, Frederick Bell, contemplated that lethal force would be employed during the commission of the crime of armed robbery.

SCP. at 240.

The requirements of *Enmund v. Florida* and *Cabana v. Bullock* were met by the jury's finding during the sentence phase.[32]  It does not matter what the jury found or did not find during the guilt phase of the trial.  Because the decision of the Mississippi Supreme Court is neither contrary to or an unreasonable application of *Enmund* or *Cabana*, petitioner is entitled to no relief.  *See Williams v. Taylor, supra.*

**GROUND IX:          REFUSAL OF PETITIONER'S SENTENCING INSTRUCTION.**

Petitioner next contends that the refusal of his Sentencing Instructions D-6 and D-7 violates the precedent found in *Mills v. Maryland*, 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988).  His contention is that Sentencing Instruction S-1 could be read to by the jury to require that they be unanimous in there finding of a mitigating circumstance before they could consider that mitigating circumstance.

When presented to the Mississippi Supreme Court on direct appeal the court held:

---

[32]*See Gilliard v. Scroggy*, 847 F.2d 1141, 1147 (5th Cir. 1988).

## XXIII. REFUSAL OF INSTRUCTIONS D-6 AND D-7

¶ 102. Bell offered instructions advising the jury that they need not be unanimous on their evaluation of mitigating factors, and he argues that without them the jury was not sufficiently informed as to its consideration of these mitigating circumstances, especially in view of the repeated emphasis in other instructions that the verdict and findings of the aggravating circumstances must be unanimous. This argument has already been rejected by the Court. *Blue v. State*, 674 So.2d 1184, 1226 (Miss.1996); *Chase*, 645 So.2d at 860; *Hansen*, 592 So.2d at 149-50; and *Shell*, 554 So.2d at 905. Bell urges us to adopt the position chosen by North Carolina. In *State v. McNeil*, 327 N.C. 388, 395 S.E.2d 106, 109 (1990), although the trial court there never explicitly stated that the mitigating circumstances had to be unanimous, the trial judge did indicate that the jury's determinations had to be unanimous. The Court held that even without an express unanimity requirement the instructions gave rise to a reasonable likelihood that some of the jurors were prevented from considering constitutionally-relevant evidence. We have considered and rejected this line. *Blue*, 674 So.2d at 1226; *Conner*, 632 So.2d at 1272; *Hansen*, 592 So.2d at 149-50. There is no merit to Bell's argument.

725 So.2d at 864.

The decision is not contrary to or an unreasonable application of clearly established United States Supreme Court precedent. *See Williams v. Taylor, supra.*

The Fifth Circuit considered this claim in *Stringer v. Jackson,* 862 F.2d 1108 (5th 1988), *reh. denied*, 866 F.2d 1417 (5th Cir. 1989), *cert. granted, judgment vacated on other grounds*, *Stringer v. Black*, 494 U.S. 1074, 110 S.Ct. 1800, 108 L.Ed.2d 931 (1990), and found it to be without merit. The Fifth Circuit held:

Stringer next complains that, as in *Mills v. Maryland*, 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988), the trial court erred in instructing the jury that it must unanimously find mitigating circumstances before it might weigh them against aggravating circumstances. The result of such an instruction, Stringer alleges, is that the sentencing phase of the trial became subject to the possibility of a completely arbitrary decision to impose death because one juror

158

could prevent all other jurors from considering a particular mitigating circumstance.

In *Mills*, the Supreme Court considered the propriety of a verdict form submitted to a jury in a Maryland state court and concluded that "there is a substantial probability that reasonable jurors, upon receiving the judge's instructions in this case, and in attempting to complete the verdict form as instructed, well may have thought they were precluded from considering any mitigating evidence unless all 12 jurors agreed on the existence of a particular such circumstance." *Mills*, 108 S.Ct. at 1870. In vacating the judgment which sustained the imposition of the death penalty, the Court focused on the specific instructions given in that particular case.

Although the trial court undoubtedly added "unanimously" by oversight as the third word in the instructions quoted below,[2] a reading of the entire charge would not have led the jurors to think they were compelled to ignore mitigating circumstances (unless found unanimously) in determining an appropriate sentence for Stringer. The instructions given did not restrict the jury's right and power to consider the appropriateness of the death penalty even after it found that the aggravating circumstances outweighed the mitigating circumstances.

_____

2. The jury was instructed, in pertinent part, as follows:

If you unanimously find from the evidence any one or more of the mitigating circumstance(s) listed above exists, and, if after weighing the mitigating circumstance(s) and the aggravating circumstance(s), one against the other, you further find unanimously from the evidence beyond a reasonable doubt that the aggravating circumstance(s) outweigh the mitigating circumstance(s) *and* the death penalty should be imposed, your verdict shall be written on a separate sheet of paper, shall be signed by your foreman, and shall be in the following form:

"We, the Jury, find unanimously and beyond a reasonable doubt the following aggravating circumstance(s); (list the aggravating circumstance(s), if any, which you unanimously find beyond a reasonable doubt from those listed above in the same language as they are listed.) We, the Jury, further find unanimously from the evidence and beyond a reasonable doubt that after weighing the mitigating circumstance(s) and the aggravating circumstance(s), one against the

159

other, that the aggravating circumstance(s) do outweigh the mitigating circumstance(s) *and* that the defendant should suffer the penalty of death." (emphasis added)

862 F.2d at 1112. [Emphasis the Court's.]

More recently, the United States District Court for the Southern District of Mississippi *Lockett v. Puckett*, 980 F.Supp. 201 (S.D.Miss., 1997), *affirmed in pertinent part and reversed in part*, *Lockett v. Anderson*, 230 F.3d 695 (5ᵗʰ Cir.2000), exhaustively considered this same claim and held:

> **Ground Seven: The instructions given at the sentencing phase of both of petitioner's trials could have been interpreted by a reasonable jury as imposing a requirement that the jury unanimously agree on mitigating circumstances in violation of the Eighth and Fourteenth Amendments to the United States Constitution**.
>
> Lockett asserts that the jury instructions given at the sentencing phases of both trials required the jury to unanimously agree on mitigating circumstances. Such a requirement, according to Lockett, violates the Eighth and Fourteenth Amendments to the United States Constitution. The State asserts that this ground for relief has never been presented to the state courts, and Lockett has thus failed to exhaust his state court remedies. The State further asserts that if presented with this issue now, the state courts would find the claim to be procedurally barred. Thus, according to the State, this Court should conclude that the claim is procedurally barred.
>
> The State is simply mistaken that this claim was not addressed by the Mississippi Supreme Court. In both opinions concerning Lockett's first petitions for post-conviction relief, the Mississippi Supreme Court concluded as follows:
>
> McKoy[43] held that North Carolina's capital sentencing scheme, which prevented the jury from considering any mitigating factor that the jury had not unanimously found to exist, violated the United States Constitution. Lockett's reliance on this theory is erroneous, for Mississippi does not so limit the jury in their deliberations and

160

consideration of the death penalty. This claim is without merit.

*Lockett*, 614 So.2d at 896; *Lockett*, 614 So.2d at 905. Although the Mississippi Supreme Court gave cursory treatment to this issue, that court nonetheless addressed the issue on the merits. The issue is therefore not procedurally barred from review by this Court.

The challenged instruction in each case is Sentencing Instruction 1. Case 1 (R. 659-662); Case 2 (R. 660-663). The instructions are virtually identical, except for the changing of the victim's name in each case. The Court, therefore, will only quote the relevant language of the instruction from Case 1, which states in pertinent part:

> You have found the defendant guilty of the crime of capital murder. You must now decide whether the defendant will be sentenced to death or to life imprisonment. In reaching your decision, you may objectively consider the detailed circumstances of the offense for which the defendant was convicted, and the character and record of the defendant himself.

A.

To return the death penalty in this case you must first unanimously find from the evidence beyond a reasonable doubt that one or more of the following facts existed:

1. The defendant actually killed John Earl Calhoun; or

2. The defendant attempted to kill John Earl Calhoun; or

3. The defendant intended that the killing of John Earl Calhoun take place; or

4. The defendant contemplated that let[h]al force would be employed.

B.

Next, to return the death penalty, *you must find that the mitigating circumstances-those which tend to warrant the less severe penalty, life imprisonment-do not outweigh or overcome the*

161

*aggravating circumstances-those which tend to warrant the death penalty.*

. . . .[44]

If one or more of these aggravating circumstances is found to exist, then you must consider whether there are *mitigating circumstances which outweigh or overcome the aggravating circumstance(s).*

Consider the following elements of mitigation in determining whether the death penalty should not be imposed:

(1) the age of the defendant at the time of the crime.

(2) any other matter, any other aspect of the defendant's character or record, and any other circumstance of the offense brought to you during the trial of this cause *which you, the Jury, deem to be mitigating on behalf of the defendant.*

*If you find from the evidence that one or more of the preceding elements of mitigation exists, then you must consider whether it (or they) outweigh or overcome the aggravating circumstance(s) you previously found. In the event that you find that the mitigating circumstances do not outweigh or overcome the aggravating circumstances, you may impose the death sentence. Should you find that the mitigating circumstances outweigh or overcome the aggravating circumstances, you shall not impose the death sentence.*

*Id*. (emphasis added). With regard to the form of the verdict, Lockett asserts that the following language could be interpreted to require unanimity as to the mitigating circumstances:

We, the Jury, unanimously find that the aggravating circumstance(s) of ... is/are sufficient to impose the death penalty and that there are insufficient mitigating circumstances to outweigh the aggravating circumstance(s), and we unanimously find the defendant should suffer death.

*Id*.

162

Lockett makes several arguments concerning this instruction. He asserts that the requirement that the jury make findings of mitigating circumstances, rather than simply consider any mitigating evidence in the balancing process, would lead a reasonable juror to believe that the findings must be unanimous. Lockett further claims that the use of the phrase, "which you, the Jury, deem to be mitigating," would lead the jury to believe that the mitigating elements must be found unanimously by the entire jury, and that such evidence could not be considered individually by each juror. Finally, Lockett asserts that when viewing the instruction as a whole, especially the fact that the jury was instructed seven times in a four-page instruction to make unanimous findings, there is a reasonable likelihood that the jury interpreted the instruction as requiring unanimous findings of mitigating evidence.

The Fifth Circuit in *Drinkard*, 97 F.3d at 757,[45] reiterated the standard for reviewing challenged jury instructions in a death penalty case:

> The proper standard for reviewing a challenged jury instruction in the capital sentencing context is "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence." . . . This "reasonable likelihood" standard does not require the petitioner to prove that the jury "more likely than not" interpreted the challenged instruction in an impermissible way; however, the petitioner must demonstrate more than "only a possibility" of an impermissible interpretation. . . . We must analyze the challenged jury instruction within the context of the overall jury charge. . . . "In evaluating the instructions, we do not engage in a technical parsing of this language of the instructions, but instead approach the instructions in the same way that the jury would-with a 'commonsense understanding of the instructions in the light of all that has taken place at the trial.' "

*Id*. at 757 (citations omitted). This Court, therefore, must determine whether viewing this particular instruction in its entirety, and when considering this instruction in the overall context of the trial, there is a reasonable likelihood that the juries in each of Lockett's trials determined that they must make unanimous findings concerning any mitigating evidence in order to weigh such evidence against the aggravating circumstances.

The Court concludes that Lockett has failed to prove that the challenged instructions were unconstitutional. Lockett would have the Court review the

163

challenged instructions by "engaging in a technical parsing" of the language. *Drinkard*, 97 F.3d at 757 (citing *Johnson v. Texas*, 509 U.S. 350, 368, 113 S.Ct. 2658, 2669, 125 L.Ed.2d 290 (1993)). Lockett advocates as much in Appendix 1, attached to his Memorandum in Support of Partial Summary Judgment. In Appendix 1, Lockett sets forth the language which was used in *McNeil v. North Carolina*, 494 U.S. 1050, 110 S.Ct. 1516, 108 L.Ed.2d 756 (1990), in one column and select portions of the language which was used in the challenged instructions in his trials. The Court initially notes that the comparison is inapposite because the *McNeil* instructions use the word "unanimously" to modify and/or describe the findings required regarding mitigating evidence.[46] The Court declines to analyze separately each challenged portion of Sentencing Instruction 1 as Lockett has done in his Appendix 1. The Court concludes that when the instruction is analyzed in its entirety, there is no reasonable likelihood that the juries, or any individual members thereof, applied the challenged instructions in a manner which would preclude the consideration of the mitigating evidence offered on Lockett's behalf. The Court further concludes that the challenged instructions did not require Lockett's juries to unanimously agree on mitigating circumstances. Accordingly, Lockett is not entitled to habeas relief based upon this ground.[47]

---

43. In *McKoy v. North Carolina*, 494 U.S. 433, 444, 110 S.Ct. 1227, 1234, 108 L.Ed.2d 369 (1990), the Supreme Court concluded that "North Carolina's unanimity requirement impermissibly limits jurors' consideration of mitigating evidence and hence is contrary to our decision in *Mills*." In *Mills v. Maryland*, 486 U.S. 367, 375-384, 108 S.Ct. 1860, 1866-1870, 100 L.Ed.2d 384 (1988), the Supreme Court concluded that a reasonable juror could have interpreted the challenged instructions "as allowing individual jurors to consider only mitigating circumstances that the jury unanimously found." Such a requirement violates the Eighth and Fourteenth Amendments to the United States Constitution. *Id*.

44. This omission is a paragraph listing the aggravating circumstances and the requirement that at least one aggravating circumstance must be unanimously found in order for the jury to return a penalty of death. This language is not relevant to the decision of this particular issue.

45. In *Green v. Johnson*, 116 F.3d 1115, 1120 (5th Cir.1997), the Fifth Circuit concluded that *Drinkard* and its progeny "presumably remain precedent in this circuit post-*Lindh* to the extent that they interpret the provisions of the AEDPA

164

and do not conflict with *Lindh's* conclusion that the chapter 153 amendments do not apply retroactively." This Court similarly concludes that the findings and conclusions of *Drinkard*, to the extent that such findings do not address the provisions of the AEDPA, are binding precedent in the Fifth Circuit.

46. One of the *McNeil* instructions states as follows:

> (3) Do you unanimously find beyond a reasonable doubt that the mitigating circumstance or circumstances is, or are, insufficient to outweigh the aggravating circumstances found by you?

> Appendix 1. Lockett compares this instruction with that portion of the challenged instructions given in his case which state that:

> We, the Jury, unanimously find that the aggravating circumstance(s) of: ... is/are sufficient to impose the death penalty and that there are insufficient mitigating circumstances to outweigh the aggravating circumstance(s). . . .

> Appendix 1. As stated in the text, the Court concludes that these two instructions simply are not comparable because the instruction given in Lockett's trials does not require any unanimous finding with regard to mitigating circumstances.

47. The Court notes that the Fifth Circuit in *Wilcher v. Hargett*, 978 F.2d 872, 878 (5th Cir.1992), *cert. denied*, 510 U.S. 829, 114 S.Ct. 96, 126 L.Ed.2d 63 (1993), concluded that the *Mills/McKoy* issue of requiring unanimous agreement on mitigating circumstances was a new rule which should not apply to cases which had already been decided at the time it was announced in 1988. Because both of Lockett's direct appeals were decided prior to 1988, he may not take advantage of the rule in this habeas proceeding.

980 F.Supp. at 229-31. [Emphasis the Court's.]

Respondents would submit that the reasoning of the Fifth Circuit in *Stringer v. Jackson*, is

binding precedent on this Court and precludes relief. Further, the exhaustive reasoning of

the District Court in *Lockett v. Puckett* is additional persuasive authority. The decision of

165

the Mississippi Supreme Court is not an unreasonable application of federal law as announced by the United States Supreme Court. *See Williams v. Taylor, supra*. Petitioner is entitled to no relief on this claim.

**GROUND X:       DEATH PENALTY DISPROPORTIONATE IN THIS CASE.**

Petitioner next contends that the death that the death penalty is disproportionate as applied to him in this case. Petitioner cites to no case from the United States Supreme Court that holds the death sentence disproportionate for a robbery/murder. The Mississippi Supreme Court performed the state law required proportionality review in its decision affirming the sentence of death in this case. *See* MISS. CODE ANN. § 99-19-105(3). The Mississippi Supreme Court held:

**XXVII. PROPORTIONALITY**

¶ 114. We have, as is our duty, carefully subjected this case to a review to determine whether the sentence here is in any way disproportionate or excessive when compared to the penalty imposed in similar cases since the decision in *Jackson v. State*, 337 So.2d 1242 (Miss.1976), and we find that it is not.

¶ 115. Here, the jury found that Bell intended to, attempted to, and did actually kill Bert during the commission of an armed robbery in which he contemplated the use of lethal force. They were aware that he had killed another prior to trial. When given the opportunity, Bell offered no real mitigating circumstances, he simply continued to deny being present or committing the act. The jury had before it evidence that Bell actually fired at least some of the fatal shots. There are no indications that Bell suffered from any mental or emotional deficiency.

¶ 116. Bell suggests that *Bullock v. State*, 525 So.2d 764 (Miss.1987), and *Reddix v. State*, 547 So.2d 792 (Miss.1989), compel us to set aside the sentence here. But the cases simply are not comparable to the present one. In

166

*Reddix*, the sentence was found disproportionate specifically because of the mental deficiencies of the defendant and the fact that the actual killing was done by another, with Reddix doing nothing to assist in the assault. Furthermore, the Court had serious doubt as to whether Reddix intended to kill or contemplated the use of lethal force during the robbery. *Reddix*, 547 So.2d at 794-95. In *Bullock*, a five-to-four decision, the sentence was set at life imprisonment, with three justices finding death to be disproportionate. There, too, Bullock's accomplice was the actual killer and Bullock had received the death penalty solely on the grounds that the use of lethal force was contemplated. The three members of the Court finding the death penalty disproportionate concluded that Bullock neither killed nor attempted to kill the victim, and said that "we have not affirmed a single death penalty where the defendant's participation in the crime was as insubstantial as in Bullock's case." Bullock, 525 So.2d at 770. It is impossible to conclude that Bell's participation in the death of Bert was likewise insubstantial.

725 So.2d at 867.

Where the state court has preformed a proportionality review the United States Supreme Court presumes the sentence is not disproportionate. In *Walton v. Arizona*, 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990), the Supreme Court held:

Walton nevertheless contends that the heinous, cruel, or depraved factor has been applied in an arbitrary manner and, as applied, does not distinguish his case from cases in which the death sentence has not been imposed. In effect Walton challenges the proportionality review of the Arizona Supreme Court as erroneous and asks us to overturn it. This we decline to do, for we have just concluded that the challenged factor has been construed by the Arizona courts in a manner that furnishes sufficient guidance to the sentencer. This being so, proportionality review is not constitutionally required, and we "lawfully may presume that [Walton's] death sentence was not 'wantonly and freakishly' imposed-and thus that the sentence is not disproportionate within any recognized meaning of the Eighth Amendment." *McCleskey v. Kemp*, 481 U.S. 279, 306, 308, 107 S.Ct. 1756, 1774, 1775, 95 L.Ed.2d 262 (1987); *Pulley v. Harris*, 465 U.S. 37, 43, 104 S.Ct. 871, 875-876, 79 L.Ed.2d 29 (1984). Furthermore, the Arizona Supreme Court plainly undertook its proportionality review in good faith and found that Walton's sentence was proportional to the sentences imposed in cases similar to his. The Constitution

167

does not require us to look behind that conclusion.

497 U.S. at 655-56.

As stated the Mississippi Supreme Court conducted a proportionality review in good faith and the Constitution does not require this Court to look behind that conclusion. Petitioner's claim is without merit.

If petitioner is challenging the proportionality review done by the Mississippi Supreme Court, this is not a claim that is cognizable in habeas review as such a review is not constitutionally required. *See Pulley v. Harris*, 465 U.S. 37, 43, 104 S.Ct. 871, 875-876, 79 L.Ed.2d 29 (1984). Since such a review is not constitutionally required it is a matter of state law and not appropriate for habeas review. *See Estelle v. McGuire,* 502 U.S. 62, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991).

Even so, in *Payne v. Tennessee,* 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991), the United States Supreme Court held:

> Under our constitutional system, the primary responsibility for defining crimes against state law, fixing punishments for the commission of these crimes, and establishing procedures for criminal trials rests with the States. The state laws respecting crimes, punishments, and criminal procedure are, of course, subject to the overriding provisions of the United States Constitution. Where the State imposes the death penalty for a particular crime, we have held that the Eighth Amendment imposes special limitations upon that process.

> "First, there is a required threshold below which the death penalty cannot be imposed. In this context, the State must establish rational criteria that narrow the decisionmaker's judgment as to whether the circumstances of a particular defendant's case meet the threshold. Moreover, a societal consensus that the death penalty is disproportionate to a particular offense prevents a State from imposing

168

the death penalty for that offense. Second, States cannot limit the sentencer's consideration of any relevant circumstance that could cause it to decline to impose the penalty. In this respect, the State cannot challenge the sentencer's discretion, but must allow it to consider any relevant information offered by the defendant." *McCleskey v. Kemp*, 481 U.S. 279, 305-306, 107 S.Ct. 1756, 1774, 95 L.Ed.2d 262 (1987).

But, as we noted in *California v. Ramos*, 463 U.S. 992, 1001, 103 S.Ct. 3446, 3453, 77 L.Ed.2d 1171 (1983), "[b]eyond these limitations . . . the Court has deferred to the State's choice of substantive factors relevant to the penalty determination."

"Within the constitutional limitations defined by our cases, the States enjoy their traditional latitude to prescribe the method by which those who commit murder shall be punished." *Blystone v. Pennsylvania*, 494 U.S. 299, 309, 110 S.Ct. 1078, 1084, 108 L.Ed.2d 255 (1990). The States remain free, in capital cases, as well as others, to devise new procedures and new remedies to meet felt needs.

501 U.S. at 824-25.

As stated above, petitioner has not cited a single case from the United States Supreme Court that holds that imposition of the death penalty for a robbery/murder offends the federal constitution. The only instances in which the Supreme Court has held the death penalty disproportionate is the rape of an adult female, *Coker v. Georgia*, 433 U.S. 584, 97 S.Ct. 2861, 53 L.Ed.2d 982 (1977), where one is mentally retarded, *Atkins v. Virginia*, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002),and where one is under the age of eighteen, *Roper v. Simmons*, 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005). Petitioner does not fall into any of these categories as a murder committed during the course of a robbery is not included therein.

Petitioner relies on *Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637

169

(1983), a non-death penalty case, to argue that this Court must perform a proportionality review of the sentence. However, he ignores the later precedent of the United States Supreme Court cited above which holds contrary to *Solem*.

This claim is without merit and not cognizable in habeas review. Petitioner is entitled to no relief on this claim.

**GROUND XI:** **CLAIM THAT PETITIONER DID NOT RECEIVE A FAIR TRIAL MAKING HIS CONVICTION AND SENTENCE UNCONSTITUTIONAL.**

Petitioner next contends that he did not receive a fair trial because of the State's closing argument. He contends that the prosecutor argued the good character of the victim, argued regarding the threats made to Frank Coffey and Robert James, personal opinions and facts not in evidence. On direct appeal petitioner presented an argument contending that the cumulative effect of the prosecution's argument required reversal.

The Mississippi Supreme Court found the claim to be barred from consideration because no objection had been raised at trial on this basis. The state court also alternatively addressed the merits of the claims. The state court held:

### XI. FURTHER OF THE STATE'S ARGUMENT-GUILT PHASE

¶ 38. Bell maintains that the prosecutor misused closing argument by improperly arguing the good character of the victim, threats made by Bell to James, lack of remorse, personal opinion and facts not in evidence. Unless any such improper argument is so egregious as to rise to the level of a fundamental denial of a constitutionally-mandated fair trial, and we do not so find, *the arguments are all procedurally barred, for at no time did Bell make a contemporaneous objection to any of them. Chase v. State*, 645 So.2d 829, 854 (Miss.1994), *cert. denied* 515 U.S. 1123, 115 S.Ct. 2279, 132 L.Ed.2d 282

170

(1995). Nevertheless, we will review the specific claims.

**A. Good character of the victim**

¶ 39. The prosecutor said that Sparks' Stop-and-Go was:

a place he [Bert] intended, according to James Sparks, to buy from James Sparks' and take that store over one day. That would be his store. Apparently, an industrious young man, 21 years of age, thinking that maybe he was going to be able to own his own store. I commend him for that.

Also, he said:

Bert Bell's life is now reduced to approximately 50 exhibits. That's what his life is all about today. . . . And, Bert Bell didn't have a prayer. He did not have a prayer. He was going to die that day. There's no doubt about it. He didn't have a chance.

¶ 40. An impassioned argument is not in itself an improper argument. Furthermore, the prosecutor, as any other counsel, is free to recall and comment on testimony offered in evidence and to draw inferences.

[The prosecutor] may comment upon any facts introduced into evidence. He may draw whatever deductions seem to him proper from these facts, so long as he does not use violent and abusive language, and even in many cases invectives may be justified and even called for, as pointed out by Chief Justice Whitfield in *Gray v. State*, 90 Miss. 235, 43 So. 289 [1907].

*Davis v. State*, 684 So.2d 643, 656 (Miss.1996)( quoting *Shell v. State*, 554 So.2d 887, 900 (Miss.1989), *rev. on other grounds* 498 U.S. 1, 111 S.Ct. 313, 112 L.Ed.2d 1 (1990), and *Nelms & Blum Co. v. Fink*, 159 Miss. 372, 131 So. 817 (1930)). This liberty is, of course, not without limitation. An appeal to emotion or for sympathy for a victim can reach a point at which it is prejudicial. In *Willie v. State*, 585 So.2d 660, 679 (Miss.1991), we disapproved blatant comparisons of the value of the victim's life and that of the defendant. However, such was not done here, and we do not find that the prosecutor's comments transgressed the limits of fair argument.

171

**B. The threats to kill Robert James**

¶ 41. The prosecutor also commented on the evidence of Bell's threats upon the life of Robert James. That evidence, as observed above, was appropriate in the present factual context, and it is sufficient here to say that the comments and conclusion of the prosecutor were not inappropriate. They described Bell's behavior immediately following the crime and his fear of being caught and prosecuted.

**C. Lack of remorse**

¶ 42. Referring to the testimony of Buster Graham, an officer who interviewed Bell following his arrest, the prosecutor said:

> [a]nd to me, the most illogical thing about this whole case, and I think it shows his attitude, I don't know any human being that's going to be placed in jail and told they're charged with capital murder that's going to sit up and laugh at the officer.[3] Laugh at him. We're talking about two mean people. Doss isn't even as bad as Bell.

Additionally, he said that "this person laughs when you talk to him about being charged with murder," and alluded to "the same day that he laughed at Bruce Partridge and Buster Graham."

¶ 43. Bell argues that this is impermissible commentary on his lack of remorse and presents authority which he says prohibits such references to remorse when the defendant does not testify, as in the present case. However, those authorities are misapplied by Bell. In Reed v. State, 197 So.2d 811 (Miss.1967), the district attorney asked the jury to look at the defendant as he sat mute in the courtroom exhibiting no emotion whatever. We held that such argument was an impermissible comment on his failure to testify. In Knox v. State, 502 So.2d 672 (Miss.1987), we again found that comment on the courtroom demeanor of the defendant who chose not to testify was improper. Bell, on the other hand, did testify and testified that he laughed at the suggestion in his interview with officer Graham that he killed Bert. It was perfectly proper for the prosecutor to comment on this interview and Bell's testimony.

**D. The prosecutor's personal opinion and facts not in evidence**

172

¶ 44. Arguing that the prosecuting attorney unfairly presented his personal opinion and argued facts not in evidence, Bell points to the following from the State's summation.

> I don't doubt that Frederick Bell knew the name of that road. I don't doubt that at all. I don't doubt that he didn't know that was Sparks' Stop-and-Go. I do doubt that he knew he was in Grenada County, because that wasn't important to him. He and Anthony Doss could just as easily have stopped in Yalobousha County, gone over to Carroll County. It didn't make any difference. Their objective was not where they were, but what they had to do. Anything they could do to get enough money to get them to Memphis, for whatever reason, that's what-that's the only thing they cared about.

He also points again to statements made in that argument that Doss and Bell were "mean people," and observations that Coffey was not seeking anything from the State, but rather was testifying to the truth. Whether Doss and Bell were mean people is something to be concluded from the facts proved, and is, within the limits of the argument here, a fair deduction to be drawn in final argument. Of course, Coffey was cross-examined by Bell's attorney on his veracity and any deal he had made. In response, he testified that he was telling the truth. The statements by the prosecutor were based on that testimony and were far from the personal vouching for witnesses which we have condemned.

¶ 45. Bell also complains of the argument by the State that certain details of James' testimony indicate that Bell and Doss told him of the shooting because the investigators had not shown James any pictures of the scene. A review of the record does not indicate any testimonial basis for this argument, and it was, therefore, improper. However, it does not, standing alone or read with the rest of the argument, constitute reversible error

_____

FN3. Officer Grantham did testify to this. However, even if the comments on how mean Bell was were improper, they do not justify reversal. The standard "is whether the natural and probable effect of the improper argument of the prosecuting attorney is to create an unjust prejudice against the accused as to result in a decision influenced by prejudice so created." *Ormond v. State*, 599 So.2d 951, 961 (Miss.1992)(quoting *Davis v. State*, 530 So.2d 694, 701 (Miss.1988)). Those comments here do not approach such a profound effect.

725 So.2d at 851-53. [Emphasis added.]

This resolution of this claim rest on the imposition of an adequate and independent state law procedural bar, the failure to interpose a contemporaneous objection to the comments. The claims are therefore barred from consideration on the basis of the state law procedural bar. *See Wainwright v. Sykes, supra*; *Coleman v. Thompson, supra*.

The fact that the Mississippi Supreme Court alternatively addressed the merits of the claim dose not vitiate the imposition of the procedural bar to these claims. *See Harris v. Reed, supra*. This claim is barred from consideration by this Court on habeas review.

Petitioner has not demonstrated cause and actual prejudice to overcome the bar to this claim. Petitioner did raise a claim of ineffective assistance of counsel on post-conviction review based on trial counsel's failure to object during the closing argument.

Without waiving the application of the procedural bar, the respondents would point out that the alternative holdings on the merits of the claims on direct appeal the Mississippi Supreme Court rejected the claim on the merits. If the merits are looked to in this case it must be under the precedent for reviewing claims of prosecutorial misconduct based on improper arguments. That precedent is found in *Darden v. Wainwright*, 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986) and *Donnelly v. DeChristoforo*, 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974). In *Donnelly*, the United States Supreme Court held:

> This is not a case in which the State has denied a defendant the benefit of a specific provision of the Bill of Rights, such as the right to counsel, *Argersinger v. Hamlin*, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972), or in which the prosecutor's remarks so prejudiced a specific right, such as the privilege against compulsory self-incrimination, as to amount to a denial of that right. *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106

174

(1965).[15]  When specific guarantees of the Bill of Rights are involved, this Court has taken special care to assure that prosecutorial conduct in no way impermissibly infringes them.  But here the claim is only that a prosecutor's remark about respondent's expectations at trial by itself so infected the trial with unfairness as to make the resulting conviction a denial of due process.  We do not believe that examination of the entire proceedings in this case supports that contention.

416 U.S. at 643.  [Footnote omitted.]

Later in *Darden, supra*, the Supreme Court held:

The prosecutors then made their closing argument.  That argument deserves the condemnation it has received from every court to review it, although no court has held that the argument rendered the trial unfair.  Several comments attempted to place some of the blame for the crime on the Division of Corrections, because Darden was on weekend furlough from a prison sentence when the crime occurred.[9]  Some comments implied that the death penalty would be the only guarantee against a future similar act.[10]  Others incorporated the defense's use of the word "animal."[11]  Prosecutor McDaniel made several offensive comments reflecting an emotional reaction to the case.[12]  These comments undoubtedly were improper.  But as both the District Court and the original panel of the Court of Appeals (whose opinion on this issue still stands) recognized, it "*is not enough that the prosecutors' remarks were undesirable or even universally condemned.*"  *Darden v. Wainwright*, 699 F.2d, at 1036.  *The relevant question is whether the prosecutors' comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process.*"  *Donnelly v. DeChristoforo*, 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974).  Moreover, the appropriate standard of review for such a claim on writ of habeas corpus is "the narrow one of due process, and not the broad exercise of supervisory power."  *Id*., at 642, 94 S.Ct., at 1871.

Under this standard of review, we agree with the reasoning of every court to consider these comments that they did not deprive petitioner of a fair trial.[13]  The prosecutors' argument did not manipulate or misstate the evidence, nor did it implicate other specific rights of the accused such as the right to counsel or the right to remain silent.  *See Darden v. Wainwright*, 513 F.Supp., at 958.  Much of the objectionable content was invited by or was responsive to the opening summation of the defense.  As we explained in *United States*

*v. Young*, 470 U.S. 1, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985), the idea of "invited response" is used not to excuse improper comments, but to determine their effect on the trial as a whole. *Id.*, at 13, 105 S.Ct., at 1045. The trial court instructed the jurors several times that their decision was to be made on the basis of the evidence alone, and that the arguments of counsel were not evidence. The weight of the evidence against petitioner was heavy; the "overwhelming eyewitness and circumstantial evidence to support a finding of guilt on all charges," 329 So.2d, at 291, reduced the likelihood that the jury's decision was influenced by argument. Finally, defense counsel made the tactical decision not to present any witness other than petitioner. This decision not only permitted them to give their summation prior to the prosecution's closing argument, but also gave them the opportunity to make a final rebuttal argument. Defense counsel were able to use the opportunity for rebuttal very effectively, turning much of the prosecutors' closing argument against them by placing many of the prosecutors' comments and actions in a light that was more likely to engender strong disapproval than result in inflamed passions against petitioner.S 514[14] For these reasons, we agree with the District Court below that "Darden's trial was not perfect – few are – but neither was it fundamentally unfair." 513 F.Supp., at 958.

_____

9. "As far as I am concerned, there should be another Defendant in this courtroom, one more, and that is the division of corrections, the prisons. . . . Can't we expect him to stay in a prison when they go there? Can we expect them to stay locked up once they go there? Do we know that they're going to be out on the public with guns, drinking?" App. 15-16. "Yes, there is another Defendant, but I regret that I know of no charges to place upon him, except the public condemnation of them, condemn them." *Id.*, at 16.

10. "I will ask you to advise the Court to give him death. That's the only way that I know that he is not going to get out on the public. It's the only way I know. It's the only way I can be sure of it. It's the only way that anybody can be sure of it now, because the people that turned him loose. – " *Id.*, 17-18.

11. "As far as I am concerned, and as Mr. Maloney said as he identified this man this person, as an animal, this animal was on the public for one reason." *Id.*, at 15.

12. "He shouldn't be out of his cell unless he has a leash on him and a prison guard at the other end of that leash." *Id.*, at 16. I wish [Mr. Turman] had had a shotgun in his hand when he walked in the back door and blown his

[Darden's] face off. I wish that I could see him sitting here with no face, blown away by a shotgun." *Id*., at 20. "I wish someone had walked in the back door and blown his head off at that point." *Ibid*. "He fired in the boy's back, number five, saving one. Didn't get a chance to use it. I wish he had used it on himself." *Id*., at 28. "I wish he had been killed in the accident, but he wasn't. Again, we are unlucky that time." *Id*., at 29. "[D]on't forget what he has done according to those witnesses, to make every attempt to change his appearance from September the 8th, 1973. The hair, the goatee, even the moustache and the weight. The only thing he hasn't done that I know of is cut his throat." *Id*., at 31. After this, the last in a series of such comments, defense counsel objected for the first time.

477 U.S. at 179-83.

The argument of the prosecutor in the case at bar pales in light of the arguments made in *Darden*. When the argument is viewed as a whole, the argument of the prosecutor did not "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* Even on the merits this claim fails. Because the alternative decision of the Mississippi Supreme Court is neither contrary to or an unreasonable application of clearly established federal law as announced by the United States Supreme Court.

Petitioner is entitled to no relief on this claim as it is barred from review for the failure to object at trial. *Wainwright v. Sykes, supra*.

**GROUND XII:**     **THE CLAIM RELATING TO THE GRANTING OF INSTRUCTIONS S-2 & S-3 DURING GUILT PHASE IS PROCEDURALLY BARRED FROM CONSIDERATION BY THIS COURT.**

Petitioner next contends that the granting of Instructions S-2 and S-3 by the trial court at the conclusion of the guilt phase of his capital trial was erroneous thereby violating his constitutional rights. What petitioner does not point out is that he failed to object to the

granting of Instruction S-2

IV. INSTRUCTIONS S-2 AND S-3

¶ 20. The jury received the following instructions, which Bell would have us find allowed the jury to convict him as a principal in disregard of his defense that, at most, he was an accessory after the fact. Instruction S-2 reads:

> The Court instructs the jury that each person present at the time, and consenting to and encouraging the commission of a crime, and knowingly, willfully and feloniously doing any act which is an element of the crime or immediately connected with it, or leading to its commission, is as much a principal as if he had with his own hand committed the whole offense; and if you believe from the evidence, beyond a reasonable doubt, that the defendant, Frederick Bell did willfully, knowingly, unlawfully and feloniously do any act which is an element of the crime of capital murder or *immediately connected with it*, or leading to its commission, then and in that event, you should find the defendant guilty as charged. [emphasis added].

This is followed by S-3:

> The court instructs the jury that if two or more persons are engaged in the commission of a felony, then the acts of each in the commission of such felony are binding upon all and all are equally responsible for the acts of each in the commission of such felony.

¶ 21. Bell does not argue that instruction S-3 is an incorrect statement of the law, nor did he object to it at trial. He reasons that the use of the phrase "immediately connected with" [the crime], in the second clause of S-2, allows the jury, upon finding that he hid the guns used to shoot Bert, to convict him as a principal in a capital murder, and that this problem is compounded when S-2 is read with S-3. This, he argues, deprives him of his alternate theory of how Bert lost his life and the benefit of his testimony, contrary to the testimony of Coffey and James, that Doss brought the guns to Memphis and that he [Bell] had not been in Grenada on the day of the shooting, or for several days prior to the shooting, but simply cooperated in hiding the guns.

¶ 22. *Bell failed to make a timely objection to S-2, and under our holdings in Nicholson on Behalf of Gollott v. State, 672 So.2d 744, 752*

178

(*Miss*.1996), and *Lockett v. State*, 517 So.2d 1317, 1332-33, (Miss.1987); *cert. denied*, 487 U.S. 1210, 108 S.Ct. 2858, 101 L.Ed.2d 895 (1988), *we are not bound to consider this assignment. Alternatively*, we note that all instructions charging the jury must be read together, and S-2 cannot be read without regard to others, specifically S-1, which requires the jury, in order to convict Bell of capital murder, to find that Bell did unlawfully, willfully and feloniously kill Bert, while engaged in the crime of armed robbery. The instruction then directs that "if the State has failed to prove any one or more of the above elements beyond a reasonable doubt, then you shall find the defendant not guilty."

¶ 23. An aiding and abetting instruction, in the form complained of here, was most recently approved in *Carr v. State*, 655 So.2d 824, 833 (Miss.1995), *cert. denied* 516 U.S. 1076, 116 S.Ct. 782, 133 L.Ed.2d 733 (1996). In *Carr* we pointed out that the instruction sufficiently instructed the jury of the element of intent and that "when read in the context of the jury charge as a whole, [this instruction] correctly placed the burden on the State to prove beyond a reasonable doubt every element of the underlying felonies with which Carr was charged." *Id*. at 833. The instruction was also approved in *Simmons v. State*, 568 So.2d 1192, 1203-1204 (Miss.1990).

V. FURTHER OF INSTRUCTION S-2

¶ 24. Bell also complains that instruction S-2 is defective in that it invites the jury to assume rather than to find that a capital murder had been committed. It simply does not do so. Bell asks us to apply the decision reached in *Wilson v. State*, 592 So.2d 993 (Miss.1991), which holds that it was improper for the jury to be instructed that an accessory before the fact should be found guilty if he had "willfully, unlawfully and feloniously and knowingly arrange[d] for or counsel[ed] or command[ed] another to sell cocaine . . ." *Id*. at 997. But *Wilson* is not applicable. There the Court noted that neither in the instruction complained of nor "in any of the instructions submitted to the jury" was the jury informed that they had to find that the crime was committed as well as finding that Wilson counseled or commanded the commission of the crime. *Id*. at 997-98. Here, Bell is prosecuted as a principal present at the crime, and instruction S-1, after defining the elements, explicitly enjoins that he be found not guilty if the State has failed to prove any one or the elements beyond a reasonable doubt.

725 So.2d at 847-48. [Emphasis the Court's and emphasis added.]

179

The decision of the Mississippi Supreme Court on this claim was that it was procedurally barred from consideration for the failure to object to the instruction. Therefore, this claim is barred from review on habeas corpus. *See Wainwright v. Sykes, supra*. The fact that the Mississippi Supreme Court alternatively addressed the merits of the claim does not vitiate the imposition of the bar. *See Harris v. Reed, supra.*

Because the resolution of this claim is based on the imposition of an adequate and independent state law procedural bar this Court is likewise barred from considering the merits of the claim. Petitioner has failed to demonstrate cause and prejudice to overcome the bar to the consideration of this claim. The claim is barred.

Petitioner is entitled to no habeas relief on this claim.

**GROUND XIII:     ERRONEOUS INSTRUCTION S-1 DURING GUILT PHASE.**

Petitioner next contends that the trial court committed plain error because it granted Instruction S-1 at the conclusion of the guilt phase. He contends that Instruction S-1 constructively amended the indictment and therefore violated his constitutional rights. Petitioner presented this claim to the Mississippi Supreme Court on direct appeal. The Mississippi Supreme Court held:

**XV. CONSTRUCTIVE AMENDMENT OF THE INDICTMENT**

¶ 56. MISS. CODE ANN. § 97-3-19(2)(e) (1994) states that capital murder is the "killing of a human being without the authority of law by any means or in any manner . . . [w]hen done *with or without any design to effect death*, by any person engaged in the commission of the crime of . . . robbery . . ." [emphasis added]. The State, Bell argues, could therefore have indicted Bell for a killing done with malice aforethought or for one done without a design

180

to cause death. In fact, the indictment charged that Doss and Bell "unlawfully, wilfully, feloniously and of their *malice aforethought*" killed and murdered Bert [emphasis added].

¶ 57. At trial, and without objection, the court instructed the jury that Bell should be found guilty of capital murder if he "did unlawfully, willfully, and feloniously kill Robert C. 'Bert' Bell . . ." while engaged in a robbery. By omitting the element of malice or design, this instruction, Bell contends, constructively amended the indictment by allowing conviction of murder committed without deliberate design, thus broadening the basis for conviction. Having made no objection on this ground, Bell urges, as he must, that allowing the instruction so seriously flawed his trial as to constitute plain error, cognizable to this Court even though not preserved as required by *Nicholson*, *Lockett, supra*, and *Conner v. State*, 632 So.2d 1239, 1255 (Miss.1993), *cert. denied* 513 U.S. 927, 115 S.Ct. 314, 130 L.Ed.2d 276 (1994). *See also Ross v. State*, 603 So.2d 857, 860-61 (Miss.1992).

¶ 58. A constructive amendment of the indictment occurs when the proof and instructions broaden the grounds upon which the defendant may be found guilty of the offense charged so that the defendant may be convicted without proof of the elements alleged by the grand jury in its indictment. *See United States v. Miller*, 471 U.S. 130, 105 S.Ct. 1811, 85 L.Ed.2d 99 (1985). Bell argues that, in addition to violating the Fifth Amendment right to grand jury indictment, constructive amendments deny a defendant sufficient notice to prepare and present an adequate defense in violation of the Sixth Amendment right to notice and the Fifth Amendment right to due process. *Cole v. Arkansas*, 333 U.S. 196, 201, 68 S.Ct. 514, 92 L.Ed. 644 (1948); *Hunter v. State of New Mexico*, 916 F.2d 595, 599 (10th Cir.1990).

¶ 59. We decided a very similar issue against the defendant in *Berry v. State*, 575 So.2d 1 (Miss.1990). Berry argued that the indictment charged him with intentional murder and that the jury instructions failed to include a charge requiring the jury to find that the murder was intentional. *Id*. at 13. He maintained that the State must be held to the higher standard of proof and that the State failed to prove the crime for which he was indicted. We held that the indictment provided sufficient notice to give Berry fair knowledge of the crime charged. *Id*. Here Bell asserts that the rationale of *Berry* is unsound and that the State should be required to prove intent as alleged.

¶ 60. The concept of constructive amendment of an indictment is

founded largely on *Stirone v. United States*, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960), in which the defendant was charged with interference with interstate commerce under the Hobbs Act by extortion. The indictment charged as the interstate commerce nexus, the importation of sand into Pennsylvania to be used in the construction of a steel mill. After the trial began, the government was allowed to produce evidence and to argue that the extortion also impacted the exportation of steel from Pennsylvania, and the jury was charged that Stirone's guilt could rest either on a finding that the sand was imported from another state or that the concrete into which it went was used to build a steel mill which would ship steel out of the state. Both the evidence and the charge to the jury as to the impact on the exportation of steel were subject to objections by the defendant. The Court held that the district judge committed error in allowing this broadening of the basis on which Stirone could be convicted. "Although the trial court did not permit a formal amendment of the indictment, the effect of what it did was the same. And the addition charging interference with steel exports here is neither trivial, useless, nor innocuous." *Stirone*, 361 U.S. at 217, 80 S.Ct. 270.

¶ 61. Not all variances between the indictment and instructions constitute a constructive amendment, nor do they rise to plain error. The central question is whether the variance is such as to substantially alter the elements of proof necessary for a conviction. The distinction was explained well in *United States v. Adams*, 778 F.2d 1117 (5th Cir.1985). There, analyzing the holding of *Stirone*, the Court of Appeals said:

> *Stirone* requires that courts distinguish between constructive amendments of the indictment, which are reversible per se, and variances between indictment and proof, which are evaluated under the harmless error doctrine. The accepted test is that a constructive amendment of the indictment occurs when the jury is permitted to convict the defendant upon a factual basis that effectively modifies an essential element of the offense charged. . . . In such cases, reversal is automatic, because the defendant may have been convicted on a ground not charged in the indictment. . . . If, on the other hand, the variation between proof and indictment does not effectively modify an essential element of the offense charged, "the trial court's refusal to restrict the jury charge to the words of the indictment is merely another of the flaws in trial that mar its perfection but do not prejudice the defendant." [citations omitted.]

*Adams*, 778 F.2d at 1123. The Court of Appeals reversed where the indictment charged the defendant with falsifying an application for a firearm by giving a false name, but the proof and the instructions added the falsification of the defendant's address. That was found to be an additional factual element upon which the conviction could be based, and it thus constituted an amendment to the indictment. It is also worth noting that the defendant strenuously and contentiously objected to that action.

¶ 62. The issue here is virtually identical to that in *Berry*. Bell's indictment appears to be sufficient. Notwithstanding the "malice aforethought" language, the indictment clearly serves notice that Bell is being charged with murder while engaged in the commission of the crime of armed robbery in violation of MISS. CODE ANN. § 97-3-12(2)(e) (1994).

725 So.2d at 854-56.

The Mississippi Supreme Court found the indictment to be sufficient. The Fifth Circuit in reversing the district court's grant of habeas relief in *Lockett v. Anderson*, 230 F.3d 695 (5th Cir. 2000), held:

The rule in our circuit is that "[w]hen it appears . . . that the sufficiency of the indictment was squarely presented to the highest court of the state on appeal, and the court held that the trial court had jurisdiction over the case, the issue is foreclosed to a federal habeas court." *Murphy v. Beto*, 416 F.2d 98, 100 (5th Cir.1969). *See also Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir.1985) ("[T]he sufficiency of a state indictment is not a matter for federal habeas corpus review unless it can be shown that the indictment is so defective that the convicting court had no jurisdiction.").

230 F.3d at 702.

The Mississippi Supreme Court clearly held that the indictment was sufficient. Therefore, this is not a matter on which habeas relief can be granted. The fact that the Mississippi Supreme Court cited to federal authority does not change this to a constitutional claim.

In federal courts, the Fifth Amendment's guarantee of a grand jury indictment

183

prohibits the constructive amendment of an indictment. *See Stirone v. United States*, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960); *Ex parte Bain*, 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849 (1887); *United States v. Irwin*, 661 F.2d 1063, 1069 (5th Cir.1981), *cert. denied*, 456 U.S. 907, 102 S.Ct. 1754, 72 L.Ed.2d 164 (1982). However, that constitutional protection, however, has never been incorporated into the Fourteenth Amendment's due process clause; it is inapplicable to state proceedings. *See Hurtado v. California*, 110 U.S. 516, 4 S.Ct. 111, 28 L.Ed. 232 (1884); *see also Ring v. Arizona*, 536 U.S. 584, 597 n. 4, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002); *Apprendi v. New Jersey*, 530 U.S. 466, 477 n. 3, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).

This is not a federal constitutional claim and petitioner is entitled to no habeas relief on this claim.

**GROUND XIV:      REFUSAL OF PETITIONER'S INSTRUCTIONS DS-7.**

Petitioner contends the trial court erred in refusing to grant his Instruction DS-7 at the conclusion of the sentence phase of the trial. This instruction would have instructed the jury that they must find that the aggravating circumstances outweigh the mitigating circumstances. Mississippi law requires that the mitigating circumstances outweigh the aggravating circumstances. *See* MISS. CODE ANN. § 9-19-101(2)(c). This is the same claim that petitioner raises against Instruction S-1 in Ground XVII, G, *infra*.

This claim was presented to the Mississippi Supreme Court on direct appeal and the Mississippi Supreme Court held:

## XVIII. THE DENIAL OF INSTRUCTION DS-7

¶ 82. Bell argues that the judge's error as to the last point, that the court improperly shifted the burden, was compounded by the trial court's failure to give DS-7, instructing the jury that it must find beyond a reasonable doubt "that the aggravating circumstances outweigh the mitigating." The trial court refused this and other sentencing instructions finding them to be redundant to those given. Again, Bell failed to object to the rejection of this instruction, and the issue is barred under *Gollott, Foster* and *Chase, supra.*

¶ 83. Bell's offered instruction stated, "[b]efore you may consider imposing the death sentence, each one of you must be convinced beyond a reasonable doubt that the totality of the aggravating circumstances outweigh the totality of the mitigating circumstances. . . ." The court's instruction stated, "[t]o return the death penalty you must find that the mitigating circumstances . . . do not outweigh the aggravating circumstances."

¶ 84. The court's instruction correctly and clearly states the requirements of the statute, as we noted above. It is neither required nor appropriate that additional redundant instructions be given. There is no error in the refusal of instruction DS-7.

725 So.2d at 860.

Instruction DS-7 is contrary to the law Mississippi law as it has stood since 1977. Further, the denial of this instruction does not offend the United States Constitution in any manner. The decision of the Mississippi Supreme Court is neither contrary to or an unreasonable application of clearly established federal law as announced by the United States Supreme Court.

The United States Supreme Court recently settled this question in its opinion in *Kansas v. Marsh*, ___ U.S. ___, 126 S.Ct. 2516, 165 L.Ed.2d 429 (2006). There the high court held:

185

Contrary to Marsh's contentions and the Kansas Supreme Court's conclusions, *see* 278 Kan., at 536-538, 102 P.3d, at 459, the question presented in the instant case was squarely before this Court in *Walton*. Though, as Marsh notes, the *Walton* Court did not employ the term "equipoise," that issue undeniably gave rise to the question this Court sought to resolve, and it was necessarily included in *Walton's* argument *that the Arizona system was unconstitutional because it required the death penalty unless the mitigating circumstances outweighed the aggravating circumstances. See supra*, at 2522. Moreover, the dissent in *Walton* reinforces what is evident from the opinion and the judgment of the Court-that the equipoise issue was before the Court, and that the Court resolved the issue in favor of the State. Indeed, the "equipoise" issue was, in large measure, the basis of the *Walton* dissent. *See* 497 U.S., at 687-688, 110 S.Ct. 3047 (opinion of Blackmun, J.) ("If the mitigating and aggravating circumstances are in equipoise, the [Arizona] statute requires that the trial judge impose capital punishment. The assertion that a sentence of death may be imposed in such a case runs directly counter to the Eighth Amendment requirement that a capital sentence must rest upon a 'determination that death is the appropriate punishment in a specific case' "). Thus, although *Walton* did not discuss the equipoise issue explicitly, that issue was resolved by its holding. *Cf. post*, at 2539 (STEVENS, J., dissenting); *cf. also post*, at 2541, n. 1 (SOUTER, J., dissenting).

Our conclusion that *Walton* controls here is reinforced by the fact that the Arizona and Kansas statutes are comparable in important respects. Similar to the express language of the Kansas statute, *the Arizona statute at issue in Walton has been consistently construed to mean that the death penalty will be imposed upon a finding that aggravating circumstances are not outweighed by mitigating circumstances.*[2] *See State v. Ysea*, 191 Ariz. 372, 375, 956 P.2d 499, 502 (1998) (en banc); *State v. Gretzler*, 135 Ariz. 42, 55, 659 P.2d 1, 14 (1983) (in banc); *Adamson*, 865 F.2d, at 1041-1043. *Like the Kansas statute, the Arizona statute places the burden of proving the existence of aggravating circumstances on the State, and both statutes require the defendant to proffer mitigating evidence*.

The statutes are distinct in one respect. The Arizona statute, once the State has met its burden, tasks the defendant with the burden of proving sufficient mitigating circumstances to overcome the aggravating circumstances and that a sentence less than death is therefore warranted. In contrast, the Kansas statute requires the State to bear the burden of proving to the jury, beyond a reasonable doubt, that aggravators are not outweighed by mitigators

186

and that a sentence of death is therefore appropriate; it places no additional evidentiary burden on the capital defendant. This distinction operates in favor of Kansas capital defendants. Otherwise the statutes function in substantially the same manner and are sufficiently analogous for our purposes. Thus, *Walton* is not distinguishable from the instant case.

Accordingly, the reasoning of *Walton* requires approval of the Kansas death penalty statute. At bottom, in *Walton*, the Court held that a state death penalty statute may place the burden on the defendant to prove that mitigating circumstances outweigh aggravating circumstances. A fortiori, Kansas' death penalty statute, consistent with the Constitution, may direct imposition of the death penalty when the State has proved beyond a reasonable doubt that mitigators do not outweigh aggravators, including where the aggravating circumstances and mitigating circumstances are in equipoise.

_____

2. ARIZ.REV.STAT. ANN. § 13-703(E) (Supp.2005) provides:

"In determining whether to impose a sentence of death or life imprisonment, the trier of fact shall take into account the aggravating and mitigating circumstances that have been proven. The trier of fact shall impose a sentence of death if the trier of fact finds one or more of the aggravating circumstances enumerated in subsection F of this section and then determines that there are no mitigating circumstances sufficiently substantial to call for leniency."

126 S.Ct. at 2523-24. [Emphasis added.]

The Mississippi statute is similar in operation to both Arizona and Kansas on this point with

certain differences that do no change the impact of the decision..

The Mississippi Supreme Court has held that the aggravating circumstances must be

found beyond a reasonable doubt. No burden of proof is required for the finding of

mitigating circumstances. Further, the statute requires that the jury find that the mitigating

circumstances outweigh the aggravating circumstances. The state court has held no other

burden of proof is proper. *See* MISS. CODE ANN. § 99-19-101(2)(c); *Simmons v. State*, 805

So.2d 452, 500, ¶ 133 (Miss. 2001); *Edwards v. State*, 737 So.2d 275, 313, ¶ 129 (Miss. 1999); *Smith v. State*, 724 So.2d 280, 301-02, ¶¶ 64-67 (Miss. 1998); *Berry v. State*, 703 So.2d 269, 289-90 (Miss. 1997); *Williams v. State*, 684 So.2d 1179, 1202 (Miss. 1996); *Ballenger v. State*, 667 So.2d 1242,1266-67 (Miss. 1995); *Conner v. State*, 632 So.2d 1239, 1278 (Miss. 1993), *cert. denied*, 513 U.S. 927, 115 S.Ct. 314, 130 L.Ed.2d 276 (1994); *Shell v. State*, 554 So.2d 887, 904 (Miss. 1989); *Jordan v. State*, 365 So.2d 1198, 1205-06 (Miss. 1978);; *Shell v. State*, 554 So.2d 887, 904 (Miss. 1989); *Stringer v. State*, 500 So.2d 928 (Miss. 1986); *Leatherwood v. State*, 435 So.2d 645 (Miss. 1983); *Jordan v. State*, 365 So.2d 1198, 1206 (Miss. 1978).

This burden of proof was also approved long ago by the Fifth Circuit in *Gray v. Lucas*, 677 F.2d 1086, 1105-06, *reh. denied*, 685 F.2d 139 (5th Cir. 1982), *cert. denied*, 461 U.S. 910, 103 S.Ct. 1886, 76 L.Ed.2d 815, *reh. denied*, 462 U.S. 1124, 103 S.Ct. 3099, 77 L.Ed.2d 1357 (1983).

The Mississippi Supreme Court has further held that the burden of proof during the sentence phase of a capital murder never shifts to the defendant. *See Branch v. State*, 882 So.2d 36, 71-72, ¶¶ 109-12 (Miss. 2004); *Simmons v. State*, 805 So.2d 452, 500, ¶ 132 (Miss. 2001); *Jordan v. State*, 728 So.2d 1088, 1098-99 ¶¶ 46-48 (Miss. 1998); *Williams v. State*, 684 So.2d 1179, 1201-02 (Miss. 1996); *Blue v. State*, 674 So.2d 1184, 1223-24 (Miss. 1996); *Chase v. State*, 645 So.2d 829, 860-61 (Miss. 1994), *cert. denied*,515 U.S. 1123, 115 S.Ct. 2279, 132 L.Ed.2d 282, *reh. denied*, 515 U.S. 1179, 116 S.Ct. 20, 132 L.Ed.2d 903 (1995);

188

*Stringer v. State*, 500 So.2d 928, 943-44 (Miss. 1986); *Irving v. State*, 498 So.2d 305, 314 (Miss. 1986); *Coleman v. State*, 378 So.2d 640, 646-47 (Miss. 1979); *Jordan v. State*, 365 So.2d 1198, 1205-06 (Miss. 1978). Further, the state court has held that the argument that the burden of proof is shifted to the defendant to prove a life sentence is warranted, when one aggravating circumstance has been found, has no merit. *See Branch v. State*, 882 So.2d 36, 71-72, ¶¶ 109-12 (Miss. 2004); *Simmons v. State*, 805 So.2d 452, 500, ¶ 132 (Miss. 2001); *Taylor v. State*, 672 So.2d 1246, 1276 (Miss. 1995).

Even if the burden was shifted to the petitioner to prove mitigation circumstances it would not offend the constitution. *See Walton v. Arizona*, 497 U.S. 639, 650-651, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990). While the burden does not shift under the precedent of the Mississippi Supreme Court and the statute, there would be no constitutional prohibition if it did.

The decision of the Mississippi Supreme Court did not result in a decision that is contrary to or an unreasonable application of *Marsh* or *Walton*. *See Williams v. Taylor, supra.* Petitioner is entitled to no relief on this claim.

**GROUND XV:       INADEQUATE *VOIR DIRE* TO REVEAL JUROR PREJUDICE.**

Petitioner next contends that the voir dire conducted by the trial court was inadequate to reveal juror prejudice. This claim was presented on direct appeal and held to be barred from consideration and alternatively addressed on the merits. The Mississippi Supreme Court held:

189

I. ADEQUACY OF THE VOIR DIRE

¶ 9. Bell urges that the voir dire of the jury at his trial was so flawed as to be meaningless and that as a result the jury was excessively weighted in favor of the prosecution by the presence of jurors with ties to the deceased and to law enforcement so as to deprive him of the protection guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution. Specifically, he points out that eight of the twelve jurors either had relatives in law enforcement or had ties of family or friendship with the deceased or with his family. He argues that this was at least in part due to the trial judge's conduct in examining the panel with leading questions suggesting to the jurors the proper answers, his failure to conduct meaningful individual examination of the panel members, and his reliance upon the members' self-assessment of their ability to give Bell a fair trial.

¶ 10. We cannot today know how the trial judge would have conducted his voir dire if Bell had objected or raised these issues before him, because the defense gave him no opportunity to consider them. No objection was made as to the manner of the judge's questioning or to his decisions on challenges for cause. When the panel was tendered to the defense after the State's challenges for cause, six of the eight were acknowledged as acceptable. The last two were accepted after Bell had exhausted his challenges, but no request for additional challenges was made. Following trial, his post-trial motions raised no questions as to the voir dire procedures. *We have held and hold today that a party who fails to object to the jury's composition before it is empaneled waives any right to complain thereafter.* *Hunter v. State*, 684 So.2d 625, 631 (Miss.1996); *Myers v. State*, 565 So.2d 554, 557 (Miss.1990); *Pickett v. State*, 443 So.2d 796, 799 (Miss.1983). In the present case, any flaws in the judge's examination of the panel are mitigated by the leeway allowed defense counsel in his phase of the voir dire.

¶ 11. Having said this, we have also examined the record of the voir dire by the trial court as to possible plain error, and although we cannot say that the manner of examining the jury panel was desirable, its defects do not rise to the level of fundamental constitutional error. We do note, however, that trial judges should exercise caution in performing their profound duty to select fair, impartial and competent juries. Words coming from the judge bear special weight with those citizens who are asked to try the facts of cases, both civil and criminal. Care should be taken that the nuances imbedded in the judges' questions do not suggest that there is only one proper answer, and that

190

questions are asked in a way that would not cause one, from fear or embarrassment, to give anything less than frank, honest answers. Questions such as "Do you know of any reason that you cannot be fair," are of little help, as they require an uncommon self diagnosis. In *Fisher v. State*, 481 So.2d 203, 222 (Miss.1985), we censured "accepting at face value the assurances of the jurors impaneled that they could ignore what they had read and heard . . ." The voir dire in this case was extremely poor, however, counsel for the defendant acquiesced in the voir dire and further counsel for the defense was unfettered in his own voir dire.

¶ 12. Bell did, prior to voir dire, move for an individual, sequestered voir dire of the panel. He presented no argument or cause supporting this motion, and it was denied. As we said in *Hansen v. State*, 592 So.2d 114, 126 (Miss.1991), *cert. denied*, 504 U.S. 921, 112 S.Ct. 1970, 118 L.Ed.2d 570 (1992), and in *Ballenger v. State*, 667 So.2d 1242, 1249 (Miss.1995), *cert. denied*, 518 U.S. 1025, 116 S.Ct. 2565, 135 L.Ed.2d 1082 (1996), this is a matter within the sound discretion of the trial judge. While not requiring the use of sequestered voir dire, Rule 5.02 of the Uniform Criminal Rules of Circuit Court Practice does, within the court's discretion, allow it, but only on good cause shown.

725 So.2d at 844-45. [Emphasis added.]

The Mississippi Supreme Court held the claim relating to the adequacy of voir dire by the trial court to be barred from consideration by the failure to object to the jury panel before it was seated. The court also found the claim to alternatively without merit. The court also held that the trial court did not abuse its discretion in denying individual sequestered voir dire.

This claim is barred from consideration based on the application of an adequate and independent state law procedural ground. *See Wainwright v. Sykes, supra.* Petitioner is entitled to no relief on this claim.

**GROUND XVI:     OVERRULING PETITIONER'S MOTION FOR EXPERT.**

191

Petitioner next contends that his motion for an expert in ballistics was overruled by the trial court. The problem is that petitioner never made such a motion. This claim was presented to the Mississippi Supreme Court on direct appeal. The Mississippi Supreme Court held:

> ### XII. THE COURT'S FAILURE TO PROVIDE BELL WITH A BALLISTICS EXPERT
>
> ¶ 46. Although Bell depended on an alibi theory, on appeal he asserts that the trial court erred by failing to provide him with a ballistics expert who could have, he urges, helped establish that Doss, not Bell, fired the fatal shots, and could have assisted in cross-examination of the State's expert. We need not today consider the circumstances under which it may be appropriate for the trial judge to provide expert assistance to the defense, however, because the record does not reflect that Bell ever asked for such assistance. In his brief, Bell says that the court denied his motion. This is incorrect. Doss did move for such assistance, and the motion was denied. However, the record does not include a similar motion by Bell or a joinder by Bell in Doss's request. There is no merit to this assignment of error.

725 So.2d at 853.

Since petitioner never made a motion for such an expert he cannot claim constitutional error. While petitioner makes a lengthy argument regarding why such an expert was needed he does not point out where in the record any such request was made. The trial court had no duty to furnish a ballistics expert without a request. This claim is specious. Petitioner is not entitled to habeas relief on this claim.

## GROUND XVII: OVERRULING OBJECTION TO EXPERT TESTIMONY CONCERNING POSITION OF VICTIMS HANDS.

Petitioner next contends that his the trial court erred in overruling his objection to the

192

expert testimony of Dr. Stephen Hayne regarding the position of Bert Bell's hands prior to his being shot. This claim was held to be barred from consideration by the Mississippi Supreme Court because no contemporaneous objection was interposed to the testimony. The Court alternatively addressed the merits of the claim and found it to be without merit. When the claim was presented on direct appeal the Mississippi Supreme Court held:

### XIII. DR. HAYNE'S TESTIMONY

¶ 47. Bell argues that it was error for the trial court to allow, over Bell's objection, the testimony of Dr. Hayne that at the time of one of the gunshot wounds, the victim was holding his hands in front of his face. In support of his position, he cites the following from *Austin v. State*, 324 So.2d 245 (Miss.1975):

> According to the overwhelming weight of authority, the opinions of medical experts are not admissible to show the [position] of an injured person at the time the wound was received, or the position of the person who inflicted it, because, as has been said, surgeons are not presumed to be experts in the matter of giving or receiving wounds, and the jury are equally capable of drawing proper inferences from the facts proved. [citation omitted].

*Id*. at 248 ( quoting *Rigell v. State*, 8 Ala.App. 46, 55, 62 So. 977, 980 (1913)). *Accord Dillard v. State*, 58 Miss. 368 (1880) (testimony of physician, as expert, as to relative positions of prisoner and deceased during affray, as shown by blood marks, is inadmissible as relating to a matter of common sense and experience, of which jury are exclusive judges).

¶ 48. In *Austin* the Court ruled it error to allow a pathologist to testify to the position of a shooting victim's arm at the time the fatal shot was fired when the question was whether the victim had been an aggressor. *Austin*, 324 So.2d at 249. However, in *May v. State*, 524 So.2d 957, 962 (Miss.1988), the Court stated that the obvious rationale of *Austin*, in the murder/self-defense context, "is that such testimony would amount to an opinion on the ultimate fact, effectively invading the province of the jury." Moreover, *Austin* was decided prior to the promulgation of the Mississippi Rules of Evidence.

193

¶ 49. *This argument is clearly procedurally barred. The State asserts that there is no objection to this testimony in the record. Although Bell argues that he objected throughout the trial to this type of evidence, there is no contemporaneous objection to any of Dr. Hayne's testimony concerning the gunshot wounds to the hands.*

¶ 50. In addition, Dr. Hayne was qualified as an expert in forensic pathology, which includes expertise in how wounds are received. This expertise necessarily relates to the position of the body at the time. The State contends that this is allowable under Miss. R. Evid. 702, Testimony by Experts.

¶ 51. Although there have been cases cited where experts were not permitted to testify to the position of the body, these are not consistent with the rules of evidence and the substance of the complained of testimony. Miss. R. Evid. 702 states: "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Bell stipulated as to the fact that Dr. Hayne was an expert in forensic pathology. Forensic pathology is generally accepted as a division within pathology requiring a medical degree and advanced training in forensic pathology. A forensic pathologist addresses two basic questions: what was the cause of death, and what was the manner of death? Rule 702 allows Dr. Hayne to opine as to the path of the lethal gunshot wound and that path is through the third finger on the right hand into the left temple. This view has broad acceptance in jurisdictions applying Rule 702. *See Eason v. United States*, 687 A.2d 922 (D.C.1996); *State v. Thomasson*, 122 Idaho 172, 832 P.2d 743 (1992); *State v. Sparks*, 297 N.C. 314, 255 S.E.2d 373 (1979). This assignment of error has no merit.

725 So.2d at 853-54. [Emphasis added.]

Because petitioner failed to interpose a contemporaneous objection to the testimony the claim was barred by the state court on an independent and adequate state law ground. Likewise, this Court is barred from considering the merits of this claim. *See Wainwright v. Sykes, supra*. Petitioner makes no attempt to demonstrate cause and actual prejudice to overcome

194

the imposition of the procedural bar in this case. He is therefore barred from obtaining relief on this claim on habeas review.

In addition, the alternative discussion of the merits of the case does not vitiate the imposition of the procedural bar. *See Harris v. Reed, supra.* In *Busby v. Dretke*, 359 F.3d 708 (5th 2004) the Fifth Circuit held:

> The general rule is that the federal habeas court will not consider a claim that the last state court rejected on the basis of an adequate and independent state procedural ground. *Coleman v. Thompson*, 501 U.S. 722, 729-32, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Fisher v. Texas*, 169 F.3d 295, 300 (5th Cir.1999). In this case, the state habeas court expressly stated that Busby's claim was procedurally barred because he did not raise it on direct appeal. The court then went on to make several further conclusions of law to the effect that the claim was substantively meritless. That the court reached these additional conclusions does not undermine the explicit invocation of the procedural bar. *See Harris v. Reed*, 489 U.S. 255, 264 n. 10, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989); *Fisher*, 169 F.3d at 300 ("A state court expressly and unambiguously bases its denial of relief on a state procedural default even if it alternatively reaches the merits of a defendant's claim.").

359 F.3d at 718.

This claim is barred from consideration by this Court.

Further, petitioner does not cite to a single federal or state case, much less a United States Supreme Court decision, in support of his position. In *Berry v. Epps*, ___ F.Supp.2d ___, 2006 WL 2865064 (N.D.Miss. Oct. 5, 2006), Judge Davidson held:

> Petitioner's argument is conclusory and without requisite specificity or relevance to this petition. Whether this is a "claim" barred by the statute of limitations is irrelevant, as under the standards set forth by the AEDPA, the matter is waived. *See Salazar-Regino v. Trominski*, 415 F.3d 436, 452 (5th Cir.2005) (petitioners waived issue by failing to adequately brief it, where their argument consisted of case citation without explanation as to how case was

applicable to instant facts, and where opinion had been overruled); *Hughes v. Dretke*, 412 F.3d 582, 597 (5th Cir.2005); *Lookingbill v. Cockrell*, 293 F.3d 256, 263 (5th Cir.2002); *Trevino v. Johnson*, 168 F.3d 173, 181 n. 3 (5th Cir.1999) (inadequately briefed issues are waived); *Royal v. Tombone*, 141 F.3d 596, 599 n. 3 (5th Cir.1998); *Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir.1994); *Yohey v. Collins*, 985 F.2d 222, 224-25 (5th Cir.1993) (request to adopt previous factual and legal arguments pled in state court in federal habeas denied and effectively abandoned by petitioner's failure to argue them in his brief). Therefore, this argument is waived and will not be substantively addressed further in the Court's consideration of Petitioner's claims.

2006 WL 2865064, *5.

In its opinion denying COA in *Berry v. Epps*, ___ Fed.Appx. ___, 2007 WL 1202748

(5th Cir. 2007), the Fifth Circuit held:

As held by the district court, because Berry has failed to brief this contention here, it is waived. *See, e.g., Lookingbill v. Cockrell*, 293 F.3d 256, 263 (5th Cir.2002) ("Where a habeas petitioner fails to brief an argument adequately, [this court] consider[s] it waived.").

2007 WL 1202748, *4.

For this additional reason the respondents would assert that this claim is waived.

Finally, the alternative decision the merits of this claim did not result in a decision that is contrary to or an unreasonable application of clearly established federal law as announced by the United States Supreme Court. *See* 28 U.S.C. § 2254(d); *Williams v. Taylor, supra.*

The Mississippi Supreme Court based its decision on an interpretation Rule 702 of the Mississippi Rules of Evidence. A ruling under the state rules of evidence is not of constitutional dimensions. However, even when we look the corresponding Rule 702 in the Federal Rules of Evidence the interpretation is the same. The Fifth Circuit held in *United*

196

*States v. $9,041,598.68 (Nine Million Forty One Thousand Five Hundred Ninety Eight Dollars and Sixty Eight Cents)*, 163 F.3d 238 (5th Cir. 1998):

> The admission or exclusion of expert testimony will not be disturbed on appeal unless it is "manifestly erroneous." *First Natl. Bank of Durant v. Trans Terra Corp. Intl.*, 142 F.3d 802, 811 (5th Cir.1998). Rule 702 of the Federal Rules of Evidence states: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill experience, training, or education, may testify thereto in the form of an opinion or otherwise." Fed.R.Evid. 702. With regard to the permissible scope of expert testimony, Rule 704 explicitly provides that "testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Fed.R.Evid. 704.

163 F.3d at 254-55.

There is no ruling of the United States Supreme Court that interprets Rule 702 otherwise, therefore the decision of the State court did not result in a decision that is contrary to or an unreasonable of clearly established federal law as announced by the United States Supreme Court.

This claim does not rise to the level of a constitutional violation in the first place. A claim challenging the state court's ruling on the admissibility of certain evidence is precluded from review by this Court, because the rulings of state courts on evidentiary matters are solely issues of state law. That is, a state prisoner is entitled to relief under 28 U.S.C. § 2254 only if he is held "in custody in violation of the Constitution or laws or treaties of the United States." *Engle v. Isaac,* 456 U.S. 107, 118, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982). Federal courts have "long recognized that a 'mere error of state law' is not a denial of due process.

197

If the contrary were true, then 'every erroneous decision by a state court on state law would come [to this Court] as a federal constitutional question.'" *Id.* at 121 n.21 (citations omitted).

A claim challenging the state court's ruling on the admissibility of certain evidence under state law is precluded from review by this Court, because the rulings of state courts on evidentiary matters are solely issues of state law. "A state court's evidentiary rulings present cognizable habeas claims only if they run afoul of a specific constitutional right or render the petitioner's trial fundamentally unfair." *Johnson v. Puckett*, 176 F.3d 809, 820 (5th Cir. 1999) (citing *Cupit v. Whitley*, 28 F.3d 532, 536 (5th Cir.1994). "[I]n reviewing state court evidentiary rulings, the federal habeas court's role 'is limited to determining whether a trial judge's error is so extreme that it constituted a denial of fundamental fairness' under the Due Process Clause." *Castillo v. Johnson,* 141 F.3d 218, 222 (5th Cir. 1998) (citations omitted); *see also Jackson v. Johnson,* 194 F.3d 641, 656 (5th Cir. 1999). The "erroneous admission of prejudicial testimony does not justify habeas relief unless the evidence played a 'crucial, critical, and highly significant' role in the jury's determination." *Jackson v. Johnson,* 194 F.3d at 656. *See Wilkerson v. Cain*, 233 F.3d 886, 890 (5th Cir.2000); *Castillo v. Johnson,* 141 F.3d 218, 224 (5th Cir.1998).

The introduction of the expert testimony of Dr. Hayne did not play a "crucial, critical and highly significant" role in the jury's determination of petitioner's guilt of capital murder in this case. The evidentiary ruling underlying this claim did not amount to a due process violation.

198

This claim is barred from review by this Court by the imposition of a clearly imposed state law procedural ground. *See Wainwright v. Sykes, supra*. Further, this claim is barred from consideration for the failure to fully brief the claim. The state court's interpretation of M.R.E. 702, is not contrary to the interpretation placed on the rule by the federal courts or other state court in similar cases. In any event, this is a state court evidentiary ruling that is not generally cognizable on federal habeas review. Petitioner is not entitled to habeas relief on this claim.

**GROUND XVIII: FAILURE TO INSTRUCT ON LESSER INCLUDED OFFENSE.**

Petitioner contends that he is entitled to habeas relief because the trial court denied his proposed manslaughter instruction. This claim was presented to the Mississippi Supreme Court on direct appeal. The state court held:

> **XIV. DENIAL OF INSTRUCTION ON THE LESSER INCLUDED OFFENSE**
>
> ¶ 52. Bell argues that the trial court erroneously refused Bell's request for a simple murder instruction. The trial judge stated, "I don't think there's anything that would allow us to give a lesser-included instruction." Bell maintains that under the Eighth and Fourteenth Amendments to the United States Constitution, a capital murder defendant is entitled to an instruction on any non-capital offense supported by the evidence. Further, he cites *Fairchild v. State*, 459 So.2d 793 (Miss.1984), wherein this Court said:
>
> > [o]nly if this Court can say, taking the evidence in the light most favorable to the accused, and considering all reasonable favorable inferences which may be drawn in favor of the accused from the evidence, and considering that the jury may not be required to believe any evidence offered by the State, that no hypothetical, reasonable jury could convict [the defendant] of simple murder, can it be said that the refusal of the lesser-included instruction was proper [citation omitted].

*Id*. at 801. However, the Court also ruled that "a lesser-included offense instruction should never be granted on the basis of pure speculation." *Id*. (affirming the denial of a lesser-included offense instruction for manslaughter).

¶ 53. In *Fairchild*, the State presented evidence to show that Fairchild agreed with his codefendant, Dickson, to rob the victim and gave Dickson a knife. Later, while Fairchild was asleep, Dickson murdered the victim. After Dickson awoke Fairchild, the two defendants stole the victim's jewelry and travelers checks, which they split. The Court held it was error to have refused Fairchild's requested simple murder instruction because to hold otherwise would be to find that the defendant is already guilty of the underlying felony.

¶ 54. *The State argues correctly the procedural bar of Nicholson and Lockett, supra, as Bell interposed no objection to the refusal of this instruction*.

¶ 55. Alternatively, the State points out that a similar issue was decided by the Court in *Abram v. State*, 606 So.2d 1015 (Miss.1992). In *Abram*, the Court upheld the trial court's refusal of a simple murder instruction where the defendant was charged with capital murder. The Court stated, "the evidence must support a finding that the killing was not committed during the commission of armed robbery in order to justify a simple murder instruction." *Id*. at 1035. There is simply no evidence in this case to suggest Bert's murder was not committed during an armed robbery, especially in light of the discovery of the .38 caliber pistol belonging to the store under the control of Bell in Memphis. This issue is procedurally and substantially without merit.

725 So.2d at 854.

The Mississippi Supreme Court held the claim to be barred from consideration. Therefore, this claim is barred from consideration on federal habeas review. *See Wainwright v. Sykes, supra*.

Further, without waiving the bar to the consideration of this claim, respondents would point out that the rule in Mississippi is that in order to have an instruction on the lesser

included offense of "simple murder" given, evidence must be presented at trial to support the granting of such an instruction. *Howell v. State*, 860 So.2d 704, 741-44, ¶¶ 131-40 (Miss. 2003); *Edwards v. State*, 737 So.2d 275, 310-11, ¶¶ 112-16 (Miss. 1999); *Turner v. State*, 732 So.2d 937, 948-50, ¶¶ 41-48 (Miss. 1999); *Bell v. State*, 725 So.2d 836, 854, ¶¶ 52-55 (Miss. 1998); *Evans v. State*, 725 So.2d 613, 664-66, ¶¶ 208-15 (Miss. 1997); *Conner v. State*, 632 So.2d 1239, 1253-55 (Miss. 1993), *cert. denied*, 513 U.S. 927, 115 S.Ct. 314, 130 L.Ed.2d 276 (1994). *Beck v. Alabama*, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980), applies only when there is sufficient evidence to support a lesser included offense instruction. *Hopper v. Evans*, 456 U.S. 605, 102 S.Ct. 2049, 72 L.Ed.2d 367 (1982). When no evidence is presented to show that the defendant is guilty of "malice aforethought," "premeditated design" or "deliberate design" murder, no grounds exist for an instruction on the lesser included offense of "simple" murder in a capital felony murder case. An essential element of the crime of "malice aforethought," "premeditated design" or "deliberate design" murder is the felonious and premeditated intent to kill. *Bell v. State*, 725 So.2d 836, 854, ¶¶ 52-55 (Miss. 1998); *Abram v. State*, 606 So.2d 1015, 1034-35 (Miss. 1992).

Petitioner is mistaken regarding the requirement that a lesser included offense be automatically granted in a capital case. In *Hopkins v. Reeves*, 524 U.S. 88, 118 S.Ct. 1895, 141 L.Ed.2d 76 (1998), the United States Supreme Court explained its ruling in *Beck* stating:

> The Court of Appeals erred in concluding that its holding was compelled by *Beck*, as the two cases differ fundamentally. In *Beck*, the defendant was indicted and convicted of the capital offense of "'[r]obbery or attempts thereof when the victim is intentionally killed by the defendant.'"

201

447 U.S., at 627, 100 S.Ct., at 2384 (quoting ALA. CODE § 13-11-2(a)(2) (1975)). Although state law recognized the noncapital, lesser included offense of felony murder, *see id.*, at 628-630, 100 S.Ct., at 2384-2387, and although lesser included offense instructions were generally available to noncapital defendants under state law, the Alabama death penalty statute prohibited such instructions in capital cases, *id.*, at 628, 100 S.Ct., at 2384-2385. *As a result, Alabama juries had only two options: to convict the defendant of the capital crime, in which case they were required to impose the death penalty,[4] or to acquit.* 447 U.S., at 628-629, 100 S.Ct., at 2384-2386. We found that the denial of the third option of convicting the defendant of a noncapital lesser included offense "diminish[ed] the reliability of the guilt determination." *Id.*, at 638, 100 S.Ct., at 2390. Without such an option, if the jury believed that the defendant had committed some other serious offense, it might convict him of the capital crime rather than acquit him altogether. *See id.*, at 642-643, 100 S.Ct., at 2392-2393. We therefore held that Alabama was "constitutionally prohibited from withdrawing that option from the jury in a capital case." *See id.*, at 638, 100 S.Ct., at 2390.

————————————————————

4. If the jury imposed the death penalty, the trial judge had the authority to reduce the sentence to life imprisonment without the possibility of parole. *The jury, however, was not instructed to this effect; rather, it was told that it was required to impose the death penalty if it found the defendant guilty. See* 447 U.S., at 639, n. 15, 100 S.Ct., at 2390, n. 15.

524 U.S. at 94-95. [Emphasis added.]

Therefore, *Beck* was based on the oddity of the Alabama statue that required the jury to find the defendant guilty and sentence him to death or to acquit him. The Mississippi statute does not operate in this fashion. The Court continued:

In Nebraska, instructions on offenses that have been determined to be lesser included offenses of the charged crime are available to defendants when the evidence supports them, in capital and noncapital cases alike.[5]

————————————————————

5. We noted this fact in *Beck* in *distinguishing Alabama's scheme from the practices in the rest of the States. See* 447 U.S., at 636, n. 12, 100 S.Ct., at 2389, n. 12 (citing *State v. Hegwood*, 202 Neb. 379, 275 N.W.2d 605 (1979)).

202

524 U.S. at 95. [Emphasis added.]

Because the jury under Mississippi law is not faced with a life or death situation during the guilt phase of the trial, *Beck* has no application to this claim. When a capital defendant is convicted of capital murder, the sentence of death is not automatic. Whether the defendant is sentenced to life or death is the subject of a sentencing trial at which the jury determines the sentence after additional further fact finding.

In *Hopper v. Evans, supra*, the United States Supreme Court held:

> *Beck* held that due process requires that a lesser included offense instruction be given when the evidence warrants such an instruction. But due process requires that a lesser included offense instruction be given only when the evidence warrants such an instruction. The jury's discretion is thus channelled so that it may convict a defendant of any crime fairly supported by the evidence. Under Alabama law, the rule in noncapital cases is that a lesser included offense instruction should be given if "there is any reasonable theory from the evidence which would support the position." *Fulghum v. State*, 291 Ala. 71, 75, 277 So.2d 886, 890 (1973). The federal rule is that a lesser included offense instruction should be given "if the evidence would permit a jury rationally to find [a defendant] guilty of the lesser offense and acquit him of the greater." *Keeble v. United States*, 412 U.S. 205, 208, 93 S.Ct. 1993, 1995, 36 L.Ed.2d 844 (1973). The Alabama rule clearly does not offend federal constitutional standards, and no reason has been advanced why it should not apply in capital cases.

456 U.S. at 611-12.

The final conclusion of the Supreme Court was that petitioner was not prejudiced by the denial of the lesser included offense instruction as it was not warranted under state law. The *Hopper* decision does not hold that a capital defendant is automatically entitled to a lesser included offense instruction only that one is required if the evidence supports such an

203

instruction. There was no such evidence in this case. Petitioner's defense was that I was not there. So his argument is even though I was not there I am entitled to a manslaughter instruction, because if I killed him when I was not there it is only manslaughter.

The Mississippi Supreme Court's decision is neither contrary to or an unreasonable application of *Beck, Hopper,* or *Hopkins*. Petitioner is entitled to no relief on this claim.

**GROUND XIX:     PROSECUTOR'S   MISUSE   OF   CLOSING ARGUMENT DURING GUILT PHASE.**

Petitioner next contends that the prosecution misused closing argument during the guilt phase of his trial by arguing the good character of the victim, the threats Bell made against James, his lack of remorse, stating his personal opinion and arguing facts not in evidence. This is a claim of prosecutorial misconduct.

When this claim was presented to the Mississippi Supreme Court. The Mississippi Supreme Court found the claim to be procedurally barred for the lack of an objection to the arguments and alternatively addressed the merits. The Mississippi Supreme Court held:

**XI. FURTHER OF THE STATE'S ARGUMENT-GUILT PHASE**

¶ 38. Bell maintains that the prosecutor misused closing argument by improperly arguing the good character of the victim, threats made by Bell to James, lack of remorse, personal opinion and facts not in evidence. *Unless any such improper argument is so egregious as to rise to the level of a fundamental denial of a constitutionally-mandated fair trial, and we do not so find, the arguments are all procedurally barred, for at no time did Bell make a contemporaneous objection to any of them. Chase v. State*, 645 So.2d 829, 854 (Miss.1994), *cert. denied* 515 U.S. 1123, 115 S.Ct. 2279, 132 L.Ed.2d 282 (1995). Nevertheless, we will review the specific claims.

**A. Good character of the victim**

204

¶ 39. The prosecutor said that Sparks' Stop-and-Go was:

a place he [Bert] intended, according to James Sparks, to buy from James Sparks' and take that store over one day. That would be his store. Apparently, an industrious young man, 21 years of age, thinking that maybe he was going to be able to own his own store. I commend him for that.

Also, he said:

Bert Bell's life is now reduced to approximately 50 exhibits. That's what his life is all about today. . . . And, Bert Bell didn't have a prayer. He did not have a prayer. He was going to die that day. There's no doubt about it. He didn't have a chance.

¶ 40. An impassioned argument is not in itself an improper argument. Furthermore, the prosecutor, as any other counsel, is free to recall and comment on testimony offered in evidence and to draw inferences.

[The prosecutor] may comment upon any facts introduced into evidence. He may draw whatever deductions seem to him proper from these facts, so long as he does not use violent and abusive language, and even in many cases invectives may be justified and even called for, as pointed out by Chief Justice Whitfield in *Gray v. State*, 90 Miss. 235, 43 So. 289 [1907].

*Davis v. State*, 684 So.2d 643, 656 (Miss.1996)( quoting *Shell v. State*, 554 So.2d 887, 900 (Miss.1989), *rev. on other grounds* 498 U.S. 1, 111 S.Ct. 313, 112 L.Ed.2d 1 (1990), and *Nelms & Blum Co. v. Fink*, 159 Miss. 372, 131 So. 817 (1930)). This liberty is, of course, not without limitation. An appeal to emotion or for sympathy for a victim can reach a point at which it is prejudicial. In *Willie v. State*, 585 So.2d 660, 679 (Miss.1991), we disapproved blatant comparisons of the value of the victim's life and that of the defendant. However, such was not done here, and we do not find that the prosecutor's comments transgressed the limits of fair argument.

**B. The threats to kill Robert James**

¶ 41. The prosecutor also commented on the evidence of Bell's threats upon the life of Robert James. That evidence, as observed above, was

205

appropriate in the present factual context, and it is sufficient here to say that the comments and conclusion of the prosecutor were not inappropriate. They described Bell's behavior immediately following the crime and his fear of being caught and prosecuted.

## C. Lack of remorse

¶ 42. Referring to the testimony of Buster Graham, an officer who interviewed Bell following his arrest, the prosecutor said:

> [a]nd to me, the most illogical thing about this whole case, and I think it shows his attitude, I don't know any human being that's going to be placed in jail and told they're charged with capital murder that's going to sit up and laugh at the officer.[3] Laugh at him. We're talking about two mean people. Doss isn't even as bad as Bell.

Additionally, he said that "this person laughs when you talk to him about being charged with murder," and alluded to "the same day that he laughed at Bruce Partridge and Buster Graham."

¶ 43. Bell argues that this is impermissible commentary on his lack of remorse and presents authority which he says prohibits such references to remorse when the defendant does not testify, as in the present case. However, those authorities are misapplied by Bell. In *Reed v. State*, 197 So.2d 811 (Miss.1967), the district attorney asked the jury to look at the defendant as he sat mute in the courtroom exhibiting no emotion whatever. We held that such argument was an impermissible comment on his failure to testify. In *Knox v. State*, 502 So.2d 672 (Miss.1987), we again found that comment on the courtroom demeanor of the defendant who chose not to testify was improper. Bell, on the other hand, did testify and testified that he laughed at the suggestion in his interview with officer Graham that he killed Bert. It was perfectly proper for the prosecutor to comment on this interview and Bell's testimony.

## D. The prosecutor's personal opinion and facts not in evidence

¶ 44. Arguing that the prosecuting attorney unfairly presented his personal opinion and argued facts not in evidence, Bell points to the following from the State's summation.

206

I don't doubt that Frederick Bell knew the name of that road. I don't doubt that at all. I don't doubt that he didn't know that was Sparks' Stop-and-Go. I do doubt that he knew he was in Grenada County, because that wasn't important to him. He and Anthony Doss could just as easily have stopped in Yalobousha County, gone over to Carroll County. It didn't make any difference. Their objective was not where they were, but what they had to do. Anything they could do to get enough money to get them to Memphis, for whatever reason, that's what-that's the only thing they cared about.

He also points again to statements made in that argument that Doss and Bell were "mean people," and observations that Coffey was not seeking anything from the State, but rather was testifying to the truth. Whether Doss and Bell were mean people is something to be concluded from the facts proved, and is, within the limits of the argument here, a fair deduction to be drawn in final argument. Of course, Coffey was cross-examined by Bell's attorney on his veracity and any deal he had made. In response, he testified that he was telling the truth. The statements by the prosecutor were based on that testimony and were far from the personal vouching for witnesses which we have condemned.

¶ 45. Bell also complains of the argument by the State that certain details of James' testimony indicate that Bell and Doss told him of the shooting because the investigators had not shown James any pictures of the scene. A review of the record does not indicate any testimonial basis for this argument, and it was, therefore, improper. However, it does not, standing alone or read with the rest of the argument, constitute reversible error.

725 So.2d at 851-53.

The merits of these claims were held to be barred from consideration by the Mississippi Supreme Court. The fact that the court alternatively addressed the merits of the claim does not vitiate the imposition of the procedural bar. In *Harris v. Reed,* 489 U.S. 255, 263, 109 S.Ct. 1038, 1043, 103 L.Ed.2d 308 (1989), the Supreme Court held:

A state court remains free under the *Long* rule to rely on a state procedural bar and thereby to foreclose federal habeas review to the extent permitted by *Sykes*.[10]

207

_____

10. Moreover, a state court need not fear reaching the merits of a federal claim in an alternative holding. By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law. *See Fox Film Corp. v. Muller*, 296 U.S. 207, 210, 56 S.Ct. 183, 184, 80 L.Ed. 158 (1935). Thus, by applying this doctrine to habeas cases, *Sykes* curtails reconsideration of the federal issue on federal habeas as long as the state court explicitly invokes a state procedural bar rule as a separate basis for decision. In this way, a state court may reach a federal question without sacrificing its interests in finality, federalism, and comity.

489 U.S. at 264.

Therefore, this claim is barred unless petitioner can demonstrate cause and actual prejudice to overcome the imposition of the bar. *Wainwright v. Sykes, supra*.

Respondents recognize that attorney error has in certain circumstances been held to constitute cause to overstep procedural default. However, in order to argue ineffective assistance of counsel as cause to overstep the procedural bar the petitioner must have raised and exhausted an ineffective assistance of counsel claim as an independent claim in state court when he filed his motion for state post-conviction relief. In *Edwards v. Carpenter*, 529 U.S. 446, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000), the United States Supreme Court held:

Although we have not identified with precision exactly what constitutes "cause" to excuse a procedural default, we have acknowledged that in certain circumstances counsel's ineffectiveness in failing properly to preserve the claim for review in state court will suffice. *Carrier*, 477 U.S., at 488-489, 106 S.Ct. 2639. Not just any deficiency in counsel's performance will do, however; the assistance must have been so ineffective as to violate the Federal Constitution. *Ibid*. *In other words, ineffective assistance adequate to establish cause for the procedural default of some other constitutional claim is itself an independent constitutional claim. And we held in Carrier that the principles of comity and federalism that underlie our longstanding exhaustion*

208

*doctrine-then as now codified in the federal habeas statute, see 28 U.S.C. §§ 2254(b), (c)-require that constitutional claim, like others, to be first raised in state court. "[A] claim of ineffective assistance," we said, generally must "be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." Carrier, supra*, at 489, 106 S.Ct. 2639.

The question raised by the present case is whether Carrier's exhaustion requirement for claims of ineffective assistance asserted as cause is uniquely immune from the procedural-default rule that accompanies the exhaustion requirement in all other contexts-whether, in other words, it suffices that the ineffective-assistance claim was "presented" to the state courts, even though it was not presented in the manner that state law requires. That is not a hard question. An affirmative answer would render *Carrier's* exhaustion requirement illusory.3

_____

3. Last Term, in a per curiam summary reversal, we clearly expressed the view that a habeas petitioner must satisfy the "cause and prejudice" standard before his procedurally defaulted ineffective-assistance claim will excuse the default of another claim. *Stewart v. LaGrand*, 526 U.S. 115, 120, 119 S.Ct. 1018, 143 L.Ed.2d 196 (1999). Respondent contends that we are not bound by *LaGrand* because in that case the habeas petitioner had waived his ineffective-assistance claim in the District Court, thereby rendering our procedural default discussion dicta, and because, in any event, per curiam opinions decided without the benefit of full briefing or oral argument are of little precedential value. Whether our procedural default analysis in *LaGrand* is properly characterized as dictum or as alternative holding, and whatever the precedential value of a per curiam opinion, the ease with which we so recently resolved this identical question reflects the degree to which the proper resolution flows irresistibly from our precedents.

529 U.S. at 451-52. [Emphasis added.]

*See also Murray v. Carrier*, 477 U.S. 478, 488-89, 106 S.Ct. 2639, 2645-46, 91 L.Ed.2d 397

(1986). Petitioner did not raise a claim of ineffective assistance of counsel for failing to

interpose objections to the guilt phase arguments during his state post-conviction litigation

therefore any claim of ineffective assistance of counsel on this point cannot serve as cause

209

to overcome the procedural bar to this claim. In fact, he has raised no claim of ineffective assistance of counsel on the failure to object to the prosecutorial arguments at closing. Therefore, petitioner has presented nothing to overcome the imposition of the procedural bar.

Without waiving the bar to the consideration of the alternative holding on the merits of this claim by the Mississippi Supreme Court. The state court found all of the arguments, save one, were supported by the evidence introduced at trial is not an unreasonable determination of the facts as reflected in the record of this case. The single claim that they found unsupported by the record was held to constitute harmless error when considered in the context of the entire argument.

Further the decision of the Mississippi Supreme Court did not result in a decision that is contrary to or an unreasonable application of clearly established federal law as announced by the United States Supreme Court. *See Williams v. Taylor, supra.* The United States Supreme Court has set forth the standard for assessing claims of prosecutorial misconduct in *Darden v. Wainwright*, 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986) and *Donnelly v. DeChristoforo*, 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974). In *Donnelly*, the United States Supreme Court held:

> This is not a case in which the State has denied a defendant the benefit of a specific provision of the Bill of Rights, such as the right to counsel, *Argersinger v. Hamlin*, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972), or in which the prosecutor's remarks so prejudiced a specific right, such as the privilege against compulsory self-incrimination, as to amount to a denial of that right. *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965).[15] When specific guarantees of the Bill of Rights are involved, this Court has taken special care to assure that prosecutorial conduct in no way

210

impermissibly infringes them.  But here the claim is only that a prosecutor's remark about respondent's expectations at trial by itself so infected the trial with unfairness as to make the resulting conviction a denial of due process.  We do not believe that examination of the entire proceedings in this case supports that contention.

416 U.S. at 643.  [Footnote omitted.]

Later in *Darden, supra*, a case more to the point in the case before this Court, the Supreme

Court held:

The prosecutors then made their closing argument.  That argument deserves the condemnation it has received from every court to review it, although no court has held that the argument rendered the trial unfair.  Several comments attempted to place some of the blame for the crime on the Division of Corrections, because Darden was on weekend furlough from a prison sentence when the crime occurred.[9]  Some comments implied that the death penalty would be the only guarantee against a future similar act.[10]  Others incorporated the defense's use of the word "animal."[11]  Prosecutor McDaniel made several offensive comments reflecting an emotional reaction to the case.[12]  These comments undoubtedly were improper.  But as both the District Court and the original panel of the Court of Appeals (whose opinion on this issue still stands) recognized, it "is not enough that the prosecutors' remarks were undesirable or even universally condemned." *Darden v. Wainwright*, 699 F.2d, at 1036.  *The relevant question is whether the prosecutors' comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  Donnelly v. DeChristoforo*, 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974).  *Moreover, the appropriate standard of review for such a claim on writ of habeas corpus is "the narrow one of due process, and not the broad exercise of supervisory power."  Id*., at 642, 94 S.Ct., at 1871.

Under this standard of review, we agree with the reasoning of every court to consider these comments that they did not deprive petitioner of a fair trial.[13]  The prosecutors' argument did not manipulate or misstate the evidence, nor did it implicate other specific rights of the accused such as the right to counsel or the right to remain silent.  *See Darden v. Wainwright*, 513 F.Supp., at 958.  Much of the objectionable content was invited by or was responsive to the opening summation of the defense.  As we explained in *United States*

*v. Young*, 470 U.S. 1, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985), the idea of "invited response" is used not to excuse improper comments, but to determine their effect on the trial as a whole. *Id.*, at 13, 105 S.Ct., at 1045. The trial court instructed the jurors several times that their decision was to be made on the basis of the evidence alone, and that the arguments of counsel were not evidence. The weight of the evidence against petitioner was heavy; the "overwhelming eyewitness and circumstantial evidence to support a finding of guilt on all charges," 329 So.2d, at 291, reduced the likelihood that the jury's decision was influenced by argument. Finally, defense counsel made the tactical decision not to present any witness other than petitioner. This decision not only permitted them to give their summation prior to the prosecution's closing argument, but also gave them the opportunity to make a final rebuttal argument. Defense counsel were able to use the opportunity for rebuttal very effectively, turning much of the prosecutors' closing argument against them by placing many of the prosecutors' comments and actions in a light that was more likely to engender strong disapproval than result in inflamed passions against petitioner. S 514[14] For these reasons, we agree with the District Court below that "Darden's trial was not perfect – few are – but neither was it fundamentally unfair." 513 F.Supp., at 958.

_____

9. "As far as I am concerned, there should be another Defendant in this courtroom, one more, and that is the division of corrections, the prisons. . . . Can't we expect him to stay in a prison when they go there? Can we expect them to stay locked up once they go there? Do we know that they're going to be out on the public with guns, drinking?" App. 15-16. "Yes, there is another Defendant, but I regret that I know of no charges to place upon him, except the public condemnation of them, condemn them." *Id.*, at 16.

10. "I will ask you to advise the Court to give him death. That's the only way that I know that he is not going to get out on the public. It's the only way I know. It's the only way I can be sure of it. It's the only way that anybody can be sure of it now, because the people that turned him loose. – " *Id.*, 17-18.

11. "As far as I am concerned, and as Mr. Maloney said as he identified this man this person, as an animal, this animal was on the public for one reason." *Id.*, at 15.

12. "He shouldn't be out of his cell unless he has a leash on him and a prison guard at the other end of that leash." *Id.*, at 16. I wish [Mr. Turman] had had a shotgun in his hand when he walked in the back door and blown his

[Darden's] face off. I wish that I could see him sitting here with no face, blown away by a shotgun." *Id*., at 20. "I wish someone had walked in the back door and blown his head off at that point." *Ibid*. "He fired in the boy's back, number five, saving one. Didn't get a chance to use it. I wish he had used it on himself." *Id*., at 28. "I wish he had been killed in the accident, but he wasn't. Again, we are unlucky that time." *Id*., at 29. "[D]on't forget what he has done according to those witnesses, to make every attempt to change his appearance from September the 8th, 1973. The hair, the goatee, even the moustache and the weight. The only thing he hasn't done that I know of is cut his throat." *Id*., at 31. After this, the last in a series of such comments, defense counsel objected for the first time.

477 U.S. at 179-83.

"To constitute a due process violation, the prosecutorial misconduct must be ('of sufficient significance to result in the denial of the defendant's right to a fair trial')." *Greer v. Miller*, 483 U.S. 756, 765, 107 S.Ct. 3102, 97 L.Ed.2d 618 (1987). The claims of prosecutorial misconduct in the case at bar pale in light of the arguments made in *Darden*. Petitioner may argue that the Mississippi Supreme Court did not rely on *Darden*, however, that is to no avail. In *Early v. Packer*, 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002), the United States Supreme Court, in reversing the Ninth Circuit, held:

First, the Ninth Circuit observed that the state court "failed to cite . . . any federal law, much less the controlling Supreme Court precedents." 291 F.3d, at 578. If this meant to suggest that such citation was required, it was in error. A state-court decision is "contrary to" our clearly established precedents if it "applies a rule that contradicts the governing law set forth in our cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent." *Williams v. Taylor*, 529 U.S. 362, 405-406, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Avoiding these pitfalls does not require citation of our cases–indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them. The Ninth Circuit's disapproval of the Court of Appeal's failure to cite this

213

Court's cases is especially puzzling since the state court cited instead decisions from the California Supreme Court that impose even greater restrictions for the avoidance of potentially coercive jury instructions. *Compare People v. Gainer*, *supra*, at 852, 139 Cal.Rptr. 861, 566 P.2d, at 1006 (1977) with *Allen v. United States*, *supra*, at 501, 17 S.Ct. 154.

537 U.S. at 8.

Thus, there is no requirement that the Mississippi Supreme Court cite precedent of the Supreme Court for its decision to be reasonable. The standard of review is the standard announced and contained in *Greer*, *Darden* and *Donnelly*.

In a pre-AEDPA case the Fifth Circuit speaking of prosecutorial misconduct, held in *Derden v. McNeel*, 978 F.2d 1453 (5th Cir. 1992):

> The standard for granting habeas relief because of prosecutorial misconduct is "the narrow one of due process, and not the broad exercise of supervisory power." *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S.Ct. 2464, 2471, 91 L.Ed.2d 144 (1986). As we have noted, federal courts may not, in a habeas corpus proceeding, impose the same standards upon state prosecutors that they apply to federal prosecutors in cases on direct appeal." *Kirkpatrick*, 777 F.2d at 281. Derden pointed out two violations of Mississippi law by the prosecutor, both of which were corrected by the trial court. The prosecutor admittedly overstepped his bounds under Mississippi law when in voir dire he tried to commit the jury to evaluate the co-conspirators' testimony like any other. This state law error, the State Supreme Court held, would have been reversible if the trial court had not properly instructed the jury at the end of trial to beware of such testimony. *Derden*, 522 So.2d at 754-55. The prosecutor also erred under Mississippi law in eliciting from Sherrod that Derden was his accomplice in other robberies. But this misstep was immediately corrected by the trial court's instruction to the jury to disregard that evidence. Derden did not move for a mistrial. If Derden had been tried in federal court, a violation of Federal Rule of Evidence 404(b) might have occurred – neither a constitutional error nor reversible in itself, particularly because of the trial court's prompt curative instruction. *See e.g.*, *Woodruff v. Lane*, 818 F.2d 1369, 1373 (7th Cir.1987); *Sargent v. Armontrout*, 841 F.2d 220, 224 (8th Cir.1988). Under *Estelle, supra*, these violations of state law

were not of a constitutional dimension, and it defies logic to suggest that the prosecutor who committed them behaved in an unconstitutionally prejudicial way.

978 F.2d at 1460.

*See Drew v. Collins* 964 F.2d 411, 417-18 (5th Cir.1992); *Foy v. Donnelly*, 959 F.2d 1307, 1316-1317 (5th Cir. 1992).

The arguments complained of here do not raise to the level of a due process violation because they did not infect the trial with unfairness. Petitioner is entitled to no habeas relief on this claim.

**GROUND XX:     ERRONEOUSLY INSTRUCTING JURY AND ERRONEOUSLY REFUSING PETITIONER'S INSTRUCTION.**

Petitioner next contends that the trial court erred in denying his mercy instruction and granting an anti-sympathy instruction at the close of the sentence phase of his capital trial. This claim was clearly held to be barred from consideration by the Mississippi Supreme Court. The state court also addressed the merits of the claim alternatively.

**XXV. THE ANTI-SYMPATHY INSTRUCTION AND REFUSAL OF BELL'S MERCY INSTRUCTION**

¶ 104. The trial judge instructed the jury in its determination of life or death "[N]ot to be swayed by mere sentiment, conjecture, sympathy, passion, prejudice, public opinion or public feeling." Bell argues that this instruction precluded the jury from giving a reasoned moral response to his mitigating evidence in deciding whether to impose the death penalty in violation of the Eighth and Fourteenth Amendments and their Mississippi counterparts, and that the trial court further erred by not giving a mercy instruction. *The State argues correctly that these matters are procedurally barred because Bell did not object to the Court's instruction to which he now takes exception. Willie v. State*, 585 So.2d 660, 677 (Miss.1991). Alternatively, the State asserts,

215

again correctly, that the issue of an anti-sympathy instruction was decided adversely to the accused in *Willie*. The instruction in *Willie* was essentially identical to that in the present case. In *Willie*, the Court found the argument unmeritorious in light of the holdings of the United States Supreme Court supporting the use of anti-sympathy language. *Id*. *See California v. Brown*, 479 U.S. 538, 107 S.Ct. 837, 93 L.Ed.2d 934 (1987).

¶ 105. In support of his entitlement to a mercy instruction, he quotes the following passage from *Wiley v. State*, 484 So.2d 339, 349 (Miss.1986), in which the Court stated that giving a mercy instruction "[W]ould further refine and direct the jury's discretion in sentencing between those cases in which the death penalty is given and those in which it is not." However, Bell apparently overlooks the Court's statement in the same sentence from which he quotes that "this Court has held that no reversible error is committed in refusing a mercy instruction. . . ." *Id*. Furthermore, the case law is clear that there is no entitlement to a mercy instruction. *Foster*, 639 So.2d at 1300-01; *Jenkins*, 607 So.2d at 1181; *Ladner*, 584 So.2d at 761; *Wiley*, 484 So.2d at 349.

725 So.2d at 865. [Emphasis added.]

This claim was held to be barred on the basis of an independent and adequate state law procedural ground. The fact that the Mississippi Supreme Court alternatively addressed the merits of the claim does not vitiate the imposition of the procedural bar. *Harris v. Reed, supra.*

Further, petitioner does not attempt to demonstrate cause and prejudice to overcome the imposition of this bar. As pointed out above in order to use a claim of ineffective assistance of counsel to demonstrate cause to overcome a procedural bar a habeas petitioner must present an independent claim on ineffective assistance of counsel on this point to the state courts. *See Edwards v. Carpenter*, *supra*. Petitioner presented to such claim to the state courts in this case. There is no other reason that petitioner can demonstrate that could

216

overcome the imposition of the bar to consideration of this claim by this Court. This claim

is barred from consideration by this Court on habeas review. *See Coleman v. Thompson,*

*supra; Wainwright v. Sykes, supra.*

Without waiving the bar to the consideration of the merits of this claim the

respondents would briefly address the merits of this claim. The clear precedent of the United

States Supreme Court is that a capital defendant is not entitled to a mercy instruction nor is

the anti-sympathy instruction given in this case unconstitutional. In fact, the exact question

regarding the two instruction that petitioner presents in this case were presented to the

United States Supreme Court in *Saffle v. Parks*, 494 U.S. 484, 110 S.Ct. 1257, 108 L.Ed.2d

415 (1990). In *Saffle*, the United States Supreme Court held:

> We also reject Parks' contention that the antisympathy instruction runs
> afoul of *Lockett* and *Eddings* because jurors who react sympathetically to
> mitigating evidence may interpret the instruction as barring them from
> considering that evidence altogether. This argument misapprehends the
> distinction between allowing the jury to consider mitigating evidence and
> guiding their consideration. It is no doubt constitutionally permissible, if not
> constitutionally required, *see Gregg v. Georgia*, 428 U.S. 153, 189-195, 96
> S.Ct. 2909, 2932-2935, 49 L.Ed.2d 859 (1976) (opinion of Stewart, Powell,
> and STEVENS, JJ.), for the State to insist that "the individualized assessment
> of the appropriateness of the death penalty [be] a moral inquiry into the
> culpability of the defendant, and not an emotional response to the mitigating
> evidence." *California v. Brown*, 479 U.S., at 545, 107 S.Ct., at 841
> (O'CONNOR, J., concurring). *Whether a juror feels sympathy for a capital
> defendant is more likely to depend on that juror's own emotions than on the
> actual evidence regarding the crime and the defendant. It would be very
> difficult to reconcile a rule allowing the fate of a defendant to turn on the
> vagaries of particular jurors' emotional sensitivities with our longstanding
> recognition that, above all, capital sentencing must be reliable, accurate, and
> nonarbitrary. See Gregg, supra*, 428 U.S., at 189-195, 96 S.Ct., at 2932-
> 2935; *Proffitt v. Florida*, 428 U.S. 242, 252-253, 96 S.Ct. 2960, 2966-2967,

49 L.Ed.2d 913 (1976) (opinion of Stewart, Powell, and STEVENS, JJ.); *Jurek v. Texas, supra*, 428 U.S., at 271-272, 96 S.Ct., at 2956 (same); *Woodson v. North Carolina*, 428 U.S. 280, 303-305, 96 S.Ct. 2978, 2990-2991, 49 L.Ed.2d 944 (1976) (plurality opinion); *Roberts v. Louisiana*, 428 U.S. 325, 333- 335, 96 S.Ct. 3001, 3006-3007, 49 L.Ed.2d 974 (1976) (plurality opinion). At the very least, nothing in *Lockett* and *Eddings* prevents the State from attempting to ensure reliability and nonarbitrariness by requiring that the jury consider and give effect to the defendant's mitigating evidence in the form of a "reasoned moral response," *Brown*, 479 U.S., at 545, 107 S.Ct., at 841 (emphasis in original), rather than an emotional one. *The State must not cut off full and fair consideration of mitigating evidence; but it need not grant the jury the choice to make the sentencing decision according to its own whims or caprice. See id.*, at 541-543, 107 S.Ct., at 839-840.

Given the above discussion, it is obvious that our decision in *California v. Brown* is of no assistance to Parks. In *Brown*, we held that an instruction telling the jury not to be "swayed by 'mere sentiment, conjecture, sympathy, passion, prejudice, public opinion or public feeling'" during the sentencing phase did not violate the Eighth Amendment. *See id.*, at 542, 107 S.Ct., at 840. We reasoned that a reasonable juror would interpret the instruction to ignore mere sympathy "as an admonition to ignore emotional responses that are not rooted in the aggravating and mitigating evidence," and that it was not unconstitutional for a State to "prohibi[t] juries from basing their sentencing decisions on factors not presented at the trial." *Id.*, at 542-543, 107 S.Ct., at 840. Although we approved of the use of the antisympathy instruction given in *Brown*, Parks attempts to transform our reasoning in that case into a rule that the instruction given in his case violates the Eighth Amendment.

Parks' argument relies upon a negative inference: because we concluded in *Brown* that it was permissible under the Constitution to prevent the jury from considering emotions not based upon the evidence, it follows that the Constitution requires that the jury be allowed to consider and give effect to emotions that are based upon mitigating evidence. For the reasons discussed above, *see supra*, at 1260-1262, we doubt that this inference follows from *Brown* or is consistent with our precedents. The same doubts are shared by the clear majority of federal and state courts that have passed upon the constitutionality of antisympathy instructions after *Brown*. *See supra*, at 1262.

494 U.S. at 492-94. [Emphasis added.]

218

The Mississippi Supreme Court has long held that a capital defendant is not entitled to a mercy instruction. In fact, in line with the decision in *Saffle, supra*, the Mississippi Supreme Court has held that such would result in a decision based on "whims or caprice".[33] Further, the Mississippi Supreme Court has held that the words "pity" and "sympathy" are synonyms to "mercy." *Howell v. State*, 860 So.2d 704, 760, ¶ 199 (Miss. 2003); *Turner v. State*, 732 So.2d 937, 954, ¶ 70 (Miss. 1999); *Jackson v. State*, 684 So.2d 1213, 1239 (Miss. 1996).

This claim is barred from consideration by this Court by the imposition of an adequate and independent state law procedural ground. Further, because petitioner's claim is totally without merit he cannot demonstrate cause and actual prejudice to overcome the imposition of the procedural bar. In addition, this Court would have to create a new rule of constitutional law and apply it to a case final on direct review to rule as petitioner wishes. This cannot be done under *Teague v. Lane, supra*, and *Saffle v. Parks, supra*.

Petitioner is entitled to no habeas relief on this ground.

---

[33]*Howell v. State*, 860 So.2d 704, 758-59, ¶¶ 196-99 (Miss. 2003); *King v. State*, 784 So.2d 884, 890, ¶ 23 (Miss. 2001); *Edwards v. State*, 737 So.2d 275, 317, ¶¶ 148-49 (Miss. 1999); *Manning v. State*, 735 So.2d 323, 351-52, ¶ 71 (Miss. 1999); *Watts v. State*, 733 So.2d 214, 241, ¶ 82 (Miss. 1999); *Turner v. State*, 732 So.2d 937, 954, ¶¶ 69-70 (Miss. 1999); *Jordan v. State*, 728 So.2d 1088, 1099 ¶¶ 49-50 (Miss. 1998); *Manning v. State*, 726 So.2d 1152, 1197-98, ¶¶ 198-200 (Miss. 1998); *Underwood v. State*, 708 So.2d 18, 37, ¶ 58-59 (Miss. 1998); *Holland v. State*, 705 So.2d 307, 354 (Miss. 1997); *Doss v. State*, 709 So.2d 369, 394-95, ¶¶ 105-09 (Miss. 1996); *Jackson v. State*, 684 So.2d 1213, 1239 (Miss. 1996); *Carr v. State*, 655 So.2d 824, 849-50 (Miss.1995), *cert. denied*, 515 U.S. 1076, 116 S. Ct. 782, 133 L.Ed.2d 733 (1996); *Mack v. State*, 650 So.2d 1289, 1330-31 (Miss. 1994); *Foster v. State*, 639 So.2d 1263, 1299-1301 (Miss. 1994), *cert. denied*, 514 U.S. 1019, 115 S.Ct. 1365, 131 L.Ed.221, *reh. denied*, 514 U.S. 1123, 115 S.Ct. 1992, 131 L.Ed.2d 878 (1995); *Jenkins v. State*, 607 So.2d 1171, 1181 (Miss. 1992); *Hansen v. State*, 592 So.2d 114, 150 (Miss. 1991); *Ladner v. State*, 584 So.2d 743, 759-60, 61-62 (Miss. 1991); *Clemons v. State*, 535 So.2d 1354, 1360-61 (Miss.1988); *Nixon v. State*, 533 So.2d 1078, 1100 (Miss.1987); *Irving v. State*, 441 So.2d 846, 850-51 (Miss. 1983); *Bullock v. State*, 391 So.2d 601, 610 (Miss. 1980).

## GROUND XXI:   FAILURE TO INFORM THE JURY OF EFFECT OF PETITIONER'S TENNESSEE CONVICTION.

Petitioner next contends that the trial court's failure to *sua sponte* "inform" the jury

of the effect of his conviction for murder in Tennessee on his sentence, if sentenced to life

in prison constitutes constitutional error.

### XXVI. FAILURE TO INSTRUCT JURY ON EFFECT OF TENNESSEE SENTENCE ON A LIFE SENTENCE IN THIS CASE

¶ 106. The jury was given the options of sentencing Bell to death or to life imprisonment.[5]  Bell now argues that the trial court should have informed the jury that if Bell was sentenced to life imprisonment, he would only begin to serve that sentence after completion of his Tennessee sentence, and that this instruction is particularly important in view of what Bell perceives to be the State's argument of future dangerousness.  Of course, as we have pointed out above, the State did not in fact argue, as an additional aggravating circumstance, that propensity, but rather argued his violent nature, in a most limited way, as a response to evidence offered on behalf of Bell through his mother.

¶ 107. We note that Bell does not argue that he was prohibited from placing evidence on this matter before the jury, that he was limited in his summation, or that he was denied an instruction in this area.  Nor does he suggest that the trial judge erroneously overruled any objection to the sentencing instructions made on this ground.  His argument is that the court committed plain error in failing to so instruct the jury, *sua sponte*.  Of course, under these circumstances and the cases cited above, unless there is error and it is of such nature and degree as to constitute plain error, this argument is procedurally barred.

¶ 108. Because Bell sought no such instruction, and the State did not attempt to argue on the point, we are left to wonder what Bell's argument would have been if in fact the jury had been instructed that in deciding between life and death it was to consider the length of not only a Mississippi life sentence but also the length of the Tennessee sentence and the time that Bell would actually serve under each, and if the State had then argued the effect of the possibility of parole.

220

¶ 109. *Williams v. State*, 445 So.2d 798 (Miss.1984), is instructive. There, the defendant, having been convicted of capital murder while engaged in an armed robbery, was sentenced to death. During the trial, the prosecutor elicited testimony on cross-examination of the defendant's expert, which tended to show that one sentenced to life imprisonment could expect to serve a term of not more than thirty years. Reversing, we said that "[a] jury should have no concern with the quantum of punishment because it subverts a proper determination of the sentencing issue," and expressly condemned placing the issue of parole before the jury. *Id*. at 813.

¶ 110. Bell relies on *Turner v. State*, 573 So.2d 657 (Miss.1990), for this proposition. However, Turner was indicted and tried as an habitual offender, and, if convicted as such, would have had no possibility of parole. There, the status hearing on the habitual offender status was not conducted prior to the sentencing hearing, and Turner, unlike Bell, presented an instruction advising the jury that if sentenced to life imprisonment, he would never be eligible for parole. Our holding in Turner was that in such cases, the status hearing should be conducted prior to sentencing. We then said:

> At the sentencing phase, the jury *shall* be entitled to know by instruction whether the defendant is eligible for parole. . . . Providing juries with such *non*-speculative information would be compliant with the dictates of logic and constitutional principles of due process and fundamental fairness. In other words, the procedure would meet the "essential" requirement that juries have before them "*all* possible relevant information about the individual defendant whose fate it must determine."

*Id*. at 675 (citations omitted; emphasis in original).

¶ 111. In *Blue v. State, supra*, the defendant was tried for capital murder, but not as an habitual offender. There, the jury sent out a note asking for a definition of life imprisonment. The State said that the jury should be told that it meant ten years, and Blue objected to any response beyond the original instructions. The judge responded saying that " 'the law will not allow me to define 'life imprisonment' for you.'" *Blue*, 674 So.2d at 1194. Thereafter, on appeal, Blue argued that the jury did not know the meaning of the term, and that he should have been allowed to tell the jury that it meant that he would serve thirty years in prison and that his trial lawyer's failure to request such an instruction was ineffective assistance. Finding that Blue was

not entitled to such an instruction, we said:

> We hold that the case sub judice is controlled by *[Walter] Williams v. State*, 445 So.2d 798 (Miss.1984), in which the defendant convicted of capital murder was not a habitual offender. In *Williams*, this Court reasoned that as parole is not automatic, "[a]llowing argument or testimony regarding the possibility of the defendant some day being paroled is in effect inviting the jury to speculate how ten years in the future [or thirty years as the case may be in the present case] the parole board may exercise its legislatively granted discretionary authority." 445 So.2d at 813. *See also [Jessie Derrell] Williams v. State*, 544 So.2d 782, 798 (Miss.1987). Because such discussion of parole is merely speculative, it would "introduce into the sentencing proceedings an 'arbitrary factor' proscribed by § 99-19-105(3)(a)." *Williams*, 445 So.2d at 813. *See also Williams*, 544 So.2d at 799. In fact, in *Mackbee*, 575 So.2d at 40, this Court clearly held that the one exception to the rule forbidding jury consideration of parole issues is when a defendant is sentenced as a habitual offender under § 99-19-83. This Court reasoned that this is so because such defendants are not eligible for parole, and thus, their fate under a life imprisonment sentence is non-speculative.

*Blue* at 1196.

¶ 112. In *Simmons v. South Carolina, supra*, decided after Bell's trial, the United States Supreme Court held that in a case in which propensity for future dangerous conduct is argued as a factor, and a sentence to life imprisonment without the possibility of parole is an option for the jury, the defendant is entitled to have the jury instructed that the life sentence will in fact preclude that possibility. There, the defendant requested an instruction, but it was refused and the Court instead instructed the jury that it was not to consider parole in sentencing. Recently, in *U.S. v. Chandler*, 950 F.Supp. 1545 (N.D.Ala.1996), the district court had the opportunity to consider the application of *Simmons* in a federal setting. Chandler argued that under *Simmons*, he was entitled to have the jury instructed on the fact that if not sentenced to death, he would serve his life sentence without the possibility of parole. The district court found *Simmons* inapplicable, distinguishing that case, in which the defendant's future dangerousness was said to have been argued as a sentencing criterion, from Chandler's in which, like Bell's, the only references to his dangerous propensities were made in argument

responding to the defendant's evidence and argument, saying: "Because the government did not place Chandler's future dangerousness into issue at the sentencing hearing, *Simmons* does not apply here." *Id.* at 1578.

¶ 113. *We find this point procedurally barred and substantively without merit.*

_____

5. MISS. CODE ANN. § 99-19-101(Supp.1993), at the time of Bell's trial provided only for a sentence of life imprisonment or death; it was only later, in 1994, that it was amended to add the third possibility of life without the possibility of parole. Furthermore, Bell was not tried under the habitual offender statutes.

725 So.2d at 865-67.

This claim was held to be barred on the basis of an independent and adequate state law procedural ground. *See Coleman v. Thompson, supra*; *Wainwright v. Sykes, supra*. The fact that the Mississippi Supreme Court alternatively addressed the merits of the claim does not vitiate the imposition of the procedural bar. *Harris v. Reed, supra.*

While petitioner did file a claim of ineffective assistance of counsel on the failure to offer an instruction on the effect of the Tennessee conviction the Mississippi Supreme Court found that claim without merit. *See* 879 So.2d at 445, ¶¶ 83-85. As explained above the holding of the Mississippi Supreme Court on the ineffective assistance claim is neither contrary to or an unreasonable application of *Strickland, supra*. Therefore it cannot constitute cause to overcome the procedural bar to this claim.

Without waiving the bar to the consideration of this claim the respondents would point out that petitioner has several hurdles to overcome even if the procedural bar did not apply. The first problem with petitioner's argument is, as the Mississippi Supreme Court pointed,

223

but petitioner still refuses to recognize, that if sentenced to life in prison the life sentence would not have been life without parole under the law that was in force at the time he was tried and convicted. Petitioner's crime was committed on May 6, 1991 and his trial began on January 26, 1993. MISS. CODE ANN. § 99-19-101(1), was not amended to include life without parole until the 1994 legislative session, and the law did not take effect until July 1, 1994. Petitioner could not have been sentenced to life without parole under the Mississippi law in force at the time of his trial. In fact, the Mississippi Supreme Court has held that any attempt to circumvent the life *with* parole provisions for those committing their crimes prior to July 1, 1994, by a contract or plea agreement not to seek parole is void and against public policy if the defendant is sentenced to life without parole. *See Patterson v. State*, 660 So.2d 966 (Miss. 1995); *Lanier v. State*, 635 So.2d 813 (Miss. 1994). In addition, as pointed out by the Mississippi Supreme Court, petitioner was not charged as an habitual offender which would have resulted in a life without parole sentence had he been found an habitual offender. Thus, there is no scenario under which petitioner could have been sentenced to life without parole under Mississippi law.

Because petitioner could not have been sentenced to life without parole the decision of the United States Supreme Court which controls this case is found in *Ramdass v. Angelone*, 530 U.S. 156, 120 S.Ct. 2113, 147 L.Ed.2d 125 (2000). There the United States Supreme Court held:

> *Simmons* created a workable rule. *The parole-ineligibility instruction is required only when, assuming the jury fixes the sentence at life, the*

224

*defendant is ineligible for parole under state law.* 512 U.S., at 156, 114 S.Ct. 2187 (plurality opinion) (limiting holding to situations where "state law prohibits the defendant's release on parole"); *id.*, at 165, n. 5, 114 S.Ct. 2187 (relying on fact that Simmons was "ineligible for parole under state law"); *id.*, at 176, 114 S.Ct. 2187 (O'CONNOR, J., concurring) (citing state statutes to demonstrate that for Simmons "the only available alternative sentence to death . . . was life imprisonment without [the] possibility of parole"). The instruction was required in Simmons because it was agreed that "an instruction informing the jury that petitioner is ineligible for parole is legally accurate." *Id.*, at 166, 114 S.Ct. 2187.

530 U.S. at 166-67. [Emphasis added.]

The Court further held in *Ramdass*:

*Simmons applies only to instances where, as a legal matter, there is no possibility of parole if the jury decides the appropriate sentence is life in prison.* Petitioner's proposed rule would require courts to evaluate the probability of future events in cases where a three-strikes law is the issue. Among other matters, a court will have to consider whether a trial court in an unrelated proceeding will grant postverdict relief, whether a conviction will be reversed on appeal, or whether the defendant will be prosecuted for fully investigated yet uncharged crimes. If the inquiry is to include whether a defendant will, at some point, be released from prison, even the age or health of a prisoner facing a long period of incarceration would seem relevant. The possibilities are many, the certainties few. If the *Simmons* rule is extended beyond when a defendant is, as a matter of state law, parole ineligible at the time of his trial, the State might well conclude that the jury would be distracted from the other vital issues in the case. The States are entitled to some latitude in this field, for the admissibility of evidence at capital sentencing was, and remains, an issue left to the States, subject of course to federal requirements, especially, as relevant here, those related to the admission of mitigating evidence. *Id.*, at 168, 114 S.Ct. 2187; *California v. Ramos*, 463 U.S. 992, 103 S.Ct. 3446, 77 L.Ed.2d 1171 (1983).

By eliminating *Simmons'* well-understood rule, petitioner's approach would give rise to litigation on a peripheral point. Parole eligibility may be unrelated to the circumstances of the crime the jury is considering or the character of the defendant, except in an indirect way. Evidence of potential parole ineligibility is of uncertain materiality, as it can be overcome if a jury

225

concludes that even if the defendant might not be paroled, he may escape to murder again, *see Garner v. Jones*, 529 U.S. 244, 120 S.Ct. 1362, 146 L.Ed.2d 236 (2000); he may be pardoned; he may benefit from a change in parole laws; some other change in the law might operate to invalidate a conviction once thought beyond review, *see Bousley v. United States*, 523 U.S. 614, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998); or he may be no less a risk to society in prison, *see United States v. Battle*, 173 F.3d 1343 (C.A.11 1999), *cert. denied*, 529 U.S. 1022, 120 S.Ct. 1428, 146 L.Ed.2d 318 (2000). The Virginia Supreme Court had good reason not to extend *Simmons* beyond the circumstances of that case, which included conclusive proof of parole ineligibility under state law at the time of sentencing.

530 U.S. at 169-70.

*See Kelly v. South Carolina*, 534 U.S. 246, 248, 122 S.Ct. 726, 151 L.Ed.2d 670 (2002);

*Shafer v. South Carolina*, 532 U.S. 36, 39, 121 S.Ct. 1263, 149 L.Ed.2d 178 (2001).

The decision of the Mississippi Supreme Court on this question did not result in a decision that contrary to or an unreasonable application of *Radmass v. Angelone, supra*, and *Simmons v. South Carolina, supra. See Williams v. Taylor, supra.*

Petitioner is entitled to no relief on this claim.

## GROUND XXII: THE TRIAL ERRONEOUSLY INSTRUCTED THE JURY AT THE SENTENCE PHASE.

Petitioner next presents a hydra headed claim contending that Sentencing Instruction S-1 was erroneous. All of these claims are barred from consideration by this Court by the imposition of a adequate and independent state law procedural bar by the Mississippi Supreme Court because petitioner failed to object on any of the grounds presented to the Mississippi Supreme Court at trial. These claims are likewise barred from consideration by this Court on habeas review. *See Coleman v. Thompson, supra, Wainwright v. Sykes, supra.*

226

When these claims relating to Sentencing Instruction S-1 were presented to the Mississippi

Supreme Court the state court prefaced its alternative discussion of the merits of the claims

with the following holding:

### XVII. SENTENCING INSTRUCTION S-1

¶ 64. At trial, Bell objected to sentencing instruction S-1, which listed those aggravating circumstances the jury could consider, on the grounds that the Tennessee incident occurred subsequent, not prior, to the murder of Bert, arguing that such an offense, in order to be an aggravating circumstance, must occur prior not only to the trial but also to the commission of the charged crime. *He now abandons that objection and argues eight different flaws in this instruction, none of which were asserted at trial. For that reason, all of those claims of defect are waived and procedurally barred. Carr*, 655 So.2d at 856 (applying the procedural bar to claims of error in sentencing instructions on aggravating circumstances); *Conner*, 632 So.2d at 1255 (holding that an objection on one or more grounds waives objections on other grounds not presented to the trial court). Nevertheless, as to these newly-raised objections we observe the following.

725 So.2d at 856. [Emphasis added.]

Therefore, the Mississippi Supreme Court clearly held the claims petitioner presents

regarding Sentencing Instruction S-1 to be barred form consideration for the failure to state

an objection to S-1 on the grounds presented on post-conviction review and now before this

Court.

The respondents note that the Mississippi Supreme alternatively addressed the merits

of these sub-claims. However, the fact that the state court, after clearly imposing a

procedural bar to the consideration of the claims, also addressed the merits of the claims does

not vitiate the imposition of the procedural bar. *See Harris v. Reed, supra.*

227

Without waiving the bars to the consideration of these claims the respondents will briefly address the merits of the claims to show that petitioner cannot demonstrate cause and actual prejudice to overcome the imposition of the bars.

1.      **Avoiding Arrest Aggravator**

First, petitioner contends that it was error for the trial court to allow the consideration of the avoiding arrest aggravator because there was no evidence to support the aggravator. The alternative decision on the merits of this claim by the Mississippi Supreme Court reads:

> **C. Allowing the jury to consider the aggravating circumstance of "avoiding or preventing a lawful arrest" where the evidence did not support giving that aggravator.**
>
> ¶ 71. This assertion merits no comment beyond an observation that Bell's own statements and actions are sufficient to warrant an inference by the jury that Bert was shot because he wanted to leave no witnesses. Bell's choice of *Leatherwood v. State*, 435 So.2d 645 (Miss.1983), in support of his position is a poor one. There we said that each case involving this type of instruction must be decided on its own peculiar facts, holding that:
>
> > "*[i]f there is evidence from which it may be reasonably inferred that a substantial reason for the killing was to conceal the identity of the killer or killers or to 'cover their tracks' so as to avoid apprehension and eventual arrest by authorities, then it is proper for the court to allow the jury to consider this aggravating circumstance.*"
>
> *Id.* at 651. This Court has consistently followed this holding. *Chase*, 645 So.2d at 857-58; *Hansen*, 592 So.2d at 152-153.
>
> 725 So.2d at 857-58.

Petitioner's argument here centers not on the lack of evidence, but on the whether the aggravator sufficiently narrows the class of death eligible defendants.

228

Turning first to the lack of evidence claim, the respondents would assert that the record demonstrates sufficient evidence for a reasonable fact finder to find this aggravating circumstance under *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In *Lewis v. Jefffers*, 497 U.S. 764, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990), the United States Supreme Court held:

> Rather, in determining whether a state court's application of its constitutionally adequate aggravating circumstance was so erroneous as to raise an independent due process or Eighth Amendment violation, we think the more appropriate standard of review is the "rational factfinder" standard established in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). We held in *Jackson* that where a federal habeas corpus claimant alleges that his state conviction is unsupported by the evidence, federal courts must determine whether the conviction was obtained in violation of *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), by asking "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 443 U.S., at 319, 99 S.Ct., at 2789 (citation omitted); *see also id.*, at 324, 99 S.Ct., at 2791 ("We hold that in a challenge to a state criminal conviction brought under 28 U.S.C. § 2254-if the settled procedural prerequisites for such a claim have otherwise been satisfied-the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt") (footnote omitted). The Court reasoned:

> > "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review all of the evidence is to be considered in the light most favorable to the prosecution." 443 U.S., at 319, 99 S.Ct., at 2789 (footnote omitted).

These considerations apply with equal force to federal habeas review of a state

229

court's finding of aggravating circumstances. Although aggravating circumstances are not "elements" of any offense, *see Walton, Id*., 497 U.S., at 648-649, 110 S.Ct., at 3054-3055, the standard of federal review for determining whether a state court has violated the Fourteenth Amendment's guarantee against wholly arbitrary deprivations of liberty is equally applicable in safeguarding the Eighth Amendment's bedrock guarantee against the arbitrary or capricious imposition of the death penalty. Like findings of fact, state court findings of aggravating circumstances often require a sentencer to "resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson, supra*, 443 U.S., at 319, 99 S.Ct., at 2789. *See* ARIZ.REV.STAT.ANN. § 13-703(F) (1989) (listing aggravating circumstances); cf. 28 U.S.C. § 2254(d) (federal courts in habeas corpus proceedings must generally accord a presumption of correctness to a state court's factual findings). The Arizona Supreme Court's narrowing construction of the subsection (F)(6) aggravating circumstance, for example, requires Arizona courts to determine whether the victim suffered physical pain or mental distress and to assess the mental state and attitude of the perpetrator as reflected by his words and actions. *See, e.g., State v. Carriger*, 143 Ariz. 142, 160, 692 P.2d 991, 1009 (1984) (discussing narrowing construction of "'cruel[ty]'" and "'heinous and depraved'"), *cert. denied*, 471 U.S. 1111, 105 S.Ct. 2347, 85 L.Ed.2d 864 (1985). Even if a determination under Arizona's narrowing construction could be characterized as a "mixed" question of law and fact, *cf. Sumner v. Mata*, 455 U.S. 591, 597, 102 S.Ct. 1303, 1306, 71 L.Ed.2d 480 (1982) ( per curiam ) (declining to apply § 2254(d)'s presumption of correctness to mixed questions of law and fact), any such determination would nevertheless remain a question of state law, errors of which are not cognizable in federal habeas proceedings.

Moreover, a federal court should adhere to the *Jackson* standard even when reviewing the decision of a state appellate court that has independently reviewed the evidence, for the underlying question remains the same: If a State's aggravating circumstances adequately perform their constitutional function, then a state court's application of those circumstances raises, apart from due process and Eighth Amendment concerns, only a question of the proper application of state law. A state court's finding of an aggravating circumstance in a particular case-including a de novo finding by an appellate court that a particular offense is "especially heinous . . . or depraved"-is arbitrary or capricious if and only if no reasonable sentencer could have so concluded. Indeed, respondent agrees that "a state court's 'especially heinous . . . or depraved' finding, insofar as it is a matter of state law, is reviewable by

230

the federal courts only under the 'rational factfinder' rule of *Jackson v. Virginia*." Brief for Respondent 95-96 (emphasis added; footnote omitted).

497 U.S. at 781-83.

It is the position of the respondents that there was a sufficient evidentiary basis for the granting of the avoiding arrest aggravating circumstance. Looking to the record it is replete with direct evidence and reasonable inferences that the killing was done to avoid arrest. (Testimony of James Roberts and Frank Coffey). It is further the position of the State that there existed an abundance of evidence from the record that Bell intended that the clerk be killed so that he could not be identified. Further, this intent was demonstrated by the fleeing and the statement of this defendant didn't want any witnesses, and his threatening of another individual. Clearly, the intent to do whatever needed to be done to avoid arrest was shown. Ample evidence exists in this record to support the giving of the avoiding arrest aggravating circumstance and the finding of the aggravator by the jury. There has been no violation of *Jackson v. Virginia*, *supra*.

Turning next to whether the avoiding arrest aggravator sufficiently narrows the class of death eligible capital defendants respondents would first point out that petitioner is mistake when he contends that the class of defendants is not limited during the guilt phase of the trial. Mississippi has a limited list of crimes that can be considered capital murder. *See* MISS. CODE ANN. § 97-3-19 (2). Therefore, not every murder can be convicted of capital murder. The sentencing phase includes a second narrowing of the class by requiring that those who were convicted of one of the limited list of crimes constituting capital murder be

231

given a sentencing trial at which time the State must prove aggravating circumstances. That is not to say that the aggravating circumstances do not have constitutional significance, but simply to point out that petitioner's interpretation of the manner in which the Mississippi capital sentencing scheme works is incorrect.

Petitioner relies on *Lowenfield v. Phelps*, 484 U.S. 231, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988), to argue that Mississippi cannot use "both the underlying murder and as an aggravating factor (the victim was killed in order to "avoid arrest"). Pet. Memo. at 201. Petitioner has not bothered to follow the progression of the decision in *Lowenfield*. Later in *Tuilaepa v. California*, 512 U.S. 967, 114 S.Ct. 2630, 129 L.Ed.2d 750 (1994), the United States Supreme Court held:

> The aggravating circumstance may be contained in the definition of the crime
> or in a separate sentencing factor (or in both).

512 U.S. at 972. [Parenthetical the Court's.]

Thus, petitioner's reliance on *Lowenfield* is misplaced.

Petitioner cites to no case from the United States Supreme Court which holds that the avoiding arrest aggravator does not properly limit the class of capital defendants eligible for the death penalty. Therefore, the decision of the Mississippi Supreme Court cannot be unreasonable as there is no precedent from the United States Supreme Court against which to judge its reasonableness. The decision of the Mississippi Supreme Court therefore did not result in a decision that is contrary to or an unreasonable application of clearly established federal law as announced by the United States Supreme Court. *See Mitchell v. Esparza*, 540

232

U.S. 12, 15-16, 124 S.Ct. 7, 157 L.Ed.2d 263 (2003).

The Fifth Circuit reviewed the constitutionality of this aggravator in *Gray v. Lucas*, 677 F.2d 1086 (5th Cir. 1982), and held:

> Gray's attack is directed primarily at the third aggravating factor. He claims that because the trial judge's instructions differed from the statutory definition, the jury was permitted to base its imposition of the death sentence on a nonstatutory aggravating circumstance. Section 99-19-101(5)(e) of the Mississippi Code provides that murder committed "for the purpose of avoiding or preventing a lawful arrest or effecting an escape from custody" constitutes an aggravating circumstance. *See* MISS. CODE ANN. § 99-19-101(5)(e). In this case, the trial judge instructed the jury that this factor could be found if the murder "was committed for the purpose of avoiding or preventing the detection and lawful arrest of the Defendant . . . ."

> Although the first part of this aggravating circumstance might have been interpreted to apply only to a murder committed while a defendant was being pursued by a policeman, the trial judge interpreted this circumstance to apply to the murder of a witness to a crime to avoid detection. The state supreme court accepted the trial court's construction of this factor. The court stated "Upon the entire record, the jury was justified in finding beyond a reasonable doubt that the child had been killed by Gray intentionally and maliciously for the purpose of silencing her outcries or preventing the report by her of acts of molestation." *Gray v. State*, 375 So.2d at 1004.[20] The Mississippi courts' interpretation of that state's statute is definitive and controlling. The jury was not allowed to impose the death sentence on the basis of a nonstatutory factor.

> The question which remains, however, is whether this aggravating circumstance has been interpreted so broadly that it fails to offer a meaningful distinction between those cases where the death penalty may be imposed and those where it may not. *See Godfrey v. Georgia*, 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980). Gray argues that the state court's interpretation of this factor impermissibly renders it applicable to all murders, since every murderer silences his victim and thus is aided in evading or preventing arrest. We do not think, however, that Mississippi has adopted such a broad construction. The court has construed this aggravating circumstance to refer to purposefully killing the victim of an underlying felony to avoid or prevent

233

arrest for that felony. Like the murder of a clerk who has delivered the cash to the gunman who robs her, the state supreme court noted that Gray purposefully killed Derissa Scales to prevent her from reporting that he had indulged his repulsive sexual aggressions on her little body. As such, this factor merely achieves the state's interest in protecting victims of felonies from being killed to prevent the felon's detection. This construction is not so broad that it comprehends an impermissibly large group of murderers. *See Godfrey v. Georgia*, 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980); *Riley v. State*, 366 So.2d 19, 22 (1979) (per curiam).

_____

20. Gray's trial marked the first time that this aggravating circumstance had been relied on or construed by the Mississippi courts.

677 F.2d at 1109-10.

This decision has never been disturbed and remains binding precedent on this Court. This claim was held to be barred for the failure to object to the instruction. Therefore, the decision rests on an adequate and independent state law ground and is barred from habeas review. *See Wainwright v. Sykes, supra*.

Even if this Court were to find there was insufficient evidence to support this aggravating circumstance the Court would be required to conduct a harmless error analysis under the dictates of *Brecht v. Abrahamson*, 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993). *See Fry v. Pliler*, ___ U.S. ___, ___ S.Ct. ___, 2007 WL 16611463 (June 11, 2007) (*Brecht* standard applies even if state court did not apply *Chapman* harmless error on direct review or did not apply harmless error review at all.); *Kittelson v. Dretke*, 426 F.3d 306, 320-21 (5th Cir. 2005); *Nixon v. Epps*, 405 F.3d 318, 328-332 (5th Cir. 2005), *cert. denied*, ___ U.S. ___, 126 S.Ct. 650, 163 L.Ed.2d 528, *reh. denied*, ___ U.S. ___, 126 S.Ct. 843 (2005); *Billiot v. Puckett*, 135 F.3d 311 (5th Cir. 1998), *cert. denied*, 525 U.S. 966, 119 S.Ct. 413, 142

234

L.Ed.2d 336 (1998). Any constitutional error found, must be subjected to an analysis to determine whether the "error had a substantial and injurious effect or influence in determining the jury's verdict." 507 U.S. at 637.

The jury found two other aggravating circumstances in addition to the avoiding arrest aggravator. They were (1) "Frederick Bell, was previously convicted of another capital offense or of a felony involving the use or threat of violence to the person" and (2) the capital murder of Robert C. "Bert"Bell was committed while the defendant was engaged or was an accomplice, in the commission of armed robbery. C.P. at 240.

This claim is barred from consideration on habeas review as it rests on an adequate and independent state law ground. *See Wainwright v. Sykes*, *supra*. Petitioner is entitled to no habeas relief on this claim.

### B.    Double Counting of Robbery

Petitioner next contends that the trial court erred in instructing the jury on robbery as an aggravating circumstance, because it was used as the underlying felony which made this crime capital murder. This claim was presented to the Mississippi Supreme Court on direct appeal. As pointed out above the claim was held to be barred from consideration because no objection was raised to Sentencing Instruction S-1 on this basis. The state court also addressed the merits of the claim alternatively and held it to be without merit.

### F. The instruction also allows for double-counting of the robbery aggravating circumstance.

¶ 74. In the guilt finding phase of the trial, the jury was instructed that

235

a conviction of capital murder could be based on a finding that Bell unlawfully, willfully and feloniously killed Bert while engaged in armed robbery. The jury was then instructed at sentencing that it could find as an aggravating circumstance that the murder "was committed while the defendant was engaged or was an accomplice in the commission of armed robbery." Thus, Bell says, the State was allowed to double count the armed robbery, both as a ground for a capital conviction, and also as an aggravating circumstance justifying the death penalty.

¶ 75. He argues that a State may not constitutionally treat every unjustified intentional taking of human life as an aggravating circumstance because to do so does not narrow the class of death-eligible defendants in a principled manner. It is the proper function of the aggravating circumstances to make this distinction. The jury, under this reasoning, consequently, was allowed to convict Bell of capital murder, based on the armed robbery factor, and then to use the same armed robbery as an aggravating circumstance, thus boot-strapping all armed robberies to the death penalty level.

¶ 76. Bell relies primarily on *Arave v. Creech*, 507 U.S. 463, 113 S.Ct. 1534, 123 L.Ed.2d 188 (1993), for his position. *Creech* gives two requirements for a constitutionally-valid aggravating factor. It must be determinative, not vague, and it must genuinely narrow. In other words, it must embody a principle which, standing alone, would render the death penalty proportionate to the crime. *Id*. at 474, 113 S.Ct. 1534. Therefore, Bell asserts the robbery aggravating circumstance does not "genuinely narrow" because robbery-murder standing alone is not a crime for which the death penalty is proportionate punishment, and is thus violative of the Eighth Amendment to the United States Constitution and Article 3, Section 28 of the Mississippi Constitution.

¶ 77. We have previously rejected this argument. *See Ladner v. State*, 584 So.2d 743, 762 (Miss.1991)[4]; *Minnick v. State*, 551 So.2d 77, 96-7 (Miss.1988), *rev'd on other grounds*, 498 U.S. 146, 111 S.Ct. 486, 112 L.Ed.2d 489 (1990). *Ladner* and *Minnick* expressly rejected the stacking argument based on the United States Supreme Court ruling in *Lowenfield v. Phelps*, 484 U.S. 231, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988). The *Minnick* Court stated that *Lowenfield* "held that the fact that the sole aggravating circumstance found by the jury in its penalty decision was identical to an element of the underlying offense did not violate the Eighth Amendment." *Minnick*, 551 So.2d at 97. Accordingly, the lower court should not be held in

236

error on this point.

725 So.2d at 858-59.

The decision of the Mississippi Supreme Court did not result in a decision that is contrary to or an unreasonable application of clearly established federal law as announced by the United States Supreme Court.

Petitioner contends that *Lowenfield v. Phelps*, 484 U.S. 231, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988), has been erroneously applied by this Court as it does not apply in a weighing state. The respondents beg to differ. The main thrust of Bell's argument only presents the same tired arguments that has been presented for the last twenty-five years with no success in support of this claim.

The Mississippi Supreme Court has consistently held that the use of the underlying felony as an aggravating factor does not violate state or federal law. *See Goodin v. State*, 787 So.2d 639, 654-55, ¶¶ 47-49 (Miss. 2001); *Manning v. State*, 735 So.2d 323, 3350-51, ¶ 67 (Miss. 1999); *Smith v. State*, 729 So.2d 1191, 1223, ¶¶ 156-57 (Miss. 1998); *Manning v. State*, 726 So.2d 1152, 1196, ¶ 192 (Miss. 1998); *Bell v. State*, 725 So.2d 836, 858-59, ¶¶ 74-77 (Miss. 1998); *Crawford v. State*, 716 So.2d 1028, 1049-50, ¶ 78-80(Miss. 1998); *Berry v. State*, 703 So.2d 269, 284-86 (Miss. 1997); *Wilcher v. State*, 697 So.2d 1123, 1138 (Miss. 1997); *Wilcher v. State*, 967 So.2d 1087, 1108 (Miss. 1997); *Brown v. State*, 690 So.2d 276, 295-96 (Miss. 1996); *Brown v. State*, 682 So.2d 340, 353-55 (Miss. 1996); *Davis v. State*, 684 So.2d 643, 663-64 (Miss. 1996); *Doss v. State*, 709 So.2d 369, 391-92, ¶¶ 92-95 (Miss.

1996); *Blue v. State,* 674 So.2d 1184, 12115-18 (Miss. 1996); *Holly v. State*, 671 So.2d 32, 39-40 (Miss. 1996); *Walker v. State*, 671 So.2d 581, 612 (Miss. 1995); *Ballenger v. State*, 667 So.2d 1242, 1260 (Miss. 1995); *Ladner v. State*, 584 So.2d 743, 762-63 (Miss. 1991); *Minnick v. State*, 551 So.2d 77, 96-97 (Miss. 1989); *Pinkney v. State*, 538 So.2d 329, 358-59 (Miss. 1988); *Cole v. State*, 525 So.2d 365, 374 (Miss.1987); *Lockett v. State*, 517 So.2d 1346, 1353 (Miss. 1987); *Faraga v. State*, 514 So.2d 295, 309 (Miss. 1987); *Jordan v. State*, 464 So.2d 475, 479 (Miss. 1985); *Wilcher v. State*, 448 So.2d 927, 937-38 (Miss. 1984); *Billiot v. State*, 454 So.2d 445, 465 (Miss. 1984); *Tokman v. State*, 435 So.2d 664, 668-69 (Miss.1983); *Leatherwood v. State*, 435 So.2d 645, 650 (Miss. 1983); *Coleman v. State*, 378 So.2d 640, 646-47 (Miss. 1979).

Further, the United States Supreme Court has held that there is no constitutional error in using the underlying felony as an aggravating factor. *Lowenfield v. Phelps*, 484 U.S. 231, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988). He contends that *Lowenfield* does not apply because Mississippi is a weighing state and Louisiana is not. However, in a California case, a weighing state, the United States Supreme Court held: "The aggravating circumstance may be contained in the definition of the crime or in a separate sentencing factor (or in both)." *Tuilaepa v. California*, 512 U.S. 967, 972, 114 S.Ct. 2630, 2634-35, 129 L.Ed.2d 750 (1994) (parenthetical the Court's). In *Lockhart v. Fretwell*, 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993), the high court held that a death sentenced inmate was not denied ineffective assistance of counsel when counsel failed to object to aggravating circumstance

238

that duplicated the underlying felony. In addition, the United States Supreme Court recently held that the Eighth Circuit was correct in *Perry v. Lockhart*, 871 F.2d 1384 (8th Cir. 1989), as *Lowenfield*, *supra*, required it to overrule prior Eighth Circuit precedent holding that using an aggravator that duplicates an element of the underlying felony was unconstitutional. *Williams v. Taylor*, 529 U.S. 362, 393 n.16, 120 S.Ct. 1495, 1513 n. 16, 146 L.Ed.2d 389 (2000). The lower federal courts have held the same. *See Hall v. United States*, 152 F.3d 381, 416-17 (5th Cir. 1998); *United States v. Flores*, 63 F.3d 1342, 1370-72 (5th Cir. 1995); *Evans v. Thigpen*, 809 F.2d 239, 241 (5th Cir. 1987) (Holding in a Mississippi case that no constitutional right is violated by use of aggravating factor that duplicates an element of the underlying felony); *Glass v. Blackburn*, 791 F.2d 1165, 1172-73 (5th Cir. 1986) (same); *Wingo v. Blackburn*, 783 F.2d 1046, 1051 (5th Cir. 1986) (same); *Perry v. Lockhart*, 871 F.2d 1384 (8th Cir. 1989), *cert. denied*, 493 U.S. 959, 110 S.Ct. 378, 107 L.Ed.2d 363 (1989) (Same); *Nixon v. Hargett*, 194 F.Supp. 501, 518 (S.D. Miss. 2002) (same).

In the context of the federal death penalty the United States Supreme Court held in *Jones v. United States*, 527 U.S. 373, 119 S.Ct. 2090, 144 L.Ed.2d 370 (1999):

> We have never before held that aggravating factors could be duplicative so as to render them constitutionally invalid, nor have we passed on the "double counting" theory that the Tenth Circuit advanced in McCullah[13] and the Fifth Circuit appears to have followed here. What we have said is that the weighing process may be impermissibly skewed if the sentencing jury considers an invalid factor. See Stringer v. Black, 503 U.S. 222, 232, 112 S.Ct. 1130, 117 L.Ed.2d 367 (1992). Petitioner's argument (and the reasoning of the Fifth and Tenth Circuits) would have us reach a quite different proposition-that if two aggravating factors are "duplicative," then the weighing process necessarily is skewed, and the factors are therefore invalid.

239

527 U.S. at 398.

The Supreme Court clearly stated that it has never ruled as petitioner contends that it has.

Therefore, there is no clearly established precedent supporting petitioner's position.

In addition, the Fifth Circuit recently addressed the same question again in a Mississippi case. In *Nixon v. Epps*, 111 Fed.Appx. 237, 2004 WL 2166271 (5th Cir. 2004), the Fifth Circuit held:

### J. Double Use Claim

Nixon next argues that the use of the "for pecuniary gain" aggravator was inappropriate in his case because this aggravator duplicates an element of his offense of conviction under Mississippi's capital murder statute. *See* MISS. CODE ANN. § 97-3-19(2)(d). The Mississippi Supreme Court on direct appeal held that claim was foreclosed by substantial state and federal court precedent. *Nixon*, 533 So.2d at 1097. Like that court and the district court, we hold that Nixon's claim was barred by existing precedent. *See Lowenfield v. Phelps*, 484 U.S. 231, 246, 108 S.Ct. 546, 555, 98 L.Ed.2d 568 (1988) (the "fact that the aggravating circumstance duplicated one of the elements of the crime does not make [a death] sentence constitutionally infirm"); *Tuilaepa v. California*, 512 U.S. 967, 971-72, 114 S.Ct. 2630, 2634-35, 129 L.Ed.2d 750 (1994) ("To render a defendant eligible for the death penalty in a homicide case, we have indicated that the trier of fact must convict the defendant of murder and find one 'aggravating circumstance' (or its equivalent) at *either* the guilt or penalty phase." "The aggravating circumstance may be contained in the definition of the crime or in a separate sentencing factor (or in both).") (emphasis added; internal citations omitted). *Williams v. Taylor*, 529 U.S. 362, 392 n. 16, 120 S.Ct. 1495, 1513 n. 16, 146 L.Ed.2d 389 (2000). Nixon's purported distinctions of *Lowenfield* and *Tuilaepa* are meritless; no COA is warranted.

111 Fed.Appx. at 250-251, 2004 WL 2166271,**10-11.

Petitioner's claim is totally without merit as the clear precedent holds that an aggravating circumstance can duplicate an element of the offense. The Mississippi Supreme Court's

240

decision in this case is neither contrary to or an unreasonable application of clearly established federal law as announced by the United States Supreme Court. Petitioner cannot demonstrate cause and actual prejudice to over come the procedural bar to this claim. Petitioner is entitled to no relief on this claim because it is barred from consideration by this Court and further even if it were not barred from consideration the decision on the state court was not unreasonable. *See Williams v. Taylor, supra*.

C.    **Tennessee Conviction as an Aggravator**

Petitioner next contends that there was no evidence that he had been previously been of an other "capital crime." There was no objection to Instruction S-1 on this basis at trial and, as pointed out above, the claim was held to be barred from review on direct appeal. The respondents do not waive this bar. The alternative discussion on the merits of this claim by the Mississippi is as follows:

> **A. No evidence to support an aggravator that the offense was committed after Bell had previously been convicted of another capital offense.**
>
> ¶ 65. One of the elements of aggravation presented to the jury was "whether defendant, Frederick Bell, was previously convicted of another capital offense or of a felony involving the use or threat of violence to the person." Bell argues that the State presented evidence showing that Bell had, in Tennessee, been indicted for first degree murder but convicted of second degree murder. The certificate which accompanied the indictment (which was not admitted into evidence) made reference to the charge in the indictment of murder in the first degree. Second degree murder is not a capital offense in Tennessee. Therefore, the reference in the instruction to "another capital offense" as an aggravator is, Bell argues, fatal to the instruction as a whole. He asserts that both state and federal law prevent this Court from performing reweighing or harmless error analysis where an aggravating circumstance is invalid. *Wilcher v. State*, 635 So.2d 789, 790-91 (Miss.1993). It is certainly

241

true that we did in *Wilcher* hold that we will not and cannot apply harmless error analysis to aggravating factors.

¶ 66. The instruction, using the phrasing of the statute, MISS. CODE ANN. § 99-19-101(5)(b), stated the alternatives under this aggravator disjunctively: "convicted of another capital offense *or* of a felony involving the use or threat of violence." (Emphasis added). This disjunctive language does not render the aggravator invalid. While it would have been better form, and one that we commend to trial courts, to choose one or the other (conviction of a capital offense or of a felony involving violence) for its aggravator, there was sufficient evidence that Bell had been convicted of a felony involving the use or threat of violence to the person. Capital murder was never argued by the State or brought up in any way and only found on a rather insignificant piece of evidence. Thus, Bell's argument that "some of the jury may have been thinking capital murder was the aggravator" fails. It simply is not strong enough in the face of the State's submission of the judgment of conviction for second degree murder and closing argument.

¶ 67. The argument is not unlike that of the defendant in *Shell v. State*, 554 So.2d 887 (Miss.1989), claiming that the disjunctive presentation of the "heinous, atrocious or cruel" aggravator made it impossible to know whether some of the jury found the murder heinous, some atrocious, and some cruel. There, as here, the jury founded the death penalty on multiple aggravating circumstances, including the fact the killing occurred in the commission of a robbery.

¶ 68. The Court stated:

[o]nly one crime-the murder of Mrs. Johnson while in the commission of a robbery-was considered by the jury. The list of aggravating circumstances applies only to this one crime. The issue for the jury to determine was whether the aggravating circumstances as a whole applied to the murder of Mrs. Johnson, a question they answered in the affirmative. Furthermore, the jury found two aggravating circumstances overall, that the murder was committed during the course of a robbery, and that the murder was heinous, atrocious, or cruel. Even should this Court find that the aggravating circumstance challenged here is invalid, the remaining circumstance is sufficient to uphold the death sentence.

*Shell*, 554 So.2d at 906.

¶ 69. Bell's jury additionally found that the murder was committed for the purpose of avoiding lawful arrest. We find no error here, harmless or otherwise.

The jury was instructed that they could consider as an aggravating circumstance "whether defendant, Frederick Bell, was previously convicted of another capital offense *or* of a felony involving the use or threat of violence to the person." Bell contends he was convicted of second degree murder in Tennessee and that such a conviction is not a conviction of a capital crime.

The Mississippi Supreme Court has held that where the jury is instructed in the words of the statute – "convicted of another capital offense or of a felony involving the use or threat of violence to the person", it is not fatal to the finding of this aggravating circumstance that the evidence showed only a violent felony and not a prior capital felony. *See Brown v. State*, 890 So.2d 901, 918-19, ¶¶ 66-68 (Miss. 2004); *Doss v. State*, 709 So.2d 369, 392-93, ¶¶ 96-99 (Miss. 1996). Petitioner's claim is without merit as the State never argued to the jury that petitioner had been previously convicted of a capital crime, only that he had been convicted of a crime of violence.

The Mississippi Supreme Court has also held that convictions for crimes committed after the capital murder in question, but entered before the capital murder trial may be used to support this aggravating circumstance. *See Smith v. State*, 729 So.2d 1191, 1221-22, ¶¶ 150-51 (Miss. 1998); *Wells v. State*, 698 So.2d 497, 510-11 (Miss. 1997); *Taylor v. State*, 672

243

So.2d 1246, 1274-75 (Miss. 1995); *Turner v. State*, 573 So.2d 657, 670-71 (Miss. 1990); *Tokman v. State*, 435 So.2d 664, 668 (Miss.1983); *Leatherwood v. State*, 435 So.2d 645, 651-52 (Miss. 1983); *Reddix v. State*, 381 So.2d 999, 1009-10 (Miss. 1980); *Jones v. State*, 381 So.2d 983, 994 (Miss. 1980). The fact that the Tennessee murder took place after the Mississippi murder is of no consequence. The conviction of the Tennessee murder was entered prior to the trial of this case. This is a matter of state law.

Since there was no objection to this instruction on this basis at trial it was held to be barred from consideration on direct appeal. The alternative discussion of the merits does not vitiate the bar imposed by the Mississippi Supreme Court. *See Harris v. Reed, surpa*. This claim is barred from habeas review. *See Wainwright v. Sykes, supra*.

### D.    Committed During the Commission of a Robbery

Petitioner next contends that the trial court erred by instructing the jury they could consider the committed during the commission of a robbery aggravator "if the defendant was found to be only an accomplice to armed robbery. To reach this point petitioner demands that the Court read the guilt phase instructions with the sentence phase instructions. He relies chiefly on *Cabana v. Bullock*, 474 U.S. 376, 106 S.Ct. 689, 88 L.Ed.2d 704 (1986) and *Enmund v. Florida*, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982). However, petitioner overlooks the facts of this case. He contends that he was sentenced to death without a finding that he "actually killed, attempted to kill or intended that a killing occur or that lethal force be used." Pet. Memo. at 211. We only have to look to the sentencing phase

244

verdict to dispel this argument. The jury made the following findings at the sentencing phase as is memorialized by their verdict. The verdict reads, in part:

> We the jury unanimously find from the evidence beyond a reasonable doubt that the following facts existed at the time of the commission of the capital murder:
>
> (1)   That the defendant, Frederick Bell, actually killed Robert C. "Bert" Bell.
>
> (2)   That the defendant, Frederick Bell, attempted to kill Robert C. "Bert" Bell.
>
> (3)   That the defendant, Frederick Bell, intended the killing of Robert C. "Bert" Bell take place.
>
> (4)   That the defendant, Frederick Bell, contemplated that lethal force would be employed during the commission of the crime of armed robbery.

SCP at 240.

These findings are required by MISS. CODE ANN. § 99-19-101 (7). In fact, this portion of the sentencing statute was passed by the Mississippi Legislature in response to the decisions in *Bullock* and *Enmund*.

When presented to the Mississippi Supreme Court on direct appeal the claim was held to be barred for failure to object to Sentencing Instruction S-1 on this basis. The alternative discussion of the merits of the claim read:

> **B. Instructing that the aggravating circumstance, that the capital murder was committed during the course of a robbery, could be found if the jury found Bell was an accomplice in the commission of armed robbery.**
>
> ¶ 70. Bell argues that S-1 is also flawed as the jury was told that it could

245

conclude murder was committed during the course of a robbery if it found that it was committed "while the defendant was engaged or was an accomplice in the commission or armed robbery." The vice which he finds in this instruction is that, in the guilt phase, the jury was instructed that it could find Bell guilty as an accomplice if he did any act "immediately connected with" the crime. Thus, the argument is that the jury could have found that he was merely an accessory after the fact and misapplied the aggravator. *We repeat: the jury instructions must be read as a whole. Certainly, the parts of the State's sentencing instruction must be read together. In that instruction, the jury is charged, before the aggravating circumstances are listed, that they must, in order to impose the death penalty, find that Bell actually killed Bert, or that he attempted to kill him, or that he intended the killing to take place, or, finally, that he contemplated that lethal force would be employed during the commission of the robbery.* There is no error in this instruction.

725 So.2d at 857. [Emphasis added.]

The instruction required and the jury found that petitioner actually killed, attempted to kill, intended that a killing take place and that petitioner contemplated that lethal force would be used. The fact that the Mississippi Supreme Court did not cite *Bullock* or *Enmund* in its opinion is of no moment as the United States Supreme Court has held that a state court need not cite its precedent or even know of its precedent so long as the decision is not contrary to or an unreasonable application of its precedent. *See Early v. Packer*, 537 U.S. at 8. The decision of the Mississippi Supreme Court is neither contrary to or an unreasonable application of the clearly established precedent found in *Bullock* and *Enmund*.

Petitioner also contends that there was no evidence to support the finding of this aggravating circumstance challenging credibility of the witnesses against him. The credibility of witnesses is not for a court to determine, but for the jury. The evidence in this case, when viewed "in the light most favorable to the prosecution, any rational trier of fact

246

could have found the essential elements of the crime beyond a reasonable doubt." 443 U.S., at 319. *See Jackson v. Virginia*, *supra*. This portion of the claim is without merit.

This claim is barred from consideration by this Court and alternatively without merit. Petitioner is entitled to no relief on this claim.

### E.     Failure to Define Avoiding Arrest Aggravator

Petitioner next, in a one paragraph argument, contends that the trial court erred in failing to define the aggravating circumstance found in MISS. CODE ANN. § 99-19-101 (5)(e), thereby violating his Eighth and Fourteenth Amendment rights. This aggravating factor reads:

> The capital offense was committed for the purpose of avoiding or preventing a lawful arrest or effecting an escape from custody.

When this claim was presented to the Mississippi Supreme Court on direct appeal it was held to be barred from consideration for the failure to interpose an objection on this ground. The Court alternatively addressed the merits of the claim holding:

> ### D. Failure to define "avoiding or preventing a lawful arrest" as an aggravating circumstance.
>
> ¶ 72. Bell argues that he should be granted a new trial because the instruction failed to define the avoiding arrest aggravator, saying that, without a limiting definition, the use of the "avoiding arrest" aggravator violated the Eighth and Fourteenth Amendments. In a case addressing this same issue, the Court recently held that a limiting instruction is not necessary. *Chase*, 645 So.2d at 858. Chase also asserted that a limiting instruction was necessary for the aggravator that capital murder was committed for the purpose of avoiding or preventing lawful arrest. The Court, in denying the necessity for a limiting instruction, quoted a Fifth Circuit case that this factor was "directed to a legitimate state interest and was 'not so broad that it comprehends an

247

impermissibly large group of murders.'" *Id*. at 858 (quoting *Gray v. Lucas*, 677 F.2d 1086, 1110 (5th Cir.1982)). As in *Chase*, Bell's jury was not unreasonable in inferring from the evidence that the murder was committed to avoid arrest. This question has been decided and the issue is without merit.

725 So.2d at 858.

The Mississippi Supreme Court has long held that the mere killing of the victim does not automatically give rise to this aggravating circumstance. Other factors must be presented to show that the defendant was killing the victim to "cover his tracks." "If there is evidence from which it may be reasonably inferred that a substantial reason for the killing was to conceal the identity of the killer . . . to 'cover their tracks' so as to avoid apprehension and eventual arrest . . . it is proper for the court to allow the jury to consider this [aggravator]. *See Mitchell v. State*, 792 So.2d 192, 219-20, ¶ 103-07 (Miss. 2001). *Walker v. State*, 740 So.2d 873, 888, ¶¶ 63-65 (Miss. 1999)*; Puckett v. State*, 737 So.2d 322, 361-62, ¶¶ 123-26 (Miss. 1999); *Edwards v. State*, 737 So.2d 275, 312, ¶¶ 120-22 (Miss. 1999); *Manning v. State*, 735 So.2d 323, 350, ¶¶ 65-66 (Miss. 1999); *Woodward v. State*, 726 So.2d 524, 540, ¶¶ 66-73 (Miss. 1997); *West v. State*, 725 So.2d 872, 884, ¶¶ 41-42 (Miss. 1998); *Evans v. State*, 725 So.2d 613, 689-90, ¶¶ 348-53 (Miss. 1997); *Brown v. State*, 682 So.2d 340, 355-56 (Miss. 1996); *Doss v. State*, 709 So.2d 369, 390-91, ¶¶ 88-91 (Miss. 1996); *Taylor v. State*, 672 So.2d 1246, 1275 (Miss. 1995); *Walker v. State*, 671 So.2d 581, 611-12 (Miss. 1995); *Carr v. State*, 655 So.2d 824, 853-54 (Miss. 1995), *cert. denied*, 515 U.S. 1076, 116 S. Ct. 782, 133 L.Ed.2d 733 (1996); *Chase v. State*, 645 So.2d 829, 856-58 (Miss. 1994), *cert. denied*, 515 U.S. 1123, 115 S.Ct. 2279, 132 L.Ed.2d 282, *reh. denied*, 515 U.S. 1179, 116

S.Ct. 20, 132 L.Ed.2d 903 (1995); *Hansen v. State*, 592 So.2d 114, 152-53 (Miss. 1991);

*Lanier v. State*, 533 So.2d 473, 490 (Miss.1988); *Tokman v. State*, 435 So.2d 664, 671

(Miss.1983); *Leatherwood v. State*, 435 So.2d 645, 650-51 (Miss. 1983), *cert. denied*,

*Leatherwood v. Mississippi*, 465 U.S. 1084, 104 S.Ct 1455, 79 L.Ed.2d 772 (1984).

Further the state court has held that there is no requirement that a limiting instruction

be granted regarding this aggravating circumstance. *See Manning v. State*, 735 So.2d 323,

350, ¶ 73-74 (Miss. 1999); *Bell v. State*, 725 So.2d 836, 858, ¶ 72 (Miss. 1998); *Evans v.*

*State*, 725 So.2d 613, 689-90, ¶¶ 348-53 (Miss. 1997); *Holland v. State*, 705 So.2d 307, 355-

56 (Miss. 1997); *Brown v. State*, 682 So.2d 340, 355-56 (Miss. 1996); *Doss v. State*, 709

So.2d 369, 390-91, ¶¶ 88-91 (Miss. 1996); *Walker v. State*, 671 So.2d 581, 611-12 (Miss.

1995); *Hansen v. State*, 592 So.2d 114, 152-53 (Miss. 1991); *Leatherwood v. State*, 435

So.2d 645, 651 (Miss. 1983).

The Fifth Circuit upheld this aggravator against a challenge that it is not properly

limited in *Gray v. Lucas*, 677 F.2d 1086 (5th Cir. 1982), *cert. denied*, 461 U.S. 910, 103 S.Ct.

1886, 76 L.Ed.2d 815, *reh. denied*, 462 U.S. 1124, 103 S.Ct. 3099, 77 L.Ed.2d 1357 (1983),

holding:

> Gray's attack is directed primarily at the third aggravating factor. He
> claims that because the trial judge's instructions differed from the statutory
> definition, the jury was permitted to base its imposition of the death sentence
> on a nonstatutory aggravating circumstance. Section 99-19-101(5)(e) of the
> Mississippi Code provides that murder committed "for the purpose of avoiding
> or preventing a lawful arrest or effecting an escape from custody" constitutes
> an aggravating circumstance. *See* MISS. CODE ANN. § 99-19-101(5)(e). In this
> case, the trial judge instructed the jury that this factor could be found if the

249

murder "was committed for the purpose of avoiding or preventing the detection and lawful arrest of the Defendant . . . ."

Although the first part of this aggravating circumstance might have been interpreted to apply only to a murder committed while a defendant was being pursued by a policeman, the trial judge interpreted this circumstance to apply to the murder of a witness to a crime to avoid detection. The state supreme court accepted the trial court's construction of this factor. The court stated "Upon the entire record, the jury was justified in finding beyond a reasonable doubt that the child had been killed by Gray intentionally and maliciously for the purpose of silencing her outcries or preventing the report by her of acts of molestation." *Gray v. State*, 375 So.2d at 1004.[20] The Mississippi courts' interpretation of that state's statute is definitive and controlling. The jury was not allowed to impose the death sentence on the basis of a nonstatutory factor.

The question which remains, however, is whether this aggravating circumstance has been interpreted so broadly that it fails to offer a meaningful distinction between those cases where the death penalty may be imposed and those where it may not. *See Godfrey v. Georgia*, 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980). Gray argues that the state court's interpretation of this factor impermissibly renders it applicable to all murders, since every murderer silences his victim and thus is aided in evading or preventing arrest. We do not think, however, that Mississippi has adopted such a broad construction. The court has construed this aggravating circumstance to refer to purposefully killing the victim of an underlying felony to avoid or prevent arrest for that felony. Like the murder of a clerk who has delivered the cash to the gunman who robs her, the state supreme court noted that Gray purposefully killed Derissa Scales to prevent her from reporting that he had indulged his repulsive sexual aggressions on her little body. As such, this factor merely achieves the state's interest in protecting victims of felonies from being killed to prevent the felon's detection. This construction is not so broad that it comprehends an impermissibly large group of murderers. *See Godfrey v. Georgia*, 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980); *Riley v. State*, 366 So.2d 19, 22 (1979) (per curiam).

_____

20. Gray's trial marked the first time that this aggravating circumstance had been relied on or construed by the Mississippi courts.

677 F.2d at 1109-10.

The decision in *Gray* has never been disturbed and remains binding precedent on this Court. Petitioner cites no precedent from the United States Supreme Court which directly addresses this constitutionality of this aggravating circumstance although it has had numerous opportunities to do so.

No objection was made to S-1 on this ground and therefore the claim was barred by the state court. This claim is now barred from consideration by this Court. *See Wainwright v. Sykes, supra*. The claim is barred and petitioner is entitled to no relief on this claim.

### F.    Failure to Require Jury to Make Written Findings of Fact as to Mitigating Circumstances

Petitioner next contends that it was error to give Sentencing Instruction S-1 because it did not require the jury to make written findings of mitigating factors found by the jury. When this claim was presented to the Mississippi Supreme Court the claim was held to be barred from consideration because of the failure to object to the instruction on this ground. The Mississippi Supreme Court alternatively addressed the merits of he claim holding:

### G. Instruction S-1 should not have been granted because it fails to require the jury to make specific written findings of mitigating circumstances.

¶ 78. Section 99-19-101(3) (1994) of the Code provides that the determination of the jury to impose death shall be supported by specific written findings that there exists sufficient aggravating circumstances as those factors are listed in subsection five of the statute, and that there are insufficient mitigating circumstances as those are set out in subsection six. Bell tells us that the failure of the instruction here to require written findings of mitigation calls for reversal of the sentence.

¶ 79. "This Court has never read MISS. CODE ANN. §§ 99-19-101, *et seq*., as requiring an express written list of all the mitigating circumstances

251

which members of the jury may find extant." *Conner*, 632 So.2d at 1277. The Court there reasoned that the law does not require a consensus among the jury members regarding mitigating factors. Thus, "listing the jury's findings on such factors would often prove impracticable." *Id*. at 1278. Indeed, to do so may be said to undesirably limit the jury's ability to give the defendant the benefit of all of those factors.

725 So.2d at 859.

Such a listing is not required under Mississippi law. *See Lester v. State*, 692 So.2d 755, 799 (Miss. 1997); *Foster v. State*, 639 So.2d 1263, 1302-03 (Miss. 1994); *Conner v. State*, 632 So.2d 1239, 1277-78 (Miss. 1993).

In a slightly different context the United States Supreme Court in discussing the Mississippi statute held in *Clemons v. Mississippi*, 494 U.S. 738, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990):

Nor are we impressed with the claim that without written jury findings concerning mitigating circumstances, appellate courts cannot perform their proper role. In *Spaziano* and *Proffitt*, we upheld the Florida death penalty scheme permitting a trial judge to override a jury's recommendation of life even though there were no written jury findings. An appellate court also is able adequately to evaluate any evidence relating to mitigating factors without the assistance of written jury findings.

494 U.S. at 750.

The United States Supreme has never held that a sentencing jury must be instructed to make written findings of mitigation circumstances. Looking to the Fifth Circuit we find that Court holding in *Martin v. Maggio*, 711 F.2d 1273 (5th Cir. 1983):

Louisiana requires the sentencing jury to specify the aggravating circumstances that it finds. LA.CODE CRIM.PROC.ANN. art. 905.7 (West Supp.1983). It does not require the jury to list mitigating circumstances it

252

considered. Martin contends the Louisiana capital punishment scheme violates the eighth and fourteenth amendments to the United States Constitution because it does not require the sentencing jury to list the mitigating circumstances. The claim is meritless. The Constitution simply does not require such a procedure.

711 F.2d at 1286-87.

See McQueen v. Scroggy, 99 F.3d 1302, 1332 (6th Cir.1996), cert. denied, 520 U.S. 1257, 117 S.Ct. 2422, 138 L.Ed.2d 185 (1997) ("There is no case from any federal court that supports this position."); Slaughter v. Parker, 187 F.Supp.2d 755, 810 (W.D.Ky.,2001); Austin v. Bell, 927 F.Supp. 1058, 1063 (M.D.Tenn.,1996).

The decision of the Mississippi Supreme Court is neither contrary to or an unreasonable application of clearly established federal law as announced by the United States Supreme Court. There is no Supreme Court precedent that holds as petitioner wishes. Therefore, the Mississippi Supreme Court's decision cannot be unreasonable or contrary to anything from that Court.

This claim is barred from consideration and further without any merit. Petitioner is entitled to no relief on this claim.

### G. Mitigating Factors Must Outweigh the Aggravating Circumstances/Shift in the Burden of Proof

Petitioner next contends that Sentencing Instruction S-1 is unconstitutional because it requires the aggravating circumstances be outweighed by the mitigating circumstances and that this shifts the burden of proof to the defendant to prove mitigating circumstances. This claim was presented to the Mississippi Supreme Court and held to be barred from

253

consideration.  The Court alternatively addressed the merits of the claim as it is allowed to

do under *Harris v. Reed, supra*.  The Mississippi Supreme Court held:

**H. Instruction S-1 was erroneously granted because it tells the jury that the mitigating circumstances must outweigh the aggravating circumstances in order to impose a life sentence.**

¶ 80. Bell next complains that S-1 tells the jury that in order to impose a life sentence they must find that the mitigating circumstances outweigh the aggravating circumstances, although under law the jury may impose a life sentence regardless of its weighing of the aggravating and mitigating circumstances.  He argues that the instruction also shifts the burden to the defendant, requiring him to show that the mitigating evidence outweighed the aggravating.  He cites *Shell v. State* for the proposition that not only does a defendant not have to show that the mitigating circumstances outweigh the aggravating circumstances, but also that "[e]very mandatory element of proof is assigned to the prosecution."  *Shell* 554 So.2d at 904 (quoting *Gray v. Lucas*, 677 F.2d 1086, 1105-06 (5th Cir.1982)).  The language to which Bell objects is, specifically:

> [i]f you find [from] the evidence that one or more of the preceding elements of mitigation exist, then you must consider whether it (or they) outweigh(s) or overcome(s) the aggravating circumstances you previously found.  In the event that you find that the mitigating circumstances(s) do not outweigh or overcome the aggravating circumstances(s), you *may* impose the death sentence.  Should you find that the mitigating circumstance(s) outweigh(s) or overcome(s) the aggravating circumstance(s) you shall not impose the death sentence. [emphasis added.]

¶ 81. In *Shell* the instruction provided that in order to return the death penalty, the jury must conclude "that the mitigating circumstances . . . do not outweigh the aggravating circumstances," and was found acceptable.  *Id*.  The phrasing, "that the mitigating circumstances do not outweigh or overcome the aggravating circumstances," is drawn from and consistent with the language of our death penalty statute, MISS. CODE ANN. § 99-19-101.  As we observed in *Shell*, the Fifth Circuit reviewed our statute in *Gray v. Lucas*, 677 F.2d 1086, 1105-06 (5th Cir.1982), concluding that under that statute "[n]either the burden of production nor of proof ever shifts" from the State.  Most recently,

in *Conner v. State, supra*, we rejected Bell's present argument where we were asked to review essentially the same instruction. *Conner*, 632 So.2d at 1271-72. This argument is wholly without merit.

_____
4. *Ladner* was modified in *Willie v. State*, 585 So.2d 660, 680-81 (Miss.1991), overruling those prior cases permitting the use of robbery and pecuniary gain as aggravators together to prohibit the conjunctive use of these aggravators. Bell does not make this argument.

725 So.2d at 856-60.

This instruction comported with Mississippi law as it has stood since 1977. Further, it does not offend the United States Constitution in any manner. The decision of the Mississippi Supreme Court is neither contrary to or an unreasonable application of clearly established federal law as announced by the United States Supreme Court.

The United States Supreme Court recently settled this question in its opinion in *Kansas v. Marsh*, ___ U.S. ___, 126 S.Ct. 2516, 165 L.Ed.2d 429 (2006). There the high court held:

> Contrary to Marsh's contentions and the Kansas Supreme Court's conclusions, *see* 278 Kan., at 536-538, 102 P.3d, at 459, the question presented in the instant case was squarely before this Court in *Walton*. Though, as Marsh notes, the *Walton* Court did not employ the term "equipoise," that issue undeniably gave rise to the question this Court sought to resolve, and it was necessarily included in *Walton's* argument *that the Arizona system was unconstitutional because it required the death penalty unless the mitigating circumstances outweighed the aggravating circumstances. See supra*, at 2522. Moreover, the dissent in *Walton* reinforces what is evident from the opinion and the judgment of the Court-that the equipoise issue was before the Court, and that the Court resolved the issue in favor of the State. Indeed, the "equipoise" issue was, in large measure, the basis of the *Walton* dissent. *See* 497 U.S., at 687-688, 110 S.Ct. 3047 (opinion of Blackmun, J.) ("If the mitigating and aggravating circumstances are in equipoise, the [Arizona] statute requires that the trial judge impose capital punishment. The assertion

255

that a sentence of death may be imposed in such a case runs directly counter to the Eighth Amendment requirement that a capital sentence must rest upon a 'determination that death is the appropriate punishment in a specific case' "). Thus, although *Walton* did not discuss the equipoise issue explicitly, that issue was resolved by its holding. *Cf. post*, at 2539 (STEVENS, J., dissenting); *cf. also post*, at 2541, n. 1 (SOUTER, J., dissenting).

Our conclusion that *Walton* controls here is reinforced by the fact that the Arizona and Kansas statutes are comparable in important respects. Similar to the express language of the Kansas statute, *the Arizona statute at issue in Walton has been consistently construed to mean that the death penalty will be imposed upon a finding that aggravating circumstances are not outweighed by mitigating circumstances*.[2] *See State v. Ysea*, 191 Ariz. 372, 375, 956 P.2d 499, 502 (1998) (en banc); *State v. Gretzler*, 135 Ariz. 42, 55, 659 P.2d 1, 14 (1983) (in banc); *Adamson*, 865 F.2d, at 1041-1043. *Like the Kansas statute, the Arizona statute places the burden of proving the existence of aggravating circumstances on the State, and both statutes require the defendant to proffer mitigating evidence*.

The statutes are distinct in one respect. The Arizona statute, once the State has met its burden, tasks the defendant with the burden of proving sufficient mitigating circumstances to overcome the aggravating circumstances and that a sentence less than death is therefore warranted. In contrast, the Kansas statute requires the State to bear the burden of proving to the jury, beyond a reasonable doubt, that aggravators are not outweighed by mitigators and that a sentence of death is therefore appropriate; it places no additional evidentiary burden on the capital defendant. This distinction operates in favor of Kansas capital defendants. Otherwise the statutes function in substantially the same manner and are sufficiently analogous for our purposes. Thus, *Walton* is not distinguishable from the instant case.

Accordingly, the reasoning of *Walton* requires approval of the Kansas death penalty statute. At bottom, in *Walton*, the Court held that a state death penalty statute may place the burden on the defendant to prove that mitigating circumstances outweigh aggravating circumstances. A fortiori, Kansas' death penalty statute, consistent with the Constitution, may direct imposition of the death penalty when the State has proved beyond a reasonable doubt that mitigators do not outweigh aggravators, including where the aggravating circumstances and mitigating circumstances are in equipoise.

_____

2. Ariz.Rev.Stat. Ann. § 13-703(E) (Supp.2005) provides:

"In determining whether to impose a sentence of death or life imprisonment, the trier of fact shall take into account the aggravating and mitigating circumstances that have been proven. The trier of fact shall impose a sentence of death if the trier of fact finds one or more of the aggravating circumstances enumerated in subsection F of this section and then determines that there are no mitigating circumstances sufficiently substantial to call for leniency."

126 S.Ct. at 2523-24. [Emphasis added.]

The Mississippi statute is similar in operation to both Arizona and Kansas on this point with certain differences that do no change the impact of the decision..

The Mississippi Supreme Court has held that the aggravating circumstances must be found beyond a reasonable doubt. No burden of proof is required for the finding of mitigating circumstances. Further, the statute requires that the jury find that the mitigating circumstances outweigh the aggravating circumstances. The state court has held no other burden of proof is proper. *See* Miss. Code Ann. § 99-19-101(2)(c); *Simmons v. State*, 805 So.2d 452, 500, ¶ 133 (Miss. 2001); *Edwards v. State*, 737 So.2d 275, 313, ¶ 129 (Miss. 1999); *Smith v. State*, 724 So.2d 280, 301-02, ¶¶ 64-67 (Miss. 1998); *Berry v. State*, 703 So.2d 269, 289-90 (Miss. 1997); *Williams v. State*, 684 So.2d 1179, 1202 (Miss. 1996); *Ballenger v. State*, 667 So.2d 1242,1266-67 (Miss. 1995); *Conner v. State*, 632 So.2d 1239, 1278 (Miss. 1993), *cert. denied*, 513 U.S. 927, 115 S.Ct. 314, 130 L.Ed.2d 276 (1994); *Shell v. State*, 554 So.2d 887, 904 (Miss. 1989); *Jordan v. State*, 365 So.2d 1198, 1205-06 (Miss. 1978);; *Shell v. State*, 554 So.2d 887, 904 (Miss. 1989); *Stringer v. State*, 500 So.2d 928 (Miss. 1986); *Leatherwood v. State*, 435 So.2d 645 (Miss. 1983); *Jordan v. State*, 365 So.2d

257

1198, 1206 (Miss. 1978).

This burden of proof was approved by the Fifth Circuit in federal courts in *Gray v. Lucas*, 677 F.2d 1086, 1105-06, *reh. denied*, 685 F.2d 139 (5th Cir. 1982), *cert. denied*, *Gray v. Lucas*, 461 U.S. 910, 103 S.Ct. 1886, 76 L.Ed.2d 815 (1983), *reh. denied*, 462 U.S. 1124, 103 S.Ct. 3099, 77 L.Ed.2d 1357 (1983).

The Mississippi Supreme Court has further held that the burden of proof during the sentence phase of a capital murder never shifts to the defendant.

*See Branch v. State*, 882 So.2d 36, 71-72, ¶¶ 109-12 (Miss. 2004); *Simmons v. State*, 805 So.2d 452, 500, ¶ 132 (Miss. 2001); *Jordan v. State*, 728 So.2d 1088, 1098-99 ¶¶ 46-48 (Miss. 1998); *Williams v. State*, 684 So.2d 1179, 1201-02 (Miss. 1996); *Blue v. State,* 674 So.2d 1184, 1223-24 (Miss. 1996); *Chase v. State*, 645 So.2d 829, 860-61 (Miss. 1994), *cert. denied*,515 U.S. 1123, 115 S.Ct. 2279, 132 L.Ed.2d 282, *reh. denied*, 515 U.S. 1179, 116 S.Ct. 20, 132 L.Ed.2d 903 (1995); *Stringer v. State*, 500 So.2d 928, 943-44 (Miss. 1986); *Irving v. State*, 498 So.2d 305, 314 (Miss. 1986); *Coleman v. State*, 378 So.2d 640, 646-47 (Miss. 1979); *Jordan v. State*, 365 So.2d 1198, 1205-06 (Miss. 1978). Further, the state court has held that the argument that the burden of proof is shifted to the defendant to prove a life sentence is warranted, when one aggravating circumstance has been found, has no merit. *See Branch v. State*, 882 So.2d 36, 71-72, ¶¶ 109-12 (Miss. 2004); *Simmons v. State*, 805 So.2d 452, 500, ¶ 132 (Miss. 2001); *Taylor v. State*, 672 So.2d 1246, 1276 (Miss. 1995).

Even if the burden was shifted to the petitioner to prove mitigation circumstances it

258

would not offend the constitution. *See Walton v. Arizona*, 497 U.S. 639, 650-651, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990). While the burden does not shift under the precedent of the Mississippi Supreme Court and the statute, there would be no constitutional prohibition if it did.

The decision of the Mississippi Supreme Court did not result in a decision that is contrary to or an unreasonable application of *Marsh* or *Walton*. *See Williams v. Taylor, supra.*

No objection was made to Instruction S-1 on this basis and it was held to be barred by the state court. It is now barred from federal habeas review. Petitioner is entitled to no relief on this claim.

H. **Instructing the Jury to Consider the Detailed Circumstances of the offense for which the defendant was convicted and the character and record of the defendant himself.**

Here petitioner contends that Sentencing Instruction S-1 allowed the jury to consider non statutory aggravating circumstances in violation of Mississippi law. Petitioner cites no precedent from the United States Supreme Court that is on point to support this argument. The Mississippi Supreme Court held the claims made regarding Sentencing Instruction S-1 to be barred from consideration. *See* 725 So.2d at 856, ¶ 64. The respondents would assert that this claim is barred from consideration on habeas review.[34] *See Coleman v. Thompson,*

---

[34]Respondents recognize that the imposition of the bar to the claims relating to Sentencing Instruction S-1 was made as a preface to the consideration of other claims relating to S-1. However, respondents would assert that since there was no objection raised

*supra; Wainwright v. Sykes, supra.* The fact that the merits were addressed alternatively by the state court does not vitiate the imposition of the procedural bar to this claim.

When this claim was presented on direct appeal the Mississippi Supreme Court held:

## XXIV. INSTRUCTION S-1 AND "NON-STATUTORY AGGRAVATORS"

¶ 103. Here, it is argued that the trial court erred by instructing the jury in S-1 that it could "consider the detailed circumstances of the offense for which the defendant was convicted, and the character and record of the defendant himself." Bell says that this instruction allowed the jury to consider non-statutory factors in the aggravation of the death penalty, and that this problem was compounded by S-3 which told the jury that it must apply reasoned judgment in its determination of life or death in light of the totality of the circumstances present. We have held that the jury can consider only the eight statutory aggravating circumstances listed in MISS. CODE ANN. § 99-19-101 (Supp.1994), in deciding whether to impose the death sentence. *Balfour*, 598 So.2d at 747-48. We continue to adhere to that rule which prevents the creation of additional factors by prosecutors. However, this limitation does not prohibit the careful consideration of the facts developed and presented to the jury or the use of reason and judgment in assessing those circumstances. To do so would be absurd, and to instruct the jury of its duty to exercise such judgment and care simply cannot be called error. In *Tuilaepa v. California*, 512 U.S. 967, 114 S.Ct. 2630, 129 L.Ed.2d 750 (1994), the defendant challenged the jury instruction issued by a California court instructing the jury that it could consider the circumstances of the crime and the defendant's prior criminal activity. *The Court held that the "circumstances of the crime are a traditional subject for consideration by the sentencer, and an instruction to consider the circumstances is neither vague nor otherwise improper under our Eighth Amendment jurisprudence."* *Tuilaepa*, 512 U.S. at 976, 114 S.Ct. 2630. In *Woodson v. North Carolina*, 428 U.S. 280, 304, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976), *consideration of the circumstances of an offense was characterized as constitutionally*

at trial to S-1 on the grounds asserted on direct appeal carried over to this section dealing with S-1. Even if the bar is not recognized by this Court, the claim is without any substantive merit as will be shown in the alternative discussion of the merits, *infra.*

260

> *indispensable to a death sentence.* The instruction given here was a sensible and clear expression of the jury's duty and cannot be read as interjecting unwarranted aggravating factors or allowing the jury to venture out on a hunt for other justification for ordering Bell's death.

725 So.2d at 864-65. [Emphasis added.]

The Mississippi Supreme Court has long held that the use of the language "you may objectively consider the detailed circumstances of the offense for which the defendant was convicted" in the sentencing instruction is not error but is required. *Simmons v. State*, 805 So.2d 452, 499, ¶ 129 (Miss. 2001); *Jordan v. State*, 786 So.2d 987, 1026, ¶ 151 (Miss. 2001); *Edwards v. State*, 737 So.2d 275, 314, ¶¶ 131-33 (Miss. 1999); *Turner v. State*, 732 So.2d 937, 953-54, ¶¶ 66-67 (Miss. 1999); *Smith v. State*, 729 So.2d 1191, 1224-25, ¶¶ 162-65 (Miss. 1998); *Doss v. State*, 709 So.2d 369, 395-96, ¶¶ 112-15 (Miss. 1996); *Carr v. State*, 655 So.2d 824, 856-57 (Miss. 1995), *cert. denied*, 515 U.S. 1076, 116 S. Ct. 782, 133 L.Ed.2d 733 (1996); *Foster v. State*, 639 So.2d 1263, 1301 (Miss. 1994), *cert. denied*, 514 U.S. 1019, 115 S.Ct. 1365, 131 L.Ed.221, *reh. denied*, 514 U.S. 1123, 115 S.Ct. 1992, 131 L.Ed.2d 878 (1995); *Evans v. State*, 422 So.2d 737, 742 (Miss. 1982).

Further, the Mississippi Supreme Court has held that the State can present the detailed circumstances of the murder committed by the defendant during the sentencing phase or during a resentencing phase even though the facts of the crime do not go to support one of the aggravating factors. These facts are used to to prove the intent factors required by MISS. CODE ANN. § 99-19-101(7). *See Turner v. State*, 732 So.2d 937, 955-56, ¶¶ 76-79 (Miss. 1999); *Holland v. State*, 705 So.2d 307, 327 (Miss. 1997); *Russell v. State*, 670 So.2d 816,

832-35, 837-38 (Miss. 1995). *See Enmund v. Florida*, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982).

However, United States Supreme Court precedent is against petitioner's claim. In *Tuilaepa v. California*, 512 U.S. 967, 129 L.Ed.2d 750, 762 (1994), the United States Supreme Court held:

> . . . [O]ur capital jurisprudence has established that the sentencer should consider the circumstances of the crime in deciding whether to impose the death penalty. *See, e.g., Woodson [v. North Carolina*, 428 U.S. 280,] 304, 49 L.Ed.2d 944 (1976)('consideration of . . . the circumstances of the particular offense [is] a constitutionally indispensable part of the process of inflicting the penalty of death"). We would be hard pressed to invalidate a jury instruction that implements what we have said the law requires.

> 512 U.S. at 976.

*See United States v. Flores*, 63 F.3d 1342, 1372 (5th Cir. 1995)("If we were to agree with Garza's argument on this point we would also have to ignore the 'settled principle' that "the sentencer should consider the circumstances of the crime in deciding whether to impose the death penalty.' *Tuilaepa*, 512 U.S. at ----, 114 S.Ct. at 2637." ). Earlier in *Woodson v. North Carolina*, 428 U.S. 280, 304, 49 L.ED.2d 944 (1976), the Court held:

> This Court has previously recognized that "(f)or the determination of sentences, justice generally requires consideration of more than the particular acts by which the crime was committed and that there be taken into account the circumstances of the offense together with the character and propensities of the offender." *Pennsylvania ex rel. Sullivan v. Ashe*, 302 U.S. 51, 55, 58 S.Ct. 59, 61, 82 L.Ed. 43 (1937). Consideration of both the offender and the offense in order to arrive at a just and appropriate sentence has been viewed as a progressive and humanizing development. *See Williams v. New York*, 337 U.S., at 247-249, 69 S.Ct., at 1083-1084; *Furman v. Georgia*, 408 U.S., at 402-403, 92 S.Ct., at 2810-2811 (Burger, C. J., dissenting). While the

262

prevailing practice of individualizing sentencing determinations generally reflects simply enlightened policy rather than a constitutional imperative, we believe that in capital cases the fundamental respect for humanity underlying the Eighth Amendment, *see Trop v. Dulles*, 356 U.S., at 100, 78 S.Ct., at 597 (plurality opinion), *requires consideration of the character and record of the individual offender and the circumstances of the particular offense as a constitutionally indispensable part of the process of inflicting the penalty of death*.

428 U.S. at 304.

The decision of the Mississippi Supreme Court is did not result in a decision that is contrary to or an unreasonable application of clearly established federal law as announced by the United States Supreme Court.[35]  *See Williams v. Taylor, supra*.

The Mississippi Supreme Court held this claim to be barred because no objection was raised to S-1 on this basis.  This claim  is now barred from habeas review.  Petitioner is entitled to no relief on this claim.

**GROUND XXIII:  MENTAL RETARDATION CLAIM.**

Petitioner's final claim is that he is mentally retarded.  Petitioner never presented this claim to the state courts in any manner.  Further, petitioner filed a Motion to Amend His Petition for Habeas Corpus Under 28 U.S.C. § 2254 By a Person in State Custody Under Sentence of Death in Order to Raise a Claim Under *Atkins v.Virginia*, on August 31, 2006.  On December 01, 2006, this Court entered an order denying petitioner leave to amend his

---

[35]Even if it could be said that some non-statutory aggravator was introduced into the sentencing phase of this trial it would only be an error of state law not cognizable in a federal habeas proceeding. *See Goode v. Wainwright*, 464 U.S. 78, 83-84, 104 S.Ct. 378, 78 L.Ed.3d 187 (1983); *Barclay v. Florida*, 463 U.S. 939, 956, 103 S.Ct. 3418, 77 L.Ed.2d 1134 (1983).

263

petition to raise an *Atkins* claim stating:

> As Petitioner's *Atkins* claim is unexhausted, untimely, and lacking in merit, justice would not be furthered, nor prejudice to Petitioner averted, by allowing an amendment to Petitioner's federal habeas petition to include an *Atkins* claim.

Order at 2.

Since this Court denied petitioner's motion to amend his petition for writ of habeas corpus to include a claim under *Atkins v. Virginia*, this claim is not properly before the Court and respondents will not address this claim other than to say the petitioner is not entitled to any relief on this claim.

## CONCLUSION

For the above and foregoing reasons the respondents would respectfully submit that the petition for writ of habeas should be denied with prejudice and any requested Certificate of Appealability should be denied.

Respectfully submitted,

**JIM HOOD**
ATTORNEY GENERAL
STATE OF MISSISSIPPI

**MARVIN L. WHITE, JR.**
ASSISTANT ATTORNEY GENERAL
Miss. Bar No. 7149
*(Counsel of Record)*

BY:   s/ **MARVIN L. WHITE, JR.**

OFFICE OF THE ATTORNEY GENERAL
Post Office Box 220

Jackson, Mississippi 39205
Telephone:    (601) 359-3680
Telefax:       (601) 359-3796

## CERTIFICATE OF SERVICE

This is to certify that I, Marvin L. White, Jr., Assistant Attorney General for the State of Mississippi, have electronically the foregoing MEMORANDUM OF AUTHORITIES IN SUPPORT OF ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2254 BY A PERSON IN STATE CUSTODY UNDER SENTENCE OF DEATH with the Clerk of the Court using the ECF system which sent notification of such filing to the following:

> Kenneth H. Coghlan, Esquire
> Rayburn Coghlan Law Firm, PLLC
> P.O. Box 430
> Oxford, Mississippi 38655

This, the 15th day of June, 2007.

**s/ MARVIN L. WHITE, JR.**

266